```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2

 3   ----------------------------------------X
                                             :
 4   STEVEN SCHREIBER,                        :
                                             :
 5                   Plaintiff,               :
                                             :   15-CV-6861 (CBA)
 6            v.                              :
                                             :   March 15, 2016
 7   EMIL FRIEDMAN, et al,                    :   Brooklyn, New York
                                             :
 8                   Defendants.              :
                                             :
 9   ----------------------------------------X

10          TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
11            BEFORE THE HONORABLE JAMES ORENSTEIN
                  UNITED STATES MAGISTRATE JUDGE
12

13   APPEARANCES:

14
     For the Plaintiff:        JAY P. NELKIN, ESQ.
15                             CAROL NELKIN, ESQ.
                               Nelkin & Nelkin
16                             5417 Chaucer
                               Houston, Texas 77005
17

18   For the Defendant:        PAUL H. SCHAFHAUSER, ESQ.
                               Herrick Feinstein LLP
19                             One Gateway Center
                               Newark, New Jersey 07102
20

21
     Court Transcriber:        MARY GRECO
22                             TypeWrite Word Processing Service
                               211 N. Milton Road
23                             Saratoga Springs, New York 12866

24

25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

2

1  (Proceedings began at 10:32 a.m.)

2          THE CLERK:  Civil Cause For a Status Conference,

3  Schreiber v. Friedman, et al, docket number 15-CV-6861.

4  Counsels, please state your appearances for the record starting

5  with the plaintiff.

6          MR. NELKIN:  Good morning, Your Honor.  Jay Nelkin;

7  Nelkin & Nelkin PC for the plaintiff.

8          THE COURT:  Good morning.

9          MS. NELKIN:  And Carol Nelkin for the plaintiff.

10          THE COURT:  Good morning.

11          MR. SCHAFHAUSER:  Good morning, Your Honor.  Paul

12  Schafhauser; Herrick Feinstein for defendants Emil Friedman and

13  New York Best Coffee, Inc.

14          THE COURT:  Good morning.

15          MR. SCHAFHAUSER:  Good morning.

16          THE COURT:  All right, folks.  So Mr. Schafhauser,

17  you want to make a motion now.  I got the exchange of letters.

18  Do you guys feel there's anything more to say on the proposed

19  motion?

20          MR. SCHAFHAUSER:  I do, Your Honor, because what I

21  received on Friday was new information, quite frankly.  I see

22  at the end of Mr. Nelkin's letter that he attached a copy of --

23  or referenced and then attached a copy of an agreement

24  apparently entered into between Two Rivers and the landlord.

25          THE COURT:  Right.  So Two Rivers appears to be

3

1  protected, right?

2          MR. SCHAFHAUSER:  Well, that's still an open question

3  because the agreement -- at least to me it is.  The agreement

4  says that the parties shall execute the [indiscernible] Two

5  Rivers lease in the form annexed hereto as Exhibit A.  I asked

6  counsel to provide a copy of that lease and counsel -- and

7  take him at his word -- counsel says he's never seen a copy of

8  the lease, he doesn't have a copy of the lease.

9          THE COURT:  But can I ask does anybody in the room

10  have any reason to think as of right now that absent some

11  relief from the court, Two Rivers' interests are going to be

12  harmed by its equipment being kicked out of the premises?  As

13  of right now do you have any reason to think that's going to

14  happen?

15          MR. SCHAFHAUSER:  I don't know the details of the

16  lease and frankly I don't even know --

17          THE COURT:  You don't know the details, that's why

18  I'm asking a different question.

19          MR. SCHAFHAUSER:  Sure.

20          THE COURT:  Any reason to believe that Two Rivers is

21  going to get kicked out?

22          MR. SCHAFHAUSER:  I don't have a way to answer that.

23  I don't know whether the lease has been executed.

24          THE COURT:  Mr. Schafhauser, you do have a way of

25  answering it because I'm asking a very specific question.  Do

4

1   you have a basis to believe at this moment that Two Rivers is

2   getting kicked out?  If you have such a basis, you can say yes

3   I do.  But if there's nothing, and it's just some questions

4   about what may happen in the future, then it would seem to me

5   that the answer is no, you don't have a basis.  So I'm really

6   doing my best to make this a yes or no question.

7           MR. SCHAFHAUSER:  I understand, Your Honor, and I

8   appreciate it but --

9           THE COURT:  You're not going to give me a yes or no

10  answer.

11          MR. SCHAFHAUSER:  But I don't have the information --

12          THE COURT:  Exactly.

13          MR. SCHAFHAUSER:  -- to give you a yes or no answer

14  because I don't -- that's actually the reason for the

15  application because frankly, my client has been shut out of the

16  process.  The purpose of the relief that was originally sought

17  was to quote maintain the status quo.  My client under --

18          THE COURT:  The preliminary injunction maintains the

19  status quo.  You guys agreed to how best to do that.  So if

20  there is something that violates the injunction, let me know.

21  But if there's not, either make a motion to change the

22  injunction or vacate it.  Talking about the purpose being to

23  maintain the status quo only gets you so far.  You guys have

24  agreed after a lot of careful negotiation about how to maintain

25  the status quote.  If you don't like the bargain that you made,

5

1   your relief is to -- your path to relief is to seek to undo it.

2          MR. SCHAFHAUSER:  I understand.  And there's two

3   answers to that.  Number one, in essence I'm actually seeking

4   clarification of that injunction by the application that I

5   made.  But number two, the quote status quo hasn't been

6   maintained.  That's the point I'm suggesting to you.

7          THE COURT:  All right.

8          MR. SCHAFHAUSER:  Because I just need to articulate

9   this, Judge.

10         THE COURT:  Articulate away, please.

11         MR. SCHAFHAUSER:  Because you've asked me for an

12  answer and I'm trying to give you an answer.

13         THE COURT:  Wait, let's be clear about one thing.  I

14  asked you a question.  You are answering a different question.

15  I don't seem to be able to stop you from doing that and I'm not

16  going to try anymore.  But let's not pretend you are answering

17  my question.  Go ahead.

18         MR. SCHAFHAUSER:  What is the question, Your Honor?

19         THE COURT:  Do you have any reason to believe at this

20  moment that Two Rivers is getting kicked out of that property?

21         MR. SCHAFHAUSER:  Based on the representation that

22  was made by an attorney who says that he is not representing

23  Two Rivers, I don't have any reason to doubt Mr. Nelkin's

24  representation, but I don't have any information to back that

25  up, Your Honor.

6

```
 1                THE COURT:  Any information that they are getting
 2   kicked out?
 3                MR. SCHAFHAUSER:  Well, what I have is a summary --
 4                THE COURT:  Once again, Mr. Schafhauser, look --
 5                MR. SCHAFHAUSER:  I'm answering the question.  I have
 6   a summary dispossess that was filed.  A summary dispossess was
 7   filed against New --
 8                THE COURT:  On a different company.
 9                MR. SCHAFHAUSER:  -- against New York Best Coffee.
10   Correct.  A summary dispossess was filed against New York Best
11   Coffee.  It seeks possession of the premises.
12                THE COURT:  All right.  I understand.
13                MR. SCHAFHAUSER:  Before Friday, before I saw the
14   letter, I had no information of any kind about any agreement
15   between Two Rivers and the landlord.  On Friday I did get the
16   agreement.
17                THE COURT:  You don't need to shout, I'll hear you
18   just the same.
19                MR. SCHAFHAUSER:  Thank you, Judge.  I did get the
20   agreement, Your Honor.  However, I don't know whether a lease
21   has been executed and equally importantly, I don't know whether
22   the lease is authorized.  Why do I say that?  Because under the
23   operating agreement -- again, we're talking about the document
24   that formed the basis of this lawsuit.  Under the operating
25   agreement it says that all major decisions require unanimous
```

7

1  consent.  But even if it's not a major decision, all day-to-day

2  decisions require what's called per capita consent.  I see two

3  signatures on this document, two out of four.  I don't see per

4  capita.  I don't have any information about whether the

5  plaintiff in this case is consenting to this or not consenting.

6  I don't know whether this is a valid agreement.  And frankly,

7  it is likely not valid in any event because it's a major

8  decision under the operating agreement.

9         THE COURT:  All right.  In any event, the lease is

10  with New York NYCD, right?

11         MR. SCHAFHAUSER:  The lease is with NYCD.  And for --

12         THE COURT:  And that lease is terminated already?

13         MR. SCHAFHAUSER:  The lease --

14         THE COURT:  It was terminated a couple of weeks

15  before --

16         MR. SCHAFHAUSER:  The landlord served a notice to

17  quit --

18         THE COURT:  I'd like to finish the question.  The

19  lease was terminated a couple weeks before you made your motion

20  for emergency relief?

21         MR. SCHAFHAUSER:  The landlord did send a notice

22  purporting to terminate the lease.

23         THE COURT:  Is there any question you can answer with

24  a yes or a no?  Because I'm trying to get simple pieces of

25  information.  Two weeks or more before you filed a motion for

8

1   emergency relief the lease had been terminated, is that

2   correct?

3            MR. SCHAFHAUSER:  Your Honor, you're asking me a yes

4   or no.  I'm going to be in a summary dispossess representing

5   New York Best Coffee and the answer to the question is we don't

6   concede that the landlord validly terminated it, but yes, the

7   landlord purportedly terminated it.  And I'm not, with every

8   respect, I'm not going to say that the landlord validly

9   terminated a lease when I'm about to argue the contrary perhaps

10  in state court.

11           THE COURT:  I understand.

12           MR. SCHAFHAUSER:  It purported to terminate it.

13           THE COURT:  Okay.  Fine.  And they purported to do so

14  over two weeks before you said there was a need for an

15  emergency motion, correct?

16           MR. SCHAFHAUSER:  That is correct.

17           THE COURT:  Thank you.

18           MR. SCHAFHAUSER:  And what's also correct is that

19  they have now commenced a summary dispossess action.

20           THE COURT:  All right.  So specifically you want to

21  make a motion to seek what?  Walk me through the relief you

22  want to litigate.

23           MR. SCHAFHAUSER:  Sure.  Specifically what I'm asking

24  the Court to do is to direct that the payments that had been

25  made -- the same process that was followed for three years

9

1   before this lawsuit was filed continue to be followed.  What is

2   that process?  Two Rivers is in possession.  It pays rent to

3   New York Best.  New York Best turns around and pays the

4   landlord the rent.  That's been the process that's been

5   followed for more than three years.  It's been the process that

6   everyone has known about because -- I mean the contrary answer

7   is that Two Rivers thought it was staying in there rent free,

8   which is not the reality.  It's been the process every month.

9   Utilities, the same issue.  Utilities should be continued to be

10  paid and the equipment should continue to be paid.

11          THE COURT:  Can I take it that if those payments are

12  being made but directly from Two Rivers to the landlord this

13  becomes moot?

14          MR. SCHAFHAUSER:  It does not become moot, and the

15  reason it does not become moot is because among other things,

16  there is still a claim I'm sure -- again, I can't put myself in

17  the shoes of the landlord, but I'm sure the landlord is still

18  going to be claiming two things.  Number one, the last four

19  months are in arrears, three or four months if you include

20  March --

21          THE COURT:  But that's a claim that can only be

22  asserted against a non-party in this case, correct?

23          MR. SCHAFHAUSER:  It would be a claim against New

24  York Best Coffee under the lease.

25          THE COURT:  And there is no party in the case against

10

1    whom such a claim can be made.  Is that correct?

2            MR. SCHAFHAUSER:  Well, New York Best Coffee is a

3    party in the case.

4            THE COURT:  There's no plaintiff or -- okay.  No Two

5    Rivers entity against whom -- none of the partners or members,

6    not Two Rivers itself.  Right?

7            MR. SCHAFHAUSER:  I presume that they don't have a

8    valid claim against Two Rivers.

9            THE COURT:  All right.  Thank you.

10           MR. SCHAFHAUSER:  I presume that.

11           THE COURT:  Okay.  So assuming that Two Rivers

12    protects its interests by paying for rent and utilities, the

13    possibility of a claim against NYBC for arrears has nothing to

14    do with the dispute we're discussing today, right?  Doesn't

15    affect any party to this dispute, correct?

16           MR. SCHAFHAUSER:  It doesn't affect the -- it affects

17    my client is who it affects.  It doesn't affect --

18           THE COURT:  That's a different issue.

19           MR. SCHAFHAUSER:  It may not affect -- well, you say

20    parties --

21           THE COURT:  Right.  But you're trying to say the

22    status quo for Two Rivers -- you're admirably looking out for

23    Two Rivers here and any claim that the landlord may have

24    against NYBC won't affect Two Rivers, correct?

25           MR. SCHAFHAUSER:  A claim -- well, a claim --

1          THE COURT:  For arrears.

2          MR. SCHAFHAUSER:  -- for arrears so far as I am aware

3    they don't have a claim against arrears.

4          THE COURT:  Okay.  So --

5          MR. SCHAFHAUSER:  So far as I'm aware.

6          THE COURT:  So what else besides arrears will

7    continue to be an issue if Two Rivers pays the rent and the

8    utilities?

9          MR. SCHAFHAUSER:  In addition, we don't know what the

10   terms of the lease are going forward.  The terms may be less

11   favorable to -- I don't know.  Again, I don't have the document

12   -

13         THE COURT:  Right.  But we're not -- there's clearly

14   no need for an emergency motion to sort out things that you

15   don't know because it can't possibly be irreparable harm

16   flowing from something that hasn't happened yet and you don't

17   know.

18         MR. SCHAFHAUSER:  Well again, I didn't know the facts

19   until Friday, so the straight answer is it appears to be less

20   emergent today than it was on Friday when I received Mr.

21   Nelkin's --

22         THE COURT:  So --

23         MR. SCHAFHAUSER:  It appears to be less emergent.

24   That's the straight --

25         THE COURT:  So why don't we do this?  Why don't we

1  see how the lease plays out and if you think there's a basis

2  for some relief, emergent or otherwise, talk with your

3  colleague and come up with a briefing schedule.  I don't see

4  any emergency here that requires some expedited briefing

5  schedule.  But if you think there is, please let me know.  I

6  want to make sure I address it.

7          MR. SCHAFHAUSER:  And I'm not looking to create

8  frankly a cottage industry of motions and briefs on this issue,

9  Your Honor.  What I am here to ask for, since the facts have

10  changed -- I mean I admit that --

11          THE COURT:  Right.

12          MR. SCHAFHAUSER:  I wish I had known this when I --

13          THE COURT:  Right.  Just tell me what you want.

14          MR. SCHAFHAUSER:  But I would at least like to know

15  that Two Rivers is in fact covered.  I'd at least like to get a

16  copy of the lease and whatever arrangements have been made so

17  that when this court action occurs against New York Best

18  Coffee, if New York Best Coffee doesn't answer and doesn't

19  defend itself, I want to be sure that there is in fact a lease

20  that is signed and that will take immediate effect.  And then

21  we can argue about whether it was, at some other date, we can

22  argue about whether it was advantageous or not advantageous.

23  That's an argument.  I get that.  That's not today's problem.

24  Today's problem is I did receive a copy of a summary dispossess

25  proceeding from the landlord.

1          THE COURT:  Well that's about a month ago's problem.

2          MR. SCHAFHAUSER:  Well, right.  Today in court's

3   problem, today's -- and that's the problem that I came to the

4   Court about which is there will be a summary -- there is a

5   summary possess in Middlesex County, New Jersey against New

6   York Best Coffee.  Mr.  Nelkin has put what he knows in his

7   letter.  It would be in everyone's interest to be absolutely

8   sure that the lease is in fact executed and then exchange a

9   copy of the lease.  I don't understand why there is an issue as

10  to that.  And as a minimum the last four months should be paid

11  in escrow.  Don't pay it to New York Best Coffee.  Put it in

12  escrow if there's a dispute.  But there should be a fund of

13  money to secure what's happened in the last four months.

14         THE COURT:  What's the legal basis for that?  It's

15  New York Best Coffee's lease.  They owe the rent.  Let them pay

16  the rent.

17         MR. SCHAFHAUSER:  It is New York Best Coffee's lease

18  but for three years use and occupancy has been paid by Two

19  Rivers to New York Best.

20         THE COURT:  Any agreement between them for that?  Any

21  legally enforceable obligation?

22         MR. SCHAFHAUSER:  I believe it was an oral agreement

23  in course of dealing.  I don't -- there's no writing of which

24  I'm aware to answer your question.

25         THE COURT:  Okay.  So look, if New York Best Coffee

1   wants to assert a claim against Two Rivers, that's going to

2   happen, but there's nothing irreparable here.  This is money.

3   So if and when it happens, the parties affected will vindicate

4   their rights as they see most appropriate.  I just don't see

5   the need for any motion practice about that, nor do I see a

6   basis for this Court, at least at this stage, to order the

7   creation of an escrow so that New York Best Coffee's payments

8   to the landlord are somehow guaranteed.

9                MR. SCHAFHAUSER:  This --

10                THE COURT:  Excuse me.

11                MR. SCHAFHAUSER:  Sure.  I'm sorry.

12                THE COURT:  In terms of the lease, do you have a

13   lease?

14                MR. NELKIN:  Your Honor, I think it says that it's

15   only going to be executed if they -- this is an agreement to

16   keep them in possession of the property.  I don't think that

17   they can.  There's a lease in effect with New York Best --

18                THE COURT:  The lease has been terminated or

19   purportedly terminated.

20                MR. NELKIN:  I think until they're dispossessed I

21   don't think that they --

22                THE COURT:  Okay.  So when there's a lease, any

23   problem giving it to Mr. Schafhauser?

24                MR. NELKIN:  I mean I don't represent Two Rivers

25   Coffee but I'm sure --

1          THE COURT:  Let's talk about that.  Why doesn't Two

2   Rivers Coffee have counsel here?  You know, I know you're

3   communicating with Mr. Poppa [Ph.].  I assume you are as well.

4          MR. NELKIN:  We've communicated --

5          THE COURT:  Putting him in an impossible position.

6          MR. NELKIN:  Well, they've taken a position that they

7   can't hire a lawyer in repeated proceedings.  In fact, they

8   wouldn't answer --

9          THE COURT:  Is that your position?  They can't have a

10  lawyer?

11         MR. SCHAFHAUSER:  My position -- well first of all,

12  yes, the answer is that Mr. Friedman does not consent because -

13  -

14         THE COURT:  All right.  Should the Court appoint a

15  guardian ad litem for Two Rivers counsel and require the

16  parties to fund that?  Because look, you are taking advantage

17  of a non-lawyer by these communications and because it's not

18  represented by counsel, there's ethical components about this.

19  There's something that doesn't smell right about it I've got to

20  tell you.  And I think the parties would be much better off

21  coming up with an agreement on their own to allow Two Rivers to

22  hire counsel.  I can't imagine it's not in Two Rivers'

23  interests to be represented by counsel.  But if there's not an

24  agreement on that, I'll see what --

25         MR. SCHAFHAUSER:  I understand Your Honor's comment.

16

1   Let me address that.  First of all, Two Rivers in the state

2   court action did retain [indiscernible] --

3             THE COURT:  That's not here.

4             MR. SCHAFHAUSER:  I understand.

5             MR. NELKIN:  But they were -- he cancelled the check

6   --

7             MR. SCHAFHAUSER:  I'm getting to here.  The agreement

8   that I'm looking at, Exhibit 10, says in Paragraph 6, "The

9   parties hereby agree, represent and warrant that they have had

10  advice of counsel of their choosing in negotiations for and the

11  preparation of this agreement.  So there's a representation in

12  this document that we're looking at that the parties had advice

13  of counsel.

14            THE COURT:  Which parties are you referring to?  The

15  parties to this action?

16            MR. SCHAFHAUSER:  Well --

17            THE COURT:  The parties to this action?

18            MR. SCHAFHAUSER:  Two Rivers.  The agreement --

19            THE COURT:  Okay.  Who's their counsel?

20            MR. SCHAFHAUSER:  Right.  The agree --

21            MR. NELKIN:  Well that's what I don't know.

22            THE COURT:  All right.  So you don't have an

23  objection to them having counsel, you just don't want to tell

24  me who it is?  I don't understand.

25            MR. SCHAFHAUSER:  Your Honor, I don't have the

17

1   information.  There's a document that was filed on Friday that

2   says that Two Rivers received the advice of counsel in

3   connection with the lease.  It's Paragraph 6 of the document.

4          THE COURT:  All right.  What do you know about that?

5   Have you provided any counsel to Two Rivers?

6          MR. NELKIN:  No, I have not.

7          THE COURT:  Okay.  Do you know anything about that?

8          MR. NELKIN:  I believe that they had some lawyer.  I

9   don't know if they retained him or if the individual parties

10  retained him.  The history of this is repeatedly before in

11  other proceedings Mr. Schafhauser or his clients have objected

12  to Two Rivers having counsel or paying for counsel.

13         THE COURT:  Guys, I'm going to direct you, and all

14  interested parties who want to have a seat at the table, confer

15  about how best to make sure that Two Rivers is represented by

16  counsel so that each of you and all the other parties in this

17  case when they need to have interaction with Two Rivers can do

18  so in a meaningful and ethical way.

19         MR. NELKIN:  Just for the record, Your Honor, we have

20  no objection to Two Rivers having counsel and we would prefer

21  that they do have counsel.  Mr. Schafhauser's client has

22  asserted that they cannot hire counsel and they cannot pay for

23  counsel.  And when in the past they've tried to hire counsel

24  even paying --

25         THE COURT:  I know the history in New Jersey.

1          MR. NELKIN:  Okay.  But I'm saying that even

2  [indiscernible] and everything else they have -- he has

3  objected.  When they paid -- a judge allowed them to pay a

4  check for the counsel that they had in the New Jersey action.

5  He cancelled the check.  And because Two Rivers --

6          THE COURT:  Mr. Nelkin, I'm just not interested in

7  the history.  I'm telling you right now we've got an untenable

8  situation.

9          MR. NELKIN:  But the one -- I'm sorry, Your Honor.

10          THE COURT:  Please.  So if there is some lack of

11  clarity about it, let me know.  But otherwise I'm saying sit

12  down.  If there's going to be a dispute about it, bring it to

13  me, we'll resolve it.  But right now you guys are creating

14  problems, and I'm not saying one side is to blame or the other,

15  but it's an untenable situation where Two Rivers, a corporate

16  entity that cannot represent itself in court should the need

17  arise, is unrepresented by counsel.  You guys need to have

18  lawyers that you can deal with intelligently.  So sit down, see

19  if you can come to an agreement about that.  If not, I guess

20  we'll deal with that.

21          MR. NELKIN:  Very well, Your Honor.

22          THE COURT:  Now, on the motion, you want relief.

23  Frankly, without having seen the briefing it strikes me you've

24  got a tough road to hoe.  If you want to make a motion, make a

25  motion.  I don't see a need for emergency expedited briefing,

19

1  do you?

2         MR. SCHAFHAUSER:  I don't see, based on what I saw on

3  Friday --

4         THE COURT:  Okay

5         MR. SCHAFHAUSER:  -- I agree with Your Honor in terms

6  of the timing.

7         THE COURT:  Okay.  So when would you like to make

8  your motion?  And is there any reason it can't be a letter

9  motion?

10        MR. SCHAFHAUSER:  I think a letter motion is fine.

11        THE COURT:  Great.

12        MR. SCHAFHAUSER:  I don't know what Your Honor's page

13 limitations are for --

14        THE COURT:  Three pages.

15        MR. SCHAFHAUSER:  Three.  Fine.  I think a letter

16 motion is fine.

17        THE COURT:  Okay.  When do you want to get it in?

18        MR. SCHAFHAUSER:  I don't know what -- the date today

19 is the 15th?

20        THE COURT:  Yes.

21        MR. SCHAFHAUSER:  I can get it in in a week.

22        THE COURT:  Okay.  And how would you like to respond?

23        MR. NELKIN:  A week, Your Honor.

24        THE COURT:  Okay.  So we'll have the letters

25 exchanged by March 29th.  If I think there's a need to bring you

1   in to resolve it, I'll --

2            MR. NELKIN:  Actually, Your Honor, if we could get

3   one week beyond that just because all of our discovery is due

4   right --

5            THE COURT:  Any objection?

6            MR. SCHAFHAUSER:  I don't have an objection.

7            THE COURT:  Okay.  So it's due 4/5 I believe.  Okay.

8   All right.  And in your letters, if you think it needs a court

9   appearance, let me know.  Otherwise I'll let you know if I

10  think there are questions I have to ask.  And is there anything

11  else we can accomplish today?  I mean we're not resolving

12  anything clearly.

13           MR. SCHAFHAUSER:  I think we've done what we can.

14  Thank you.

15           THE COURT:  Okay.  Great.  So I'll wait to see your

16  letters.  And please do -- I'm not going to put a timetable on

17  this but I just think everyone is going to be better off if you

18  can find a way to agree on Two Rivers having its own counsel so

19  we don't have disputes about who can properly talk to whom.

20  Thank you all.  Have a good day.

21           MR. SCHAFHAUSER:  Thank you, Judge.

22           MR. NELKIN:  Thank you, Your Honor.

23  (Proceedings concluded at 10:56 a.m.)

24                        *  *  *  *  *  *

25

21

1    I certify that the foregoing is a court transcript from an

2  electronic sound recording of the proceedings in the above-

3  entitled matter.

4

5  _____

6                          Mary Greco

7  Dated:  March 17, 2016