UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------X  Docket#
STEVEN SCHREIBER,               :  15-cv-06861-CBA-JO
              Plaintiff,        :
                                :
     - versus -                 :  U.S. Courthouse
                                :  Brooklyn, New York
                                :
FRIEDMAN, et al.,               :  February 2, 2016
              Defendants        :
------------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR INITIAL CONFERENCE
BEFORE THE HONORABLE JAMES ORENSTEIN
UNITED STATES MAGISTRATE JUDGE

A  P  P  E  A  R  A  N  C  E  S:

**For the Plaintiff**:        **Jay Philip Nelkin, Esq.**
                              Nelkin & Nelkin
                              5417 Chaucer
                              Houston, TX 77005

**For Defendants:**
**Friedman, et al.:**         **Paul Schafhauser, Esq.**
                              **Michelle Sekowski, Esq.**
                              Herrick, Feinstein LLP
                              One Gateway Plaza
                              22nd Floor
                              Newark, NJ 07102

**Birnbaum, et al.:**         **Maurice W. Heller, Esq.**
                              Garvey Schubert Barer
                              100 Wall Street
                              New York, NY 10005

**E&I, et al.:**              **David B. Grantz, Esq.**
                              Meyner & Landis LLP
                              One Gateway Center
                              Suite 2500
                              Newark, NJ 07102

**24 Hour Oil, et al.:**      **Brian D. Waller, Esq.**
                              Thompson Hine LLP
                              335 Madison Avenue
                              12th floor
                              New York, NY 10017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**A P P E A R A N C E S (cont'd):**

**Devine, et al.:**        **Richard Feldman, Esq.**
Rosenberg Feldman Smith, LLP
551 Fifth Avenue
24th Floor
New York, NY 10176

**Hersko, et al.:**        **Robert Bergson, Esq.**
Abrams Garfinkel Margolis
Bergson, LLP
1430 Broadway
17th floor
New York, NY 10018

**Ezell, et al.:**        **Richard A. Finkel, Esq.**
Richard A. Finkel, Esq &
Associates PLLC
270 Madison Avenue
Suite 1203
New York, NY 10016

**Transcription Service:**    **Transcriptions Plus II, Inc.**
61 Beatrice Avenue
West Islip, New York 11795
laferrara44@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

3

Proceedings

1           THE CLERK:  This is Civil Cause for Initial

2    Conference, Schreiber v. Friedman, et al., docket number

3    15-cv-6861.

4           Counsels, please state your appearances for the

5    record, starting with the plaintiff.

6           MR. NELKIN:  Jay Nelkin for plaintiff Steven

7    Schreiber.

8           THE COURT:  Good morning.

9           MR. SCHAFHAUSER:  Good morning, your Honor.

10          Paul Schafhauser of Herrick Feinstein for

11   defendants Neil Friedman and New York Best Coffee and

12   with me, my colleague, Michelle Sekowski.

13          Good morning, your Honor.

14          MS. SEKOWSKI:  Good morning, your Honor.

15          THE COURT:  Good morning.

16          MR. GRANTZ:  Good morning, your Honor.

17          David B. Grantz from the law firm of Minor &

18   Landis on behalf of E&I Investors Group, LLC, E&J Funding

19   Group, E&J Funding Company, LLC, E&J Management, Inc. and

20   E& Jeryg Management Corp.

21          THE COURT:  Good morning.

22          MR. FELDMAN:  Good morning, your Honor.

23          Richard Feldman from Rosenberg Feldman & Smith

24   on behalf of Michael Devine and Michael Devine, CPA.

25          THE COURT:  Good morning.

4

Proceedings

1           MR. BERGSON:  Good morning, your Honor.

2           Rob Bergson, Abrams Garfinkel Margolis Bergson,

3    on behalf of Geoffrey Hersko and Geoffrey Hersko P.C.

4           THE COURT:  Good morning.

5           MR. BERGSON:  Good morning.

6           MR. WALLER:  Good morning, your Honor.

7           I represent 24 Hour Oil Delivery Corp., MB Fuel

8    Transport Inc., MB Fuel Transport I, Inc., Associated

9    Fuel Oil Corp., Light Trucking Corp., 165 Street Realty

10   Corp. and Park Avenue Associates.  I'm Brian Waller and

11   I'm from Thompson Hine, LLP.

12          THE COURT:  Good morning.

13          MR. FINKEL:  Good morning, your Honor.

14          Richard A. Finkel.  I represent Sylvia Ezell,

15   Sonia Rivera, and Jorge Salcedo.

16          THE COURT:  Good morning.

17          MR. HELLER:  Good morning, your Honor.

18          Maury Heller from the firm of Garvey Schubert

19   Barer.  We represent Solomon Birnbaum, Office Coffee

20   Services LLC, Single Service Beverages Distribution,

21   Crazy Cups and 26 Flavors LLC.

22          THE COURT:  Good morning.

23          All right, folks.  Folks, let me just ask all

24   of you, since we have so many people and we're making an

25   audio recording that each time you speak, just identify

5

Proceedings

1   yourself for the record, so that we do end up with a

2   clear record.

3           All right.  So we've got a few issues and maybe

4   logically, the first thing to get to is the issue of a

5   stay pending resolution of the anticipated motions to

6   compel arbitration.  And I'm happy to hear from all of

7   you.  I've read your letters, of course.

8           I think a couple of things that would be useful

9   for me to have you address if you want to speak at all, I

10  am happy to have you all rely on the papers but to sort

11  of hone in, if you would, on specifically the extent to

12  which a stay is in your view, required under controlling

13  law or a matter of good practice and also, the extent to

14  which each party seeking a stay is relying on its own

15  arbitration agreement with the plaintiff or the view that

16  it's somehow kind of (indiscernible) because of another

17  parties' agreement with the plaintiff.

18          So whoever wants to be heard, Mr. --

19          MR. SCHAFHAUSER:  Schafhauser.

20          THE COURT:  Schafhauser, forgive me.

21          MR. SCHAFHAUSER:  It's a tough name.

22          THE COURT:  I'll get it.

23          MR. SCHAFHAUSER:  Right.  Thank you, your Honor

24  and I appreciate it.

25          I guess I need to stand because I was the first

6

Proceedings

1  one to send in a letter to your Honor, so let me explain

2  the basis of my application.  Others, of course, will

3  speak for themselves.

4          My client is Neil Friedman, as your Honor

5  knows.

6          THE COURT:  Yes.

7          MR. SCHAFHAUSER:  And Neil Friedman is the --

8          THE COURT:  I know.  That I part I get.  He's a

9  signatory as is Schreiber to the operating --

10          MR. SCHAFHAUSER:  To the operating agreement.

11          THE COURT:  Right.

12          MR. SCHAFHAUSER:  And that's the basis of my

13  argument that --

14          THE COURT:  Yes.

15          MR. SCHAFHAUSER:  -- arbitration is warranted.

16  The reason I say that, your Honor, I appreciate that your

17  Honor's read the papers but yesterday, and I'm kind of

18  responding as well to Mr. Nelkin's submission, yesterday

19  Mr. Nelkin said that perhaps discovery was necessary to

20  determine whether parties had agreed to arbitration and

21  the scope of the arbitration agreement.

22          That may be an argument that others need to

23  address as to their clients but as to my client -- and

24  that's why I stand -- as to my client, no discovery is

25  needed.  The operating agreement is essentially the

7

Proceedings

1  premise upon which this entire lawsuit was commenced.

2  The operating agreement is named, specific performance is

3  sought.  The enforcement of the operating agreement is

4  sought.  So as to my client --

5            THE COURT:  Can I ask --

6            MR. SCHAFHAUSER:  -- there can't be any issue

7  as to discovery as to arbitrability.

8            THE COURT:  Okay.

9            MR. SCHAFHAUSER:  That's my --

10           THE COURT:  Thank you for telling me.

11           MR. SCHAFHAUSER:  No, that's my argument.

12           THE COURT:  If you're telling me I can't have

13  any questions, I understand your position but if --

14           MR. SCHAFHAUSER:  No, I of course --

15           THE COURT:  -- you'll bear with me, please, I

16  actually do have a --

17           MR. SCHAFHAUSER:  Of course.

18           THE COURT:  -- which specific arbitrable body

19  is designated in the operating agreement?

20           MR. SCHAFHAUSER:  Thank you.

21           THE COURT:  Don't thank me for my questions.  I

22  have them whether you thank me or not.  I just --

23           MR. SCHAFHAUSER:  Okay.

24           THE COURT:  You know, I'm trying to find out

25  something.

8

Proceedings

1           MR. SCHAFHAUSER:  There actually is a form of
2  body but no specific body is referenced.
3           THE COURT:  So you guys could dispute --
4           MR. SCHAFHAUSER:  It's a --
5           THE COURT:  Excuse me.  You guys could dispute
6  which arbitrator is intended, correct?
7           MR. SCHAFHAUSER:  That is correct.
8           THE COURT:  Since the --
9           MR. SCHAFHAUSER:  It says --
10           THE COURT:  -- since the agreement is silent on
11  the matter, is that something that's open to discovery?
12           MR. SCHAFHAUSER:  Well, the agreement is not
13  silent.  What the agreement --
14           THE COURT:  It says a beth din.
15           MR. SCHAFHAUSER:  -- it says a beth din.  It
16  doesn't say the beth din.  It says a beth din.
17           THE COURT:  As opposed to the agreements that
18  one of the other defendants is relying on, it specifies
19  Beth Din of America which is --
20           MR. SCHAFHAUSER:  Correct.
21           THE COURT:  So given the silence as to the
22  specific arbitrator, is that a matter for discovery?
23           MR. SCHAFHAUSER:  No, your Honor.
24           THE COURT:  Really?
25           MR. SCHAFHAUSER:  Not in my view.

9

                              Proceedings

1          THE COURT:  Okay.

2          MR. SCHAFHAUSER:  And again, I would never tell

3    your Honor that you shouldn't be asking questions.  I

4    invite the question.

5          THE COURT:  Not a second time anyway.

6          MR. SCHAFHAUSER:  So the answer is that I don't

7    believe that discovery is necessary as to that because

8    under the Orthodox Jewish beth din procedure, the --

9          THE COURT:  Wait, wait.  The Orthodox Jewish

10   beth din procedure, is there only one?

11         MR. SCHAFHAUSER:  Well, there is a --

12         THE COURT:  Is there only one view of what

13   Orthodox Jewish law is?

14         MR. SCHAFHAUSER:  Well --

15         THE COURT:  Is there?

16         MR. SCHAFHAUSER:  -- there answer is there may

17   be different views but --

18         THE COURT:  May be?

19         MR. SCHAFHAUSER:  -- but --

20         THE COURT:  Excuse me.  May be or is --

21         MR. SCHAFHAUSER:  Well, I'm --

22         THE COURT:  -- are different views?

23         MR. SCHAFHAUSER:  I'm not an expert as to

24   Orthodox Jewish law but I believe there are competing

25   views and I'm sure Mr. Nelkin has a different view than I

10

Proceedings

1   do.

2             THE COURT:  Okay.  Is there one beth din

3   procedure?

4             MR. SCHAFHAUSER:  Whether there is one beth din

5   procedure or --

6             THE COURT:  It's going to work so much better

7   -- I anticipate this is going to be a long litigation

8   where we see a lot of each other.

9             MR. SCHAFHAUSER:  Yes.

10            THE COURT:  It will work so much better if when

11  I ask a question, you answer the question I ask --

12            MR. SCHAFHAUSER:  Very well.

13            THE COURT:  -- rather than require me to ask it

14  a second time.

15            MR. SCHAFHAUSER:  Very well.

16            THE COURT:  Is there one beth din procedure?

17            MR. SCHAFHAUSER:  There is one beth din

18  procedure contemplated in the operating agreement.  There

19  is --

20            THE COURT:  Which one is that --

21            MR. SCHAFHAUSER:  There may --

22            THE COURT:  -- and how do you know?

23            MR. SCHAFHAUSER:  -- it's the beth din

24  procedure that references the beth din procedure in

25  accordance with the Orthodox Jewish religion.

11

Proceedings

1    THE COURT:  So there's only one such procedure
2 that is in accord with Orthodox Jewish law?
3    MR. SCHAFHAUSER:  Again, your Honor, there are
4 -- I am sure are others.
5    THE DEFENDANT:  So then how do you know which
6 one is contemplated by the agreement?
7    MR. SCHAFHAUSER:  What we know is that --
8    THE COURT:  No, how do we know which particular
9 procedure is contemplated by the agreement?
10    MR. SCHAFHAUSER:  We --
11    THE COURT:  What do we look to to answer that
12 question?
13    MR. SCHAFHAUSER:  I believe that the agreement
14 itself is clear, but if it is not --
15    THE COURT:  How so?  Please read to me the
16 portion of the agreement that clarifies it.
17    MR. SCHAFHAUSER:  Well --
18    THE COURT:  Please read to me, sir, the portion
19 of the agreement that clarifies the answer to that
20 question because I didn't see it and I read it a couple
21 of times.
22    MR. SCHAFHAUSER:  The agreement provides, your
23 Honor, in Section 11.2 --
24    THE COURT:  The second 11.2, correct?
25    MR. SCHAFHAUSER:  -- "That all disputes with

Proceedings

1  respect to any claim for indemnification and all other

2  disputes and controversies between the parties hereto,

3  arising out of or in connection with this operating

4  agreement shall be submitted to a beth din arbitration in

5  accordance with the Orthodox Jewish religion."

6            THE COURT:  Right.

7            MR. SCHAFHAUSER:  That's what the agreement

8  provides.

9            THE COURT:  Right.  But I asked you to tell me

10 where in the agreement is specifies which of any number

11 of potential candidates for the intended beth din

12 procedure where it specifies which one of those it is.  I

13 thought that's what you were going to read to me.

14           MR. SCHAFHAUSER:  Well, I can only tell you

15 what the agreement says.

16           THE COURT:  So there's nothing else in the

17 agreement that answers the question.

18           MR. SCHAFHAUSER:  There's nothing else --

19           THE COURT:  Okay.

20           MR. SCHAFHAUSER:  -- that I can point to, your

21 Honor, in the agreement.

22           THE COURT:  Okay.

23           MR. SCHAFHAUSER:  And what --

24           THE COURT:  So, go ahead.

25           MR. SCHAFHAUSER:  -- what I -- I'm sorry, I

13

Proceedings

1    didn't mean to speak over --

2              THE COURT:  No, no, no.  Please go ahead.

3              MR. SCHAFHAUSER:  What I was attempting to

4    point out is that even if there is a dispute as to which

5    beth din should be the beth din under this agreement, I

6    was --

7              THE COURT:  Oh, no, which should be a beth din

8    under the agreement.  Let's try and take --

9              MR. SCHAFHAUSER:  -- or a beth din --

10             THE COURT:  If we're going to quote the

11   agreement, let's try and get it right.

12             MR. SCHAFHAUSER:  Even if there is a dispute as

13   to the appropriate or a appropriate beth din under the

14   agreement, that I respectfully submit is also an

15   arbitrable issue that should be addressed by the --

16             THE COURT:  How do you know which arbitrator to

17   go for that question?

18             MR. SCHAFHAUSER:  The -- again, there is a

19   procedure -- there's a ZABLA procedure that was commenced

20   by Mr. Friedman months ago and that is the procedure and

21   that --

22             THE COURT:  What if he says, as I think he has,

23   you know, it's a different one, he has a heter from it?

24

25             MR. SCHAFHAUSER:  He has and that heter, it's

14

Proceedings

1   my understanding has been rescinded.

2            THE COURT:  Is that correct, Mr. Nelkin?

3            MR. NELKIN:  Your Honor, we received a letter

4   from -- a e-mail from the beth din saying that heter was

5   no longer applicable in their view.  We have views as to

6   the ability of beth din to render such a decision at such

7   a length of time -- and basically whether an arbitrator

8   can alter their rendered judgment more than a certain

9   period of time afterwards.

10           THE COURT:  All right.  So we've bot competing

11  beth dins and within your beth din, a dispute as to

12  whether a heter previously issued is in effect or not but

13  you're saying, Mr. Schafhauser, that both of those

14  questions  are necessarily decided by the beth din that

15  you say is the correct one, is that right?

16           MR. SCHAFHAUSER:  What I am saying is that the

17  heter was removed.

18           THE COURT:  Is that right or not?  I just want

19  to know because you see if I ask a question and I ask if

20  that's right, if you don't tell me if it's right or

21  wrong, I'm still at sea.

22           MR. SCHAFHAUSER:  It's right, your Honor.

23           THE COURT:  Okay.

24           MR. SCHAFHAUSER:  That's my position.

25           THE COURT:  Okay.

15

Proceedings

1    MR. SCHAFHAUSER:  My position is that it's an

2  arbitrable issue and should be subject to the beth din

3  proceeding --

4    THE COURT:  Before --

5    MR. SCHAFHAUSER:  -- pursuant to the --

6    THE COURT:  -- before which beth din?

7    MR. SCHAFHAUSER:  -- ZABLA -- pursuant to the

8  ZABLA that my client commenced.

9    THE COURT:  I see.  Okay.  I understand the

10  argument.

11    MR. SCHAFHAUSER:  That's my position, your

12  Honor.  But in any event --

13    THE COURT:  And the question I had started with

14  is whether in your view a stay is mandatory under the

15  applicable law of this jurisdiction or discretionary?

16    MR. SCHAFHAUSER:  My -- well again, my

17  position, your Honor, is -- and I cite to your Honor for

18  instance, some of the cases that I put in the letter, for

19  instance, PHC Mutual Insurance Company 569 F.Supp 2d at

20  67, where the Court and I quote says, "Here, the Federal

21  Arbitration Act requires that the Court resolve the

22  threshold issue of whether the parties agree to mandatory

23  arbitration before the litigation of this matter can

24  continue."

25    So based on that precedent and others --

16

Proceedings

```
 1          THE COURT:  Is --
 2          MR. SCHAFHAUSER:  -- my position would be that
 3   it is mandatory.
 4          THE COURT:  Okay.
 5          MR. SCHAFHAUSER:  That's my position.
 6          THE COURT:  What happens as to the claims
 7   against nonparties to the operating agreement?
 8          MR. SCHAFHAUSER:  I --
 9          THE COURT:  Assuming that discovery goes
10   forward as to them, do you want to participate in it or
11   not?
12          MR. SCHAFHAUSER:  Well, I believe that those
13   claims should be held in abeyance.
14          THE COURT:  If I disagree with you --
15          MR. SCHAFHAUSER:  It's not my application.
16   It's their application.
17          THE COURT:  -- if I disagree with you on
18   that --
19          MR. SCHAFHAUSER:  I'm sorry?
20          THE COURT:  If I disagree with you on that,
21   would you wish to participate in the discovery or not?
22          MR. SCHAFHAUSER:  I would -- well, I haven't
23   asked my client that precise question but my suspicion
24   that -- my answer to your Honor, since I'm standing here
25   before you, my answer is that my client bargained for a
```

Proceedings

1  discovery proceeding before a beth din and so subject to

2  what he might say in response to that direct question, I

3  believe he was not to participate in discovery here but

4  instead would wish to proceed in accordance with whatever

5  discovery is before the beth din.

6          THE COURT:  So in other words, if discovery

7  proceeds as to the claims against nonparties to the

8  operating agreement --

9          MR. SCHAFHAUSER:  Yes.

10          THE COURT:  -- and, you know, deponent X is

11  deposed, your client would prefer that you not attend

12  that deposition and just receive the transcript later.

13          MR. SCHAFHAUSER:  I haven't asked my client

14  that direct question.

15          THE COURT:  Okay.  Don't have to --

16          MR. SCHAFHAUSER:  I --

17          THE COURT:  -- to decide now.

18          MR. SCHAFHAUSER:  I have to be straight with

19  your Honor.

20          THE COURT:  Of course you do.

21          MR. SCHAFHAUSER:  I haven't asked that direct

22  question.

23          THE COURT:  Yes.

24          MR. SCHAFHAUSER:  And I --

25          THE COURT:  Okay.

Proceedings

1          MR. SCHAFHAUSER:  I'm struggling to answer a

2     question I haven't yet asked him.

3          THE COURT:  Okay.  Well that's the kind of

4     issue that --

5          MR. SCHAFHAUSER:  What's that?

6          THE COURT:  -- under my understanding of the

7     division of responsibility for decisions, between counsel

8     and client, something that counsel decides but if you

9     prefer to have your client decide it, that's fine.

10          I take it if discovery goes forward also a

11     claim involving the other defendants, in any event, Mr.

12     Friedman is available as a witness to be deposed as to

13     that claim, correct?

14          MR. SCHAFHAUSER:  Well, Mr. Friedman is

15     available, of course, under whatever the Federal Rules of

16     Civil Procedure in these courts directives provide.

17          THE COURT:  In other words --

18          MR. SCHAFHAUSER:  But my position, to answer

19     your question fully, is that discovery should not proceed

20     and I understand your Honor's question presumes that it

21     should --

22          THE COURT:  And if you choose not to answer it,

23     that's your business.

24          MR. SCHAFHAUSER:  But Mr. -- well, I am trying

25     to answer both questions.

19

Proceedings

1          THE COURT:  I thought I only asked one.

2          MR. SCHAFHAUSER:  Your Honor asked me two

3    questions, I think.

4          THE COURT:  Okay.

5          MR. SCHAFHAUSER:  Your Honor asked me a

6    question of whether Mr. Friedman is available and the

7    answer is of course he is not --

8          THE COURT:  Okay.

9          MR. SCHAFHAUSER:  -- a subpoena served on him.

10   Of course he is going to comply with your Honor's

11   directives and orders but what I would be -- and I want

12   to be up front about this, depending on what happens down

13   the road, it would be my position and I would very likely

14   -- you're asking me a question on the fly but I would

15   very likely apply for either a stay or to quash the

16   subpoena because it would be subject to a beth din as to

17   Mr. Friedman.

18          So my position would be yes, he's available in

19   the sense of the federal rules.  He'll comply with

20   whatever your Honor directs but I don't believe it would

21   be appropriate under the case law that I cited for

22   discovery to be ongoing as to Mr. Friedman while -- if he

23   is in a beth din.  I presume no outcome of this

24   application but if he is.

25          THE COURT:  But you would agree that being --

20

Proceedings

even assuming he is party to an enforceable arbitration

agreement that requires the arbitration of claims as

between himself and Mr. Schreiber, he is not -- that does

not shield him from the obligation to give testimony in a

civil dispute.

MR. SCHAFHAUSER:  I agree.

THE COURT:  Okay.

MR. SCHAFHAUSER:  And that's easy -- I agree.

THE COURT:  Okay.

MR. SCHAFHAUSER:  So that's a yes.

THE COURT:  No, but -- and this is all

predicate to --

MR. SCHAFHAUSER:  Yes.

THE COURT:  -- to the extent that there are

claims that may be going forward here anyway with

discovery, that aren't subject to an arbitration

agreement, and that are going to involve the discovery of

matters in which your client will have an interest

whether here or before beth din, before some beth din if

one can be identified that is the proper one.  And may be

required to give testimony himself that would affect his

interest, I am wondering why it wouldn't be most

efficient for all of the discovery to be going forward on

a single track before a single tribunal?

MR. SCHAFHAUSER:  Your Honor is asking me a

Proceedings

1    question about efficiency.  I don't believe -- I mean, of

2    course single tracks are always more efficient.  So

3    again, I want to give you a straight answer.  Single

4    tracks are always more efficient, of course, but I must

5    point out that our position is efficiency is not the

6    issue.  My client's right to his bargained-for

7    arbitration rights is what we are looking for here and --

8              THE COURT:  Even if it's inefficient?

9              MR. SCHAFHAUSER:  And --

10             THE COURT:  Even if it's inefficient?

11             MR. SCHAFHAUSER:  Even if it is inefficient --

12             THE COURT:  Well, that's certainly your choice

13   to do something that's inefficient.

14             MR. SCHAFHAUSER:  Even if it is inefficient

15   because efficiency -- again, it's the right to have a

16   beth din decide an issue under Orthodox Jewish law with

17   respect to Orthodox litigants.  That's what my client is

18   seeking to enforce.

19             But as to the efficiency question -- again, I

20   want to answer your Honor's question --

21             THE COURT:  You keep assuring me of that but

22   you don't --

23             MR. SCHAFHAUSER:  But one --

24             THE COURT:  I'll assume that that's what you

25   want to do and I'll judge you by whether you do it.

Proceedings

1          MR. SCHAFHAUSER:  Okay.  But the answer is --

2          THE COURT:  You don't have to keep telling me

3   though.

4          MR. SCHAFHAUSER:  -- the answer to the

5   efficiency question, your Honor -- I appreciate it -- the

6   answer to the efficiency question is the most efficient

7   thing to do would be to either one, refer the entire

8   matter to a beth din as all of the defendants will be

9   seeking from Judge Amon or two -- or number two, refer

10  the dispute between my client and the plaintiff to a beth

11  din and stay the proceedings as the remaining defendants,

12  so that the inefficiencies that your Honor is pointing

13  out don't take place because your Honor is correct, of

14  course, that two tracks would be most inefficient and

15  that's exactly the premise of this motion to stay,

16  precisely to avoid the inefficiency that your Honor is

17  asking me about.

18         THE COURT:  Without -- yes, that's inefficiency

19  without prejudicing the rights of parties who are not

20  bound to have claims resolved in arbitration maintain

21  their access to the federal court.

22         Who else would like to be heard on this?  I'm

23  sorry, were you not finished?

24         MR. SCHAFHAUSER:  Your Honor --

25         THE COURT:  I'm sorry.

Proceedings

1          MR. SCHAFHAUSER:  I just wanted to add a couple

2    of quick points, your Honor.

3          THE COURT:  Yes.

4          MR. SCHAFHAUSER:  The plaintiff as to -- again,

5    as to my client, hasn't demonstrated any material issue

6    of fact as to arbitrability, nor and -- by the way in the

7    light of the removal of the heter, I don't believe

8    there's an issue as to which beth din is appropriate.

9    The heter has been removed as your Honor just heard from

10   plaintiff.

11         THE COURT:  Well, wait.  Do you agree that you

12   are prohibited under Jewish law from proceeding in this

13   court, Mr. Nelkin?

14         MR. NELKIN:  No, I do not.

15         THE COURT:  Or by the terms of an arbitration?

16         MR. NELKIN:  No, I do not.

17         THE COURT:  Okay.  I don't know who is right in

18   this dispute but I am -- the record is manifested, there

19   is a dispute about that.

20         MR. SCHAFHAUSER:  There is a dispute and the

21   last point and I --

22         THE COURT:  There is a dispute but you just

23   told me that there isn't.

24         MR. SCHAFHAUSER:  Well, no, the --

25         THE COURT:  So let's try to be careful about

24

Proceedings

1   characterizing the positions of others, so as to avoid

2   confusing me because I am easily confused when somebody

3   tells me that turns out not to be so.

4           MR. SCHAFHAUSER:  Your Honor, the dispute that

5   I was referring to is a dispute as to whether this matter

6   should go to arbitration and, of course, there's a

7   dispute.  That dispute, your Honor, is the subject of a

8   pre-motion conference before Judge Amon as your Honor is

9   well aware.

10          THE COURT:  Yes, I'm familiar with the

11  procedure.  Is there anything else you would like to stay

12  on the motion for a stay?

13          MR. SCHAFHAUSER:  I simply submit that the

14  Court should stay it at least pending the disposition of

15  that motion.  Thank you, your Honor.

16          THE COURT:  Anybody else want to be heard on

17  the issue of a stay?  Yes, Mr. Sekowski (sic) -- no, I'm

18  sorry, you don't have to -- Mr. Grantz, forgive me.

19          MR. GRANTZ:  That's all right, your Honor.  I'm

20  representing E&J Funding --

21          THE COURT:  Yes.

22          MR. GRANTZ:  -- and E & Jeryg Management.

23          My issue is slightly different than Emil

24  Friedman's issue and I think it's more inclined to New

25  York Best Coffee's issue which is seeking a stay as not

25

Proceedings

1  being a party to the agreement.  In particular, the

2  allegations that are being alleged against E&J Funding

3  are that it's essentially an alter ego of Emil Friedman.

4  That he lent the money or -- and their argument is that

5  he didn't lend the money but there's clearly going to be

6  evidence otherwise.

7          So you have this intertwined relationship

8  between Emil Funding and E&J -- Emil Friedman and E&J

9  Funding and our position is that to the extent that those

10  two parties are inextricably intertwined, the --

11          THE COURT:  You say they're not, right?  You

12  say that you're separate.

13          MR. GRANTZ:  I'm not so sure --

14          THE COURT:  Right?

15          MR. GRANTZ:  -- I'm saying that they're

16  entirely separate.  You have Emil --

17          THE COURT:  Is it an alter ego?

18          MR. GRANTZ:  -- Emil Friedman is --

19          THE COURT:  Is E&J an alter ego of Emil

20  Friedman?

21          MR. GRANTZ:  -- the principal -- I don't think

22  it's an alter ego.  I think Emil Friedman is the

23  principal and I think that his money was used to fund E&J

24  Funding, which is then used --

25          THE COURT:  Okay.  Is E&J -- does it respect

Proceedings

1    the corporate formalities, and, you know,  maintain a

2    separate existence?

3               MR. SCHAFHAUSER:  Yes.

4               THE COURT:  Does it have an arbitration

5    agreement with the plaintiff?

6               MR. GRANTZ:  No.

7               THE COURT:  Okay.

8               MR. GRANTZ:  Nevertheless, the case law that we

9    cited to the Court and to Judge Amon in our letter and

10   the basis of how much we're asking for the stay is that

11   because the allegations are they're intertwined and

12   because they are a closely held corporation, that case

13   law says that when you have one party who goes to an

14   arbitration, the Courts have routinely sent

15   nonsignatories that were so inextricably intertwined.  So

16   for that reason, the stay should apply to E&J Funding, as

17   well as Emil Friedman.

18               THE COURT:  I see.  And in your view, is the

19   stay of discovery pending the resolution of the

20   arbitration claim or defense mandatory?

21               MR. GRANTZ:  I'm sorry, say that again.

22               THE COURT:  Is the stay of discovery mandatory

23   in your view or is it discretionary?

24               MR. GRANTZ:  My view is it's discretionary.

25               THE COURT:  Okay.  I don't read the cases to

Proceedings

1   suggest that they are directing a court to stay discovery

2   on a question but I do think that to the extent that this

3   question is before Judge Amon and she's got to set --

4   still has to set a pre-motion conference as related to

5   the letters that we wrote on Friday, that any discovery

6   should hold until at minimum, she has that pre-motion

7   conference scheduled and we actually have that conference

8   to determine whether or not she believes discovery is

9   needed on any of these issues, including the question of

10  arbitrability was raised yesterday in Mr. Nelkin's

11  letter.

12          I think that issue should certainly not be

13  addressed until we at least understand what the issue of

14  fact is that Mr. Nelkin and Judge Amon believes there's a

15  need for a trial on that issue or whether that can be

16  decided by motion papers.

17          THE COURT:  Okay.

18          MR. GRANTZ:  Thank you, your Honor.

19          THE COURT:  Thank you.

20          Mr. Feldman?

21          MR. FELDMAN:  Yes, your Honor.  With reference

22  to your Honor's two questions, there is no arbitration

23  provision between Michael Devine and the plaintiff or

24  Michael Devine, CPA and the plaintiff and I believe that

25  the stay is discretionary and not mandatory.

28

Proceedings

1          THE COURT:  Okay.

2          MR. FELDMAN:  And your Honor should exercise

3   discretion and Mr. Devine is a lynchpin of that exercise

4   of discretion.  He's an outside CPA who performed tax

5   preparer work, income tax, sales tax, payroll tax.  He

6   didn't render a single opinion about the financial papers

7   of Two Rivers.

8              In fact, yet another CPA from a different firm,

9   did a review of the 2013.  So instead, he's now faced

10  with a tidal wave of discovery.  Hundreds of categories

11  of document demands, standing decades, well before Two

12  Rivers was even created and for which the plaintiff is

13  taken an expansive point of view as to what related to

14  Two Rivers means.

15          THE COURT:  Can I ask a question?

16          MR. FELDMAN:  Sure.

17          THE COURT:  Let's assume that everything in

18  this case is stayed pending the outcome of arbitration by

19  some beth din and how the decision will be made as to

20  which beth din is authoritative in this matter.  I have

21  no idea because the agreement is silent.  And let's say

22  further that Friedman prevails as against Schreiber.

23  What happens to the claim against -- the Civil RICO claim

24  against your client?  Does it eventually get resolved?

25              MR. FELDMAN:  Well, of course.  My client's --

Proceedings

1  the claims against my client are derivative, aiding and

2  abetting.  If there is no wrong, you can't aid and abet a

3  non-wrong.  It would, by its very nature, must be

4  dismissed.

5           THE COURT:  Uh-huh.

6           MR. FELDMAN:  Therefore, having to undergo

7  literally hundreds of thousands or millions of dollars in

8  legal fees --

9           THE COURT:  Millions?

10          MR. FELDMAN:  Well, it's a RICO case.

11          THE COURT:  Millions?

12          MR. FELDMAN:  According to the plaintiff and --

13          THE COURT:  Excuse me.  Excuse me.  I am going

14  to rely on everybody to give me their best understanding

15  of what the issues are.  So I just want to make sure

16  because it's just -- it sounds surprising.  Is it really

17  a good faith estimate of yours that your client will have

18  millions of dollars of discovery expenses?

19          MR. FELDMAN:  High hundreds of thousands, if

20  not millions because, your Honor --

21          THE COURT:  Really?

22          MR. FELDMAN:  -- the plaintiff has issued

23  document production of over 600 --

24          THE COURT:  Uh-huh.

25          MR. FELDMAN:  -- because it's a RICO case, I

Proceedings

1   cannot turn an eye from any of those categories of

2   documents.  I have to review them.  He's asked for all

3   the depositions of all of the parties plus nine

4   additional nonparties and he's asked --

5        THE COURT:  And that gets us to millions?

6        MR. FELDMAN:  He's asked for --

7        THE COURT:  And that gets us to millions?

8        MR. FELDMAN:  I don't know, your Honor, because

9   --

10        THE COURT:  Okay.  If you don't know, I don't -

11   - we don't need to dwell on it.  Keep going, please.

12        MR. FELDMAN:  What I am saying is that there's

13   literally a tidal wave of discovery that the plaintiff

14   has said is related to Two Rivers.

15        THE COURT:  I think you and I may have a

16   different understanding of what literally means in that

17   context but please continue.

18        MR. FELDMAN:  He sent an e-mail at 12:38 last

19   night saying I want to make arrangements to come and

20   review and inspect all the documents relating to Two

21   Rivers and he hasn't withdrawn his document request nor

22   has he served new ones after the issuance of the

23   preliminary injunction order.  So I have to believe that

24   that's what he is saying is related and it goes back from

25   my client, decades dealing with nonparties which he

Proceedings

1   wouldn't be asking me for, he would be abusing discovery

2   by asking for these categories of documents if he didn't

3   believe they were related to Two Rivers or his clients.

4           So I am now faced with having to defend a CPA,

5   an accountant, who has been pulled into this controversy

6   when we don't even know which forum the two major

7   combatants will be fighting in, what the cope of that

8   fight will be and my client's liability, if any, is

9   derivative in nature, would go away if Mr. Friedman is

10  successful.

11          THE COURT:  I may just have this wrong, so

12  anybody please set me straight.  Was your client

13  specifically identified as having a claim only on a

14  theory of aiding and abetting or was it a civil -- was

15  the claim that your client was liable for committing a

16  civil RICO violation?  And if somebody -- if anybody has

17  it, I just don't have the complaint in front of me,

18  unfortunately.

19          MR. NELKIN:  Your Honor, we think that the

20  complaint alleged that there was principal liability and

21  not just aiding and abetting.

22          THE COURT:  Did you plead aiding and abetting?

23          MR. NELKIN:  I don't remember pleading aiding

24  and abetting.  We might have but --

25          THE COURT:  Only of aiding and abetting?

32

Proceedings

1          MR. FELDMAN:  No, I believe -- beyond -- I

2   believe he also alleged principal liability --

3          THE COURT:  Right, that's what I thought, too.

4          MR. FELDMAN:  Yes.

5          THE COURT:  So even if Friedman prevails in the

6   in a beth din, that doesn't necessarily mean that this

7   case doesn't go forward later on the principal liability

8   claim against your client.

9          MR. FELDMAN:  It would, your Honor, because the

10  allegations are that -- the principal allegations are

11  that Mr. Friedman didn't loan money --

12         THE COURT:  Perhaps principal but not only --

13         MR. FELDMAN:  -- or didn't provide

14  documentation for prior expenses.

15         THE COURT:  All right.

16         MR. FELDMAN:  If Mr. Friedman --

17         THE COURT:  Look --

18         MR. FELDMAN:  -- is successful at the beth din,

19  that those expenses of Two River were in fact incurred

20  and properly recorded, then there wouldn't be principal

21  liability to the accountant.

22         THE COURT:  All right.  Thank you.

23         Yes?

24         UNIDENTIFIED SPEAKER:  Your Honor, one --

25         THE COURT:  Wait a minute.

33

Proceedings

1          UNIDENTIFIED SPEAKER:  I would just like --

2          THE COURT:  One at a time.

3          UNIDENTIFIED SPEAKER:  Okay.

4          THE COURT:  Mr. Bergson?

5          MR. BERGSON:  Yes, your Honor, Rob Bergson for

6    Geoffrey Hersko.

7          To answer your questions directly, I think with

8    respect to the stay as it applies to my client, it would

9    be a matter of good practice, very good.

10          THE COURT:  Okay, but not mandatory.

11          MR. BERGSON:  Not mandatory.

12          THE COURT:  Yeah.

13          MR. BERGSON:  With one caveat to that, your

14    Honor.

15          THE COURT:  Yes.

16          MR. BERGSON:  We've made an application to

17    Judge Amon for a motion to dismiss the RICO claim which

18    is the only basis for federal jurisdiction --

19          THE COURT:  Sure.

20          MR. BERGSON:  -- against my client.  There are

21    also legal malpractice claims against my client.  The

22    nature of the claims that the plaintiff has asserted

23    against my client concern legal services that he provided

24    to Two Rivers.

25          In the event that the motion to dismiss goes

Proceedings

1   forward and it is granted, I believe that the stay claim,

2   the legal malpractice claims should be dismissed.  So on

3   that grounds, I would say that a stay of discovery would

4   be mandatory because the whole thing would be gone.  So

5   -- if we get to that point.

6          My client is not a party to an arbitration

7   agreement, doesn't seek arbitration.  However, he's

8   caught up in a RICO claim.  The principal defendant

9   clearly, in my view, is subject to an arbitration

10  agreement.  If he is going to go to arbitration and the

11  claims against him are in arbitration, it seems to me

12  that logic dictates that that should run its course first

13  before you go to the defendants on the periphery.

14         It would avoid inconsistent decisions and I

15  think your Honor pointed out that if there was a dual

16  track, there would be subpoenas, there would be parties

17  that are perhaps subject to the arbitration that would be

18  pulled into the civil litigation.  It would be a mess.

19         THE COURT:  I don't necessary agree with that

20  on either point.  First of all, I forget who -- I think

21  it was Mr. Schafhauser who said that the demands of

22  discovery within the arbitration are must less.  So it

23  wouldn't be that they're conflicting demands, so much as

24  a greater demand here and a lesser demand in the beth

25  din.

Proceedings

1          But in terms of which would be resolved first,

2    I've got to tell you, I've got a case involving parties

3    agreeing among themselves, everybody agrees on having to

4    do -- go along with what everybody things best.  I only

5    get involved if there's a dispute.  But parties again

6    with competing beth din selections, ultimately agreed to

7    have the civil case stayed pending the resolution before

8    beth din in 2009 and I've been getting status reports

9    from them every six months since then, what's going on

10   with the beth din and they said well, still there, still

11   waiting.  And I know it's going to be much more efficient

12   in this court.

13          So I don't know that it's -- that the pendency

14   of one and the other would necessary be enmeshed if we

15   proceed in this court.  It might actually be quite

16   efficient.

17          MR. BERGSON:  Well, your Honor, I just -- I

18   can't visualize how we could possibly go forward with a

19   RICO claim where the principal defendant is in beth din

20   arbitration.

21          THE COURT:  Okay.

22          MR. BERGSON:  All right?

23          THE COURT:  Maybe I will figure something out.

24          MR. BERGSON:  At the very least, we have our

25   pre-motion conference request to Judge Amon.

36

Proceedings

1          THE COURT:  Yes.

2          MR. BERGSON:  They deal with dispositive

3    issues.  Discovery should at the very least be stayed

4    until we have an opportunity to bring those before her.

5          THE COURT:  Is that a general rule of practice

6    in this Court that when a party seeks dismissal and has

7    asked for a pre-motion conference, that all discovery

8    must be stayed?

9          MR. BERGSON:  I'm not aware that it is, your

10   Honor.

11         THE COURT:  I'm aware that it's quite the

12   opposite.

13         MR. BERGSON:  But I think under these

14   circumstances --

15         THE COURT:  Yeah.

16         MR. BERGSON:  -- it would make good sense to do

17   so.

18         THE COURT:  All right.  Thank you.

19         Anyone else?  Mr. Heller?

20         MR. HELLER:  Yes, your Honor.  My client does

21   have a separate arbitration agreement.  It does specify

22   specifically the Beth Din of America.

23         THE COURT:  Yes.

24         MR. HELLER:  And so on that store, we don't

25   have that uncertainty as to where it might go.

37

Proceedings

1          THE COURT:  Right.

2          MR. HELLER:  So that does distinguish us.  Plus

3     in addition, many of the clients or I say the majority of

4     the clients involve my clients, attempt to form or frame

5     this alleged conspiracy which they call the Friedman-

6     Birnbaum conspiracy, to somehow harm Two Rivers, those

7     claims to the extent that they have to go forward, would

8     undoubtedly conflict with an arbitration of Mr. Friedman

9     had he been given permission to do that, proceed

10    separately because again, this is the Friedman-Birnbaum

11    conspiracy.  My client is Birnbaum.  Those claims would

12    be heard in arbitration.  Those claims against my client

13    should likewise go that way because of the linkage

14    between the two.

15          THE COURT:  Okay.

16          MR. HELLER:  So under both.

17          THE COURT:  Mr. Finkel, Mr. Waller, did you

18    want to say anything?

19          MR. FINKEL:  Your Honor, I would rely on what I

20    submitted to the Court and what was considered before.

21    Might I just add one thought.  I cited to your Honor a

22    decision by Judge Gleeson of this court, the Canada Dry

23    case.  I think that was a very thoughtful opinion

24    rendered by Judge Gleeson on circumstances quite similar

25    to the situation that your Honor faces here.

Proceedings

1          There were claims, RICO claims in that matter,

2    as well, as well as a host of other federal claims.  Our

3    case is a RICO case primarily.  The case -- the principal

4    defendant in this case is Mr. Friedman.  My three clients

5    were merely employees.  They are dragged into this case,

6    derivatively.  They are charged aiding and abetting and

7    conspiring.  They are not, to answer your Honor's first

8    question, they are not signatories to an arbitration

9    agreement.

10          However, from my perspective, as I indicated in

11   my papers, an arbitration decision whether Mr. Friedman

12   prevails or whether Mr. Schreiber prevails, will

13   effectively end the dispute that my clients are

14   personally involved in because they have no interest,

15   financial or ownership interest in Two Rivers and that's

16   the gravamen of the case.

17          From my perspective, most respectfully, your

18   Honor, it would be grossly inefficient to have a two-

19   track case meaning an arbitration in a beth din and

20   proceedings in this court for my clients and would

21   reiterate what other counsel has said, it seems to me --

22   again me, most respectfully, your Honor, that the most

23   efficient root is to wait for Judge Amon to determine

24   what she wants to hear with regard to the defendant's

25   multiple applications for dismissal for arbitration and

39

Proceedings

1   motions to dismiss.

2         I would think your Honor would be most

3   respectfully again, best served by holding your Honor's

4   decision in abeyance until we hear from what Judge Amon

5   wants to do on the principal issue.  Thank you.

6         THE COURT:  Thank you.

7         MR. WALLER:  Your Honor, just briefly, my

8   clients are related to Two Rivers but the allegations in

9   the complaint are that Mr. Friedman controls or has

10  controlling interest in my clients and that he missued

11  that control over my clients to improperly steal money,

12  embezzle money, launder money from two Rivers.  So my

13  position has been well stated by the other counsel that

14  have spoken but again, my clients were not signatories to

15  any arbitration agreement.  I do not believe that your

16  Honor has -- it's mandatory upon the Court to stay

17  discovery but as Mr. Finkel stated, and as Mr. Grantz

18  stated, any issues that go to arbitration are effecting

19  going to resolve the issues against my client.

20        Mr. Finkel's clients, some of them are

21  employees of my client's.  So for the same reasons,

22  whatever gets determined in arbitration as to Mr.

23  Freeman, should resolve whatever issues or allegations

24  that are against my clients.

25        THE COURT:  Thank you.

40

Proceedings

1        Mr. Nelkin?

2        MR. NELKIN:  Again, your Honor, I think that

3   there are a number of issues.  First, with respect to

4   what types of issues might be subject to discovery, even

5   if arbitration is in dispute, there's an issue in this

6   case as to whether an arbitration has taken place.

7   There's an issue as to whether parties have refused to

8   arbitrate, whether they frustrated the arbitration

9   process.

10          There's issues as to wether the claims at

11  issue are encompassed by the arbitration clauses.  There

12  are issues as to what the respective relationships are

13  with respect to certain defendants and certain companies.

14          The number of the counsel have misrepresented

15  or misunderstood what our clients claims are against

16  their companies.  For example, with respect to Mr.

17  Waller's companies, are allegations aren't with those

18  companies, some of which have not been identified as

19  having Mr. Friedman as a principal in their Rule 26(a)

20  disclosures, falsely billed Two Rivers for work that

21  wasn't done.  Mr. Friedman wears a lot of hats.  But just

22  because he is a member of Two Rivers doesn't mean that he

23  didn't do bad acts at those companies that these people

24  represent.

25          THE COURT:  But to the extent that he did bad

41

Proceedings

1   acts at these other companies, does it not arise out --

2   to the extent that you are harmed -- your client is

3   harmed by it, does it not arise out of the agreement that

4   they entered into to operate Two Rivers?  In other words,

5   you're saying Two Rivers is harmed because Friedman has

6   been engaging in all sorts of shenanigans inside and

7   outside his capacity as a principal of Two Rivers.

8           MR. NELKIN:  I guess what I am saying, your

9   Honor, is if in his role as let's say president of one of

10  these companies, he submits false bills to Two Rivers and

11  Two Rivers pays those bills, then I don't see how that

12  arises out of the Two Rivers operating agreement.

13          THE COURT:  Because he's acting ultra vires.

14          MR. NELKIN:  No, because he's acting as a

15  principal of the other company.  He's prepared a false

16  bill.  He submitted it to Two Rivers and then Two Rivers

17  paid that bill.

18          THE COURT:  UH-HUH.

19          MR. NELKIN:  Where is his role as a --

20          THE COURT:  Okay.  So in other words, if he --

21  if in your view he breaches a fiduciary duty by causing

22  another entity to engage in misconduct that you would be

23  free to sue the other entity for, but for Friedman's

24  participation, the fact that Friedman participates in it,

25  doesn't mean that that misconduct is subject to

42

Proceedings

1    arbitration.

2              MR. NELKIN:  Yes, he doesn't get a --

3              THE COURT:  Okay.  I understand the argument.

4              MR. NELKIN:  And if anything, I think that

5    their argument, to the extent it's true, is approaching

6    the problem backwards.  If those companies did something

7    wrong, it seems like you would have to determine whether

8    they did something wrong before you've determined whether

9    Friedman breached any duty under the operating agreement

10   in somehow aiding and abetting it or facilitating it.

11             THE COURT:  Okay.  I understand.

12             MR. NELKIN:  I think that an issue is is that

13   the operating agreement is also governed by New Jersey

14   law and we cited some cases, the Milan (ph.) case, the

15   Conway case, but the State of New Jersey law which is

16   slightly different than New York law is that even

17   unambiguous agreements and certainly ambiguous agreements

18   are subject to extrinsic evidence and parties can always

19   bring in extrinsic evidence to interpret a contract.

20             And so in this case, we think that discovery

21   may be necessary to figure out what the parties intent

22   was with respect to any particular provision that's at

23   issue.

24             THE COURT:  All right.

25             There's an issue with the -- also as part of

Proceedings

1    the -- what Mr. Schafhauser said, and this goes to the

2    issue of the heter, we were told that the heter was no

3    longer applicable because Mr. Friedman was willing to go

4    to some other beth din but it was not as a ZABLA

5    proceeding.

6              THE COURT:  Not what?

7              MR. NELKIN:  ZABLA proceeding.  And so when Mr.

8    Schafhauser says that he's seeking a ZABLA proceeding, I

9    would ask your Honor to pin him down and to ask whether

10   he's seeking to rely on a particular beth din or whether

11   he's seeking a ZABLA because I think --

12             THE COURT:  You know, forgive me folks, I know

13   what a beth din is.  I'm not familiar with ZABLA.  So

14   would somebody --

15             MR. NELKIN:  I will do my best, your Honor.  A

16   ZABLA proceeding is -- there are many established beth

17   dins, the Beth Din of America that Mr. Heller referred

18   to --

19             THE COURT:  Right.

20             MR. NELKIN:  -- is an established beth din.

21   They have rules.  They have procedures.  They have judges

22   who are --

23             THE COURT:  I get that.

24             MR. NELKIN:  Okay.  A ZABLA is if I don't agree

25   to your selection of a beth din --

44

Proceedings

1          THE COURT:  Uh-huh.

2          MR. NELKIN:  -- I can reject it.  And I can

3    suggest a different procedure.  The different procedure

4    is that we agree we can't agree on a beth din, so I get a

5    rabbi, you get a rabbi and then collectively they decide

6    to have -- pick a third rabbi and then those rabbis then

7    create some sort of ad hoc thing where they decide what

8    their procedures will be and generally there's a --

9          THE COURT:  Does ZABLA refer to the panel of

10   three rabbis?

11         MR. NELKIN:  The ZABLA procedure refers to it's

12   an acronym that, your Honor, I am --

13         THE COURT:  Without getting into the Hebrew

14   acronym --

15         MR. NELKIN:  It basically means something along

16   the lines of one for me and one for you and they pick a

17   third.

18         THE COURT:  It's the processing of picking the

19   three rabbis who then select and if you disagree on

20   anybody's side, if you disagree with the description

21   again, please, let me know -- the process by which three

22   rabbis select an existing beth din or cobble together a

23   new beth din.

24         MR. NELKIN:  No, what happens is is that that

25   beth din is composed of one rabbi who is I guess

45

Proceedings

1  considered to be your rabbi and then another one who is

2  considered --

3          THE COURT:  But that panel of three is itself

4  the new beth din and they create procedures to resolve

5  the dispute on an ad hoc basis?

6          MR. NELKIN:  Well, theoretically but generally

7  the ZABLA process is considered to be a path for abuse

8  and a way to delay and stall and never reach a final beth

9  din proceeding.

10          THE COURT:  Whatever it's considered --

11          MR. NELKIN:  But the short of it is --

12          THE COURT:  -- what's your understanding of

13  what it is?

14          MR. NELKIN:  -- is the ZABLA is those three

15  people would be the new -- would be the --

16          THE COURT:  The new tribunal?

17          MR. NELKIN:  Yes.

18          THE COURT:  And they would determine the

19  procedures by which a dispute is resolved?

20          MR. NELKIN:  Correct.

21          THE COURT:  Okay.  Does anybody disagree with

22  that?  I just want to make sure I am understanding the

23  terms you're using.

24          MR. SCHAFHAUSER:  No disagreement, your Honor.

25          THE COURT:  Okay.  So you're -- and Mr.

Proceedings

1  Schafhauser, you are saying that you want the dispute

2  submitted to that process where Mr. Friedman would

3  identify a rabbi, Mr. Schechter (sic) would identify a

4  rabbi and those two rabbis would identify a third and

5  that panel of three would determine the procedures for

6  resolving the dispute?

7          MR. SCHAFHAUSER:  There's one of two answers

8  because two different things have happened and I -- two

9  different things.  What I was saying -- I was answering

10 your Honor's question about what the procedure is if in

11 the event of a dispute as to which rabbinical court,

12 which beth din and your Honor has now heard we're in

13 agreement as to what that procedure is.

14         Mr. Friedman did in fact -- that's my position

15 -- commence a ZABLA back last summer.  That itself as I

16 think -- the one thing we can agree on is that there was

17 a dispute as to what happened next and now we're

18 referring to a second thing that has happened.

19         THE COURT:  You know, but -- I am sorry, but

20 there are too many apostrophes in that presentation, so

21 that I don't understand what you're actually saying.

22         What's the current state of affairs?  Do you

23 both agree to submit the dispute to a ZABLA process under

24 which Friedman and Schechter would each now identify a

25 rabbi who -- and those two rabbis would then identify a

Transcriptions Plus II, Inc.

47

Proceedings

1   third?

2          MR. SCHAFHAUSER:  My client would be prepared

3   to so agree, if he's willing to so agree.

4          MR. NELKIN:  My client would not agree to that

5   and does not believe that that's called for by the

6   agreement.

7          THE COURT:  Okay.  Well, I understand the state

8   of play.  I am sorry.  I interrupted you, so go have a

9   seat and --

10          MR. SCHAFHAUSER:  Thanks.

11          MR. NELKIN:  What I was saying is that the beth

12   din that issued our heter issued -- said that they felt

13   it was no longer applicable because Mr. Friedman was

14   prepared to go to another sitting beth din.  If Mr.

15   Schafhauser and his client are continuing to insist on

16   the ZABLA process, then that is something that would be

17   incompatible with what has been represented.

18          THE COURT:  So you agree that if Mr. Friedman

19   is willing to go to a specific beth din, one of his

20   choosing, one of your choosing or chosen some other way.

21          MR. NELKIN:  Now what our position is is that

22   this case is properly in federal court.

23          THE COURT:  No, no, no.  I'm sorry.  I wasn't

24   phrasing the question well.  The purported withdrawal

25   that the heter is based on is the beth din's

Proceedings

1  understanding that Mr. Friedman had agreed to do what

2  exactly?

3          MR. NELKIN:  Was willing to go to a sitting

4  beth din.

5          THE COURT:  That the -- the beth din that

6  issued the heter had identified specifically?

7          MR. NELKIN:  That the -- well, that he had

8  represented to them and he specified which one it was.

9          THE COURT:  Okay.  Are you still willing to do

10 that?

11         MR. SCHAFHAUSER:  To go the beth din that was

12 identified by the Mesharim (ph.)?  We're willing to do

13 that, as well.

14         THE COURT:  Okay.

15         MR. SCHAFHAUSER:  We're willing to do that,

16 yes.

17         THE COURT:  But you're saying if they are

18 willing to do that, does that affect the withdrawal of

19 the heter?

20         MR. NELKIN:  We think that the heter once

21 issued, and after a certain passage of time and the fact

22 of Mr. Friedman's actions, cannot be withdrawn under

23 existing law.

24         THE COURT:  All right.  Well, one thing that is

25 quite clear is that there are a lot of unclear questions,

49

Proceedings

1  factually and legally about the effect of the operating

2  agreement's arbitration clause.  That wasn't a question,

3  so have a seat.

4          MR. SCHAFHAUSER:  Thanks.

5          THE COURT:  I'm sorry, go ahead.

6          MR. NELKIN:  There are other issues that are

7  important to the issue of arbitrability as well,

8  including the corruption of any particular beth din.  The

9  one that he mentioned, Mesharim, is one that we can

10  document people named in our complaint affiliated with

11  Mr. Friedman, had given hundreds of thousands of dollars

12  to and so corruption, inappropriateness of particular

13  arbitration panels would be an issue, as well.

14          THE COURT:  All right.

15          MR. SCHAFHAUSER:  Just --

16          THE COURT:  Okay.  Folks, I am anxious to get

17  onto other issues and other cases on my calendar.  So I

18  am going to take under advisement the issue of the

19  request for a stay.  I think I know where I am going but

20  I do want to give some more thought to it.

21          We've got a couple of other issues.  I want to

22  address briefly issues that I think need to be resolved,

23  in the event some or all discovery does go forward and

24  let me start with -- you know, I think a lot of the

25  disputes that appear from the submissions about how

Proceedings

1    discovery would proceed could be resolved as they come

2    up, particularly in a number of depositions and the time

3    limit on them and I think we would all be better off

4    seeing such disputes arise in context before trying to

5    resolve them in advance.

6              Are there other issues as to how discovery

7    would proceed if it's not stayed that any of you think we

8    need to resolve today?

9              MR. SCHAFHAUSER:  The only issue that we raise

10   with respect to that, your Honor, is the protective order

11   and your Honor may be thinking of that as a separate

12   issue.

13             THE COURT:  Well -- the protective order, let

14   me go back to my notes here.  I've got a lot of paper

15   here I want to keep track of.

16             Yes, with respect to the protective order,

17   again I don't want to engage in a long back and forth on

18   this, I want you guys to go back to discussing this with

19   each other.  You did make certain commitments when we

20   were together last that I expect you to honor but I don't

21   expect in the absence of an agreement, to require anyone

22   to go beyond what was agreed to previously with respect

23   to keeping information from a client.

24             And in the absence of an agreement, there will

25   simply be if discovery goes forward, a request that's out

51

Proceedings

1   there and you respond or not but if you don't provide

2   discovery because you don't like the fact that the

3   plaintiff is going to see it, then I'll have to decide if

4   the motion to compel should be granted or not.

5        But I do think you're all much better off

6   because you understand the issues so much better than I

7   can, coming up with an agreement as to precisely what is

8   attorney's eyes only and what's not.  To the extent you

9   agree that what you want is for me to resolve that, I

10  think you're better off doing it yourself but if you need

11  me to do it, I will let you know that I'm generally very

12  hesitant to say that a client can't see what counsel sees

13  so that the counsel and client can work together and

14  protecting against misuse of the information by having

15  strict limits on what the clients can do with it.  So use

16  that as guidance to the extent that it's useful.

17       MR. SCHAFHAUSER:  So just so I understand --

18       THE COURT:  Yes.

19       MR. SCHAFHAUSER:  -- your Honor is essentially

20  directing us to meet and confer to resolve the issues.

21       THE COURT:  Yes, absolutely.

22       MR. SCHAFHAUSER:  Okay, thank you.

23       THE COURT:  The last thing on my agenda, if

24  there's something else you guys want to bring up, by all

25  means, I got some correspondence yesterday about

Proceedings

1    incidents involving the plaintiff's father and a

2    synagogue in Florida.  Mr. Schafhauser, is there anything

3    in particular you want me to do?

4            MR. SCHAFHAUSER:  What I was pointing out, your

5    Honor, and I'm not looking to ask your Honor to do

6    anything as to the plaintiff's father --

7            THE COURT:  Then there's nothing I need to do.

8    No, if you're not asking me to do anything, I don't even

9    want to discuss it.

10           MR. SCHAFHAUSER:  Not as to that, but what I

11   was pointing out is that there are other issues that I

12   also pointed out in the letter that do directly impact my

13   client and --

14           THE COURT:  What relief are you seeking?  Let

15   me start with that?

16           MR. SCHAFHAUSER:  What I believe should be

17   done, your Honor, is a directive that both sides continue

18   to enjoy -- subject, of course, to whatever the

19   preliminary injunction order provides, not what the --

20   but both sides continue to have their rights as members

21   of Two Rivers and that my client isn't shut off from an

22   access to financial documents or be the same

23   distributions that are ongoing for the plaintiff and, you

24   know, Acura payments and this payment and that payment to

25   plaintiff and his family members and yet my client is

Transcriptions Plus II, Inc.

Proceedings

1   being shut off.

2          He's still -- I recognize that a preliminary

3   injunction order was entered on consent.  I recognize

4   that.  But he was not divested of his membership interest

5   by that order or any other order.  And I simply submit

6   that a directive should be issued, that he continues to

7   hold those rights and should be treated accordingly.

8          THE COURT:  Mr. Nelkin, I issue a directive

9   that all parties have all of the rights to which they are

10  entitled under the preliminary injunction order.  Does

11  that satisfy you?

12         MR. SCHAFHAUSER:  I believe that it actually

13  goes back to the original order of Judge Amon, as well,

14  and that the rights continue under the operating

15  agreement except as modified by those orders.

16         THE COURT:  Well, to the extent that the --

17  look, to the extent that the preliminary injunction order

18  modified any rights, all of the parties have to abide by

19  the preliminary injunction order.

20         MR. SCHAFHAUSER:  Of course.

21         THE COURT:  To the extent that the preliminary

22  injunction order left the operating agreement in place,

23  the operating agreement controls but obviously you folks

24  have very different ideas about what it allows and what

25  it does not and I am not going to decide on an ad hoc

54

Proceedings

1   basis what it does and doesn't allow.  That's why you go

2   to court, to have that resolved after appropriate

3   litigation.

4           So again, if there's something specific you

5   want me to do, I'll consider it but it sounds like what

6   you're asking me to do is issue an injunction to abide by

7   the Google motto and I don't think you need an injunction

8   for me to do that.

9           MR. SCHAFHAUSER:  I'm chuckling because of --

10  I'm not asking your Honor to do that.  I'm actually

11  referring to what was discussed before your Honor.  I

12  wasn't here.   My colleagues were here but what was

13  discussed -- I read the transcript on December 14, where

14  it was agreed -- a number of things were agreed.  Mr.

15  Pappa was going to serve as the essential financial

16  bookkeeper of Two Rivers.  A number of things were

17  agreed.  I cited them in my letter to your Honor

18  yesterday.  Mr. Nelkin recited all members would received

19  X.  All members would receive Y.  I mean, it's in the

20  transcript.  I'm not asking for anything beyond what was

21  already agreed before your Honor in the transcript.

22          THE COURT:  Guys, I think if there's a dispute

23  that you need me to resolve, it's going to be most

24  helpful if you give me specific forms of relief that you

25  think you're entitled to under specific orders of this

Proceedings

1    Court.  That will help refine the issue for me in the way

2    that I would resolve it.

3              MR. SCHAFHAUSER:  Further --

4              THE COURT:  Right now, I don't think there's

5    something for me to resolve.

6              MR. SCHAFHAUSER:  I won't belabor the point.

7              THE COURT:  And since there's nothing for me to

8    resolve, I would like to go on -- if there's some other

9    issue that somebody wants.

10             MR. SCHAFHAUSER:  My only question, just a

11   clarification is, may I do that by way of letter motion

12   in accordance with your Honor's individual --

13             THE COURT:  Anytime that you think that you

14   have some right that needs to be vindicated that you

15   cannot resolve after meeting and conferring with your

16   opponent, you may seek relief --

17             MR. SCHAFHAUSER:  Thank you.

18             THE COURT:  -- pursuant to Rules 37 and --

19             MR. SCHAFHAUSER:  Thank you.

20             THE COURT:  (Indiscernible).  All right.

21   Anything else for today, folks?

22             MR. NELKIN:  Your Honor, there's one or two

23   things that I have.  One is, we have a -- we would like

24   to inspect the books and records that relate to Two

25   Rivers pursuant to the preliminary injunction relief and

56

Proceedings

1  we would like to have a schedule set as to a timetable to

2  do that.

3          THE COURT:  Well, have you talked to them about

4  that?

5          MR. NELKIN:  I have asked them to indicate if

6  they're willing to do that and I was hoping that we -- if

7  there's a dispute as to doing that, I'm -- I'm willing to

8  schedule it, I just want to know if they will do it.

9          THE COURT:  Have you --

10         MR. SCHAFHAUSER:  Your Honor?

11         THE COURT:  Before you respond --

12         MR. SCHAFHAUSER:  Sure.

13         THE COURT:  -- have you talked to them about

14  that before asking me?

15         MR. NELKIN:  Yes, I sent them in --

16         THE COURT:  Okay.  No, have you talked to them,

17  picked up the phone and said hey, this is what I am going

18  to raise in court if we can't agree on it.  Have you done

19  that?

20         MR. NELKIN:  Only be e-mail, your Honor.

21         THE COURT:  Guys, pick up the phone and talk to

22  each other.  This is not the place where you're going to

23  do your negotiation in the first instance, all right?

24  There is a preliminary injunction order in place.  I

25  expect you to abide it on both sides.

57

Proceedings

1          Anything else?

2          MR. SCHAFHAUSER:  No, your Honor.  Thank you.

3          MR. NELKIN:  Your Honor, I just have two

4   technical questions, just as far as -- one is with

5   respect to Mr. Ahearn, who has defaulted, as best we can

6   tell in this case, your Honor entered an order that said

7   that the defendants, which I believe we're talking about

8   the people who had appeared, had until March 1st or 2nd

9   to respond to the claim and answer.  We would like to

10  move to default Mr. Ahearn but we just wanted to make

11  sure that that was not going to violate some order --

12         THE COURT:  You can't violate an order by

13  seeking relief that you think you're entitled to.

14         MR. NELKIN:  I decided --

15         THE COURT:  The only way you can get in trouble

16  in that regard is by not conferring with an opponent

17  before seeking leave but if your opponent hasn't

18  appeared, you know --

19         MR. NELKIN:  I was just hoping --

20         THE COURT:  Okay.

21         MR. NELKIN:  -- to clarify with your Honor that

22  there wasn't anything that your Honor believed that had

23  been agreed to.

24         THE COURT:  I quite honestly don't recall if

25  the extension to March 1st included Ahearn or not.  If it

Transcriptions Plus II, Inc.

Proceedings

1    did, don't -- you know you don't move, if it didn't, make

2    your motion.

3            I will tell you that it's virtually always the

4    case that default judgment proceedings, you know, live

5    litigation are postponed pending the resolution of the

6    claims and the defenses among the appearing parties.  It

7    doesn't mean you shouldn't make the motion for the entry

8    of default but don't expect a default judgment where

9    there are other parties litigating.

10           MR. NELKIN:  Two other issues really quickly

11   are to the extent that there is a Rule 11 type issue or a

12   fraud on the Court type issue related to papers that have

13   been submitted to this Court with respect to the issues

14   that have been discussed today, are we -- do that by

15   letter or do we -- how do we bring that to the Court's

16   attention, given the fact that those are likely to be

17   decided before the --

18           THE COURT:  I have no idea of what you're

19   talking about in terms of Rule 11.  You know how Rule 11

20   operates.  The local rules prescribe how motions are to

21   be raised.  So please consult with those first.

22           MR. NELKIN:  Okay.  All right.  And then the

23   last issue was to the extent that we have issues with

24   whether orders of this Court had been complied with,

25   again and if we're seeking contempt, do we have to --

59

Proceedings

1      THE COURT:  Look, folks, this really isn't

2  hard.  If you think you're entitled to relief, make a

3  motion.  We have rules about how you make motions.  I

4  will ask Mr. Nelkin, once again, that you take the

5  trouble to look at the rules about how motions are raised

6  before asking the Court to tell you how to protect your

7  client's interests.

8      MR. NELKIN:  No, I understand that.  I just --

9      THE COURT:  All right.  Anything else?

10     MR. NELKIN:  No, your Honor.

11     THE COURT:  Okay.  Thank you, all.  I have your

12 proposed schedule, so in the event that I determine that

13 discovery should proceed, I'll enter that and anyway,

14 you'll hear from me after I've had a chance to reflect a

15 little further on this.

16     MR. SCHAFHAUSER:  Thank you, your Honor.  Thank

17 you for your time.

18     MR. NELKIN:  Thank you.

19                    (Matter concluded)

20                        -oOo-

21

22

23

24

25

Transcriptions Plus II, Inc.

60

# C E R T I F I C A T E

     I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

     I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

     IN WITNESS WHEREOF, I hereunto set my hand this **7th** day of **February**, 2016.

Linda Ferrara

Linda Ferrara

CET**D 656
Transcriptions Plus II, Inc.