1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2

3    ----------------------------------------X
                                             :
4    STEVEN SCHREIBER,                       :
                                             :
5                   Plaintiff,               :
                                             :   15-CV-6861 (CBA)
6            v.                              :
                                             :   May 9, 2016
7    EMIL FRIEDMAN, et al,                   :   Brooklyn, New York
                                             :
8                   Defendants.              :
                                             :
9    ----------------------------------------X

10
            TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
11            BEFORE THE HONORABLE JAMES ORENSTEIN
                  UNITED STATES MAGISTRATE JUDGE
12
     APPEARANCES:
13
     For the Plaintiff:        JAY P. NELKIN, ESQ.
14                             CAROL NELKIN, ESQ.
                               Nelkin & Nelkin
15                             5417 Chaucer
                               Houston, Texas 77005
16
     For the Defendant:        PAUL H. SCHAFHAUSER, ESQ.
17                             Herrick Feinstein LLP
                               One Gateway Center
18                             Newark, New Jersey 07102

19   For E&I, et al.:          DAVID GRANTZ, ESQ.
                               Meyner & Landis
20                             One Gateway Center
                               Newark, New Jersey 07102
21
                               CATHERINE MARIA PASTRIKOS, ESQ.
22                             Meyner & Landis, LLP
                               One Gateway Center, Suite 2500
23                             Newark, New Jersey 07102

24   For Birnbaum, et al.:     MAURICE W. HELLER, ESQ.
                               Garvey, Shubert, Barer
25                             100 Wall Street
                               New York, New York 10005


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service

```
 1                                                                    2

 2

 3   APPEARANCES CONTINUED:

 4   For Devine, et al:         RICHARD BRUCE FELDMAN, ESQ.
                                Rosenberg Feldman Smith, LLP
 5                              551 Fifth Avenue
                                24th Floor
 6                              New York, New York 10176

 7   For Ezell, et al.:         RICHARD A. FINKEL, ESQ.
                                Abrams, Garfinkel, Margolis,
 8                               Bergson
                                237 West 35th Street
 9                              New York, New York 10001

10   For 24 Hour Oil, et al.:   BRIAN K. STEINWASCHER, ESQ.
                                Thompson & Hine
11                              335 Madison Avenue
                                New York, New York 10017

12
     For Hersko, et al.:        ANDREW W. GEFELL, ESQ.
13                              Abrams, Garfinkel, Margolis,
                                 Bergson
14                              237 West 35th Street
                                New York, New York 10001

15

16

17   Court Transcriber:         SHARI RIEMER, CET-805
                                TypeWrite Word Processing Service
18                              211 N. Milton Road
                                Saratoga Springs, New York 12866

19

20

21

22

23

24

25
```

3

1   (Proceedings began at 10:10 a.m.)

2          THE CLERK:  Civil cause for a status conference.

3   <u>Schreiber v. Friedman, et al.</u>, Docket Number 15-CV-6861.

4          Counsels, please state your appearances for the

5   record, starting with the plaintiff.

6          MR. NELKIN: Good morning, Your Honor.  Jay Nelkin,

7   Nelkin & Nelkin for the plaintiff.

8          THE COURT:  Good morning.

9          MR. SCHAFHAUSER:  Good morning, Your Honor.  Paul

10  Schafhauser the Friedman defendants, Emil Friedman and New

11  York Best Coffee.

12         THE COURT:  Good morning.

13         MR. FINKEL:  Good morning, Your Honor.  Richard A.

14  Finkel for Sylvia Ezell, Sonya Rivera and Jorge Salcedo.

15         THE COURT:  Good morning.

16         MR. FELDMAN:  Good morning, Your Honor.  Richard

17  Feldman for the Devine defendants.

18         THE COURT: Good morning.  Is there anyone else on

19  the line?

20         MR. GEFELL:  Good morning.  Andrew Gefell for the

21  Hersko defendants.

22         THE COURT: Good morning.

23         MR. STEINWASCHER:  Good morning, Your Honor.  Brian

24  Steinwascher for the oil trucking defendants.

25         THE COURT:  Good morning.

4

1         MR. HELLER:  Good morning, Your Honor.  This is

2  Maury Heller, Garvey Schubert Barer for the coffee company

3  defendants.

4         THE COURT:  Good morning.  Okay.  And we don't have

5  anybody for E&I.  Is that correct?  Is anybody in touch with

6  Mr. Grantz.  Is he planning not to show, does anyone know?

7  All right.  Well, if he shows up --

8         MR. SCHAFHAUSER:  Yeah.  I would have expected him

9  to appear but I haven't heard anything --

10         THE COURT:  No one knows.  Okay.  All right.  I'll

11  order him to purchase a copy of the transcript of today's

12  proceeding as his own expense, not his client's so that

13  they're not prejudiced -- or so that the prejudice to them is

14  minimized for their counsel's absence.

15         All right.  So we've got some motions, and folks,

16  I'm open to ideas about how best to proceed on this but with

17  respect to the issue of the computers and, you know,

18  essentially charges of spoliation of evidence and lack of

19  access.  There are a number of factual issues that strike me

20  as something that we need to have a hearing on.  Though I'm

21  open to the argument that I should just decide certain factual

22  questions that I'd asked the very defendants to address that

23  they did not address, you know, having given them an

24  opportunity to be heard and having them, you know, clearly

25  just ignore certain parts of it, I'm wondering if that would

5

1   be best.

2         So that's where I'm starting from.  I will be

3   honest, folks.  I'm troubled by a lot of what I see here and

4   to some extent, I feel like I'm at my wit's end about how to

5   ensure a fair proceeding for all.  The picture that's painted

6   overall, and I may well be missing something, is that to some

7   extent there are some clients here -- and I assume it's just

8   clients notwithstanding the best counsel that they get -- who

9   are engaging in forms of self-help that ultimately will lead

10  to conclusions adverse to their interests.  Yes, sir.

11         MR. FINKEL:  Your Honor, I agree with you that some

12  of the allegations that have been raised are troubling but

13  most respectfully, I disagree with you when you mentioned the

14  word "clients" just now, and that's because Mr. Nelkin clearly

15  disagrees with you because he not just mentioned clients, he

16  has directly attacked counsel.

17         THE COURT:  Well, to the extent he has, I'm not

18  there yet.

19         MR. FINKEL:  I wish to address that, Your Honor.

20         THE COURT:  I'm not interested in it at the moment

21  because I've got interest -- I've got issues about the

22  parties' rights here that I want to address.

23         MR. FINKEL:  Well, I think --

24         THE COURT:  And this is not a forum for bruised

25  feelings; I understand how that happens, and I hope the

6

1   temperature will be taken down a notch but it's not helped by

2   counsel --

3             MR. FINKEL:  I read --

4             THE COURT:  -- rising --

5             MR. FINKEL:  I read Mr. Nelkin's papers on Friday so

6   --

7             THE COURT:  I couldn't even finish the sentence I

8   suppose.  But go ahead, since you are insistent on speaking, I

9   will hear you out.

10            MR. FINKEL:  Thank you, Your Honor.

11            I've read Mr. Welkin's papers on Friday and my

12   temperature has decreased since I read them Friday morning but

13   not all that significantly because --

14            THE COURT:  Take a break, please.

15            MR. FINKEL:  Well --

16            THE COURT:  No, no.  No, no, no.  I don't want --

17            MR. FINKEL:  Your Honor, you want --

18            THE COURT:  Excuse me, sir.  I will ask to be

19   allowed to finish a sentence.

20            If the temperature is sufficiently high that it

21   can't --

22            MR. FINKEL:  It's not, Your Honor.

23            THE COURT:  I'm going to ask you, Your Honor, for

24   the last time, sir, to allow me to finish a sentence.

25            Why don't you have a seat.  I'll return to you when

7

1    you feel that you can do that.

2              MR. FINKEL:  Your Honor, I will do that if you ask.

3    However, I am not fuming.  I am not overheated.  I wish to

4    address the Court, and I think Your Honor will understand and

5    will agree with me.  Your Honor --

6              THE COURT:  Just so that the record is clear, we've

7    had Carol Nelkin enter.

8              MS. NELKIN:  Yes, Your Honor.  I am --

9              THE COURT:  And, ma'am, who are you?

10             MS. PASTRIKOS:  My name is Catherine Pastrikos on

11   behalf of E & J Management [indiscernible].

12             THE COURT:  I'm sorry, what's your name, please?

13             MS. PASTRIKOS:  Catherine Pastrikos.

14             THE COURT:  Spell it, please.

15             MS. PASTRIKOS:  P-A-S-T-R-I-K-O-S.

16             THE COURT:  Catherine with a C or a K?

17             MS. PASTRIKOS:  With a C.

18             THE COURT:  Okay.  Have a seat, please, and briefly,

19   please, Mr. Finkel.

20             MR. FINKEL:  Thank you, Your Honor.  I would first

21   like to inform the Court that a careful review of Mr. Nelkin's

22   papers reveals one misrepresentation after another, and I have

23   two that I want to present to you as being far and away the

24   most blatant.

25             I'll refer to the first one first, and that is

1   Footnote 4 in Mr. Nelkin's papers that were filed on May the

2   5th.  The footnote says in part -- refers to another district

3   in this case, <u>Gutton v. Kline</u>, that was decided by Magistrate

4   Robert Levy.  And, at the bottom of that footnote, Mr. Nelkin

5   says, and I quote:

6          "On similar facts, with the same defense counsel as

7   here, computer spoliation by his client resulted in a default

8   judgment against all defendants which the Court justified in

9   part based upon Mr. Finkel's prior inconsistent

10  representations to the Court about what information was on the

11  computer."

12         As a matter of fact, Your Honor, that statement is

13  blatantly false.  First of all --

14         THE COURT:  Please allow me -- we're not going to

15  litigate the other case here.

16         MR. FINKEL:  I'm sorry, Your Honor?

17         THE COURT:  We are not going to litigate the other

18  case here.  I'm very respectfully asking you to move on to a

19  different topic.

20         MR. FINKEL:  I most respectfully ask you to allow me

21  to continue and make this record because it is most important.

22  An attorney -- I've been practicing law in this Court for 40

23  years, Your Honor.  When one attorney attacks the honesty and

24  credibility of another attorney in my professional opinion,

25  very most respectfully, that's not a matter to be treated

9

1   lightly or tasked.  It's a matter that's --

2               THE COURT:  Well --

3               MR. FINKEL:  It's a matter that requires

4   consideration, and all I want to do now is refer now to

5   Magistrate Levy's decision.

6               THE COURT:  Mr. Finkel, you can abide by my

7   directions or not --

8               MR. FINKEL:  I will certainly abide by your --

9               THE COURT:  Then please sit down and move on to a

10  different topic because this is not about you.  I'm sorry.  I

11  understand completely the offense that you take.  I'm not

12  drawing any -- and I was quite explicit about this.  I'm not

13  drawing any inference about -

14              MR. FINKEL:  Can I make one further request, please,

15  Your Honor?

16              THE COURT:  Yes.  Of course.  May we then -- like --

17  but as a condition of allowing you to do that, may I ask that

18  we go onto the issues in this case about the parties to this

19  case as soon as you've said what you want to say?

20              MR. FINKEL:  I have not, Your Honor.  No.  I've not

21  said what I want to say.

22              THE COURT:  Once you have said what you want to say,

23  can we move on to the issues in this case, please?

24              MR. FINKEL:  Yes.

25              THE COURT:  Thank you.

10

1          MR. FINKEL:  Thank you, Your Honor.  I think this is

2    part of the issues in this case.

3          If you read Magistrate Levy's opinion, there is only

4    one reference to Mr. Finkel, me, in Magistrate Levy's opinion,

5    and in fact, Magistrate Levy credits my statements and there

6    are no inconsistences in my statements; rather, Magistrate

7    Levy says -- he is listing a number of reasons why he ruled

8    against the defendant in Gutman v. Klein, and he says:

9               "Second, defendants previously stated that the

10              laptop contained relevant information in a letter to

11              the Court."

12          And he cites my letter to the Court which means that

13    I was the one that said that the defendant -- who at one time

14    was my client but not at the time that this opinion was

15    written, that at one time my client's computer had the

16    relevant information that the Judge was spoiled.

17          So, if anything Magistrate Levy's decision credited

18    my honesty.  And, if there's any doubt upon that, I would

19    encourage Your Honor to speak to Magistrate Levy because I

20    know what he would say -- I am certain what he would say about

21    my practice as an attorney but to get back to the issue before

22    Your Honor, this is just one misrepresentation.  There are

23    many, many others.

24          I'll give a second misrepresentation which totally -

25    - all of which totally undermine Mr. NElkin's credibility

1  before the Court, most respectfully.

2          THE COURT:  No.  I'm sorry.  You cannot say that

3  that is most respectfully if you will in doing so ignore what

4  I've said now several times which is I'm not interested in the

5  character of counsel or the sniping about it on either side.

6          If you insist on going on about it, I can't stop

7  you.  You've proven that I can't stop.  I'm telling you that

8  I'm not interested in the issues about what the attorneys

9  think of one another on either side of this case.

10          MR. FINKEL:  Your Honor --

11          THE COURT:  So, if you're trying to be respectful as

12  you say of me, you can show through actions.

13          MR. FINKEL:  Your Honor, my position is the motion

14  to compel at least as to my clients is without any merit and I

15  will explain why.  It's without any merit on the simplest

16  level; my clients are mere employees.  They don't have control

17  of the computers in question.

18          THE COURT:  May I ask a question?

19          MR. FINKEL:  Sure.

20          THE COURT:  How can a person -- I'm an employee of

21  the Court.  The Court has given me this device, it's an IPhone

22  to use for my work and as part of the usage I'm allowed to use

23  it in personal ways as well but it's not mine and I'm an

24  employee of the Court.  Doesn't mean I don't have custody and

25  control of this device notwithstanding the fact that I'm an

12

1   employee.  And much of the argument you've been making in your

2   letter and just now orally seems to maintain that proposition

3   that somebody who is an employee cannot have custody or

4   control of a computer, and I don't follow it in the slightest.

5              MR. FINKEL:  The device that you showed --

6              THE COURT:  Yeah.

7              MR. FINKEL:  -- most respectfully, your cell phone

8   or your handheld --

9              THE COURT:  Yes.

10             MR. FINKEL:  -- is not the devices we're talking

11  about in this action.

12             THE COURT:  No, because I did not ask for

13  information about my iPhone, clearly.

14             MR. FINKEL:  Right.

15             THE COURT:  But you said that there are no computers

16  that your clients have custody or control over because she's

17  an employee.  It's a distinction.  It's a distinction that

18  doesn't make any sense to me

19             MR. FINKEL:  Your Honor, my clients are not in a

20  position to turn over computers that are owned by other

21  defendants in this case.  This is not a situation where we're

22  saying that the computers were owned or controlled by third

23  parties not within the jurisdiction of the Court; rather, the

24  computers in questions are all owned and under the control of

25  other defendants in this case.

13

1    THE COURT:  But --

2    MR. FINKEL:  So -- so, if this motion were properly

3 drawn, those other defendants should have been in the motion,

4 not my clients.  Moreover, Mr. Nelkin says in his papers that

5 out -- the affidavits that I prepared for my three clients are

6 "woefully inadequate" --

7    THE COURT:  Can I ask you --

8    MR. FINKEL:  -- on --

9    THE COURT:  Sorry to interrupt.  I don't want to

10 forget this question.  Just as a housekeeping matter, why are

11 the signatures of the notaries blacked out?

12    MR. FINKEL:  That's my understanding for the same

13 reason that my understanding is when you check the box in --

14 when you check the box when you're filing documents, certain

15 confidential materials are supposed to be eliminated --

16    THE COURT:  No, no.  Please file the unredacted

17 letter if you would.

18    MR. FINKEL:  No problem.

19    THE COURT:  And I think it would probably be best

20 going forward if one party doesn't notarize another party's --

21    MR. FINKEL:  Fine.  I have another one that I'll

22 replace that with already.

23    THE COURT:  Yeah.

24    MR. FINKEL:  Not a problem.

25    THE COURT:  All right.  Go ahead.  I interrupted

14

1   you.

2          MR. FINKEL:  Okay.  In terms of Mr. Nelkin's claim

3   that the affidavits are woefully inadequate, I'd most

4   respectfully refer Your Honor to your order.  Your order says:

5          "Each shall include an affidavit identifying in

6   detail all computer devices in his or her possession, custody,

7   control; the current location of each such device, and a

8   statement whether each such device has ever been used in any

9   way in relation to the business of Two Rivers."

10         That's what those affidavits did.  So, for example,

11  whereas my letter challenges point by point, exhibit by

12  exhibit Mr. Nelkin's claims and shows how each of the exhibits

13  fail to support his claims and in fact many of them support

14  our position, there was no requirement that there be an

15  affidavit from the defendants other than what I just read to

16  Your Honor which is Your Honor's order.

17         However, I might note that Mr. Nelkin's claims are

18  his claims, not the claims supported --

19         THE COURT:  But you've lost me --

20         MR. FINKEL:  -- by an affidavit.

21         THE COURT:  You've lost me entirely.

22         MR. FINKEL:  Oh, I'm sorry.  Then let me go back.

23         THE COURT:  All right.  And maybe we could talk

24  specifics.  Give me a moment, please.  It'll take me a bit to

25  find the right document here.

15

1                    [Pause in proceedings.]

2          THE COURT:  And I don't have all of the exhibits at

3   hand but for example, I thought you -- is it Ezell or Rivera.

4                    [Pause in proceedings.]

5          THE COURT:  It was either Ezell or Rivera who didn't

6   provide information about an iPad or an iPhone or both that

7   were mentioned in the e-mails that were attributed to them.

8   Do you know what I'm speaking of?

9          MR. FINKEL:  Yes, I do.

10         THE COURT:  Okay.

11         MR. FINKEL:  Your order didn't include iPhones, Your

12  Honor.  I didn't read your order as including iPhones.

13         THE COURT:  Because an iPhone is not a computer?

14         MR. FINKEL:  And I'm not -- I'm sorry?

15         THE COURT:  Excuse me.  Is that because an iPhone is

16  not a computer?

17         MR. FINKEL:  My understanding, mine, was that it

18  does not include iPhones --

19         THE COURT:  Please raise your hand if you share that

20  understanding and did so in crafting your client's response to

21  my order.

22         MR. FINKEL:  And we're the only attorneys that had

23  to respond to your order.

24         THE COURT:  Right.  No, no.  No, no, no.  I'm sorry,

25  I didn't know that I had to be clear to the point of

16

1   specifying brand names.

2          MR. FINKEL:  An iPhone is not a computer --

3          THE COURT:  I'm sorry, sir, it is.

4          MR. FINKEL:  This is not a computer, Your Honor.

5          THE COURT:  If you read the case of Reilly v.

6   California, there's a detailed explanation of how devices like

7   that are computers.

8          Oh my goodness, I'm so greatly disappointed to hear

9   this.  It is hard for me to understand how you could have had

10  that misapprehension.

11         MR. FINKEL:  And it's hard for me to understand just

12  the opposite, quite candidly, Your Honor.

13         THE COURT:  Then we have a significant problem here

14  because I will have to think long and hard about how to

15  communicate effectively my orders to you so that I don't

16  understand the results to be willful defiance.  For this one

17  time, I am going to chalk it up to a misunderstanding --

18         MR. FINKEL:  Well, that's what it was.

19         THE COURT:  -- and I will -- I'm sure it is because

20  you say so, sir.  In the future --

21         MR. FINKEL:  And --

22         THE COURT:  -- I will of course do my best to be

23  much more careful in my words.  Now, let me ask you this

24  because I want to be sure that I use words in a way that you

25  understand them.  If I were to use the phrase "computing

1   device," "electronic device capable of storing data," would

2   either of those encompass iPhones and iPads?

3          MR. FINKEL:  I now understand what Your Honor is

4   referring to, and I will supplemental affidavits before the

5   end of this week certainly from all three clients that will

6   reflect iPhones and Droids and other such equipment as well as

7   computers.

8          THE COURT:  How -- and you weren't the only one

9   obviously.  Mr. Schafhauser had the same problem.  So how

10  could I better phrase my order so that we wouldn't have had

11  this misunderstanding?

12         MR. FINKEL:  All electronic devices that communicate

13  and store data.

14         THE COURT:  I see.

15         MR. FINKEL:  I would have understood that to be a

16  Droid or an iPhone.  When you -- most respectfully, when you

17  said, when Your Honor said computers, I understood some --

18  that to be mean something else.  The computer on your desk or

19  under your desk; that's what I understood it to be.

20         THE COURT:  Does it include a laptop?

21         MR. FINKEL:  Yes, it does include a laptop.

22         THE COURT:  Okay.  Does it include a tablet device?

23         MR. FINKEL:  I'm not sure what that means, honestly,

24  Your Honor.  I don't.

25         THE COURT:  I see.

18

1          MR. FINKEL:  I would take a guess and say probably

2  yes, but I'm not sure what that means.

3          THE COURT:  Okay.

4          MR. FINKEL:  But within what we just described, yes,

5  certainly, and we will file supplemental affidavits that cover

6  those devices.

7          THE COURT:  All right.  Okay.  And -- but, please,

8  let's just go down the table so that everybody can tell me yes

9  or no whether the responses that I've seen -- well, I guess --

10  have many of you had to submit -- no, so it's just you, Mr.

11  Schafhauser.  You also excluded iPhones and iPads --

12          MR. SCHAFHAUSER:  And I'm happy to explain my

13  understanding, Your Honor, and I had the same reading as Mr.

14  Finkel.

15          THE COURT:  Yes.  No, quite obviously and it's

16  troubling.

17          MR. SCHAFHAUSER:  And I am also happy to submit a

18  supplemental affidavit for my client but this is why I

19  understood it the way it was.

20          This all comes out of -- as Your Honor knows better

21  than I because I wasn't here, but it comes out of a hearing on

22  December 14th where this originally came up.  I was not

23  present; other counsel were present.  I of course read the

24  transcript.

25          The transcript -- the only thing that was discussed

19

1   on that transcript were computers, not iPhones, not iPods --

2         THE COURT:  Well, can I ask you?  Where do you get

3   this idea that an iPhone or an iPad is not a computer?

4         MR. SCHAFHAUSER:  I must be old fashioned and maybe

5   I'm dating myself, Judge, but I don't think an iPhone is a

6   computer either.  I've never understood it, sir.

7         THE COURT:  Read Reilly v. California, please.

8         MR. SCHAFHAUSER:  I of course will but I've never

9   understood it as such.  But what was discussed were -- well,

10  again, I understand Your Honor's position that iPhones are

11  computers.  I didn't read the transcript to be talking about

12  iPhones but I didn't read the transcript to be talking about

13  anything other than actually a computing device, a computer

14  that was sitting in South Plainfield that was talked about on

15  December 14th.

16        Ms. Rivera's computer that was in the Bronx -- and

17  by the way, both of those computers have been available for

18  imaging since that day.  And at no time until that motion was

19  filed by plaintiff was there a discussion about iPhones, about

20  iPods, about devices other than the computers that were the

21  subject of the transcript on the 14th, Your Honor.

22        But if I may, respectfully, go back to the beginning

23  about whether an order of this Court was violated because

24  obviously we all take that issue very seriously.

25        THE COURT:  Now, when you say obviously, you may be

1   assuming that I don't.  So don't -- I'm too simple a person

2   for you to assume anything about --

3            MR. SCHAFHAUSER:  I was going towards --

4            THE COURT:  It's not obvious to me but go ahead.

5            MR. SCHAFHAUSER:  I withdraw the word "obvious" --

6            THE COURT:  Yeah.

7            MR. SCHAFHAUSER:  -- I take it seriously.  I believe

8   I can speak for the people on this side of the table; we take

9   that assertion very seriously, and so I do need to address

10  that as a threshold issue.

11           When this case was filed, Your Honor, and Your Honor

12  in the papers that were filed by Mr. Nelkin heard about Mr.

13  Salcedo, heard about things being removed, heard about a

14  computer allegedly removed by -- or at the direction of Mr.

15  Friedman, read about tools being removed, read about a printer

16  being removed, all of those allegations, Your Honor, were made

17  in the verified complaint.

18           In other words, all of the matters of which the

19  plaintiff came to this Court and alleged were a violation of

20  this Court's order were set forth in the verified complaint

21  that predated a single order in this case.

22           In other words, these allegations that Your Honor is

23  hearing about are substantive allegations as part of the

24  claims in this case.  Those claims, Your Honor, I respectfully

25  submit those claims are the subject of a pending motion before

1   Judge Amon as to whether those claims are subject to an

2   arbitration agreement between my client and the plaintiff.

3   Those are some of the claims in the verified complaint.

4          So the plaintiff is seeking through this motion to

5   litigate substantively on the merits some of his claims that

6   predate the filing of the complaint.  So I think that's

7   important to put in context.

8          Secondly, the orders that were entered postdated all

9   of the events of which plaintiff speaks in its papers, dating

10  back a year or two years; in some instances, I'm looking at

11  exhibits from e-mails that go back to 2012.  There was no

12  violation of an order in 2012 if someone sent an e-mail five

13  years ago or four years ago.

14         Thirdly, on December 14, Your Honor, as I mentioned

15  a moment ago, there was a discussion about computers.  Those

16  computers that were identified -- and, by the way, we

17  identified them that day and the following day and provided

18  passwords, and Your Honor has the documents, the

19  correspondence.  My associate because I was on trial -- my

20  associate provided passwords, provided access codes, specified

21  where the computers were.  That was on December 15th.

22         It's now May 10th.  On December 15th, all of this

23  occurred.  And at no point did plaintiff provide any basis to

24  say oh, well, you know, I want your iPad that Mr. Friedman

25  used apparently four years ago.  At no point.  It wasn't --

22

1  not only wasn't it the subject of a discussion on the 14th but

2  it wasn't the subject of a discussion between counsel before

3  the motion was filed.

4          All of the documents incidentally not -- all of the

5  documents that are annexed to plaintiff's moving and to her

6  reply papers, Judge, none of them were ever produced because

7  plaintiff has not yet produced a single document in this case.

8

9          THE COURT:  You're pausing for effect.  You've told

10  me that; I'm aware of the issue.  Go ahead.

11          MR. SCHAFHAUSER:  Okay.  No, I -- well, I

12  respectfully submit -- and this goes to a comment that Your

13  Honor made right at the outset on the record that exists, I

14  don't believe there's a basis for Your Honor to make a finding

15  either way, most respectfully, because the plaintiff has not

16  demonstrated number one, its claims in the verified complaint.

17  These are claims set forth in the verified --

18          THE COURT:  Yes.  You've told me five times by my

19  count that they're made in the verified complaint.  I'm trying

20  to pay attention.  It's hard if you repeat things over and

21  over again because then I'm well, why am I getting this for

22  the fifth time.

23          MR. SCHAFHAUSER:  Very well.  But --

24          THE COURT:  Okay.  Go ahead.

25          MR. SCHAFHAUSER:  -- number two, the plaintiff

23

1   hasn't given us discovery as to the issues that it seeks to

2   now litigate before this Court, and I respectfully submit that

3   in the absence of discovery, there's no basis to litigate

4   these issues while an arbitration motion is pending as I

5   mentioned as well.

6          With respect to the assertions though, we will

7   submit a supplemental affidavit.  I now understand that the

8   Court intended something beyond what I understood to be

9   computers --

10         THE COURT:  Yes, and let me make it clear.  Any

11  device capable of electronic communications or data storage --

12         MR. SCHAFHAUSER:  Right.

13         THE COURT:  -- that any defendant has access to or

14  has custody or control of, whether or not the party believes

15  it has been used for Two Rivers' business, because for

16  example, the reference to merely using something that's

17  affordable ignores the realities of how computers work, must

18  be accounted for.  Identified what it is, where it is, who has

19  access to it.

20         MR. SCHAFHAUSER:  Understood, Your Honor.

21         THE COURT:  All right.

22         MR. NELKIN:  Your Honor?

23         THE COURT:  Yes.

24         MR. NELKIN:  Could I just ask that you also ask them

25  to specify whether they have used a computer for Two Rivers'

24

1  business so that -- and if so where it is now.

2          THE COURT:  Right.  It includes any device which you

3  have any access -- and also device to which you don't

4  currently have access to -- which the client doesn't currently

5  have access that has been used in any way to send or receive

6  e-mails related to Two Rivers' business, to create or store

7  documents relating to the business of Two Rivers.

8          This is intended to be as broad as you can conceive

9  it so that we don't have an issue as we have had today of

10 somebody misunderstanding the intent of my order.

11         MR. SCHAFHAUSER:  Very well, Your Honor.

12         THE COURT:  Wait.  And I'd like to go around the

13 table.  Does anybody think of any device that your clients may

14 have access to that wouldn't be covered so that we can discuss

15 it whether it should be covered?

16         MR. FELDMAN:  Your Honor, Richard Feldman for the

17 Devine defendants.  They're the outside accountants.

18         THE COURT:  Uh-huh.

19         MR. FELDMAN:  To the extent that documents or e-

20 mails are sent from Two Rivers for the purpose of preparing

21 tax returns or things of that nature --

22         THE COURT:  Yeah.

23         MR. FELDMAN:  -- is that covered?

24         THE COURT:  I'm not -- I'm primarily concerned with

25 Friedman and Ezell and Rivera and Salcedo.  I don't think the

1  motions are going to any other devices, correct?

2            MR. NELKIN:  Any other defendants you mean?

3            THE COURT:  Yeah.

4            MR. NELKIN:  No.  We were focused on those

5  although --

6            THE COURT:  Yeah.

7            MR. NELKIN:  -- Mr. Friedman has a lot of different

8  offices and entities --

9            THE COURT:  Well, but Friedman includes the

10  businesses with which he's associated.  Right.  And who else

11  represents those businesses?  I'm sorry, sir, you didn't

12  identify yourself earlier.

13            MR. GRANTZ:  I apologize.  I was late, Your Honor.

14  David Grantz --

15            THE COURT:  Oh, Mr. Grantz.  Okay.  I'll vacate the

16  order I had earlier to have you purchase the transcript.  Go -

17  - so --

18            MR. GRANTZ:  I represent E&J Funding --

19            THE COURT:  Right.

20            MR. GRANTZ:  -- E&I Investors --

21            THE COURT:  Right.

22            MR. GRANTZ:  -- and E & Jeryg Management.  They're

23  entities that Mr. Friedman controls.

24            THE COURT:  Okay.  So it'll include those.

25            MR. GRANTZ:  It covers --

26

1              THE COURT:  Yeah.

2              MR. GRANTZ:  It covers us in that -- to that extent,

3    yes.

4              THE COURT:  All right.

5              MR. NELKIN:  There's some question -- Mr. Friedman

6    couldn't remember at his deposition what his relationship was

7    with a number of the oil company defendants, and so we are

8    unaware.  We assume that someone on that side would know Mr.

9    Friedman's relationship to those companies.  Mr. Friedman

10   testified he couldn't remember.  He thought he --

11             MR. GRANTZ:  Well, I think Mr. Friedman was asked in

12   detail about his relationship to a number of entities, Judge,

13   and since you've asked whether we understand the order, for

14   instance, he was asked by plaintiff's counsel about 26 Flavors

15   which is a defendant in this case.

16             I believe Mr. -- well, I shouldn't speak for Mr.

17   Finkel but my understanding independently is that Ms. Ezell

18   may do work for 26 Flavors.  The testimony by Mr. Friedman

19   during his deposition as well as in prior submissions is that

20   he does not control 26 Flavors, for instance.

21             Does Your Honor's order extend to entities that Mr.

22   Friedman does not control?

23             THE COURT:  Well, if Ms. Ezell or Ms. Rivera were

24   performing work for them on their computers, yeah, I think it

25   should.

1        MR. GRANTZ:  Very well.

2        THE COURT:  Look, the lines among -- you know, the
3  boundaries here are not being drawn very carefully I think
4  among the defendants themselves, and it makes discovery that
5  much more complicated and unfortunately burdensome in some
6  cases.

7        So -- but I think we have to make sure that we're
8  not through my failings in articulating an order leaving out
9  things that should be checked.

10       MR. GRANTZ:  I understand.  Your Honor, I do have
11  another question, and that is that again this goes back to the
12  December 14th original decision and the December -- as I read
13  the transcript, the purpose of the December 14th order and
14  directive was to ensure equal access for all parties because
15  the allegation had been made that Mr. Friedman and other
16  defendants were thwarting access.

17       Since that time, approximately six months ago now,
18  Mr. Friedman has had no access, no documents from plaintiff,
19  and plaintiff is not subject to any of the imaging issues that
20  Mr. Friedman and the other defendants are being subjected to,
21  and I would respectfully request that Your Honor direct that
22  the equal access that this exercise was intended to ensure be
23  given such that plaintiff also be required to identify its
24  computers and have them imaged.

25       THE COURT:  You know, there is sometimes a tendency,

1   not just here but you see it a lot in the media for example,

2   to engage in false equivalences and I have to be careful not

3   to do that.

4           I've been given specific allegations of improper

5   disposition of evidence that should be subject -- preserved

6   and subject to discovery on the defendants' side.  I'm trying

7   to get to the bottom of it.  I haven't yet seen something like

8   that on the plaintiff's side.  If it is, I'll take it

9   seriously if and when you present it to me.

10          MR. GRANTZ:  And what I'm presenting to Your Honor

11  is that the plaintiff has shucked Mr. Friedman off from access

12  and --

13          THE COURT:  Well, Mr. -- when you say he's shucked

14  him off from access, in what way?

15          MR. GRANTZ:  He receives nothing from Two Rivers.

16  He has no access to Two Rivers' information.  He's a member of

17  Two Rivers but has no access.  That's what I'm suggesting to

18  Your Honor.

19          THE COURT:  But you're still at a level of

20  generality -- give me some specifics of something he's tried

21  to do that he should be able to do and can't.

22          MR. GRANTZ:  Well, again, he receives no financial

23  information as a member of the company.

24          THE COURT:  That Mr. Schreiber does?

25          MR. GRANTZ:  That I understand Mr. Schreiber does.

1          THE COURT:  Do you want to address that?

2          MR. NELKIN:  Your Honor, it's my understanding that

3   Mr. Friedman has been along with the other defendants subject

4   to a preliminary injunction that bars them from interacting in

5   any way with the financial situation of the company --

6          THE COURT:  But can he have information about it?

7          MR. NELKIN:  My client is a minority member of the

8   company.  Mr. Schafhauser has been blocking -- one of the

9   things we had discussed --

10          MR. SCHAFHAUSER:  That's not --

11          THE COURT:  You can answer my question or you can

12   give me a word salad that doesn't respond but then I'm just

13   going to ask the question again.  Does he have access to

14   information?

15          MR. NELKIN:  I don't know what he has access to or

16   not.  I don't --

17          THE COURT:  All right.  Do you believe that under

18   the order he may have access to information?

19          MR. NELKIN:  I believe that he is not to interfere

20   and I don't know what --

21          THE COURT:  Mr. Nelkin, I'm going to have as little

22   patience with deflection from your side as I have expressed to

23   have with the defense side.  Last time, does the order give

24   him -- does the order give Friedman access to information,

25   financial information about the company?

1          MR. NELKIN:  Not that I'm aware of, Your Honor.  And
2  the order is silent on that matter.

3          THE COURT:  Okay.  Well, prior to the order, was he
4  entitled to financial information?

5          MR. NELKIN:  He was entitled to I guess whatever
6  the --

7          THE COURT:  Was he entitled to the same information
8  your client is entitled to?

9          MR. NELKIN:  I --

10          THE COURT:  The answer is yes, correct?

11          MR. NELKIN:  I would assume so.

12          THE COURT:  Okay.  And the order did nothing to
13  change that?

14          MR. NELKIN:  The order bars him from interfering in
15  any way, shape or form --

16          THE COURT:  Does getting information interfere, Mr.
17  Nelkin?  You're coming -- let's be clear.  You're coming to
18  this Court for relief.

19          MR. NELKIN:  I don't --

20          THE COURT:  Show that you are acting in good faith
21  so that you get --

22          MR. NELKIN:  I do not control the flow of
23  information; the company does.

24          THE COURT:  And who represents your company in this
25  Court?

31

1          MR. NELKIN:  No one --

2          THE COURT:  Who represents the -- my goodness.

3          All right.  Have a seat, gentlemen.

4          MR. GRANTZ:  Your Honor, if I --

5          THE COURT:  No.  Have a seat, please.

6          Folks, this is one of the more challenging cases

7    I've had.  It is difficult to get straight answers as to any

8    matter from either side.  I'm going to need to hold an

9    evidentiary hearing on the allegations concerning the

10   disposition of various computing devices, and apparently about

11   who has access to what.

12          Don't stand up, please.  I've asked you to sit down.

13   I'm trying to figure out what to do here and you haven't made

14   it easier, Mr. Nelkin.

15          MR. NELKIN:  I --

16          THE COURT:  I'm not finished speaking, sir.

17          I think the day I could best set aside for a full

18   day is probably Friday next?

19   [Court and clerk confer.]

20          THE COURT:  Okay.  So I think every affiant should

21   be available for testimony as well as the fellow who controls

22   access to Launch, the non-party; what's his name?  Somebody

23   help me out, please.

24          MR. SCHAFHAUSER:  Mr. Razig Gamansky [Ph.] if I

25   pronounced his --

1          THE COURT:  Yes.  Anybody who wants his testimony

2    issue a subpoena.  Please sit down.

3          If there are witnesses as to prove on either side

4    what you think is the state of affairs with respect to access

5    to information about Two Rivers, send me a letter who you

6    intend to call.  Make sure you subpoena them.

7          I want to have a better sense of factually what has

8    been going on and what is going on now before I can resolve

9    these motions.  Go ahead, sir.

10         MR. NELKIN:  Your Honor, I believe that what needs

11   to happen and if you would address it, we would ask that my

12   client and Mr. Schafhauser to address it and we can meet and

13   confer about it, Two Rivers needs its own attorney.  We've

14   suggested you might appoint someone.  We've met and conferred.

15   My client believes firmly that Two Rivers needs its own

16   representation.

17         THE COURT:  Yeah.  They need a receiver is what they

18   need.

19         MR. NELKIN:  Well, I believe that the company itself

20   has an opinion as to what it would like and -- it's being

21   blocked by Mr. Friedman who is asserted that they don't have

22   the right to hire counsel to represent their interests, and

23   just to make it perfectly clear, my client wants to have them

24   representation.  I believe the company wants to have

25   representation but at each of the previous proceedings, Mr.

1   Schafhauser's client has asserted that they don't have the

2   right to hire counsel and has taken the position that if they

3   do hire counsel that he's entitled to all of their

4   information, that there's no privilege; it's their

5   representation as well.

6           And so I believe that both my client and the company

7   are in a tough position.  You're asking me what the company

8   controls and flows to their client; that's really a decision

9   for the company of which --

10          THE COURT:  The company is currently being managed

11  by Mr. Pappas [Ph.]?

12          MR. NELKIN:  It's being managed by the two other

13  members of Two Rivers.  Mr. Pappas is an employee.  There are

14  other members --

15          THE COURT:  Who's got daily operational control?

16          MR. NELKIN:  The different members that are still

17  there including my client have control of the company.  They

18  have different roles.  My client is primarily involved in

19  things like sales and things of that sort -- not sales,

20  operational.  Mr. Pappas is sort of the CFO and he controls

21  things like payroll and things of that sort but the company --

22  I mean, as a result of the order that was entered, Mr.

23  Friedman has not had a day-to-day role there but the company

24  has continued to function and the company has issues that I

25  think it should be heard on before this Court.  But it needs

34

1  to be able to hire someone and the only reason it hasn't as I

2  understand it is that Mr. Schafhauser's client insists that

3  they can't.

4          THE COURT:  Is that correct, Mr. Schafhauser?

5          MR. SCHAFHAUSER:  That's -- once again, it's a

6  variation.

7          THE COURT:  Okay.  Do you have any objection to them

8  hiring counsel?  Does your client have any objection to Two

9  Rivers hiring counsel?

10         MR. SCHAFHAUSER:  Yes, Your Honor, and let me

11 explain the objection.

12         The objection is that number one, the plaintiff

13 filed this case derivatively on behalf of Two Rivers.  The

14 plaintiff is in charge with his father, Eugene Schreiber, and

15 with a third member, (indiscernible), they run Two Rivers.

16         As Your Honor just heard, Mr. Friedman does not

17 engage in anything on behalf of Two Rivers and certainly has

18 been enjoined now so he'd better not and he doesn't --

19         THE COURT:  At some point you're going to tell me

20 why there's a problem with the company having a lawyer.

21         MR. SCHAFHAUSER:  The company has a lawyer I

22 respectfully submit --

23         THE COURT:  Who is it?

24         MR. SCHAFHAUSER:  The company's lawyer is sitting

25 before you --

1          THE COURT:  No, that's not correct, sir.

2          MR. SCHAFHAUSER:  He --

3          THE COURT:  Sir, that's just not correct.  You know

4   that's not correct.

5          MR. SCHAFHAUSER:  He represents, Your Honor, the

6   person and persons in charge of the company.

7          THE COURT:  Look, you're too good a lawyer, Mr.

8   Schafhauser, to believe what you've just said, that Two Rivers

9   is represented by Mr. Nelkin.  Two Rivers is a separate entity

10  under the law, correct?

11         MR. SCHAFHAUSER:  Two Rivers is a separate entity --

12         THE COURT:  Okay.

13         MR. SCHAFHAUSER:  -- under the law.  Yes.

14         THE COURT:  Does it have legal representation in

15  this Court?

16         MR. SCHAFHAUSER:  Well, again, I --

17         THE COURT:  Does the company, separate from the

18  various members, have a representative in this Court?

19         MR. SCHAFHAUSER:  No notice of appearance has been

20  filed on behalf of Two Rivers.

21         THE COURT:  Does it have representation elsewhere?

22         MR. SCHAFHAUSER:  Your Honor --

23         THE COURT:  I'm not making this a difficult question

24  except to the extent you wish not to answer it, but it is

25  something that can be answered easily, sir.  I believe you

1    know the answer.  Why don't you just tell me what you think.

2            MR. SCHAFHAUSER:  Well, I believe for all intents

3    and purpose, Mr. Nelkin has been acting on behalf of the

4    company and its members --

5            THE COURT:  Well, for the purpose of the law, does

6    it have representation?  For that purpose.

7            MR. SCHAFHAUSER:  Well, again, my answer is the

8    same, Your Honor.  That's my answer.

9            THE COURT:  Because I don't understand if that was a

10   yes or no, and it is something that is clearly capable of such

11   an answer.  I will ask you, please, one last time.

12           MR. SCHAFHAUSER:  I believe for purposes of the law

13   when someone files a complaint --

14           THE COURT:  Have a seat, please.

15           By tomorrow, please confer.  By tomorrow, please any

16   party feel free if you can't agree on a slate of lawyers to be

17   appointed -- slate of candidates to be appointed as guardian

18   ad litem or counsel, however you want to deal with it, there

19   should be representation of the entity in this Court.

20           MR. SCHAFHAUSER:  May I just be heard briefly on the

21   issue?

22           THE COURT:  As soon as I've finished speaking, sir.

23           If you want to file separate proposals, that's fine.

24   If you can agree on somebody, better.  If in making separate

25   presentations you want to file a letter of no more than three

1  pages, explaining why you think it should not be done, feel

2  free to do so.

3          We will have an evidentiary hearing.  I hope to have

4  Two Rivers represented separately at that hearing.  It will be

5  --

6          THE CLERK:  May 20th.

7          THE COURT:  May 20th at 9:30 a.m.

8          MR. NELKIN:  Your Honor, could I just --

9          THE COURT:  Excuse me.  Have a seat, please.

10          By Friday, please submit your witness lists.  Yes,

11  sir.  Mr. Nelkin, then Mr. Schafhauser.

12          MR. NELKIN:  Your Honor, Judge Amon has ordered us

13  to respond to all of the motions to compel arbitration.

14  They're all due on the 20th and we have to respond to seven

15  separate motions on the 20th.  If we could respectfully ask

16  that that hearing be held the next week.

17          THE COURT:  Any objection on that side?

18          MR. SCHAFHAUSER:  No objection, Your Honor.

19          THE COURT: 23rd.  May 23rd.  Set aside the day,

20  folks.  Yes.

21          MR. SCHAFHAUSER:  You asked me for an answer that I

22  was about to give and I wanted to give the answer.

23          The answer, Your Honor, is that the issue of

24  representation of Two Rivers is subject to a dispute under the

25  operating agreement which in fact we submit is also an

1    arbitrable issue which as Mr. Nelkin -- and he didn't explain

2    this to Your Honor, the background of this issue.  This

3    issue --

4              THE COURT:  Folks, I'm going to ask your indulgence,

5    please, going forward.  It's something actually I have to do

6    with my children more often than I'd like.  You can tell me

7    what you want me to know about the state of affairs or about

8    the law but please don't feel that you need to point out for

9    me what one of your adversaries has failed to tell me.

10             MR. SCHAFHAUSER:  Yes, Your Honor.

11             THE COURT:  It'll make the transcript of these

12   proceedings so much cleaner and shorter.

13             MR. SCHAFHAUSER:  Very well, Your Honor.  Very well.

14             THE COURT:  Yes.  You were going to tell me, sir.

15             MR. SCHAFHAUSER:  Thank you.  And I -- thank you.

16             Your Honor may recall because it's been mentioned in

17   other pleadings there was a lawsuit in New Jersey --

18             THE COURT:  Yes, I recall very well.

19             MR. SCHAFHAUSER:  Yes.  In that lawsuit, there was a

20   dispute between Two Rivers and Mr. Friedman.  That dispute was

21   adjudicated by a State Court judge who said that she would be

22   entering a provisional remedy and directing that the rest of

23   that go to beth din.  At the beth din, an issue arose as to

24   the representation of Two Rivers.  That issue was not resolved

25   but judge -- the judge in the State Court held that that issue

1   was an arbitrable issue, and that's what I was trying to get

2   to in explaining my clients' position, that it's an arbitrable

3   issue.

4           THE COURT:  Okay.  Submit your lists by Friday,

5   please.

6           MR. SCHAFHAUSER:  Thank you, Your Honor.  And --

7           THE COURT:  Thank you.  Anything else, Mr.

8   Schafhauser?

9           MR. SCHAFHAUSER:  Yes, Your Honor.  The one item

10  that -- you know, I had sent a couple letters.  We've tried to

11  address an electronic protocol with plaintiff, propose an ESI

12  protocol.  We've tried to address a stipulation and

13  confidentiality provision -- which by the way on the December

14  14th order regarding computers, this very issue, Mr. Nelkin

15  had represented that would be subject to an attorney's eyes

16  only.  We still don't have that.

17          THE COURT:  Submit your competing versions.

18          MR. SCHAFHAUSER:  Thank you, Your Honor.  Will do.

19          MR. GEFELL:  Just an abundance of caution.  Just

20  echo what was said earlier.  Andrew Gefell; I represent the

21  Hersko defendants.  The scope of the hearing is essentially

22  governed by plaintiff's application in the April 14th --

23          THE COURT:  Yes.

24          MR. GEFELL:  -- letter, correct?

25          THE COURT:  Yes.  Yes?

1          MR. NELKIN:  Your Honor, at the hearing before Judge

2     Amon, pages roughly 49 through 60 or so of the transcript,

3     Judge Amon was addressing what type of materials we would have

4     access to in this provision, and we specifically discussed the

5     preliminary injunction and what it provided for, and it's our

6     reading of the transcript that Judge Amon ordered that we

7     would have access to the materials called for under the

8     preliminary injunction.

9          It's -- defendants have refused to provide us with

10    that access and that that's something that we believe that has

11    already been ordered by Judge Amon and that we're entitled to.

12    And so we had mentioned that in our response to our papers

13    that basically they're enjoined from prohibiting us from

14    coming in and inspecting and copying certain types of

15    information and Judge Amon went through extensively and I have

16    the transcript here if it would be helpful to read out

17    sections or -- but she said that we would be given that and

18    yet we have not been able to obtain that and that is material

19    that we require both for our responses that are due on the

20    20th but it's also stuff that we're entitled to for -- under

21    Judge Amon's order.

22          THE COURT:  Is there a request?

23          MR. NELKIN:  Our request is that we be provided with

24    access to it, that pursuant to the order that --

25          THE COURT:  Again, specifics.  What don't you have

1    access to?  And who's stopping you?

2            MR. NELKIN:  Each of the -- I mean, we've made the

3    request to counsel for each defendant, and each of them have

4    said no.

5            THE COURT:  For what?

6            MR. NELKIN:  The -- right -- we're entitled to --

7            THE COURT:  Not what you're entitled to.  Please

8    stop telling me what Chief Judge Amon -- former Chief Amon --

9            MR. NELKIN:  Right.

10           THE COURT:  -- has ordered.  Tell me what you've

11   asked for that somebody -- specific.  Please give me X and

12   they've said no, you may not look at this.

13           MR. NELKIN:  Okay, fine.  Let me read it.  We're

14   entitled to inspect --

15           THE COURT:  I just finished asking you, sir, please

16   don't read to me from an order what you're entitled to.  If

17   you want some relief, tell me I asked X person for this; X

18   person said no, you may not look at this.

19           MR. NELKIN:  We requested that we be provided with

20   the documents that pertain to Two Rivers --

21           THE COURT:  You're talking about discovery?

22           MR. NELKIN:  No.

23           THE COURT:  You're talking about what, a computer?

24           MR. NELKIN:  No.  We're talking about separate and

25   apart from that, under the preliminary injunction and Judge

42

1 Amon's review of that, we were entitled to get this stuff

2 separate and apart from --

3        THE COURT:  I don't know what "stuff" you're talking

4 about.

5        MR. NELKIN:  I'm sorry --

6        THE COURT:  Mr. Nelkin, I would like you to give me

7 an example, please, of something that you have been denied

8 access to by a specific person.  Go ahead.

9        MR. NELKIN:  We have been denied access to the

10 entire category --

11        THE COURT:  A specific thing by a specific person

12 and then I'm walking out of the room.

13        MR. NELKIN:  The electronically stored information

14 pertaining to Two Rivers.

15        THE COURT:  That's not a specific thing.  It's a

16 broad category.  It's what the hearing is about next week or

17 the week after.  Anything else, folks?

18        MR. SCHAFHAUSER:  No, Your Honor.  Thank you.

19        THE COURT:  Have a very good day, everybody.

20 (Proceedings concluded at 11:06 a.m.)

21                  * * * * *

22

23

24

25

43

1      I certify that the foregoing is a court transcript from

2 an electronic sound recording of the proceedings in the above-

3 entitled matter.

4

5      _____

6                 Shari Riemer, CET-805

7 Dated:  May 9, 2016

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25