UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - X
STEVEN SCHREIBER,              :
INDIVIDUALLY AND              :    15-CV-6861
DERIVATIVELY ON BEHALF OF     :    (JO)
TWO RIVERS COFFEE, LLC,       :
                              :
        PLAINTIFF,            :
                              :    United States Courthouse
     -against-               :    Brooklyn, New York
                              :
                              :
                              :
                              :    Monday, December 14, 2015
EMIL FRIEDMAN; E&I INVESTORS   :    10:00 a.m.
GROUP, LLC; E&J FUNDING CO.   :
LLC; E&J MANAGEMENT, INC, E&  :
JERYG MANAGEMENT CORP, LLC;   :
24 HOUR OIL DELIVERY CORP;    :
MB FUEL TRANSPORT, INC; MB    :
FUEL TRANSPORT I, INC;        :
ASSOCIATED FUEL OIL CORP;     :
LIGHT TRUCKING CORP; 165      :
STREET REALTY CORP; PARK      :
AVENUE ASSOCIATES, LLC; NEW   :
YORK BEST COFFEE, INC; JOHN   :
AHEARN, SYLVIA EZELL; SONIA   :
RIVERA; JORGE SALCEDO;        :
MICHAEL DEVINE; MICHAEL       :
DEVINE, CPA; GEOFFREY         :
HERSKO; GEOFFREY S. HERSKO,   :
PC; SOLOMON BIRNBAUM; SINGLE  :
SERVE BEVERAGES              :
DISTRIBUTION; CRAZY CUPS; 26  :
FLAVORS, LLC; AND OFFICE      :
COFFEE SERVICES, LLC,         :
                              :
        DEFENDANTS, and       :
                              :
TWO RIVERS COFFEE, LLC,       :
                              :
        NOMINAL DEFENDANT.     :
- - - - - - - - - - - - - - - - X
```

***** CONTINUED ON THE NEXT PAGE *****

TRANSCRIPT OF CIVIL CAUSE FOR
PRELIMINARY INJUNCTION HEARING
BEFORE THE HONORABLE JAMES ORENSTEIN
UNITED STATES MAGISTRATE JUDGE

A P P E A R A N C E S:

| | |
|---|---|
| **FOR THE PLAINTIFF:** | NELKIN & NELKIN, PC<br>BY: **JAY NELKIN, ESQ.**<br>    **CAROL NELKIN, ESQ.** |
| **FOR THE DEFENDANTS:**<br>Emil Friedman, New<br>York Best Coffee,<br>Inc. | HERRICK FEINSTEIN, LLP<br>BY: **MICHELLE SEKOWSKI, ESQ.**<br>BY: **DAVID R. KING, ESQ.** |
| **FOR THE DEFENDANTS:**<br>E&I Investors<br>Group, E&J Funding,<br>E&J Management, E &<br>Jeryg Management<br>Corp | MEYNER AND LANDIS, LLP<br>BY: **DAVID B. GRANTZ, ESQ.** |
| **FOR THE DEFENDANTS:**<br>24 Hour Oil<br>Delivery; MB Fuel<br>Transport; MB Fuel<br>Transport 1;<br>Associated Fuel Oil<br>Corp; Light<br>Trucking Corp; 165<br>Street Realty Corp;<br>Park Avenue<br>Associates | THOMPSON HINE, LLP<br>BY: **RICHARD DePALMA, ESQ.** |
| **FOR THE DEFENDANTS:**<br>Michael Devine and<br>Michael Devine, CPA | ROSENBERG FELDMAN SMITH LLP<br>BY: **RICHARD B. FELDMAN, ESQ.** |
| **FOR THE DEFENDANTS:**<br>Geoffrey Hersko and<br>Geoffrey S. Hersko,<br>PC | ABRAMS GARFINKEL MARGOLIS<br>    BERGSON, LLP<br>BY: **BARRY G. MARGOLIS, ESQ.** |

***** CONTINUED ON THE NEXT PAGE *****

A P P E A R A N C E S (Continued):

**FOR THE DEFENDANTS:**     GARVEY SCHUBERT BARER
Solomon Birnbaum;          BY: **MAURICE W. HELLER**, ESQ.
Single Serve
Beverages
Distribution; Crazy
Cups; 26 Flavors and
Office Coffee
Services


**FOR THE DEFENDANTS:**     **NO APPEARANCES WERE MADE**
John Ahearn; Sylvia
Ezell; Sonia
Rivera; Jorge
Salcedo


Courtroom Deputy:  **ALICIA GUY**

Court Reporter:  **Angela Grant, RPR, CRR**
                 Official Court Reporter


Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.


*****************************************************************

          (In open court.)

          THE COURT:  We are on the record in Schreiber

against Friedman, 15-CV-6861.  We're passing around a

sign-in sheet, so I'm going to skip having everybody give

their appearances, but, please, the first time you stand up,

identify yourselves so that the court reporter knows who you

are.

          So we're scheduled to start a hearing today and we

will get to that, but there's been some developments over
the weekend.  There's a letter, motion to adjourn and I've
spoken to Chief Judge Amon and what she asked me to do is
have a conversation with you because there was --

          MR. FINKEL:  I'm sorry, Your Honor.  Can you speak
up a little bit, please.

          THE COURT:  Of course, yes.

          I've spoken to Chief Judge Amon about the motion
to adjourn, and if a ruling is necessary she'll come down
and hear from you and make a decision on that, you know,
while we're all still here in the courtroom.  But I saw in
the letter, and forgive me, Ms. Sekowski, is it your letter?

          MS. SEKOWSKI:  Your Honor, it was my colleague,
Mr. Schafhauser.

          THE COURT:  Yes.  So but there's a representation
that, that the defendants had agreed to what had appeared to
be the sticking point in terms of reaching a standstill that
would allow us to give this some more time.  And I'll be
clear about this.  There are some real time constraints, you
know.  The TRO expires after 14 days.  The plaintiff says it
doesn't afford them effective relief.  So simply continuing
it on consent on defendants wouldn't suffice.

          In the absence of an agreement that everybody can
sign on to, I do think we need to go ahead with the hearing
and do so in sufficient time to have it reviewed by Chief

PROCEEDINGS                    5

Judge Amon, that any recommendation I make be reviewed
before it expires, which is why we need to go forward in my
view.  But if we can reach an agreement that gives everybody
effective protection, I think it's far preferable to do so.
So I'm interested in hearing what exactly you proposed over
the weekend and why, because it sounds, from the defendants'
description like it meets the conditions that were being set
by the plaintiffs.  So let me ask Ms. Sekowski or whoever
wants to speak for the defendants first to describe
precisely what was offered new and then I'll ask for a
response from the plaintiff.

          MR. KING:  Your Honor, David King from Herrick
Feinstein on behalf Mr. Friedman.

          Mr. Schafhauser who is Mr. Friedman's normal
counsel, as you know, can't be here today and he and
Ms. Sekowski actually had the phone call with the Nelkins,
counsel for Mr. Schreiber.

          My understanding, Your Honor, is that what was
offered during that phone call was exactly the outstanding
issues that were left open on Thursday, namely, the
agreement to move accounts to a new bank as well as the
agreement to allow credit cards to be opened for the
company.

          Is there anything else?

          THE COURT:  Mr. Nelkin.

PROCEEDINGS                      6

MR. NELKIN:  Your Honor, first off, I would note that Mr. Friedman doesn't appear to be here, despite your order.

MR. KING:  Your Honor, if I may, Mr. Friedman is on his way.  He's caught in traffic.

THE COURT:  Okay.

MR. NELKIN:  But what I would say is is that even the basic things that Your Honor has already ordered such as equal access to the records and things of that sort have not been done.  My clients have been locked out of the system.  They're been locked out of the system.  We have screen shots from yesterday or the day before showing that they're locked out of the system.

THE COURT:  Does that sort of increase the -- give all the more reason to say we should have somebody independent running the company, you know, with access to both sides?  And, you know, you want a new credit card, you want a new bank, and, apparently, they're willing to do that.

Why won't that work?

MR. NELKIN:  I think even the person that they proposed to have access is still locked out of the systems. And so --

THE COURT:  Well, look, I understand.  And anybody who has violated an order is subject to contempt sanctions

PROCEEDINGS                                      7

that I won't hesitate to recommend.  And we'll get to that.
But assuming that the person that you had suggested would be
appropriate would be in charge and have full access, have
the credit cards for the staffing and the new bank, why
wouldn't that suffice?

            MR. NELKIN:  I guess our problem is it seems that
Mr. Friedman continues to exercise control within the
company to block the ability of people to function, and so
we need to have --

            THE COURT:  Tell me what you want to have a
standstill agreement in place.

            MR. NELKIN:  What we would like to see is we would
like to see the company operate in accordance with its
operating agreement.

            THE COURT:  You know what, that's really not
helpful.  It's just not.

            Specific steps that you want in place now.  And,
Mr. Nelkin, look, I'm trying to make sure that every side in
this case is protected.  I'm absolutely not interested in
posturing, or people standing in the way of what they say
would be effective relief.

            MR. NELKIN:  I understand that, Your Honor.  All
I'm saying is that there -- even according to their
papers --

            THE COURT:  Specific steps, please.

MR. NELKIN:  We would like to see that there be a
complete standstill with respect to any self-dealing and
with respect to any type of attempt to foreclose or do
anything that would harm the company or things of that sort.
We would like to see that an independent person be appointed
to --

THE COURT:  Who's the independent person?

MR. NELKIN:  I believe that we said that Mr. Papa
could have check writing authority for --

THE COURT:  You're content with that?

MR. KING:  Yes, Your Honor, we are.

THE COURT:  Okay.  So Papa.  Anyone else?  I want
to have a checklist, see what we can agree to and what we
can't.

MR. NELKIN:  We want to have a new bank in place.

THE COURT:  Agreed?

MR. KING:  I'm sorry, Your Honor.  Mr. Friedman
just walked in.

THE COURT:  Okay.  Good.  New bank, agreed?

MR. KING:  What was the last offer?  I apologize.
I was distracted for one moment.

THE COURT:  The new bank, do you agree?

MR. KING:  We agree.

THE COURT:  Okay.  What else?

MR. NELKIN:  We would like to see that there be no

further competition from using any of our books and records.

   THE COURT:  What does that mean?

   MR. NELKIN:  Meaning a lot of our books and records and client lists and things were transferred over to other Mr. Friedman entities and we would like to have some sort of understanding that those will not be utilized.

   THE COURT:  So specifically what can we do? Because, look, either we're going to do this on agreement or you're going to ask for this as relief, but one way or another we need to have specific steps.

   MR. NELKIN:  We would like to have all the books and records returned to the company's offices.

   THE COURT:  Okay.  And that is something I thought had been ordered as of Friday.

   MR. NELKIN:  It hasn't been done, Your Honor.

   THE COURT:  Okay.  Who would like to explain why something that I ordered wasn't and that was agreed to wasn't done?

   MR. KING:  Your Honor, we are agreeable to doing that.  I believe --

   THE COURT:  Yes, and I ordered it and it was supposed to have been done already.

   Why has it not been done?

   MR. KING:  Your Honor, we had one business day to accomplish this --

THE COURT:  Doesn't matter.  Why has it not been done?

MR. KING:  And our client was observing the Sabbath for parts of the weekend.

THE COURT:  And there are others who are working with him who need not, and in any event, that was not lodged as an objection to doing something that, and I know you weren't here so I don't blame you.

Ms. Sekowski, for example, you were here.  You said it would be done.

MS. SEKOWSKI:  Your Honor, I believe we had said that we would, with respect to electronic information, ensure that there was equal access.  And I believe that --

THE COURT:  I would be happy to get the transcript and walk through exactly what you said.

MR. KING:  Your Honor, my understanding of what our obligation was was to ensure complete and total equal access to Mr. Schreiber and --

THE COURT:  All right.  If we're going to quibble over whether things were supposed to be put back in the offices --

MR. KING:  Your Honor --

THE COURT:  Excuse me.  Excuse me.  Excuse me, sir.  If we're going to be doing that -- well, wait.

Do you agree that that was supposed to happen?

PROCEEDINGS                              11

          MS. SEKOWSKI:  Your Honor, I can read from the

transcript --

          THE COURT:  Do you agree that it was supposed to

happen?

          MS. SEKOWSKI:  Your Honor, I --

          THE COURT:  It's such a simple question.

          MS. SEKOWSKI:  I believe Your Honor ordered to

ensure that there was equal access with respect to the

electronically stored information.

          THE COURT:  Ms. Sekowski, final time.  If you're

not willing to answer the question about where the records

are supposed to be, I'll ask you to have a seat.

          Where are they supposed to be?

          MR. KING:  Your Honor, I'll --

          THE COURT:  I'm asking Ms. Sekowski, please.

          MS. SEKOWSKI:  Your Honor, on page 63 of the

transcript --

          THE COURT:  Where are they supposed to be

Ms. Sekowski?  Last chance.

          Have a seat.  I'll go get the -- does somebody

have the transcript of Friday?

          MR. KING:  Your Honor, we can hand up the

transcript for you.

          THE COURT:  Please.

          MR. KING:  Do you want me to give it directly to

him?  We're looking at page 63.

       THE COURT:  I'll find it.

       Now, I want to be clear.  I don't know off the top of my head what's in the transcript and what's not.  I had a simple question.  If somebody has an answer of where it is in the record or that it's not there, please tell me.

       MR. KING:  Your Honor, I'm happy to try to help. It's page 62, end of page 63.  The question was asked, is there any reason why Mr. Schreiber, as a partner, a member shouldn't have access to all of the books and records and computer passwords.

       And Ms. Sekowski agreed that she wasn't aware of any reason why that shouldn't happen.  And she said, certainly, to the extent that it's a matter of turning over passwords and stuff, but to the extent that you're requiring Mr. Friedman to do more than go out and hunt down documents and turn them over, we're going to be focused on preparing for hearing on Monday.

       And Your Honor's response was no.  Understood. But make sure that Mr. Schreiber has all the passwords that your client has and let everybody at the company know he has full access along with his counsel.  The paragraph goes on, but I think that's the relevant portion, Your Honor.

       THE COURT:  All right.  Give me a moment.

       MS. SEKOWSKI:  So with respect to that Your

Honor --

        THE COURT:  Give me a moment, please.

        MS. SEKOWSKI:  Sure.

        THE COURT:  Sorry.  I just want to make sure.

        MR. NELKIN:  Your Honor, I remember you ordering
it.  I'm searching for it myself, but I do remember you
ordering it.

        THE COURT:  I thought I had, but I'm not finding
it.  I'm not seeing in the concordance or reference to --
there's Brooklyn, but there's no reference to Brooklyn or
New Jersey and I thought it would have had either of those.

        MS. SEKOWSKI:  Your Honor, if I may just speak to
the password issue.

        THE COURT:  Just, you know, I'm a simple guy
trying to do one thing at a time.  Please bear with me.

        MS. SEKOWSKI:  Of course.

        THE COURT:  All right.  I'm not finding the
location.  I thought it was there, but apparently I'm wrong
so I apologize.  But I did -- the passwords are supposed to
be turned over.

        Have they been?

        MR. KING:  Your Honor, after the hearing on
Thursday, on Friday morning --

        THE COURT:  Again, because I'm such a simple
fellow and it's hard for me to follow things --

PROCEEDINGS                    14

          MR. KING:  The answer is, Your Honor, we provided

them with the administrative password for the entire system.

In fact, we learned that they already had the administrative

password for the entire system.

          THE COURT:  Now, when you say "administrative

password," are there others that have not been provided?

          MR. KING:  Your Honor, I think the only other

password that would be out there would be Mr. Friedman's

personal --

          THE COURT:  Provide that now, please.

          MR. KING:  -- personal password.

          THE COURT:  Yes, provide it.

          MR. KING:  -- which covers his personal email and

includes privileged materials that we can't provide without

first reviewing, Your Honor.

          THE COURT:  Well --

          MR. KING:  We had one day to effect these.  We're

doing the best we can, Your Honor.  Honestly, we're doing as

much as we can.

          THE COURT:  Well, the problem is apparently some

of these records are kept on personal systems that aren't

company systems, right?

          MR. KING:  I don't think that's correct, Your

Honor.  I'm new to this case, but my understanding in terms

of talking with the administrators who operate the computer

systems is that with the access to the -- through the
administrative password, they have access to every single
piece of information about this company that Mr. Friedman
would have.

        THE COURT:  Let me see the screen shots.

        MR. NELKIN:  Your Honor --

        THE COURT:  Provide copies to them.

        MR. NELKIN:  Yes.

        MR. GRANTZ:  Do we all get copies of that?

        MR. NELKIN:  I only had time to get --

        THE COURT:  Now, for the record, I'm looking at
three documents which are single page.

        MR. FINKEL:  For the record, Your Honor --

        THE COURT:  Please don't interrupt.

        MR. FINKEL:  I'm sorry.

        THE COURT:  For the record, I'm looking at three
documents, each a single page, that appear to be computer
screen shots with the heading Two Rivers Coffee at the top.
Two of them appear to be on a management tab along the top
line, then a checklist, a list of checks covered by dialog
box where under the heading user settings and user names
Steven Schreiber.  There's a further dialog box that says
you are not authorized to edit.  Please ask -- please ask
supervisor to perform edit.

        And then the third one, also Two Rivers Cafe

PROCEEDINGS                                16

checklist.  There's a dialog box that says "You are not authorized for this form."

So it appears that from this, and, please, somebody tell me if it's incorrect, that Mr. Schreiber isn't able to get access to this -- these records.

MR. KING:  Your Honor, I believe that these forms do not actually suggest that Mr. Schreiber is not entitled to get access to all the records of the company.  We had a conversation with Mr. Benzion Nussbaum who is the former  IT manager for the company.  He's been -- he's no longer there so he has no ability to now effect changes.

But what was explained to us is that, as I said earlier, Mr. Schreiber, actually has full access to all of the information on the system.  What he does not have the ability to do and what Mr. Nussbaum can't change because he's no longer employed by the company, is he does not have access to generate checks, to prepare checks.  So as I  look at the forms that were just handed to me, all of these have a label on them in the center that says Printer, Passaic Check Printer.

THE COURT:  Well, one of them does.  Sorry, two of them don't have that.

MR. KING:  The three that I have all say that, Your Honor.  We may have different documents.

I'm looking at three documents that say Passaic

Check Printer on each of them.

THE COURT:  I'm sorry.  I don't have that.

MR. KING:  My point, Your Honor, is that there's
different functionality that has not yet been restored, and
it, in effect, can't be unless Mr. Nussbaum is given access
back to the system.  And he's no longer employed there right
now.

THE COURT:  Wait.  You're saying that there are
things that you can't do on your own --

MR. KING:  There's a functionality --

THE COURT:  Excuse me.  Please do not interrupt
today.

MR. KING:  I apologize, Your Honor.

THE COURT:  Are you saying that there are things
that your company cannot do for itself, because the only
person who could do it is a former employee?

MR. KING:  Your Honor, I do not know who else has
the authority or the ability to prepare checks.  I know that
Mr. Schreiber does not.  And if you know --

THE COURT:  So right now there's nobody who could
do that?

MR. KING:  Your Honor, I -- do we know the answer
to that question, Michelle?

MS. SEKOWSKI:  I believe Mr. Friedman has that and
one of the employees, Sonia, who fell under the injunction

and she did not appear last week.

THE COURT:  So why can she do it, but Mr. Schreiber can't now?

MS. SEKOWSKI:  I believe that fell under the auspices of the operating agreement and what the parties had agreed to with respect to authority to do that.

Now, with respect to giving the authority or giving Mr. Schreiber or, frankly, Mr. Papa, who I believe we had agreed to or had said Mr. Friedman would be willing to do, it's really a function of having someone get into the system, an IT person, and change the authorities within the system.  Mr. Friedman is not an IT person and doesn't actually know how to do that.

THE COURT:  So who does?

MS. SEKOWSKI:  I believe it's either Mr. Nussbaum, who was employed by the company.  Actually --

THE COURT:  Who currently works for the company who can accomplish these things?

MS. SEKOWSKI:  I am not aware.  I believe Mr. Nussbaum performed IT services and was let -- was an independent contractor performing IT services for the company.  And from what I understand plaintiff --

THE COURT:  You understand how this appears, right?

MS. SEKOWSKI:  I do.  I believe he was let go by

plaintiff, Your Honor.  And then there was another former
employee, former -- I believe he was an independent
contractor named Yosi Rogosnitzky.  I don't know how to say
his last name, Your Honor, or spell it, I apologize, who
also had that ability and is no longer with the company.

  If, however, Mr. Schreiber and the other members
would be willing to give Mr. Nussbaum access to the system,
he could change the authority level and give them and
Mr. Papa, more specifically, the ability to print checks.

  THE COURT:  What do you say to that?

  MR. NELKIN:  Your Honor, I would say two things.
First off, there's quite a bit of functionality besides the
checks that are still restricted.

  Secondly, I would point out that the operating
agreement specifically says that they're allowed to issue
checks.  And so what she said about it's bound by the
operating agreement why they don't have it, it's expressly
stated that they do have the authority to issue checks.

  But the main problem we have with Mr. Nussbaum is
that Mr. Nussbaum was the person or one of the two people
that, along with Mr. Rogosnitzky, that we believe was
responsible for wiping the servers clean.  We asked for the
passwords.  We were told we couldn't get them.  Then they
finally delivered one password over on the day that the
server was clean and that came from Mr. Nussbaum.

THE COURT:  All right.  Look, it seems like every issue that I try and discuss with you folks about how to work this out on consent to get to a standstill leads inevitably to further problems that are preventing it.

I am more than willing to try and draft a standstill agreement that's going to be satisfactory to everybody, but it doesn't seem likely.

Does anybody disagree with that?

MR. KING:  We do disagree, Your Honor.  We believe that it would certainly be in the best interest of everyone and would allow this action to go forward in a much cleaner way.

THE COURT:  Well, what do you propose specifically?

MR. KING:  Your Honor, with respect to this issue of restoring functionality, if plaintiffs want to have an expert observe Mr. Nussbaum while he is given acces to restore or provide them with full functionality, that could be done.  To ensure that there isn't concern about further tampering, to ensure that no further tampering is -- I have to express myself clearly.

We're not agreeing that there was any tampering at all, but to ensure that there are no concerns about tampering, they can have an expert or Mr. Schreiber, if he wants, can sit over his shoulder and watch as he does it to

make sure that access is restored or provided with no
concern.

       For Mr. Papa, likewise, could sit with
Mr. Nussbaum and ensure that the functionally is provided
with no issues and no potential claims of future spoliation
arising from that.  Because we certainly, you know, in our
view when you're presented with a weak case, spoliation is
something we want to avoid at all possible and any
possibility of foliation charges.  We enjoy the protections
of having someone observe Mr. Nussbaum take that action.

       THE COURT:  All right.  Anything else?

       MR. NELKIN:  We would be willing to have someone
observe.

       THE COURT:  Okay.  So what else?

       MR. NELKIN:  We want to have some sort of
certification that our systems have been completely severed
from the other companies' systems.  Meaning that right now
or the company's computer systems and bookkeeping systems
have been combined.  Also, the accounts, the bank accounts
have been linked in ways that allow transferring back and
forth between unrelated companies.  And we would want to see
those links severed.

       THE COURT:  Any objection?

       MR. KING:  Your Honor, with respect to the link
between the accounts, if we're switching banks, I assume

that that would be a part of the process of switching

banks.

        THE COURT:  Okay.  So you don't object?

        MR. KING:  No.

        THE COURT:  Okay.  What else?

        MR. NELKIN:  But it would also be on the banks, so

it's all with computer systems and IT things.

        THE COURT:  Any objection to that?

        MR. KING:  Your Honor, I don't have an objection.

I'm not an IT person.  I don't know what needs to be done,

but I --

        THE COURT:  I think you don't want anything linked

to a competing company.

        MR. KING:  Your Honor, we certainly agree to

comply with any separation with any connection between the

systems.

        THE COURT:  Guys, I do want to tell you, please

feel free, everybody, to stay seated.  I feel badly that

everybody keeps going like that.

        MR. KING:  Thank you, Your Honor.

        THE COURT:  Whatever you're most comfortable with.

I know I would always stand up in court, but.  So whatever

you like.

        MR. NELKIN:  Well, I think that we would like to

ensure that, that all the books and records are, in fact,

PROCEEDINGS                              23

returned, whether it was ordered or not.

THE COURT:  Okay.  So return to Brooklyn today.

MS. SEKOWSKI:  Your Honor, we have no objection to
returning the books and records.  I would ask that you give
us until Wednesday so that we can undertake an investigation
and determine where they are and make sure that that's
actually done.  It's not -- we certainly don't object to
doing it.  It's literally a where are they and lets actually
get that done.  It's just --

THE COURT:  How about everything that you can
determine the location of today is transferred today.  With,
you know, an agreement that you do further information and
provide it immediately upon discovering its location.  And
as part of that, you know, I'm sure we can question all the
relevant people, all of whom are here today, to make sure
that they give us a full accounting.

MS. SEKOWSKI:  We have no objection to that, Your
Honor.

THE COURT:  Wonderful.

MR. NELKIN:  We would like that to extend to
offsite computers that our full-time employees have been
using offsite without the authorization of people like my
client.

THE COURT:  When you say "offsite"?

MR. NELKIN:  We have a full-time bookkeeper,

PROCEEDINGS                          24

Ms. Rivera, who is our full-time employee.  At
Mr. Friedman's instigation she hasn't come into work and she
works from a computer with all of our systems and all of our
records elsewhere.

          THE COURT:  Do you know where?

          MR. NELKIN:  We believe at the Bronx location, but
we would like to see that computer.

          THE COURT:  Any objection to that?

          MR. KING:  Your Honor, no objection.  Just a
question of us being able to mechanically accomplish this.
We will do our absolute best to deliver this as quickly as
possible.

          THE COURT:  Who represents Ms. Rivera?

          MR. FINKEL:  Yes, Your Honor.

          THE COURT:  Any objection on her behalf?

          MR. FINKEL:  I didn't hear everything he said.

          THE COURT:  What's your name, first of all?

          MR. FINKEL:  Richard Finkel, Your Honor.

          THE COURT:  Mr. Finkel, he wants access to your
client's computer that she's been using offsite.  Any
objection?

          MR. FINKEL:  No problem, Your Honor.  We just want
an opportunity to facilitate that and I don't know that --

          THE COURT:  You can facilitate it today, I'm sure.

          MR. FINKEL:  We'll do our best, Your Honor.

THE COURT:  You can do it today, I'm sure.

MR. NELKIN:  We would like Mr. Friedman to return the computer he's walking out of the office with under his arm on videotape.

THE COURT:  Okay.  Any objection to that?

MR. KING:  No, Your Honor.  That's fine.

THE COURT:  Okay.

MR. KING:  Your Honor, can I make one -- can I make one request the other way in terms of maintaining the status quo?

THE COURT:  You know what, I want to do it in an orderly way.  Let me see what they're looking to do.  If we have agreement from everybody on your side, then I'll hear the other concerns.  Okay.

MR. HELLER:  Your Honor --

THE COURT:  Identify yourself first.

MR. HELLER:  Your Honor, Maurice Heller.  I'm representing Schlomo Birnbaum, Office Coffee Services, 26 Flavors and Crazy Cups.  My understanding is that the computer that's maintained offsite by Ms. Rivera has information regarding more than one company, more than just Two Rivers.  And that would include the companies that I just mentioned, which they regard as competitors.  We don't want that information turned over to Two Rivers.

THE COURT:  Then why are they on the same

computer?

       MR. HELLER:  That was the way it was set up.
Unfortunately --

       THE COURT:  That's going to be a problem, I guess,
because it sounds like that's what's needed for consent.

       Now, look, I'm not saying that if there's not
consent at the end of a hearing they get that.  I suppose
it's possible.  But we're looking for ways to reach a
consensual standstill agreement.  So if you're saying you'll
object to it, then I guess we're done.

       MR. HELLER:  Well, we don't object to the Two
Rivers' information being turned over, that's not a problem.
And if the information regarding the other companies can be
separated, which I believe it can, we should separate that
information, take it off the computer and then deliver it to
them only --

       THE COURT:  Oh, no, no, no.  I don't think it's
going to be useful to talk about taking things off of
computers before they get access where we have allegations
of spoliation.  I think anything that's going to happen
you'd want to do in a way that everybody has access to.

       MR. FINKEL:  Your Honor, if I may, I have the same
issue and I think we can accomplish that.  The same way that
it was discussed a few minutes ago about the other corporate
computers, that is, you can have IT people looking over each

PROCEEDINGS                              27

others' shoulders, that the computer, as it is now, remains
the same.  And then two additional hard drives are produced,
one with the documents that are relevant to plaintiff's
concern and another with the documents that are relative to
the other companies that are separate and apart, if you
will.

          The computer that exists now shall be sealed and
not used again.  And each side will then have the separate
hard drives to do with what they wish.

          MR. NELKIN:  Your Honor, this is our full-time
employee charging us overtime on a weekly basis.  There
shouldn't be any other records on it and it's our computer
and so we would want to see --

          THE COURT:  Does anybody disagree that it -- well,
when you say "our computer," it's --

          MR. NELKIN:  It's the company's computer.

          THE COURT:  Yes, but the company is the nominal
defendant, correct?

          MR. NELKIN:  Correct.

          THE COURT:  You respect Mr. Schreiber
individually.  So it's not Mr. Schreiber's computer.  So do
you have an objection to what Mr. Finkel is proposing,
basically imaging the computer and, I guess, we can do that
for Ms. Rivera, is it?

          MR. NELKIN:  Yes.

PROCEEDINGS                    28

THE COURT:  And Ms. Rivera's computer and
Mr. Friedman's computer.  Imaging it, you get a copy, they
get a copy and you do with it what you will.

MR. NELKIN:  It was my understanding that they
didn't agree to the sharing of whatever was on the system.

MR. FINKEL:  I'm sorry.  Can you say that again.

MR. NELKIN:  It was my understanding that they
protested to the sharing of whatever was on the system.

THE COURT:  Well, I'm sorry, that's Mr. --

MR. HELLER:  Heller.

THE COURT:  Heller.

This idea of imaging the computer --

MR. HELLER:  These companies should not be
competitors, but they are, because Two Rivers at some point
decided to sell to end users.

THE COURT:  What do you think about the idea of
imaging the computer?  You can have a confidentiality
agreement, and an agreement, you know, restricting use of
information of one company by another.  But I do think that
if we're going to reach consent to a standstill agreement
here, we're going to need some way of both sides getting
access to the same information.

MR. HELLER:  Your Honor, what's on the system in
addition to the financials, and we don't really have a
problem turning over financial information, that's fine.

They can have all the financial information they want, but we're talking about lists of customers.

THE COURT:  Yes, I understand.  There's sensitive information.  What do you say to him because if we have consent, I think we'll be able to move forward to a standstill.  If there's not, we just need to move forward to a hearing absent a ruling to the contrary from the Chief Judge Amon.

MR. KING:  Can I ask for a solution, Your Honor?

THE COURT:  Please.

MR. KING:  Could we perhaps have an attorneys' eyes only agreement for any sensitive information on the computer that would prevent it from being used on a competitive manner?

MR. NELKIN:  I would want to have some ability to be able to consult with our clients so that we can understand what information is, but we are perfectly willing to agree to all sorts of appropriate confidentiality and nonuse provisions in it.

THE COURT:  I think -- may I make a suggestion along the same lines.  I think you can have something a little more flexible, but along the lines of attorneys' eyes only.  It certainly can start off with attorneys' eyes only for reviewing and consulting each other about what clients can have access to with some guidelines in place.  Like, you

know, something that is designated as, you know, Crazy Cups
is not to go to Mr. Schreiber, you know, absent agreement or
further judicial action.

I'm sure you can come up with something that
accomplishes what we're trying to get at today which is
preserving an acceptable status quo for everybody so that we
can litigate what needs to be litigated with a little more
breathing space.

MR. NELKIN:  Your Honor, as long as there is
imaging of the entire computer so that all files can be
accessed in the future at some point and can be reviewed by
attorneys, at least in the first regard, and as long as
there are steps in place to ensure that all the data and the
computer itself is preserved and --

THE COURT:  Well, that's --

MR. NELKIN:  Yeah, so basically as long as that's
in place then we can agree.

THE COURT:  All right.  So I think we've got
something that fits to Ms. Rivera's computer, Mr. Friedman's
computer.

Mr. Nelkin, I'm asking you to keep going down the
list.

MR. NELKIN:  I believe that we've covered some of
these.  If we haven't, I apologize.

THE COURT:  Okay.

PROCEEDINGS                    31

MR. NELKIN:  We want every password and full and
equal access to all computer systems that the company has
including the Launch system, including the Quickbooks
system and any other system that is there.

THE COURT:  Now, recognizing that some of that
presents a technical issue, because Mr. -- I forget his
name --

MR. GRANTZ:  Nussbaum.

THE COURT:  Nussbaum -- thank you -- is no longer
an employee and we can bring him back and have people, you
know, looking over his shoulder to accomplish some of that.
But assuming that that can be done.

MR. NELKIN:  Your Honor, I would like
clarification from Mr. Nussbaum, if possible, or from my
opposing counsel.  Does Mr. Friedman himself have passwords
or Sonia have passwords that give access now, and could we
have access through those passwords now?

THE COURT:  Okay.

MS. SEKOWSKI:  Your Honor, I believe Mr. Friedman
does have access to the Launch system with a password.  It's
also my understanding that that password is identical to the
password that just gets him into the local computer and
several other things, including his personal email which may
contain privileged information.

THE COURT:  Okay.  Well --

PROCEEDINGS                    32

MS. SEKOWSKI:  So we are more than willing to
ensure that they get the same functionality with respect to
the Launch system as soon as Mr. Nussbaum is able to do
that.  There is an issue with turning over Mr. Friedman's
password to his computer which would give --

THE COURT:  Then, I guess, we'll have consent so
we'll have a hearing.

MS. SEKOWSKI:  Well, Your Honor, if I may.  The
concept of equal access, Mr. Friedman certainly doesn't have
the passwords to their local computers either.

THE COURT:  Is there any company information on
Mr. Schreiber's computer?

MR. NELKIN:  I believe he has a computer at the
office.

THE COURT:  No.  No.  But you're talking about
essentially private email?

MS. SEKOWSKI:  I believe he -- Mr. Friedman uses
the same password to access his email, his personal email.

THE COURT:  Well, it's subject to discovery then
in any event.

MS. SEKOWSKI:  Prior -- and not necessarily,
particularly if it's privileged, Your Honor.  And we haven't
had an opportunity to review those or anything else on that
local computer.  We absolutely don't have an issue with
giving them the functionality to the Launch, and we will

PROCEEDINGS                               33

certainly, if they will allow us to work with Mr. Nussbaum,
do that.

        And to the extent that there is information on
Mr. Friedman's computer that is discoverable, we have no
issue turning that over.  However, with respect to
Mr. Friedman's personal computer, local computer, and his
local -- and his personal emails, we do object to turning
those over right now when we haven't had an opportunity to
review them to decide if there's privileged or confidential
information on them.

        THE COURT:  Does anyone see a way past this
obstacle?

        MR. NELKIN:  One way would perhaps be Mr. Friedman
could change the password to his email, if he just is using
the same password.

        MS. SEKOWSKI:  We have no objection to doing that.

        THE COURT:  Okay.  So change the password to the
email, not to the Launch system and other things.  Preserve
all email, obviously.  I think that's already covered.

        Okay.  What next?

        MR. NELKIN:  We would certainly need instructions
as to how to enter those passwords and to access --

        THE COURT:  I think that's part of that.

        Anything else?

        MR. NELKIN:  We want to make sure that we can

PROCEEDINGS                    34

access the payroll and perform payroll functions.

        THE COURT:  Any objections?

        MR. KING:  No, Your Honor.

        THE COURT:  Okay.

        MR. NELKIN:  We had discussed yesterday that there
would be a payroll service that would come in and perform it
as opposed to having us do it, because it's more efficient
and less -- and would be in the better interest of the
company, we believe.

        THE COURT:  So you'd hire an outside vendor to do
it.  I don't want to get into an argument about the
responsibility for the costs of that.  I take it that can be
worked out later as part of the overall litigation.

        MR. NELKIN:  Yes.

        THE COURT:  Any objection?

        MR. KING:  Your Honor, that's probably correct.
I'd have to say we anticipated a lot of issues to be
discussed this morning.  We're getting beyond what I've
covered with my client because I don't want to step out --

        THE COURT:  I know, particularly on your side, for
reasons I completely understand, you're feeling under the
gun to litigate a hearing today.  And I'm really trying to
find ways to get us to an acceptable solution.

        MR. KING:  And I appreciate that, Your Honor, but
what I was going to suggest was rather than asking me to

PROCEEDINGS                          35

commit to some of these issues that are beyond my knowledge

in terms of my client's consent, could we get a full list of

whatever remaining issues will be covered, I think -- I hope

the majority of them.  Could I get a list of whatever else

is left and have a chance to consult with my client briefly

before committing?

THE COURT:  Sure.  Got it.

MR. NELKIN:  We had discussed having a company

credit card and also that each of the members could have

their own company credit card.  We would also insist that

going forward that all expenses be used through a company

credit card.

THE COURT:  Okay.  Anything else?

MR. NELKIN:  We want all the checks to be issued

from our office or through the payroll facility as opposed

to outside locations.  We want all of the records and bills

to be shifted back to our service.  Right now they're going

to Mr. Friedman's houses and others places.  We want all

of --

THE COURT:  Physical location of all records in

the company office?

MR. NELKIN:  No.  Not -- the records, yes, but we

want all accounts for which Mr. Friedman's house or some

other address like a P.O. Box.

THE COURT:  Got it.  So, for example, on the bank

account, you couldn't list the house, you'd have to list the company office.

        MR. NELKIN:  Right.  And any other accounts that are like that, they would need to be --

        THE COURT:  Do you have some way of identifying all of those accounts?

        MR. NELKIN:  We can identify some of them, but, honestly, it's in Mr. Friedman's --

        THE COURT:  So there would have to be some way of defining what is a company account?

        MR. NELKIN:  Correct.

        THE COURT:  So with any outside vendor, financial institution, I guess anything in the name of Two Rivers --

        MR. NELKIN:  Right.

        THE COURT:  -- the address for it would have to be --

        MR. NELKIN:  Two Rivers.

        THE COURT:  -- the Two Rivers office.

        MR. NELKIN:  And the contact for it and the information would be a Two Rivers person and a Two Rivers email and Two Rivers phone number and things of that sort.

        THE COURT:  In terms of identifying the person as a contact, given that it sounds like both sides agree on Mr. Papa as the person in charge, given both sides have access it just makes sense to provide him or would you

PROCEEDINGS                    37

prefer somebody else?

          MR. NELKIN:  I think that Mr. Papa is one
possibility, and perhaps we had also discussed that the
bookkeeping would be done by Nicole Barge, who's under him
in some form, and I think that perhaps it should go to both
of them.

          THE COURT:  Okay.  Just so I get as much clarity
as possible so that Mr. King can consult with his client.

          MR. NELKIN:  We would want any other records that
are Two Rivers related from the other defendants to be
returned as well, so, for instance, Mr. Devine.

          THE COURT:  Okay.  So from all defendants all Two
Rivers' records.  Same thing as with Mr. Friedman, if it's a
computer --

          MR. NELKIN:  Correct.

          THE COURT:  -- image the computer, subject to a
usage agreement among counsel.  And if there are records,
copies provided.

          MR. NELKIN:  Correct.

          Right now, because of the way Mr. Friedman set up
the account, there are also -- there are basically two sets
of bookkeeping or two sets of books, really, and we would
like to, at least during this period, have QuickBooks be the
one that governs going forward.

          THE COURT:  I didn't hear that word, Quick Picks?

PROCEEDINGS                    38

          MR. NELKIN:  QuickBooks, sorry.  I swallowed it, I
apologize.

          THE COURT:  In other words, where the two
conflict --

          MR. NELKIN:  Right now we have what we believe are
inconsistent book entries, and so while we would -- we would
want to see things be entered into QuickBooks and we would
certainly want to -- to the extent they're being entered
into Launch, we would want them to be consistent entries.

          THE COURT:  Okay.

          MR. NELKIN:  But --

          THE COURT:  When I say okay, all I'm saying is I
understand, and I'm going to wait to hear from the
defendants.  Not that I'm saying yes, because I don't have
the authority to do that.

          MR. NELKIN:  I'm just looking through my notes,
Your Honor.

          Your Honor, my client brings up an interesting
question, Your Honor, which is these are things that he
believes are important.  There are other members of Two
Rivers who are, besides Mr. Friedman, who are present here.
And they may need to say if any of these things are
objectionable to them, and if that's an issue for them, just
because we don't, ourselves, have the ability to agree on
their behalf.

THE COURT:  Okay.  So you'd need to consult with them while they're consulting or their side?

MR. NELKIN:  Right.

And then the other thing is we would need to make sure that Mr. Papa felt that he had whatever functionality and requests had been made so that he could do whatever is best --

THE COURT:  I think unless he's here --

MR. NELKIN:  He is here.

THE COURT:  Okay.  Look, I think we're at a point where it makes sense for the two sides to talk among themselves, see if what's been proposed so far is objectionable to anybody and whether there's anything else that needs to be thrown into the mix, all right.  I want this to be done quickly because if we're going to have a hearing today, I want to get on with it.

MR. KING:  Understood, Your Honor.

THE COURT:  Take ten minutes.  I'm going to update Chief Judge Amon of where we are and we'll come back.

(Recess taken.)

THE COURT:  Okay.  All right.  So we're back on the record.

Were you folks able to reach an agreement?

MR. KING:  Your Honor, I think we've reached agreement on most -- why don't you say what we have.

PROCEEDINGS                    40

          MR. NELKIN:  Yeah, basically, Your Honor, I think
that it is possible that we can reach an agreement on the --
a number of the technical corporate matters.

          THE COURT:  Yes.

          MR. NELKIN:  But there's been a development or
potential development that we feel could be a deal breaker
from our side, and so provided we can get an agreement from
Mr. Friedman that preserves the status quo on that one
particular point, then that won't be a problem for us.

          THE COURT:  Okay.  What is it?

          MR. NELKIN:  We have come to this Court by filing
a temporary restraining order and we have certain documents
from certain Beis Dins that were put into the record and are
relying on.

          Mr. Friedman has been running around and we have
been getting summonses from a different Beis Dins.  In fact,
we got a new summons on Friday afternoon, a couple -- like
two hours before Sabbath, and so we want an agreement that
if we extend this hearing so that there -- can have time to
prepare and everything else, that we will come back for some
hearing on the provisional remedies that we're seeking and
that that will be based on the framework that, as it existed
on the day that we filed this case.

          THE COURT:  I take it that in seeking that as part
of the standstill agreement, you're not asking them to give

up arguments that they have made and want to develop without
arbitrability and the effect of prior Beth Din actions and
the effect of the operating agreement with respect to that.

         MR. NELKIN:  Absolutely not.  We just want it
preserved as of the date we filed the complaint.

         THE COURT:  And no new actions to take the dispute
away from this Court is now pending in this Court?

         MR. NELKIN:  Correct.

         THE COURT:  Okay.  What do you guys say to that?

         MR. KING:  Your Honor, first of all, thank you for
pointing out we do have a motion pending right now --

         THE COURT:  Yes, of course.

         MR. KING:  -- to basically have, I guess, the
outcome of the motion should be about whatever provisional
remedies appropriate is put in place and the rest of this
action is heard by Beth Din.  That's what's called for in
the operating agreement.  You know, it's limited to
provisional remedy and that's also the requirement under the
Federal Arbitration Act.  We don't need to argue the whole
motion right now.  But from our standpoint, Your Honor, I'm
not sure I understand exactly what it is that my colleague
is proposing.  From our standpoint --

         THE COURT:  Wait.  Wait.  If you don't understand
it, we need to have clarity.

         MR. KING:  We do.  I agree.

THE COURT:  My understanding is that essentially no new Beth Din actions or summonses issued that would in any way preclude the plaintiffs from seeking the relief in this court that they're seeking.

You've made arguments about why it's not available, and those will be heard.  And tell me if I'm getting this wrong, but nothing new.

MR. NELKIN:  Nothing new from the point in time when we filed our complaint.  Meaning that if we had a Heter on the day that we filed the complaint, that Heter remains in place even if it's removed tomorrow.  We want to have an agreement.

THE COURT:  Well, are you saying -- are you trying to undo anything that has happened since you filed the complaint? Or just say that whatever happens with that, you know, nothing new will happen as of today?

MR. NELKIN:  It's my understanding that as we stand here today, the Heter is in place.  But I want an agreement from the other side that their motion and everything else will be decided based upon the point in time that we filed the complaint.

THE COURT:  As opposed to what?

MR. NELKIN:  As opposed to some future point in time.  Meaning that if some -- there's some new development -- if the Beth Dins dates our Heter or something

PROCEEDINGS                    43

of that sort in the near future, that type of.

        If -- we're prepared to proceed we have the right
to proceed now for a hearing.  And we just want to make sure
that we have that opportunity, if we agree to postpone,
based on an agreement that the status quo will stay in
place.

        THE COURT:  I want to put this in terms of our,
you know, I think I know what a Beth Din is.  I think I know
what a Heter is.  But I want to put it in terms of within
the framework of what happens in the federal court.  You
have in your view permission from an arbitrator with
jurisdiction to give you leave to commence this action in
court.

        MR. NELKIN:  Correct.

        THE COURT:  You want to continue litigating this
in federal court.  I guess the question I'm trying to figure
out is what if -- take out the context of a religious court,
just any arbitration proceeding, if the arbitrator were,
after today, to reverse its ruling and say, you know, you
know you're no longer able to go to federal court, it may,
it may not preclude this action, depending on how the court
interprets it.  But I take it that the other side would
normally be able to say, well, you're not able to arbitrate
anymore because of that.

        Are you saying that they shouldn't be allowed to

make that argument?

       MR. NELKIN:  What I'm saying is if the motion --
the reason for postponing it is, in part, so that they can
turn around and --

       MR. FINKEL:  I'm sorry.  I can't hear you.

       THE COURT:  Sit closer, please.  Sit closer.
There's a seat right at the front.

       MR. NELKIN:  If the reason for postponing this
hearing is in any way, shape or form, in part, because they
seek to alter the current status quo in our mind, then we
are unwilling to be flexible on the type of relief that
we're prepared to agree to today when we'd prefer to have
the hearing today.

       THE COURT:  Got it.  Okay.  So what do you say to
that?  In other words, as an alternative to proceeding
today, we will maintain the status quo, not only in the ways
that we've been discussing, but also procedurally so that
the motion to dismiss and the arguments of -- against the
preliminary injunction are based on the status, the current
status quo of arbitration proceedings.

       MR. KING:  Your Honor, I apologize.  I think
you're aware I'm new to this client.  I'm unaware of what
he's referring to in terms of existing arbitration orders.
I need to understand that a little better.

       I realize we just had a break.  I apologize.

PROCEEDINGS                          45

          THE COURT:  Take a moment.

          MR. KING:  I'm doing my best, Your Honor.

          THE COURT:  Yes, I understand.  Very quickly
though, please.

          MR. KING:  I need to get to the bottom of the
existing arbitration positions.

          THE COURT:  I'll just wait here, but do feel free
to converse or whatever.  We'll just be off the record.

          (Recess taken.)

          (Continued on the following page.)

(In open court.)

MR. KING:  Apologies for the delay.

THE COURT:  Okay, is that everybody?

MR. KING:  So, Your Honor, I confess I've just learned an awful lot in about ten minutes about what's been going on in terms of Beth Din proceedings outside of the court system.  I'm trying to understand exactly what it is they want.

Here's what I think we can say we're willing to do in terms of the Beth Din proceedings.  We're willing to agree that Mr. Friedman will not commence any new Beth Din proceedings and we're willing to agree that he will not request any new relief from existing Beth Din proceedings pending the outcome of a hearing in this matter.

What we can't agree is that if a Beth Din that already has a hold of this matter decides to issue a ruling that the parties will ignore that ruling.  As a matter of their faith, they can't do that.

THE COURT:  Let me ask you this:  Are you willing to agree -- and maybe this is inconsistent with what you just said, and I think this captures what the plaintiffs can reasonably be looking for -- any argument available to either side right now with respect to arbitrability or anything else affecting the relief that's available in this court would be available when we return to court later?  Because otherwise, I

PROCEEDINGS                    47

can understand that they would be giving up something by agreeing to postpone the hearing.

MR. KING:  I'm sorry, Your Honor, I did not follow what you just said.

THE COURT:  Any argument that is available to you right now and only those arguments that are available to you right now, in terms of limiting the power of this Court to afford relief, are those that would be available later.  In other words, the passage of time won't affect and whatever happens between now and when we come back to court won't affect the arguments that you can make about the scope of relief available because of arbitrability or other reasons.

MR. KING:  Are you asking us, Your Honor, to agree to basically stay our requested relief in the motion to dismiss to compel the case to arbitration?

THE COURT:  No.  I'm just saying that whenever that's decided, it's decided on the same legal and factual predicates as would be available today.

MR. KING:  In other words, no new rulings from a Beth Din would be put before the Court concerning the arbitrability of this dispute.

THE COURT:  I think that's essentially it, yes. Because otherwise, one side or the other may be prejudiced by not going forward today.

MR. KING:  I understand.  Could I have one more

PROCEEDINGS                                    48

minute?

        THE COURT:  Yes, please.

        MR. NELKIN:  Your Honor, if I could just --

        THE COURT:  Wait.  Yes, sir.

        MR. De PALMA:  Your Honor, I am even less in the
know so I want to make sure I'm clear.  What we're dealing
with here, if I'm hearing this correctly, is really with
respect to this arbitration, correct?

        In other words, for example, if for some reason
factual things having nothing to do with the arbitration were
to arise that would make a request for injunction
inappropriate because there's no longer irreparable harm, for
example, having nothing to do with the arbitration, are we
being asked not to be able to raise that in January or
February when we come back?

        Because the argument would be we could go forward
now, obviously, but if those things happened after the
hearing, presumably we could come back in and say, let's
vacate.  So we wouldn't be giving up that even if we went
forward with a hearing now.  I don't know why we would give up
something -- I understand the arbitration.  I frankly don't
care.  That's not got anything to do with my clients.  But I
want to know whether what we're talking about is limited to
the arbitration or is it everything?  Are we frozen in stone?

        THE COURT:  I understand the concern.  May I frame

it like this, because it's not an unreasonable one.  I'm
trying to frame it in a way that you can all live with.  An
argument or the factual legal predicate for an argument that
is available today for the awarding of preliminary injunctive
relief remains available, as does any argument that would be
available later, based on subsequent developments, to vacate
an award.

          MR. De PALMA:  That works for me, Judge.  That makes
sense.

          THE COURT:  Does that work for you?  Because
presumably, if you went forward today and something happened
later that would allow them to come back and say it should be
vacated, you can't take that away from them.

          MR. NELKIN:  I think that that -- if I understand.
I just want to make sure that that would not extend to any new
ruling by a Beth Din.

          THE COURT:  I don't know, because, for example, if a
Beth Din were to make a ruling later -- we're not going to
predict everything.  But there might be some rulings that
could be cited as the reason not to award preliminary
injunctive relief in the first place.  That would be out of
bounds under what I'm suggesting, right, because that would be
something that prejudices you by waiting.

          But there might be a ruling that would be a basis
for them -- if you were to obtain relief now would be a basis

PROCEEDINGS                    50

for the defendants to come back and say, vacate the
preliminary injunction or lift it, that we shouldn't be trying
to preclude.

          MR. NELKIN:  Your Honor, I don't think that we have
any concern about factual developments aside from something to
do with the Beth Din.  So I think if we could have some
understanding that the status quo remains in place
procedurally with respect to any Beth Din ruling or decision
or anything of that sort.

          And the only clarification I would like is I would
like it to be, just so that there's no question as to when
things have occurred, that it be as of the date of -- that our
case was filed as opposed to --

          THE COURT:  Within the last week?  I forget when it
was filed.

          MR. NELKIN:  Yes, it was filed in the last week.  It
just has a fixed date.

          THE COURT:  Okay, fixed date as of last week, that's
the proposal on which you are willing to not go forward today?

          MR. NELKIN:  Correct, along with the other relief
that I think is --

          THE COURT:  So why don't you take a moment.

          (Pause in the proceedings.)

          THE COURT:  All right, folks.  So, Mr. King.

          MR. KING:  Your Honor, I feel like I'm learning a

new language while I'm out there so I'm doing the best I can to absorb this and understand the full ramifications of what is being requested by my opposing counsel.

I think, as I understand it -- and please correct me if you think I have this wrong.  I think that we are willing to agree to the extent that essentially the record would be frozen with respect to the issue of arbitrability and preliminary injunctive relief.

We are not willing to agree that the record would be frozen with respect to any potential issues that would relate to our motion to dismiss outside of arbitrability -- or is that too far?  That's too far.

We're not willing to agree to the record being frozen with respect to the motion to dismiss.  I think there's been some confusion in terms of talking about arbitrability issues and then motion to dismiss issues.  So I think what is driving this, Your Honor, is that the plaintiffs believe that or are concerned that the Heter upon which they want to rely to proceed here is likely to be revoked by the --

THE COURT:  Can I ask about that?  To the extent that one of the claims here is pursuing RICO brought by Mr. Schreiber in his individual capacity, would he be precluded from seeking a statutorily-prescribed remedy for the violation of federal criminal law?

MR. KING:  In the arbitration, Your Honor?

PROCEEDINGS                    52

THE COURT:  Yes.  In other words, if you're right that there is -- because I just wonder if we're arguing over something that would not in any event obviate the need for further litigation in the Federal Court that could provide full relief that plaintiff seeks.  Right?

Congress has said that anybody injured in his person or business by the criminal violation of the RICO Act can seek damages and injunctive relief.  Would the arbitration trump that?

MR. KING:  That's a really good question, Your Honor.

THE COURT:  Because it seems to be contrary to Congressional intent.  And part of what I have in mind is that the RICO Act is meant to be read by its terms.  It must be read literally to achieve its remedial goal.

MR. KING:  At the same time, Your Honor, you have the Federal Arbitration Act which has been in place for years and Federal Courts have over and over made it very clear that --

THE COURT:  I know.  I just wondered if you know of any --

MR. KING:  There's a tension between the two.

THE COURT:  Right.  I could easily be wrong on this, but I think the RICO Act is newer.  I could be wrong about that.  I think it predates -- the Arbitration Act predates the

PROCEEDINGS                         53

late '60s.

So Congress would be presumed to have known what it was doing and writes what it explicitly describes as a broad remedy and says it's to be read liberally or construed liberally to achieve its goal.

I mean, I'm just wondering if that would in any event, regardless of what might happen to other causes of action, which I agree with you, there's that strong breadth in federal law about arbitrability.  Would it preclude actually Mr. Schreiber from seeking a RICO remedy?

MR. KING:  Your Honor, I would be speaking out of turn if I gave you a firm answer.  I can tell you that my expectation is the Arbitration Act is going to trump.  That's my expectation.

THE COURT:  I don't know.  Do you know of any case law one way or the other, anybody?  Look, we need not speculate.

And are you willing to have a standstill agreement that carves out arguments on a motion to dismiss that wouldn't be heard today anyway?

MR. NELKIN:  Your Honor, we've been now to five separate Beth Dins with Mr. Friedman.

THE COURT:  For everybody, it's going to be so much easier if you just answer the questions that I ask.

MR. NELKIN:  I understand.  We're not willing to

PROCEEDINGS                          54

agree to anything that keeps the Beth Din's -- that could
alter the Beth Din's current status quo.

          THE COURT:  I'm not sure I understand.  So look, let
me put it this way:  It seems to me they want to do everything
that you're asking to do except say that if something happens
in the Beth Din they want to be able to come back and add that
to the mix with respect to the motion to dismiss, which
wouldn't be decided in any event if we had a hearing today.

          So just to sort of play it out, if you were to
prevail completely in seeking the preliminary injunctive
relief, in your motion for preliminary injunctive relief, and
then later lose the motion to dismiss, you'd lose, right?  The
case would be dismissed.

          So it strikes me that if you're not willing to do
what Mr. King is describing, you're asking to get by agreement
more than you can achieve today through litigation.  But if
I'm missing something about that, let me know.

          MR. NELKIN:  I guess, Your Honor, the way that we
look at it is Mr. Friedman is running around trying to change
the status quo, and so we feel that a hearing to preserve the
status quo is appropriate.

          THE COURT:  But he can go to the Beth Din -- let's
say we have a hearing today, which we are going to do within
the next five minutes if we're not in agreement -- or, rather,
I will turn it over to Judge Amon to rule on the motion for an

adjournment.

I take it if we have the hearing today and it goes into tomorrow and you win, Mr. Friedman can still go to a Beth Din with whatever claim he wants and the Beth Din will say whatever they say, and you'll have to deal with it in litigating the motion to dismiss, right?  I can't preclude him from going to a Beth Din and seeking relief.

MR. NELKIN:  Your Honor, I have not researched the issue, but I believe that there may be some case law that suggests that there are limits to what Mr. Friedman can do subsequent to a case being filed.

THE COURT:  I take it you understand that a preliminary injunction, even if you obtain it, will not by its terms preclude Mr. Friedman from seeking relief from a Beth Din.

MR. NELKIN:  I understand that Mr. Friedman can do certain things or can try to do certain things.  What I'm saying is I haven't researched the case law to know what the courts will allow an arbitrator to do subsequent to issuing its initial decision.

And so I don't want to agree to give them a power to do something that they don't have the power to do.  I'm perhaps willing -- well, I am willing to simply say that they can do whatever the law entitles them to do and we'll litigate that at some point in the future.

PROCEEDINGS                              56

THE COURT:  Okay.  Well, if you believe, as I do, that a preliminary injunction, if granted, wouldn't preclude Mr. Friedman from going to a Beth Din and seeking whatever relief he might seek and then being able to argue it on the motion to dismiss even if a Court might think it is of no effect, are you willing to live with that?

MR. KING:  Your Honor, I'm not sure I fully understand where you're going with this right now, but what I will say is that we are -- two things.

First of all, to alleviate one of the concerns I just heard, we've already committed that Mr. Friedman, if an agreement is reached, would not file any new Beth Din proceeding and would not make any new application for relief in an existing Beth Din proceeding.  So there would be no new efforts to instigate some sort of action.

THE COURT:  Look, let's not dance around this.  They think that your client is trying to keep them from getting what they believe is their right to a day in Federal Court, and they think that your client is going to use unfair means to do so.  I have no idea if that's true or not.

They want their day in court.  If you're willing to give it to them to the same extent that they have it now, that's fine.

MR. KING:  To the same extent that they have it now meaning that we would not be --

THE COURT:  Guys --

MR. KING:  I'm trying to understand.  This is a very significant point.

THE COURT:  Yes.  And we are going to a hearing.  I just need to know now.  You guys know well enough what we're talking about.  Do we have an agreement or not?

MR. KING:  We have an agreement on the term that I stated before his last comment, which was that the agreement we would make is that no new events that would occur would involve the issue of -- would affect the issue of arbitrability, but we would preserve our right to use any developments with respect to the motion to dismiss, Your Honor.  That's what we can do.

THE COURT:  And you want something more that you can't achieve through litigation today?

MR. NELKIN:  We want -- yes, we want the status quo as it exists today.

THE COURT:  Do you think that you're talking about something different?  Because look, guys --

MR. NELKIN:  Yes, Your Honor, I'll tell you what I think.  Here's what I think.

THE COURT:  Because look, to the extent that you are insisting on a hearing today and imposing on the defendants some really significant burdens just in terms of the ability to fairly litigate matters and insisting on doing that to

PROCEEDINGS                          58

achieve something that you can't achieve through litigation, I have to give serious thought to the balance of equities of going forward today.

MR. NELKIN:  I understand, Your Honor.  I can have a meeting in the hallway after to talk to my client just to find out, as Mr. Friedman did --

THE COURT:  It's 11:27 on the clock.  At 11:30, I'm either going to confirm on the record that we have an agreement or I'll call Judge Amon and say I need her to come down here to rule on the motion if I haven't already reconsidered at my level whether it should be reconsidered. All right?

MR. NELKIN:  Okay.

THE COURT:  Let's have an agreement or not at 11:30.

(Pause in the proceedings.)

THE COURT:  Okay.  So, folks, do we have an agreement?

MR. NELKIN:  Your Honor, I just need them to clarify one point and then I think we can have an agreement.

THE COURT:  Okay.

MR. NELKIN:  We have been requested by the Beth Din that issued our Heter for both sides to do research and look into the possibility of submitting to a sixth Beth Din, and I want to understand if they're seeking -- if that's considered part of filing a new Beth Din.  That would require, as I

understand it, us going to that Beth Din, filing -- entering
into a new arbitration agreement to cover that Beth Din.  I
would consider that to be something new and a new filing, but
I just would like them to --

          THE COURT:  Do you understand the question?  Because
I'm not sure I do.

               MR. KING:  No.  It's a new wrinkle, Your Honor.

               MR. NELKIN:  We have received a communication, as
has Mr. Friedman, I believe, from the existing Beth Din that
we have our Heter from that told him that he needed to go to
one of three Beth Dins and escrow a bunch of money, and I
think I submitted that order to Your Honor.

               THE COURT:  Yes.

               MR. NELKIN:  They have written back to us to say
that they would like both parties to consider whether they
have an objection to a fourth -- a sixth Beth Din now and to
report back to them I believe by tomorrow.

               THE COURT:  Okay.

               MR. NELKIN:  And it's my understanding that in order
to subject ourselves to that Beth Din, both parties would have
to enter into some sort of arbitration agreement provided by
that Beth Din.  They've said that they would not initiate any
new agreements or any new thing of that sort.

          It's our belief that subjecting ourselves to a sixth
Beth Din and subjecting ourselves to a new arbitration

PROCEEDINGS                          60

agreement that covers the scope of the inquiry would be a new
proceeding.  And so we'd just like an understanding from
them --

        THE COURT:  But it requires your consent, right?

        MR. NELKIN:  Well, it requires both parties to
report back.  I'm just trying to say that we'll have an
agreement that we will jointly write to the Beth Din and say
that neither of us wishes to go to a new Beth Din at this
time.

        THE COURT:  You'll say that?

        MR. NELKIN:  Yes.

        THE COURT:  You'll say that?  Both sides tell
whatever Beth Din you're in front of those are all on hold.

        MR. KING:  We stay the Beth Din proceedings that are
in place?

        THE COURT:  Yes.

        MR. KING:  That's a completely new request, Your
Honor.

        THE COURT:  All right.  We're not in agreement.  I
will ask Judge Amon to join us.  Feel free while I'm getting
her to continue to talk.

        Do feel free to stop inserting new items into the
discussion, and do feel free to think about whether anything
has happened today that's going to make me reconsider going
forward.

PROCEEDINGS                         61

MR. FINKEL:  Your Honor, before --

THE COURT:  I'm sorry.  It's past 11:30.

MR. FINKEL:  I understand, but --

THE COURT:  Sir, it's past 11:30 for a hearing that was supposed to start over two hours ago.  We're going forward or not.

MR. FINKEL:  It's frozen to going forward or not, Your Honor?  I'm sorry.

THE COURT:  I'm going to ask you to have a seat, please.

MR. FINKEL:  Okay.

(Pause in the proceedings.)

THE COURT:  I've spoken to Judge Amon.  I left the room saying I might need to reconsider, so she asked me to get past that before asking her to come down, but she will come down at that point or I'll talk to her after that point.  But in the meantime, have you made any progress?

MR. NELKIN:  Your Honor, I think if we can agree that neither party will take a step from this point forward with respect to a Beth Din, meaning they won't take any new steps with respect to a Beth Din from this point forward, that we're prepared --

THE COURT:  Did you talk to each other to see if you have an agreement?

MR. NELKIN:  I believe that we did.

PROCEEDINGS                    62

MR. KING:  Your Honor, literally as the door was opening, the question was raised to me would we agree not to take any affirmative steps towards -- with Beth Din proceedings, and I think that was what we were saying before when we said we would not commence any new Beth Din proceedings.

THE COURT:  Forget the splitting hairs.  Look, right now the plaintiff can go forward because he has a Heter, in his view.  I know you have arguments on that.  You can preserve the arguments.

It occurs to me that absent what Mr. Nelkin is talking about, steps can be taken on one side or another or even by not getting back to the Beth Din about having yet another Beth Din subject to a new arbitration could persuade them that maybe they shouldn't allow the plaintiff to go forward in Federal Court.

So absent some standstill not only with respect to the federal case but also with respect to anything going forward with the Beth Din, the plaintiff could lose the ability to go forward in Federal Court that he currently has. In other words, you say he doesn't have any ability right now, but he could have something that would make a difference, in his view, in his ability to go forward, and he's not willing to put off the hearing for that.

So it seems to me that absent a full standstill, no

PROCEEDINGS                          63

actions taken at all with respect to the Beth Din while this
is pending, we have to have a hearing.

        MR. KING:  Your Honor, what we can do is we can
commit to the fact that we will not rely on in any way any
developments, issues, orders --

        THE COURT:  I think you know that that's not what
I'm asking.  Full standstill, no actions taken.  If that's not
the agreement, we don't have an agreement.

        MR. KING:  It's not the agreement, Your Honor.  I
apologize.

        THE COURT:  Then I will not reconsider.  I'll ask
Judge Amon to come down and rule on the motion and then we
will start as soon as Judge Amon has rendered her decision, if
it denies --

        MR. KING:  If I may, Your Honor, and I don't want to
try your patience, but the concern from our end is that we
absolutely can't waive any rights that we would have to
arbitrate this dispute.

        THE COURT:  Because of the effect on your position
in Federal Court?

        MR. KING:  Right.

        THE COURT:  You can agree and I take it you would
agree --

        MR. NELKIN:  Absolutely.

        THE COURT:  -- that nothing that would be a

PROCEEDINGS                           64

standstill agreement here would waive any argument that
anybody can make.  It would be as if you were going forward
today.

            MR. KING:  But we would not be able to rely upon a
decree issued by the Rabbinical court.

            THE COURT:  You can rely on anything that you can
rely on right now.  You just can't ask for anything new.

            MR. KING:  With respect to the preliminary
injunctive relief, Your Honor, we're 100 percent on board with
that.  With respect to arguments affecting the motion to
dismiss or the arbitrability, we can't do that.

            THE COURT:  Right, because they couldn't get that
today.

            MR. KING:  They can't get that anyway.

            THE COURT:  But would you agree to take no further
steps with respect to a Beth Din?

            MR. KING:  We have already offered that, Your Honor,
that we would not --

            THE COURT:  Okay.  So you'll both tell the Beth Din
that we're going to agree to put off anything further.

            MR. KING:  Until the preliminary injunction hearing
is completed.

            THE COURT:  Yes?

            MR. NELKIN:  Yes.

            THE COURT:  Okay.  Anything else that anyone thinks

PROCEEDINGS                    65

stands in the way of an agreement?

          MR. HELLER:  Your Honor, regarding the laptop that

Ms. Rivera maintains, we understand -- this was something we

learned after the last colloquy.  We understand that

Ms. Rivera uses that laptop to access servers for each

company, and each company has separate servers.

          THE COURT:  Companies that are before this Court?

          MR. HELLER:  I'm sorry?

          THE COURT:  Companies that are before this Court?

          MR. HELLER:  Companies that are before the Court.

          MR. FINKEL:  And some not.

          THE COURT:  They'll still be imaged, right?

          MR. HELLER:  Right.  But the problem that we have is

that while she does not create new documents on the -- in

other words, these databases do not reside on the server.

There is -- to the extent that she opens documents or creates

reports or something like that, a shadow is created on the

laptop that could have, from our perspective, information that

they have absolutely no right to and no business with.

          THE COURT:  Then that is really a problem from

commingling things in that way.  It really is.  I can't help

you with the consequences of doing things as they've been

done.  The question is, do we have an agreement to put off

this hearing?

          MR. KING:  Your Honor, we have an agreement to put

PROCEEDINGS                              66

off this hearing.

THE COURT:  You can't answer for him, Mr. King.

MR. KING:  Can I clarify something that may resolve
his concern?

THE COURT:  Yes.

MR. KING:  And that was we earlier talked about
discussing attorneys' eyes or some staged review of documents,
and I assume -- I presume that's part of the standstill that
we're talking about.  I just want to remind him and see if
that helps.

MR. HELLER:  That or perhaps there is another
solution which I can propose.  I understand that the
plaintiffs do trust Mr. Papa to have that --

THE COURT:  I'm really not interested in any
renegotiation right now.  Sir, you've got to tell me, do we
have an agreement or do we not?  I'm just not interested in
putting off this hearing any further.

MR. HELLER:  Your Honor, I do have a real problem
with that.

THE COURT:  Then I will get Judge Amon.  It's not
hard.  We can either litigate it or not.  Thank you all.

(Pause in the proceedings.)

THE COURT:  Chief Judge Amon is going to come here
when she's finished on the bench with another matter before
her.  So sit tight.  I'm going to be back in my jury room

PROCEEDINGS                              67

working while we're waiting.  Do feel free if you can work
things out, great.

          MR. NELKIN:  Your Honor, I think Mr. Heller has
offered to find a way to work something out.  If I'm speaking
out of turn --

          MR. HELLER:  That is correct.

          MR. NELKIN:  I don't know exactly, but I think from
our perspective, all we're looking to do is to preserve and
image and protect and have some ability and some sort of
review process to ensure that that happens.

          THE COURT:  Well, look, let me suggest this, because
it may be a few minutes while we're waiting for Chief Judge
Amon to arrive and I am very concerned about further
roadblocks being put up.

          So why don't you guys, while you're waiting, agree
on the language to put on the record about exactly what the
standstill agreement is so that when she arrives if you're
able to put that on the record, great; if not, we go forward
with the ruling on the motion to adjourn.  Yes, sir.

          MR. FELDMAN:  Judge, Richard Feldman for Michael
Devine and Michael Devine, CPA.  I just wanted to advise the
Court that Mr. Devine has resigned as the outside accountant
for the firms.  That was not clear last week, but I wanted to
let Your Honor know.  And I've discussed with Mr. Nelkin that
as soon as they designate some alternative accountant with

PROCEEDINGS                          68

Mr. King, however that process is to be done, Mr. Devine will be happy to transmit whatever files he has.

THE COURT:  Okay, fair enough.

MR. FINKEL:  May I also make a statement?

THE COURT:  Yes.

MR. FINKEL:  I'm Richard Finkel.  I represent Sonia Rivera, the bookkeeper; Jorge Salcedo, who is a mechanic; and Sylvia Ezell, also a bookkeeper.  They were not present in court on Thursday nor was I, Your Honor.  They have not been served.

THE COURT:  Well, the record reflects that they have.

MR. FINKEL:  I see that, but I know, most respectfully, as a matter of fact they have not been served.

THE COURT:  Do you accept service on their behalf now?

MR. FINKEL:  Yes, I do, Your Honor.

THE COURT:  Okay.  Good.

MR. FINKEL:  But as of today.  And therefore, given the nature -- just before Judge Amon comes in, I didn't want to pull a surprise on Your Honor.  Given the nature of the allegations in the complaint, I have concerns for them that I have not had an opportunity -- although I spent the better part of yesterday with my clients.  This is a very complicated matter.  Their names come up throughout the complaint.

PROCEEDINGS                    69

THE COURT:  Do you want to join in the agreement
with the others or no?

MR. FINKEL:  Yes, I do, Your Honor.

THE COURT:  Okay.  Good.  Okay, thank you.

MR. GRANTZ:  Your Honor, David Grantz for E&J
Funding, E&I Investors Group, and E & Jeryg Management Corp.

On Thursday of last week I represented that I was
here for E&J Management, Inc.  Since then, I investigated and
found that there is no such entity as E&J Management, Inc., in
New York.  There is one in Maryland which has nothing to do
with them.  It's not an entity.  So I would like to withdraw
my representation of that nonentity.

THE COURT:  File a motion.  There's nothing that
stops you from doing that and perhaps they'll agree on
changing the caption appropriately.

MR. NELKIN:  And I assume that E&J Management, to
the extent it exists in some form, would be enjoined if it
wasn't represented.

THE COURT:  Look, the order is what it is.  To the
extent that you're getting an injunction against a phantom, I
don't really care about that anyway, but I'm sure you can work
it out.

MR. NELKIN:  We have a phantom that we've written a
million dollars worth of checks to and have cashed those
checks, so....

PROCEEDINGS                              70

THE COURT:  A different issue.  And whoever got the money, you're going to investigate.

Okay, we'll wait for Chief Judge Amon.  Do try to work out the specific language we'll put on the record.

(Pause in the proceedings.)

CHIEF JUDGE AMON:  All right.  Good afternoon, everyone.  Judge Orenstein had asked that I come down for the purposes of ruling on an application that was made late Friday to adjourn the hearing.

I know that he has had extended discussions with the parties about reaching a standstill agreement so that the proceedings can be held in a more orderly fashion, giving everyone the time needed to prepare for hearing.

I understand there have been discussions back and forth on that, but that we've possibly now reached a resolution that the parties can agree on so we can proceed later in January.  Is that correct?

THE COURT:  We have to work out the time, but are we now agreed?

MR. NELKIN:  I believe we are, Your Honor.

MR. KING:  Yes, Your Honor.

THE COURT:  Okay.  I don't want to keep Judge Amon longer than necessary.  If you're ready to recite things, we can --

MR. NELKIN:  Your Honor, I think we need a little

PROCEEDINGS                                    71

time to work out the language but I think that there won't be
a problem reaching an agreement.

         THE COURT:  Okay.  Before we all tell Judge Amon --

         CHIEF JUDGE AMON:  Before I'm excused.

         THE COURT:  Yes, exactly.  Does anybody anticipate
raising any other objection to what's been discussed already
so that all we need to do is put the terms that you've all
agreed to on the record and then discuss a date to come back?
Great.  Thank you so much.  Sorry to bring you down.

         CHIEF JUDGE AMON:  Another issue that I just might
raise -- and, of course, this is completely up to the parties.
I don't mean to suggest this for the purposes of putting any
pressure on either side.

         But often where preliminary injunction hearings are
referred, there can be consent to the Magistrate Judge making
the determination.  That avoids the added level of review.  So
I would ask the parties to think about that issue too, such
that when you have the hearing and the decision by Judge
Orenstein then you would have a decision and the parties
wouldn't have to then come back if you consent for all
purposes to his handling it.

         But, again, that's completely up to the parties.  I
am here available to consider any objections to any rulings
that Judge Orenstein would make, but I just put that out there
because parties often do that and it has the effect of moving

PROCEEDINGS                              72

things along because it cuts out a layer of review.  So thank you, gentlemen and ladies.

          THE COURT:  Have a seat, folks.  Do you need a few minutes to work out the language?

          MR. NELKIN:  I think so, Your Honor.

          MR. KING:  That might be an understatement.

          THE COURT:  Let me ask you this:  I blocked off essentially the whole day.  If you're all confident that we're at a point where it shouldn't matter of crafting the language, I can give you the lunch break.  We can come back later.  We can let clients go.  But please, let's not find ourselves in the position where it breaks down and I need to start the hearing because then we'll get started.

          MR. KING:  We all want to avoid that, Your Honor.

          THE COURT:  Do you want to plan on taking a lunch break?

          MR. KING:  It's 12:00.  Perhaps we can convene at 2:00.  That allows us to eat and work out terms.

          THE COURT:  It works for me.  Okay, very good.

          MR. FELDMAN:  And, Judge, can we let the clients go? Mr. Devine is a professional CPA.

          MR. NELKIN:  My client can stay, but we have no objection.

          THE COURT:  I leave that up to you.  If it breaks down, people are going to need to get back here really

quickly.

          (Luncheon recess.)

          (In open court.)

          THE COURT:  Good afternoon, everybody.  Are you
ready to put on the record your agreement?

          MR. KING:  We're not quite ready, Your Honor.  We
worked throughout the entire lunch period.  We actually had
the plaintiffs do the first draft of the agreement and sat
down with them about 40 minutes or so ago to go through it
with them.  We've reached agreement on I think about 95
percent of the language.

          THE COURT:  Okay.

          MR. KING:  We are -- the last thing we talked about
was the Beth Din agreement, and we're not comfortable with the
language.  We need a little more time to work on that.

          THE COURT:  What do you think?

          MR. NELKIN:  I don't know.  We gave them our draft
and we haven't heard back.  They're just talking to their
client.  So I don't know how long.

          THE COURT:  How long do you need?

          MR. KING:  I had about two minutes to talk about it
with my client, Your Honor.  I think what we probably would
want to do is draft our own version of what we think --
because I think there might be a misunderstanding as to
exactly --

PROCEEDINGS                            74

THE COURT:  That's what I'm afraid of.

MR. KING:  I understand.

THE COURT:  I'm not here to mediate negotiations.

MR. KING:  Your Honor, like I said, we've made very significant progress.  We're close, but I think I could probably use 15 or 20 minutes.

THE COURT:  Let's plan on getting on the record at 2:30 either to put the terms on the record or to start the hearing.

MR. KING:  Thank you, Your Honor.

MR. NELKIN:  Your Honor, it might be helpful -- I don't know if we could have the last part of the court reporter's transcript with respect to when you mentioned the complete standstill, if that's possible.

THE COURT:  Well, or I could just tell you what my understanding of what you were talking about was that you -- I felt it was something that one of you said about agreeing to tell the Beth Din that you were going to put off or hold in abeyance their suggestion about a further Beth Din and take no further actions with respect to any Beth Din proceeding. Basically, do the same thing with respect to Beth Din that you'd be doing here, a standstill.

MR. NELKIN:  For the pendency of the preliminary injunction hearing.

THE COURT:  Yes.  Basically, that way you're sure

PROCEEDINGS                    75

that you're freezing in place where you stand today.

          MR. KING:  Is that what we understood?

          THE COURT:  But it's what you're trying to accomplish, whether you understood it or not; right?

          MR. KING:  Your Honor, what we're trying to accomplish is to -- it's hard to frame, it's such a complex issue.

          THE COURT:  It is complex in some ways, but in other ways it's very simple.  One thing that is very simple, 2:30, starting a hearing or putting on the record your agreement.

          MR. KING:  Okay, thank you.

          THE COURT:  Best of luck.

          (Recess in the proceedings.)

          THE COURT:  Counsel, please take your seats.  Are you prepared to put the terms of the agreement on the record?

          MR. KING:  Your Honor, we've reached agreement on the Beth Din issue, so I believe so.

          THE COURT:  Go ahead, please.

          MR. KING:  Honestly, some of the other defendants' counsel have not even had a chance to see this.  That's how expedited we've been trying to work this.

          THE COURT:  If you're not ready to put the terms on the record, let's start the hearing.

          Everybody listen carefully.  Once the terms are read, I'm going to ask counsel for all the parties to indicate

PROCEEDINGS                    76

whether they agree or not.

          MR. NELKIN:  The parties have agreed that all
existing restraints shall remain in place.

          And with regard to the ongoing financial affairs of
the company, the bookkeeping function of Two Rivers Coffee,
LLC that was formerly done by Sonia Rivera and I think Sylvia
Ezell will be under the direction of the company's chief
financial officer, Vincent Papa.

          For all checks over $2,000, Mr. Papa will advise all
members of Two Rivers by e-mail of his intent to issue such
checks, and further advise that unless objection is received
within 24 hours approval will be deemed granted.  Such 24
hours shall not include any sabbath or Jewish holiday hours.

          All checks will be prepared and printed at Two
Rivers' facility at 101 Kentile Road.

          The members of Two Rivers will immediately open a
new bank account at a mutually agreeable national bank to
which all four members of Two Rivers are signators and will
have equal access.

          Bank statements will be sent to Two Rivers at -- it
says P.O. Box 527, South Plainfield, New Jersey 07080, with
copies to all members.  Your Honor, that's the wrong P.O. Box.
It should be the company's P.O. box.

          Based upon Mr. Papa's recommendation, the Two Rivers
accounts currently at Signature Bank will be transferred to

the new account in an orderly fashion to ensure a smooth
transition to the new bank.

Since Mr. Devine has resigned as the company's
accountant, the parties agree that Mr. Papa shall engage a new
outside accountant to assist the company.

All parties will immediately produce all Two Rivers
corporate books and records, excluding payroll records and tax
work papers, which shall be produced on an agreed-to schedule.
All other Two Rivers corporate books and records shall be
produced by Tuesday, December 15th, 2015, at 5 p.m. to Two
Rivers offices.  Documents will be returned to the office
under custody of Mr. Papa, who shall provide equal access to
all members upon their request.

The computers of Mr. Friedman, Ms. Rivera and
Ms. Ezell will be imaged and preserved and the obtained
material produced to the parties on an attorneys' eyes only
basis.  Parties may seek to change the eyes only status by
agreement or by intervention of the Court.

All of Mr. Friedman's, Ms. Rivera's, Ms. Ezell's,
Mr. Nussbaum's and Mr. Rogosnitzky's passwords to any computer
or other electronic device that has contained information
pertaining to Two Rivers will be provided to plaintiff by
midnight tomorrow night.

The parties agree that Friedman, Ezell, and
Rivera's pers....

THE COURT:  Start that sentence over, please.

MR. NELKIN:  Yes.  I'm just trying -- let me just confer with my co-counsel who wrote it to make sure I understand.

(Pause in the proceedings.)

MR. NELKIN:  The parties agree that -- I think it should say and I'll show to counsel -- to the extent that the passwords are the same and would allow access to non-Two Rivers e-mail -- this is what it says.

The parties agree that Friedman, Ezell and Rivera may change the passwords to his or her personal e-mail account or any other personal file that did not contain -- pertaining to Two Rivers or any other defendant.

The parties agree that any system or device that requires on-site professional assistance to change its current functionality to provide plaintiff with full access shall be done in the presence of the plaintiff and any other member of Two Rivers who wishes to attend.  The work shall be performed by a mutually acceptable IT professional other than Mr. Nussbaum, but Mr. Nussbaum may attend in order to assist.

THE COURT:  Slow down, please.  I just want to make sure I hear.

MR. NELKIN:  But, Your Honor, I think that -- and we didn't agree to Ms. Rivera and Ms. Ezell and they've already been enjoined.

PROCEEDINGS                        79

THE COURT:  They have not --

MR. NELKIN:  That got penciled in I think after,
like when it was circulating around.  But Ms. Ezell and
Ms. Rivera were enjoined yesterday or on Thursday.

THE COURT:  An injunction has not yet been entered.

MR. NELKIN:  I thought that anyone who didn't attend
the hearing --

THE COURT:  Chief Judge Amon's order provided for
that to happen automatically, and I cited that language in
noting that they hadn't appeared as required.  However, Chief
Judge Amon has not yet issued such an injunction.

MR. NELKIN:  Okay.  I misunderstood, Your Honor.

The parties agree that any system or device that
requires on-site professional assistance to change its current
functionality to provide plaintiff with full access shall be
done in the presence of the plaintiff and any other member of
Two Rivers who wishes to attend.

The work shall be performed by a mutually acceptable
IT professional other than Mr. Nussbaum, but Mr. Nussbaum may
attend in order to assist.

During the pendency of this preliminary
injunction -- someone penciled in PI, which I assume is what
it meant -- until further order of the Court, no party shall
seek to foreclose upon any loans or take any action that will
deprive the Court of its ability to fashion appropriate

PROCEEDINGS                    80

relief.

At the parties' request, the Court will order
Signature Bank to produce a complete set of Two Rivers
documents and all materials and data relating to Two Rivers to
the plaintiff, to Mr. Friedman, and to Two Rivers in the
custody of Mr. Papa.

The parties agree that all members of Two Rivers
will have issued a Two Rivers credit card, which will be used
only for the expenses of Two Rivers.  No personal credit card
shall be used for Two Rivers expenses absent extenuating
circumstances.

All members will utilize a Two Rivers e-mail account
to conduct Two Rivers business absent extenuating
circumstances.

THE COURT:  Those are the full terms of the
agreement, as far as you are concerned?

MR. NELKIN:  No.

THE COURT:  Okay, go ahead.

MR. NELKIN:  The parties agree to enter into a
complete standstill agreement with respect to any Beth Din
proceeding.  No party will initiate or pursue any new Beth Din
proceeding.  The parties will jointly inform the Beth Din
Maysharim that the parties have agreed to stay any further
Beth Din proceedings until the Court has ruled on the
application for a preliminary injunction or the proceeding is

otherwise resolved.

The parties agree that pursuant to the standstill agreement, each party shall have the same rights and defenses that existed as of the date the action was filed. The standstill agreement shall remain in effect until the Court decides the issue of preliminary relief or the issue is otherwise resolved.

During the pendency of the standstill agreement, the parties agree that they will not seek to appear before any new Beth Din or sign any new arbitration agreement or seek to benefit from any new Beth Din relief that is issued subsequent to the filing of the current action.

The agreement to stay the Beth Din proceeding and this proceeding will not be asserted by either party to any Beth Din as a waiver of any rights in any Beth Din proceeding.

I believe that it should have said "or the proceeding is otherwise resolved by settlement" where I read "or the proceeding is otherwise resolved." But other than that, I think that that's....

THE COURT: I'm going to go around to each party's counsel to get a confirmation or not, I guess. But starting with you, Mr. Nelkin, what you've read into the record just now are the terms to which your client agrees to adjourn today's hearing to a date to be determined? That's it.

MR. NELKIN: Yes.

PROCEEDINGS                    82

THE COURT:  Mr. King and Ms. Sekowski, are those terms acceptable to your client as a basis for adjourning today's hearing?

MR. KING:  Yes, they are, Your Honor.

THE COURT:  Mr. Grantz?

MR. GRANTZ:  I need clarity on one of them.  I did not get clarity on one of the paragraphs.  I have to read it and understand it better.

THE COURT:  Which paragraph?  We'll read it again.

MR. GRANTZ:  If I could look at the paper, I'll tell you exactly which paragraph.  I think my co-counsel had the same issue.  We need to just....

(Pause in the proceedings.)

THE COURT:  Just everybody be clear, we're not going to negotiate.  If the answer is no, the next thing will be to put a witness in the box.

MR. GRANTZ:  "All parties will immediately produce all Two Rivers corporate books and records."

MR. FELDMAN:  "Excluding payroll records, which shall be produced on a schedule to be agreed upon."

MR. NELKIN:  I added in "tax work papers."

MR. FELDMAN:  And tax work papers, correct, which shall be produced on a schedule to be agreed upon, with the other documents to be produced by Tuesday, December 15, 2015, at 5 p.m.

MR. GRANTZ:  I'm fine with it, Your Honor.

THE COURT:  Okay.  And?

MR. FELDMAN:  Richard Feldman, Your Honor, for Mr. Devine.  I agree to those terms.

THE COURT:  Okay.  Forgive me for not remembering all the names.

MR. DE PALMA:  Richard De Palma, Your Honor.  Yes, my clients agree to this.

THE COURT:  Okay.  Starting at the front with Mr. Finkel.

MR. FINKEL:  Yes, Your Honor.  I need further clarity on at least two provisions concerning computers that are called Sonia --

THE COURT:  Go ahead and read it.

MR. FINKEL:  I'll do that now.

(Pause in the proceedings.)

THE COURT:  In the event the answer is no, Mr. Nelkin, who is the first witness?

MR. NELKIN:  Mr. Friedman.

THE COURT:  Mr. Friedman, why don't you come and take the stand so that we're ready to go.

MR. NELKIN:  Your Honor, I have to go get my books.

THE COURT:  Go ahead.

MR. FINKEL:  Your Honor, I have a problem with the following language.  I don't think it goes far enough.  We

need three more words.

THE COURT:  Well, if we haven't reached an agreement, let's start the hearing, okay?

MR. FINKEL:  Your Honor, most respectfully, I was brought into this case yesterday, okay?

THE COURT:  Your client was not, sir.  Sir, stop. Please stop.

MR. FINKEL:  Your Honor, all I need to ask --

THE COURT:  Excuse me, I just said please stop. Now, please, if there is not an agreement, we have to have a hearing.

MR. FINKEL:  Your Honor, as counsel was reading, he was adding language.  I want to add three words, Your Honor.

THE COURT:  Sir, I'm asking you to sit down.  It's the last time I'm going to ask you.  Now, please.  I will explain myself.

Folks, this is not for negotiation.  If he agrees to put your words in, great.  If he doesn't, let's start the hearing.

MR. HELLER:  Your Honor, can I be heard for a second?  I'm the last person who was supposed to be polled on this.

THE COURT:  There's one behind you also.

MR. HELLER:  We did have an agreement regarding the imaging of the computers in addition to the attorneys' eyes

PROCEEDINGS                    85

only, and this is by agreement of the parties, which is not in here now.  He was supposed to have also non-use provisions and confidentiality.  It's not in there.

        MR. NELKIN:  That's agreed to.

        THE COURT:  Okay.

        MR. FINKEL:  Those are the three words, non-use and confidentiality.

        THE COURT:  So you agree?

        MR. FINKEL:  Yes.

        THE COURT:  Okay.  Mr. Muller?

        MR. HELLER:  Heller.

        THE COURT:  Do you agree?

        MR. HELLER:  I agree.

        THE COURT:  And sir?

        MR. MARGOLIS:  Barry Margolis on behalf of Geoffrey Hersko and Law Offices of Geoffrey S. Hersko.  We agree as well.

        THE COURT:  Wonderful.  Okay, so get the transcript on an expedited basis, put on a signature block so that everybody is bound, and let's talk about a date to reconvene for the hearing.

        MR. KING:  Your Honor, can my client step down from the stand?

        THE COURT:  Yes.  Go ahead, sir.  All right.  Now, I'm assuming that we're still talking about a two-day hearing.

PROCEEDINGS                          86

Anybody disagree with that?

   MR. NELKIN:  No, Your Honor.

   THE COURT:  Okay.  26th and 27th of January.  If there are any -- now wait.  I'm going to suggest that you put it in as a consent agreement to be so ordered by the Court. All right.

   MR. MARGOLIS:  Your Honor, I be heard?

   THE COURT:  Yes, sir.

   MR. MARGOLIS:  My client will be out of state on those days and those are not convenient for Mr. Hersko, to the extent he is needed in any capacity.

   THE COURT:  Well, does anybody anticipate calling him as a witness?

   MR. NELKIN:  I do, Your Honor.

   THE COURT:  Okay.  When will he be returning and what's the reason for the absence from the state?

   MR. MARGOLIS:  I will confer with him.  He's in the courtroom.  May I do so?

   THE COURT:  Yes.

   MR. FINKEL:  Your Honor, while that, I have a matter on trial in Manhattan on the 27th.

   THE COURT:  Okay.  Look, that's the week that I can accommodate you guys and if we can't find a date when I can hear you, we've got the same problem and I have cleared out today and tomorrow.  Is it something you can try and

SHERRY BRYANT, RMR, CRR

PROCEEDINGS                    87

reschedule?

      MR. FINKEL:  Multiple parties as well in court in Manhattan, Your Honor, State Court.

      MR. MARGOLIS:  Your Honor, my client informs me he'll be out of the country from the 21st to the 29th of January.

      THE COURT:  For what purpose and is it something that can be rescheduled?  I'm trying hard to accommodate everybody, folks, while we spent many hours today.

      MR. MARGOLIS:  This is a family event that was planned way back.

      THE COURT:  February 2nd and 3rd, anybody have a problem with that?

      MR. MARGOLIS:  We're okay, Your Honor.

      THE COURT:  Anybody?

      MR. FINKEL:  I have an arbitration before a Beth Din on the 3rd, Your Honor.

      THE COURT:  Please ask them to reschedule.

      MR. FINKEL:  I will do my best, Your Honor.  I will do my best.  Your Honor, I'm trying to help.  I was trying not to be disrespectful before but to make the record I need for my clients.

      THE COURT:  Got it.  But, Mr. Finkel, in the future, if I ask you to stop, just so that we have a record of one person talking at a time, I will ask you to comply with those

directions.

        MR. FINKEL:  Thank you.  I will.

        THE COURT:  All right.  February 2nd and 3rd, starting at 9:30.  Please exchange with each other at least two weeks in advance any exhibits that you intend to use at the hearing as well as a list of witnesses, and sooner if possible.  To the extent that you've already prepared witnesses to be used today, go ahead and turn them over so that any issues can be resolved timely.

        I am open to having you all in for settlement discussions if you all think that would be useful.

        And is there anything else that anyone -- oh -- no, I don't think I need to raise it.  If there's anything else that you need before, my door is open.  Yes, sir.

        MR. KING:  Your Honor, discovery, any discovery in advance of the hearing?

        THE COURT:  I'll ask you guys to --

        MR. KING:  To consent to it?

        THE COURT:  Well, I'll ask you guys to confer about that.

        MR. KING:  Okay.  Thank you, Your Honor.

        MR. MARGOLIS:  Your Honor, I'd like to address the issue of defendants' time to answer or otherwise move with respect to the complaint in this action, given the number of defendants here presently.

There's one cross-motion pending from Mr. Friedman's counsel.  Obviously, the clock is running as to the other parties, although Your Honor at the last appearance I understand held the date for the parties to respond to the complaint in abeyance.  I don't know what plaintiff's position is --

THE COURT:  Well, pending today, because you had other things to do.  I'm going to ask you folks to confer about these things.  They can almost always be resolved by consent.  Anything that's agreeable to all of you is fine with me.

MR. MARGOLIS:  We'll confer then with counsel. Thank you.

MR. HELLER:  That's where I was going, Judge.

THE COURT:  There are a lot of logistical aspects to getting a case started and I'm happy to resolve all of them, but I'm confident that as of today, because today took a lot of work, obviously, you can resolve these things to a great extent without my help.  So I'm going to ask you to try that in the first instance.  If there's something that you can't agree about, you'll let me know and I'll, of course, resolve it for you.

All right.  Anything else for today?  All right. Thank you all very much for your hard work.  Sorry to have kept your feet to the fire as much I did, but I'm glad it got

to a point where we could give you all the breathing space you
need to prepare for the hearing.  Have a very good day.

        MR. NELKIN:  Thank you, Your Honor.

        MR. KING:  Thank you, Your Honor.

        (Whereupon, the proceedings were adjourned.)

Case 1:15-cv-06861-CBA-JO  Document 252  Filed 07/05/16  Page 91 of 103 PageID #: 9121
*Schreiber vs. Friedman*

1

**$2,000** [1] - 73:9
**'60s** [1] - 50:1
**07080** [1] - 73:21
**100** [1] - 61:9
**101** [1] - 73:15
**11:27** [1] - 55:7
**11:30** [4] - 55:7, 55:14, 58:2, 58:4
**12:00** [1] - 69:17
**14** [1] - 2:2
**15** [2] - 71:6, 79:24
**15-cv-6861** [1] - 1:2
**15th** [1] - 74:10
**20** [1] - 71:6
**2015** [2] - 74:10, 79:24
**21st** [1] - 84:5
**24** [1] - 73:12
**26** [1] - 22:25
**26th** [1] - 83:3
**27th** [2] - 83:3, 83:21
**29th** [1] - 84:5
**2:00** [1] - 69:18
**2:30** [2] - 71:8, 72:9
**2nd** [2] - 84:12, 85:3
**3rd** [3] - 84:12, 84:17, 85:3
**40** [1] - 70:9
**5** [2] - 74:10, 79:25
**527** [1] - 73:21
**62** [1] - 9:15
**63** [3] - 8:23, 9:8, 9:15
**95** [1] - 70:10
**9:30** [1] - 85:4
**abeyance** [2] - 71:19, 86:5
**ability** [14] - 4:15, 13:18, 13:22, 14:25, 16:12, 16:16, 26:22, 36:6, 54:24, 59:20, 59:21, 59:23, 64:9, 76:25
**able** [14] - 13:12, 21:17, 26:12, 26:23, 29:10, 37:5, 41:2, 41:5, 45:14, 51:6, 53:4, 61:4, 64:18
**absence** [2] - 2:5, 83:16
**absent** [7] - 26:14, 27:9, 59:11, 59:17, 59:25, 77:10, 77:13
**absolute** [1] - 21:18
**absolutely** [6] - 5:1, 30:6, 38:11, 60:17, 60:24, 62:19
**absorb** [1] - 48:2
**accept** [1] - 65:15
**acceptable** [5] - 27:13, 32:5, 75:19, 76:18, 79:2
**acces** [1] - 17:24
**access** [38] - 3:16, 3:23, 4:4, 4:10, 7:20, 7:25, 8:15, 9:17, 10:4, 12:8, 12:9, 13:12, 13:15, 13:20, 13:24, 14:12, 16:14, 18:8, 22:1, 24:1, 24:3, 26:4, 27:7, 28:9, 28:23, 28:24, 29:2, 29:16, 29:25, 31:4, 31:8, 34:7, 62:5, 73:19, 74:12, 75:8, 75:16, 76:15
**accessed** [1] - 27:18
**accommodate** [2] - 83:23, 84:8
**accomplish** [7] - 7:7, 15:25, 21:17, 24:5, 28:18, 72:4, 72:6
**accomplishes** [1] - 27:12

**accordance** [1] - 4:20
**according** [1] - 5:5
**account** [7] - 33:8, 33:17, 35:3, 73:17, 74:1, 75:11, 77:12
**accountant** [4] - 64:22, 64:25, 74:4, 74:5
**accounting** [1] - 20:23
**accounts** [8] - 3:3, 19:1, 19:7, 33:5, 33:10, 33:13, 73:25
**achieve** [6] - 49:15, 50:5, 51:16, 54:15, 55:1
**Act** [7] - 39:1, 49:7, 49:14, 49:17, 49:24, 49:25, 50:13
**action** [12] - 17:18, 18:17, 27:10, 38:23, 40:19, 41:3, 50:8, 53:15, 76:24, 78:4, 78:12, 85:24
**actions** [6] - 38:9, 38:13, 39:9, 60:1, 60:7, 71:20
**add** [2] - 51:6, 81:13
**added** [2] - 68:16, 79:21
**adding** [1] - 81:13
**addition** [2] - 26:6, 81:25
**additional** [1] - 24:9
**address** [3] - 33:6, 33:22, 85:22
**adjourn** [2] - 1:9, 1:16, 64:19, 67:9, 78:23
**adjourned** [1] - 87:5
**adjourning** [1] - 79:2
**adjournment** [1] - 52:1
**administrative** [4] - 11:9, 11:10, 11:12, 12:9
**administrators** [1] - 12:7
**advance** [2] - 85:5, 85:16
**advise** [3] - 64:21, 73:9, 73:11
**affairs** [1] - 73:4
**affect** [3] - 44:9, 44:11, 54:10
**affecting** [2] - 43:24, 61:10
**afford** [2] - 2:3, 44:8
**afraid** [1] - 71:1
**afternoon** [3] - 37:24, 67:6, 70:4
**ago** [2] - 24:6, 58:5, 70:9
**agree** [53] - 5:20, 6:4, 6:5, 8:7, 8:10, 19:21, 25:12, 26:25, 27:24, 34:5, 36:6, 39:7, 40:11, 41:19, 43:10, 43:12, 43:15, 43:20, 44:13, 48:6, 48:9, 48:13, 50:8, 51:1, 52:21, 58:18, 59:2, 60:22, 60:23, 61:15, 61:20, 64:15, 66:14, 67:16, 73:1, 74:4, 74:24, 75:6, 75:10, 75:14, 75:24, 76:13, 77:7, 77:19, 78:2, 78:9, 80:4, 80:8, 82:8, 82:12, 82:13, 82:16, 86:21
**agreeable** [3] - 7:1, 73:17, 86:10
**agreed** [15] - 1:23, 5:23, 6:1, 6:24, 9:19, 15:13, 15:16, 67:19, 68:8, 73:2, 74:8, 77:23, 79:20, 79:23, 82:4
**agreed-to** [1] - 74:8
**agreeing** [3] - 18:4, 44:2, 71:17
**agreement** [80] - 2:5, 2:10, 3:3, 3:4, 4:18, 4:21, 6:15, 15:12, 16:22, 16:24, 17:13, 20:19, 22:20, 23:16, 25:25, 26:2, 26:19, 27:9, 34:24, 37:5, 37:7,

37:9, 37:14, 37:25, 38:7, 38:10, 38:24, 39:19, 40:1, 40:12, 50:18, 51:15, 51:24, 53:12, 54:6, 54:7, 54:8, 55:9, 55:14, 55:17, 55:19, 56:2, 56:21, 57:1, 57:7, 57:19, 58:24, 60:8, 60:9, 61:1, 62:1, 62:23, 62:25, 63:16, 64:17, 66:1, 67:11, 68:2, 70:5, 70:8, 70:10, 70:14, 72:10, 72:15, 72:16, 74:18, 77:16, 77:20, 78:3, 78:5, 78:8, 78:10, 78:13, 81:3, 81:10, 81:24, 82:1, 83:5
**agreements** [1] - 56:23
**agrees** [2] - 78:23, 81:17
**ahead** [7] - 2:6, 72:18, 77:18, 80:14, 80:23, 82:24, 85:8
**allegations** [2] - 24:1, 65:22
**alleviate** [1] - 53:10
**allow** [9] - 1:25, 3:4, 17:18, 19:2, 30:8, 46:12, 52:19, 59:15, 75:8
**allowed** [2] - 16:22, 41:7
**allows** [1] - 69:18
**almost** [1] - 86:9
**alter** [2] - 41:17, 51:2
**alternative** [2] - 41:22, 64:25
**AMON** [3] - 67:6, 68:4, 68:10
**Amon** [19] - 1:10, 1:15, 2:8, 26:15, 37:1, 51:25, 55:9, 57:20, 58:13, 60:12, 60:13, 63:20, 63:23, 64:13, 65:20, 67:3, 67:22, 68:3, 76:11
**Amon's** [1] - 76:8
**answer** [10] - 8:18, 9:12, 11:8, 15:4, 50:12, 50:24, 63:2, 79:15, 80:17, 85:23
**anticipate** [2] - 68:5, 83:12
**anticipated** [1] - 31:24
**anyway** [3] - 50:20, 61:14, 66:21
**apart** [1] - 24:12
**apologies** [1] - 43:2
**apologize** [9] - 6:2, 11:1, 14:20, 16:11, 28:6, 35:9, 42:3, 42:7, 60:10
**appear** [2] - 3:9, 12:24, 13:1, 15:8, 78:9
**appearance** [1] - 86:3
**appearances** [1] - 1:4
**appeared** [2] - 1:23, 76:10
**application** [3] - 53:13, 67:8, 77:25
**appointed** [1] - 5:12
**appreciate** [1] - 32:6
**appropriate** [5] - 4:10, 26:25, 38:22, 51:21, 76:25
**appropriately** [1] - 66:15
**approval** [1] - 73:12
**arbitrability** [10] - 38:9, 43:23, 44:12, 44:21, 48:7, 48:11, 48:15, 50:9, 54:11, 61:11
**arbitrate** [2] - 41:5, 60:18
**Arbitration** [4] - 39:1, 49:17, 49:25, 50:13
**arbitration** [18] - 40:25, 42:2, 42:5, 42:13, 44:15, 45:8, 45:10, 45:13, 45:21, 45:24, 48:25, 49:8, 56:2, 56:21, 56:25, 59:14, 78:10, 84:16
**arbitrator** [3] - 40:18, 40:25, 52:19

**argue** [2] - 39:1, 53:4
**arguing** [1] - 49:2
**argument** [9] - 31:18, 41:8, 43:22, 44:5, 45:16, 46:3, 46:5, 61:1
**arguments** [9] - 38:8, 39:12, 41:25, 44:6, 44:11, 50:19, 59:9, 59:10, 61:10
**arise** [1] - 45:11
**arising** [1] - 18:13
**arm** [1] - 22:11
**arrive** [1] - 64:13
**arrives** [1] - 64:17
**aside** [1] - 47:5
**aspects** [1] - 86:15
**asserted** [1] - 78:14
**assist** [3] - 74:5, 75:20, 76:20
**assistance** [2] - 75:15, 76:14
**assume** [4] - 19:7, 63:8, 66:16, 76:22
**assuming** [3] - 4:9, 28:19, 82:25
**attempt** [1] - 5:10
**attend** [5] - 75:18, 75:20, 76:6, 76:17, 76:20
**attorneys** [1] - 27:19
**attorneys'** [6] - 26:18, 27:4, 27:5, 63:7, 74:16, 81:25
**auspices** [1] - 15:12
**authorities** [1] - 15:18
**authority** [7] - 5:16, 14:25, 15:13, 15:14, 16:15, 16:25, 35:22
**authorization** [1] - 21:4
**authorized** [2] - 13:5, 13:9
**automatically** [1] - 76:9
**available** [13] - 39:13, 43:22, 43:24, 43:25, 44:5, 44:6, 44:8, 44:12, 44:18, 46:4, 46:5, 46:6, 68:23
**avoid** [2] - 18:15, 69:14
**avoids** [1] - 68:16
**award** [2] - 46:7, 46:20
**awarding** [1] - 46:4
**aware** [3] - 9:19, 16:1, 42:4
**awful** [1] - 43:5
**badly** [1] - 19:25
**balance** [1] - 55:2
**bank** [12] - 3:3, 3:25, 4:11, 5:22, 6:1, 6:4, 19:1, 33:7, 73:17, 73:20, 74:2
**Bank** [2] - 73:25, 77:3
**banks** [3] - 19:7, 19:9, 19:13
**Barge** [1] - 34:11
**Barry** [1] - 82:15
**based** [6] - 38:4, 40:2, 40:12, 42:1, 46:6, 73:24
**basic** [1] - 3:15
**basis** [6] - 24:18, 46:24, 46:25, 74:17, 79:2, 82:19
**bear** [1] - 10:22
**behalf** [5] - 2:20, 21:22, 36:7, 65:15, 82:15
**behind** [1] - 81:23
**Beis** [2] - 37:20, 37:23
**belief** [1] - 56:24
**believes** [1] - 36:2
**bench** [1] - 63:24

**benefit** [1] - 78:11
**Benzion** [1] - 13:16
**best** [10] - 11:25, 17:17, 21:18, 22:7, 36:14, 42:9, 48:1, 72:12, 84:19, 84:20
**Beth** [68] - 38:9, 38:23, 39:9, 40:7, 40:15, 43:6, 43:10, 43:11, 43:13, 43:15, 44:20, 46:16, 46:18, 47:6, 47:8, 50:22, 51:1, 51:2, 51:6, 51:22, 52:3, 52:4, 52:7, 52:14, 53:3, 53:12, 53:14, 55:21, 55:23, 55:25, 56:1, 56:2, 56:9, 56:11, 56:16, 56:20, 56:22, 56:25, 57:7, 57:8, 57:13, 57:14, 58:20, 58:21, 59:3, 59:5, 59:13, 59:14, 59:19, 60:1, 61:16, 61:19, 70:14, 71:18, 71:19, 71:20, 71:21, 72:17, 77:20, 77:21, 77:22, 77:24, 78:10, 78:11, 78:13, 78:15, 84:16
**better** [4] - 31:15, 42:6, 65:23, 79:8
**between** [5] - 19:3, 19:7, 19:22, 44:10, 49:22
**beyond** [2] - 31:25, 32:8
**bills** [1] - 32:23
**Birnbaum** [1] - 22:25
**bit** [2] - 1:13, 16:19
**blame** [1] - 7:15
**block** [2] - 4:15, 82:19
**blocked** [1] - 69:7
**board** [1] - 61:9
**book** [1] - 35:13
**bookkeeper** [3] - 21:7, 65:7, 65:8
**bookkeeping** [4] - 18:25, 34:11, 35:4, 73:5
**books** [11] - 6:8, 6:10, 6:18, 9:17, 20:7, 20:11, 35:4, 74:7, 74:9, 79:18, 80:22
**bottom** [1] - 42:12
**bound** [2] - 16:23, 82:20
**bounds** [1] - 46:22
**box** [5] - 13:3, 13:4, 13:8, 73:23, 79:16
**Box** [3] - 33:6, 73:21, 73:22
**breadth** [1] - 50:8
**break** [3] - 42:7, 69:10, 69:16
**breaker** [1] - 37:13
**breaks** [2] - 69:12, 69:24
**breathing** [2] - 27:15, 87:1
**briefly** [1] - 32:12
**bring** [2] - 28:17, 68:9
**brings** [1] - 35:25
**broad** [1] - 50:3
**Bronx** [1] - 21:13
**Brooklyn** [3] - 10:17, 20:9
**brought** [2] - 48:21, 81:5
**bunch** [1] - 56:11
**burdens** [1] - 54:24
**business** [4] - 7:6, 49:7, 62:19, 77:13
**Cafe** [1] - 13:7
**cannot** [1] - 14:22
**capacity** [2] - 48:22, 83:11
**caption** [1] - 66:15
**captures** [1] - 43:21
**card** [6] - 3:24, 32:16, 32:17, 32:19, 77:8, 77:9

**cards** [2] - 3:4, 4:11
**care** [2] - 45:22, 66:21
**carefully** [1] - 72:24
**carves** [1] - 50:19
**case** [14] - 5:1, 12:6, 18:14, 38:5, 44:15, 47:13, 50:15, 51:13, 52:9, 52:11, 52:18, 59:18, 81:5, 86:16
**cashed** [1] - 66:24
**caught** [1] - 3:12
**causes** [1] - 50:7
**center** [1] - 14:1
**certain** [4] - 37:19, 37:20, 52:17
**certainly** [10] - 9:21, 17:17, 18:13, 19:21, 20:14, 27:5, 29:16, 30:8, 31:3, 35:15
**certification** [1] - 18:23
**chance** [3] - 9:1, 32:12, 72:20
**change** [10] - 13:22, 15:18, 16:15, 30:21, 30:24, 51:19, 74:17, 75:11, 75:15, 76:14
**changes** [1] - 13:18
**changing** [1] - 66:15
**charge** [2] - 4:10, 34:6
**charges** [1] - 18:16
**charging** [1] - 24:18
**check** [1] - 5:16
**Check** [2] - 14:2, 14:8
**checklist** [3] - 5:20, 13:2, 13:8
**checks** [14] - 13:2, 13:24, 14:25, 16:16, 16:20, 16:23, 16:25, 32:21, 66:24, 66:25, 73:9, 73:11, 73:14
**chief** [2] - 63:23, 73:7
**Chief** [9] - 1:10, 1:15, 2:7, 26:14, 37:1, 64:12, 67:3, 76:8, 76:10
**CHIEF** [3] - 67:6, 68:4, 68:10
**circulating** [1] - 76:3
**circumstances** [2] - 77:11, 77:14
**cited** [2] - 46:20, 76:9
**claim** [1] - 52:4
**claims** [2] - 18:12, 48:21
**clarification** [2] - 28:21, 47:10
**clarify** [2] - 55:18, 63:3
**clarity** [5] - 34:14, 39:6, 79:6, 79:7, 80:12
**clean** [2] - 17:4, 17:7
**cleaner** [1] - 17:18
**clear** [6] - 2:1, 9:10, 45:6, 49:18, 64:23, 79:14
**cleared** [1] - 83:24
**clearly** [1] - 18:3
**client** [21] - 6:11, 7:10, 10:3, 21:5, 32:1, 32:12, 34:15, 35:25, 42:4, 53:17, 53:19, 55:5, 69:22, 70:19, 70:22, 78:23, 79:2, 81:6, 82:22, 83:9, 84:4
**client's** [2] - 22:2, 32:9
**clients** [9] - 3:17, 26:23, 27:6, 45:22, 65:24, 69:11, 69:20, 80:8, 84:22
**clock** [1] - 55:7, 86:2
**close** [1] - 71:5
**closer** [1] - 41:13
**co** [2] - 75:3, 79:11

**co-counsel** [2] - 75:3, 79:11
**Coffee** [3] - 12:25, 22:25, 73:5
**colleague** [2] - 1:20, 39:3
**colloquy** [1] - 62:4
**combined** [1] - 19:1
**comfortable** [2] - 20:3, 70:14
**commence** [3] - 40:19, 43:11, 59:5
**comment** [1] - 54:8
**commingling** [1] - 62:21
**commit** [2] - 32:8, 60:4
**committed** [1] - 53:11
**committing** [1] - 32:13
**communication** [1] - 56:8
**companies** [8] - 19:3, 23:4, 23:20, 24:12, 25:20, 62:7, 62:9, 62:10
**companies'** [1] - 18:24
**company** [33] - 3:5, 3:23, 4:15, 4:20, 5:11, 10:3, 12:4, 12:10, 13:15, 13:17, 13:23, 14:22, 15:23, 15:24, 16:4, 16:12, 19:20, 23:3, 24:24, 26:1, 28:9, 29:18, 31:16, 32:15, 32:17, 32:18, 33:3, 33:9, 33:17, 62:6, 73:5, 74:5
**company's** [6] - 6:19, 18:25, 24:23, 73:7, 73:23, 74:3
**compel** [1] - 44:15
**competing** [1] - 19:20
**competition** [1] - 6:8
**competitive** [1] - 26:21
**competitors** [2] - 23:5, 25:21
**complaint** [9] - 38:12, 39:16, 39:17, 39:22, 40:3, 65:22, 65:25, 85:24, 86:5
**complete** [5] - 5:9, 7:24, 71:14, 77:3, 77:20
**completed** [1] - 61:22
**completely** [6] - 18:23, 32:3, 51:10, 57:17, 68:11, 68:22
**complex** [2] - 72:6, 72:8
**complicated** [1] - 65:24
**comply** [2] - 19:22, 84:25
**computer** [40] - 9:18, 12:7, 12:24, 18:25, 19:14, 21:10, 21:14, 22:2, 22:10, 23:2, 23:8, 23:22, 24:8, 24:14, 24:19, 24:22, 24:23, 25:3, 25:5, 25:8, 25:9, 25:19, 25:24, 26:20, 27:17, 27:21, 28:1, 28:2, 28:9, 29:4, 29:12, 29:19, 29:20, 30:6, 30:11, 30:13, 34:21, 34:23, 74:20
**computers** [7] - 21:3, 24:1, 24:7, 29:17, 74:14, 80:12, 81:25
**concept** [1] - 29:16
**concern** [7] - 18:1, 18:9, 24:11, 45:25, 47:5, 60:16, 63:4
**concerned** [3] - 48:18, 64:13, 77:16
**concerning** [1] - 44:20, 80:12
**concerns** [4] - 18:5, 22:21, 53:10, 65:22
**concordance** [1] - 10:16
**conditions** [1] - 2:14
**conduct** [1] - 77:13
**confer** [2] - 75:3, 83:17, 85:19, 86:8, 86:12
**confess** [1] - 43:4

**confident** [2] - 69:8, 86:17
**confidential** [1] - 30:16
**confidentiality** [4] - 25:24, 26:25, 82:3, 82:7
**confirm** [1] - 55:8
**confirmation** [1] - 78:21
**conflict** [1] - 35:11
**confusion** [1] - 48:15
**Congress** [2] - 49:6, 50:2
**Congressional** [1] - 49:13
**connection** [1] - 19:22
**consensual** [1] - 23:16
**consent** [14] - 2:4, 17:10, 23:12, 23:14, 26:2, 26:12, 29:13, 32:9, 57:4, 68:15, 68:20, 83:5, 85:18, 86:10
**consequences** [1] - 62:22
**consider** [3] - 56:3, 56:15, 68:23
**considered** [1] - 55:24
**consistent** [1] - 35:16
**constraints** [1] - 2:1
**construed** [1] - 50:4
**consult** [4] - 26:23, 32:12, 34:15, 36:8
**consulting** [2] - 27:6, 36:9
**contact** [2] - 34:1, 34:5
**contain** [2] - 29:6, 75:12
**contained** [1] - 74:21
**contempt** [1] - 4:7
**content** [1] - 5:17
**context** [1] - 40:24
**continue** [2] - 40:22, 57:21
**continued** [1] - 42:17
**continues** [1] - 4:14
**continuing** [1] - 2:3
**contractor** [2] - 16:3, 16:10
**contrary** [2] - 26:14, 49:12
**control** [1] - 4:14
**convene** [1] - 69:17
**convenient** [1] - 83:10
**conversation** [2] - 1:11, 13:16
**converse** [1] - 42:15
**copies** [4] - 12:14, 12:16, 34:25, 73:22
**copy** [2] - 25:9, 25:10
**Corp** [1] - 66:6
**corporate** [2] - 24:6, 37:10, 74:7, 74:9, 79:18
**correct** [15] - 12:5, 24:25, 25:1, 31:23, 33:18, 34:22, 35:1, 38:15, 40:21, 45:8, 47:20, 48:4, 64:6, 67:17, 79:22
**correctly** [1] - 45:7
**costs** [1] - 31:19
**Counsel** [1] - 72:14
**counsel** [15] - 2:22, 2:24, 10:4, 28:22, 34:24, 48:3, 72:20, 72:25, 75:3, 75:7, 78:21, 79:11, 81:12, 86:2, 86:12
**country** [1] - 84:5
**couple** [1] - 37:24
**course** [5] - 1:14, 10:23, 38:19, 68:11, 86:21
**Court** [23] - 37:18, 38:14, 44:7, 44:20, 49:4, 53:5, 53:18, 59:16, 59:20, 60:20, 62:7, 62:9, 62:10, 64:22, 74:18, 76:23,

76:25, 77:2, 77:24, 78:5, 83:5, 84:3
**COURT** [311] - 1:1, 1:14, 1:22, 3:7, 3:13, 3:21, 4:6, 4:17, 4:22, 5:7, 5:14, 5:17, 5:19, 5:23, 6:1, 6:4, 6:6, 6:9, 6:14, 6:20, 6:23, 7:3, 7:8, 7:12, 7:21, 8:1, 8:5, 8:10, 8:13, 8:17, 8:22, 8:25, 9:6, 9:9, 10:6, 10:9, 10:11, 10:15, 10:21, 10:24, 11:6, 11:12, 11:17, 11:19, 11:23, 12:2, 12:12, 12:14, 12:18, 12:21, 12:23, 14:3, 14:9, 14:15, 14:18, 14:21, 15:2, 15:9, 15:21, 15:24, 16:5, 16:17, 17:8, 17:20, 18:18, 18:21, 19:5, 19:10, 19:12, 19:15, 19:19, 19:24, 20:3, 20:9, 20:17, 21:1, 21:6, 21:12, 21:15, 21:20, 21:22, 21:24, 22:1, 22:6, 22:8, 22:12, 22:14, 22:18, 22:23, 23:7, 23:11, 23:24, 24:21, 24:24, 25:2, 25:8, 25:16, 25:18, 25:23, 26:10, 26:17, 27:2, 27:22, 27:25, 28:7, 28:12, 28:16, 28:25, 29:7, 29:13, 29:18, 29:22, 30:1, 30:18, 30:24, 31:5, 31:9, 31:11, 31:17, 31:22, 32:2, 32:14, 32:20, 33:2, 33:7, 33:12, 33:16, 33:19, 33:22, 33:25, 34:4, 34:14, 34:19, 34:23, 35:7, 35:10, 35:17, 35:19, 36:8, 36:15, 36:17, 36:25, 37:3, 37:11, 37:17, 38:6, 38:13, 38:16, 38:19, 39:5, 39:8, 39:20, 40:4, 40:14, 40:22, 41:13, 41:21, 42:8, 42:10, 42:14, 43:3, 43:19, 44:5, 44:16, 44:22, 45:2, 45:4, 45:25, 46:10, 46:17, 47:14, 47:18, 47:22, 47:24, 48:20, 49:1, 49:12, 49:20, 49:23, 50:15, 50:23, 51:3, 51:22, 52:12, 53:1, 53:16, 54:1, 54:4, 54:14, 54:18, 54:22, 55:7, 55:14, 55:16, 55:20, 56:5, 56:13, 56:18, 57:4, 57:10, 57:12, 57:16, 57:19, 58:2, 58:4, 58:9, 58:13, 58:23, 59:7, 60:6, 60:11, 60:19, 60:22, 60:25, 61:6, 61:12, 61:15, 61:19, 61:23, 61:25, 62:7, 62:9, 62:12, 62:20, 63:2, 63:5, 63:14, 63:20, 63:23, 64:11, 65:3, 65:5, 65:11, 65:15, 65:18, 66:1, 66:4, 66:13, 66:19, 67:1, 67:18, 67:22, 68:3, 68:5, 69:3, 69:7, 69:15, 69:19, 69:24, 70:4, 70:12, 70:16, 70:20, 71:1, 71:3, 71:7, 71:15, 71:25, 72:3, 72:8, 72:12, 72:14, 72:18, 72:22, 75:1, 75:21, 76:1, 76:5, 76:8, 77:15, 77:18, 78:20, 79:1, 79:5, 79:9, 79:14, 80:2, 80:5, 80:9, 80:14, 80:17, 80:20, 80:23, 81:2, 81:6, 81:9, 81:14, 81:23, 82:5, 82:8, 82:10, 82:12, 82:14, 82:18, 82:24, 83:3, 83:8, 83:12, 83:15, 83:19, 83:22, 84:7, 84:12, 84:15, 84:18, 84:23, 85:3, 85:17, 85:19, 86:7, 86:15
**court** [20] - 1:5, 20:4, 39:11, 40:17, 40:20, 40:23, 40:24, 41:2, 41:3, 43:1, 43:6, 43:24, 43:25, 44:10, 53:21, 61:5, 65:9, 70:3, 71:12, 84:2
**courtroom** [2] - 1:18, 83:18
**Courts** [1] - 49:18
**courts** [1] - 52:19

*Schreiber vs. Friedman*

4

**cover** [1] - 56:2
**covered** [5] - 13:2, 28:5, 31:1, 32:1, 32:10
**covers** [2] - 11:20, 57:1
**CPA** [2] - 64:21, 69:21
**crafting** [1] - 69:9
**Crazy** [2] - 23:1, 27:8
**create** [1] - 62:14
**created** [1] - 62:17
**creates** [1] - 62:16
**credit** [8] - 3:4, 3:24, 4:11, 32:16, 32:17, 32:19, 77:8, 77:9
**criminal** [2] - 48:24, 49:7
**cross** [1] - 86:1
**cross-motion** [1] - 86:1
**Cups** [2] - 23:1, 27:8
**current** [6] - 41:17, 42:1, 51:2, 75:15, 76:14, 78:12
**custody** [2] - 74:12, 77:6
**customers** [1] - 26:9
**cuts** [1] - 69:1
**damages** [1] - 49:8
**dance** [1] - 53:16
**data** [2] - 27:20, 77:4
**databases** [1] - 62:15
**date** [10] - 38:12, 47:12, 47:17, 47:18, 68:8, 78:4, 78:24, 82:20, 83:23, 86:4
**dates** [1] - 40:7
**David** [2] - 2:19, 66:5
**days** [2] - 2:2, 83:10
**DE** [1] - 80:7
**De** [3] - 45:5, 46:8, 80:7
**deal** [2] - 37:13, 52:5
**dealing** [2] - 5:9, 45:6
**December** [2] - 74:10, 79:24
**decide** [1] - 30:16
**decided** [5] - 25:22, 40:2, 44:17, 51:8
**decides** [2] - 43:16, 78:6
**decision** [6] - 1:17, 47:8, 52:20, 60:13, 68:18, 68:19
**decree** [1] - 61:5
**deemed** [1] - 73:12
**defendant** [2] - 24:25, 75:13
**defendants** [9] - 1:23, 2:4, 2:16, 34:17, 34:19, 35:21, 47:1, 54:23, 85:25
**defendants'** [3] - 2:13, 72:19, 85:23
**defenses** [1] - 78:3
**defining** [1] - 33:17
**delay** [1] - 43:2
**deliver** [2] - 21:18, 23:22
**delivered** [1] - 17:6
**denies** [1] - 60:14
**deprive** [1] - 76:25
**describe** [1] - 2:16
**describes** [1] - 50:3
**describing** [1] - 51:15
**description** [1] - 2:14
**designate** [1] - 64:25
**designated** [1] - 27:8
**despite** [1] - 3:9

**determination** [1] - 68:16
**determine** [2] - 20:13, 20:18
**determined** [1] - 78:24
**develop** [1] - 38:8
**development** [3] - 37:12, 37:13, 40:7
**developments** [5] - 1:8, 46:6, 47:5, 54:12, 60:5
**device** [3] - 74:21, 75:14, 76:13
**Devine** [7] - 64:21, 64:22, 65:1, 69:21, 74:3, 80:4
**devine** [1] - 34:18
**dialog** [3] - 13:2, 13:4, 13:8
**difference** [1] - 59:22
**different** [5] - 14:6, 14:11, 37:23, 54:19, 67:1
**Din** [63] - 38:9, 38:23, 39:9, 40:15, 43:6, 43:10, 43:11, 43:13, 43:15, 44:20, 46:16, 46:18, 47:6, 47:8, 51:6, 51:22, 52:4, 52:7, 52:15, 53:3, 53:12, 53:14, 55:21, 55:23, 55:25, 56:1, 56:2, 56:9, 56:16, 56:20, 56:22, 56:25, 57:7, 57:8, 57:13, 57:14, 58:20, 58:21, 59:3, 59:5, 59:13, 59:14, 59:19, 60:1, 61:16, 61:19, 70:14, 71:18, 71:19, 71:20, 71:21, 72:17, 77:20, 77:21, 77:22, 77:24, 78:10, 78:11, 78:13, 78:15, 84:16
**Din's** [2] - 51:1, 51:2
**Dins** [5] - 37:20, 37:23, 40:7, 50:22, 56:11
**direction** [1] - 73:7
**directions** [1] - 85:1
**directly** [1] - 9:7
**disagree** [4] - 17:15, 17:16, 24:21, 83:1
**discoverable** [1] - 30:11
**discovering** [1] - 20:20
**discovery** [3] - 30:1, 85:15
**discuss** [2] - 17:9, 68:8
**discussed** [7] - 24:6, 31:12, 31:25, 32:15, 34:10, 64:24, 68:6
**discussing** [2] - 41:24, 63:7
**discussion** [1] - 57:23
**discussions** [3] - 67:10, 67:14, 85:11
**dismiss** [12] - 41:25, 44:15, 48:11, 48:14, 48:16, 50:19, 51:7, 51:12, 52:6, 53:5, 54:12, 61:11
**dismissed** [1] - 51:13
**dispute** [3] - 38:13, 44:21, 60:18
**disrespectful** [1] - 84:21
**distracted** [1] - 6:3
**documents** [14] - 9:23, 12:19, 12:24, 14:6, 14:7, 24:10, 24:11, 37:19, 62:14, 62:16, 63:7, 74:11, 77:4, 79:24
**dollars** [1] - 66:24
**done** [20] - 3:17, 6:22, 6:25, 7:4, 7:5, 7:9, 7:17, 18:1, 19:17, 20:14, 20:16, 23:17, 28:19, 34:11, 36:22, 62:23, 65:1, 73:6, 75:17, 76:16
**door** [2] - 59:1, 85:14
**down** [15] - 1:16, 9:23, 28:3, 55:10, 58:15, 58:16, 60:12, 67:7, 68:9, 69:12,

69:25, 70:9, 75:21, 81:14, 82:22
**draft** [4] - 17:12, 70:8, 70:17, 70:23
**drives** [2] - 24:9, 24:16
**driving** [1] - 48:17
**during** [4] - 3:1, 35:5, 76:21, 78:8
**E&I** [1] - 66:6
**E&J** [4] - 66:5, 66:8, 66:9, 66:16
**e-mail** [4] - 73:10, 75:9, 75:11, 77:12
**easier** [1] - 50:24
**easily** [1] - 49:23
**eat** [1] - 69:18
**edit** [2] - 13:5, 13:6
**effect** [9] - 11:24, 13:18, 14:12, 38:9, 38:10, 53:6, 60:19, 68:25, 78:5
**effective** [3] - 2:3, 2:11, 5:3
**efficient** [1] - 31:14
**efforts** [1] - 53:15
**either** [10] - 6:15, 10:18, 15:22, 29:17, 43:22, 55:8, 63:21, 68:13, 71:8, 78:14
**electronic** [2] - 7:19, 74:21
**electronically** [1] - 8:16
**elsewhere** [1] - 21:11
**email** [11] - 11:20, 29:5, 29:23, 29:25, 30:21, 30:25, 31:1, 34:3
**emails** [1] - 30:14
**employed** [1] - 13:23, 14:13, 15:23
**employee** [5] - 14:23, 16:9, 21:8, 24:18, 28:17
**employees** [2] - 15:7, 21:3
**end** [4] - 9:15, 23:14, 25:22, 60:16
**engage** [1] - 74:4
**enjoined** [3] - 66:17, 75:25, 76:4
**enjoy** [1] - 18:16
**ensure** [12] - 7:20, 7:24, 8:15, 18:1, 18:2, 18:5, 18:11, 20:7, 27:20, 29:9, 64:10, 74:1
**enter** [3] - 31:4, 56:21, 77:19
**entered** [3] - 35:14, 35:15, 76:5
**entering** [1] - 56:1
**entire** [4] - 11:9, 11:11, 27:17, 70:7
**entities** [1] - 6:12
**entitled** [1] - 13:14
**entitles** [1] - 52:24
**entity** [2] - 66:9, 66:11
**entries** [2] - 35:13, 35:16
**equal** [8] - 3:16, 7:20, 7:24, 8:15, 28:9, 29:16, 73:19, 74:12
**equities** [1] - 55:2
**escrow** [1] - 56:11
**essentially** [5] - 29:23, 39:8, 44:22, 48:6, 69:8
**event** [7] - 7:13, 30:2, 49:3, 50:7, 51:8, 80:17, 84:10
**events** [1] - 54:9
**exactly** [10] - 2:12, 3:1, 7:22, 39:3, 43:7, 64:7, 64:16, 68:5, 70:25, 79:11
**example** [5] - 7:16, 33:7, 45:9, 45:13, 46:17
**except** [1] - 51:5
**exchange** [1] - 85:4
**excluding** [2] - 74:7, 79:19

*Schreiber vs. Friedman*

5

excuse [4] - 8:5, 81:9
Excuse [1] - 14:18
excused [1] - 68:4
exercise [1] - 4:14
exhibits [1] - 85:5
existed [2] - 38:4, 78:4
existing [6] - 42:5, 42:13, 43:13, 53:14, 56:9, 73:3
exists [3] - 24:14, 54:17, 66:17
expectation [2] - 50:13, 50:14
expedited [2] - 72:21, 82:19
expenses [3] - 32:18, 77:9, 77:10
expert [2] - 17:24, 18:6
expires [2] - 2:2, 2:9
explain [2] - 6:23, 81:16
explained [1] - 13:19
explicitly [1] - 50:3
express [1] - 18:3
expressly [1] - 16:24
extend [3] - 21:2, 38:1, 46:15
extended [1] - 67:10
extent [16] - 9:21, 9:22, 30:10, 35:15, 48:6, 48:20, 53:22, 53:24, 54:22, 62:16, 66:17, 66:20, 75:7, 83:11, 85:7, 86:19
extenuating [2] - 77:10, 77:13
eyes [7] - 26:19, 27:4, 27:5, 63:7, 74:16, 74:17, 81:25
Ezell [7] - 65:8, 73:7, 74:15, 74:24, 75:10, 75:24, 76:3
Ezell's [1] - 74:19
facilitate [2] - 22:5, 22:6
facility [2] - 32:22, 73:15
fact [5] - 11:10, 20:7, 37:23, 60:4, 65:14
factual [4] - 44:17, 45:10, 46:3, 47:5
fair [1] - 65:3
fairly [1] - 54:25
faith [1] - 43:18
family [1] - 84:10
far [6] - 2:11, 36:19, 48:12, 77:16, 80:25
fashion [3] - 67:12, 74:1, 76:25
February [3] - 45:15, 84:12, 85:3
Federal [8] - 39:1, 49:4, 49:17, 49:18, 53:18, 59:16, 59:20, 60:20
federal [6] - 40:17, 40:23, 41:2, 48:24, 50:9, 59:18
feet [1] - 86:25
Feinstein [1] - 2:20
FELDMAN [5] - 64:20, 69:20, 79:19, 79:22, 80:3
Feldman [2] - 64:20, 80:3
fell [2] - 15:7, 15:11
fellow [1] - 11:7
felt [2] - 36:12, 71:17
few [3] - 24:6, 64:12, 69:3
figure [1] - 40:23
file [3] - 53:12, 66:13, 75:12
filed [11] - 38:5, 38:12, 39:16, 39:17, 39:21, 40:3, 47:13, 47:15, 47:16, 52:11, 78:4
files [2] - 27:17, 65:2

filing [5] - 37:18, 55:25, 56:1, 56:3, 78:12
final [1] - 8:17
finally [1] - 17:6
financial [5] - 26:7, 26:8, 33:19, 73:4, 73:8
financials [1] - 26:6
fine [5] - 22:13, 26:7, 53:23, 80:1, 86:10
finished [1] - 63:24
FINKEL [35] - 1:12, 12:20, 12:22, 21:21, 21:23, 21:25, 22:4, 22:7, 24:4, 25:13, 41:12, 58:1, 58:3, 58:7, 58:11, 62:11, 65:4, 65:6, 65:13, 65:17, 65:19, 66:3, 80:11, 80:15, 80:24, 81:4, 81:8, 81:12, 82:6, 82:9, 83:20, 84:2, 84:16, 84:19, 85:2
finkel [1] - 25:4
Finkel [5] - 21:25, 22:1, 65:6, 80:10, 84:23
fire [1] - 86:25
firm [1] - 50:12
firms [1] - 64:23
first [14] - 1:4, 2:16, 3:8, 11:22, 16:19, 21:24, 22:23, 27:19, 38:17, 46:21, 53:10, 70:8, 80:18, 86:20
fits [1] - 28:1
five [2] - 50:21, 51:24
fixed [2] - 47:17, 47:18
Flavors [1] - 23:1
flexible [2] - 27:4, 41:18
focused [1] - 9:24
foliation [1] - 18:16
folks [8] - 17:9, 37:5, 47:24, 55:16, 69:3, 81:17, 84:9, 86:8
follow [2] - 11:7, 44:3
following [2] - 42:17, 80:25
foreclose [2] - 5:10, 76:24
forget [3] - 28:13, 47:14, 59:7
forgive [2] - 1:19, 80:5
form [4] - 13:9, 34:12, 41:16, 66:17
former [4] - 13:16, 14:23, 16:8, 16:9
formerly [1] - 73:6
forms [2] - 13:13, 13:25
forth [2] - 19:3, 67:15
forward [24] - 2:9, 17:18, 26:12, 26:13, 32:18, 35:6, 44:24, 45:16, 45:20, 46:11, 47:19, 55:3, 57:25, 58:5, 58:7, 58:19, 58:21, 59:8, 59:16, 59:19, 59:20, 59:23, 61:2, 64:18
four [1] - 73:18
fourth [1] - 56:16
frame [3] - 45:25, 46:2, 72:6
framework [2] - 38:4, 40:17
frankly [2] - 15:15, 45:21
free [6] - 19:25, 42:14, 57:20, 57:22, 57:23, 64:1
freezing [1] - 72:1
Friday [5] - 6:21, 9:3, 11:5, 37:24, 67:8
friedman [1] - 3:9
Friedman [39] - 1:2, 2:20, 3:11, 4:14, 5:24, 6:12, 9:23, 12:10, 15:6, 15:16,

15:19, 22:9, 28:22, 29:1, 29:16, 29:24, 30:20, 34:20, 35:2, 36:3, 37:15, 37:22, 43:11, 50:22, 51:19, 52:3, 52:10, 52:14, 52:16, 53:3, 53:11, 55:6, 56:9, 74:14, 74:24, 75:10, 77:5, 80:19, 80:20
Friedman's [13] - 2:21, 11:15, 21:9, 25:9, 28:1, 29:11, 30:11, 30:13, 32:25, 33:5, 33:15, 74:19, 86:1
front [3] - 41:14, 57:13, 80:9
frozen [5] - 45:24, 48:7, 48:10, 48:14, 58:7
full [18] - 4:10, 10:4, 13:20, 17:25, 20:23, 21:3, 21:7, 21:8, 24:17, 28:8, 32:9, 48:2, 49:5, 59:25, 60:7, 75:16, 76:15, 77:15
full-time [4] - 21:3, 21:7, 21:8, 24:17
fully [1] - 53:7
function [3] - 4:15, 15:17, 73:5
functionality [10] - 14:11, 14:17, 16:19, 17:23, 17:25, 29:9, 30:7, 36:12, 75:16, 76:15
functionally [1] - 18:11
functions [1] - 31:8
Funding [1] - 66:6
future [6] - 18:12, 27:18, 40:5, 40:8, 52:25, 84:23
generate [1] - 13:24
gentlemen [1] - 69:2
Geoffrey [2] - 82:15, 82:16
given [7] - 14:12, 17:24, 34:5, 34:6, 65:19, 65:21, 85:24
glad [1] - 86:25
goal [2] - 49:15, 50:5
governs [1] - 35:6
granted [2] - 53:2, 73:12
Grantz [2] - 66:5, 79:5
GRANTZ [7] - 12:16, 28:15, 66:5, 79:6, 79:10, 79:17, 80:1
great [5] - 64:2, 64:18, 68:9, 81:18, 86:18
Group [1] - 66:6
guess [10] - 4:13, 23:11, 23:17, 25:5, 29:13, 33:20, 38:20, 40:23, 51:18, 78:21
guidelines [1] - 27:7
gun [1] - 32:4
guy [1] - 10:21
guys [9] - 19:24, 38:16, 54:1, 54:5, 54:19, 64:15, 83:23, 85:17, 85:19
hairs [1] - 59:7
hallway [1] - 55:5
hand [1] - 9:4
handed [1] - 13:25
handling [1] - 68:21
happy [4] - 7:21, 9:14, 65:2, 86:16
hard [7] - 11:7, 24:9, 24:16, 63:21, 72:6, 84:8, 86:24
harm [2] - 5:11, 45:12
head [1] - 9:11
heading [2] - 12:25, 13:3

**hear** [8] - 1:17, 21:23, 22:20, 35:7, 35:20, 41:12, 75:22, 83:24
**heard** [7] - 38:23, 39:13, 50:20, 53:11, 70:18, 81:20, 83:7
**hearing** [52] - 1:7, 2:6, 2:12, 9:25, 11:4, 23:14, 26:14, 29:14, 32:4, 36:23, 38:1, 38:3, 40:10, 41:16, 41:20, 43:14, 44:2, 45:7, 45:18, 45:20, 51:8, 51:20, 51:23, 52:2, 54:4, 54:23, 58:4, 59:24, 60:2, 61:21, 62:24, 63:1, 63:17, 67:9, 67:13, 68:18, 69:13, 71:9, 71:24, 72:10, 72:23, 76:7, 78:24, 79:3, 81:3, 81:11, 81:19, 82:21, 82:25, 85:6, 85:16, 87:2
**hearings** [1] - 68:14
**held** [2] - 67:12, 86:4
**Heller** [4] - 22:24, 25:17, 64:3, 82:11
**HELLER** [19] - 22:22, 22:24, 23:9, 23:18, 25:17, 25:20, 26:5, 62:2, 62:8, 62:10, 62:13, 63:11, 63:18, 64:6, 81:20, 81:24, 82:11, 82:13, 86:14
**heller** [1] - 25:18
**help** [4] - 9:14, 62:21, 84:20, 86:19
**helpful** [2] - 4:23, 71:11
**helps** [1] - 63:10
**Herrick** [1] - 2:19
**Hersko** [2] - 82:16, 83:10
**hesitate** [1] - 4:8
**Heter** [9] - 39:16, 39:17, 39:25, 40:7, 40:16, 48:18, 55:22, 56:10, 59:8
**himself** [1] - 28:22
**hire** [1] - 31:17
**hold** [3] - 43:16, 57:13, 71:18
**holiday** [1] - 73:13
**honestly** [3] - 11:25, 33:15, 72:19
**Honor** [169] - 1:12, 1:20, 2:19, 2:25, 3:8, 3:11, 3:15, 5:4, 5:18, 5:24, 6:22, 7:1, 7:6, 7:18, 7:23, 8:4, 8:8, 8:12, 8:14, 8:21, 8:23, 9:4, 9:14, 10:5, 10:8, 10:12, 10:19, 11:4, 11:8, 11:14, 11:22, 11:25, 12:6, 12:13, 12:20, 13:13, 14:6, 14:10, 14:20, 14:24, 15:4, 16:8, 16:11, 16:18, 17:16, 17:22, 19:6, 19:16, 19:21, 20:2, 20:10, 20:25, 21:16, 21:21, 21:25, 22:4, 22:7, 22:13, 22:15, 22:22, 22:24, 24:4, 24:17, 26:5, 26:16, 27:16, 28:20, 29:1, 29:15, 30:4, 31:10, 31:23, 32:6, 35:24, 35:25, 36:1, 36:24, 37:6, 37:8, 38:17, 39:2, 42:3, 42:9, 43:4, 44:3, 44:13, 45:3, 45:5, 47:4, 47:25, 48:17, 48:25, 49:11, 49:16, 50:11, 50:21, 51:18, 52:8, 53:7, 54:13, 54:20, 55:4, 55:18, 56:7, 56:12, 57:18, 58:1, 58:8, 58:18, 59:1, 60:3, 60:9, 60:15, 61:9, 61:17, 62:2, 62:25, 63:18, 64:3, 64:24, 65:9, 65:17, 65:21, 66:3, 66:5, 67:20, 67:21, 67:25, 69:5, 69:14, 70:6, 70:22, 71:4, 71:10, 71:11, 72:5, 72:16, 73:22, 75:23, 76:12, 79:4, 80:1, 80:3, 80:7, 80:11, 80:22, 80:24, 81:4, 81:8, 81:12, 81:13, 81:20, 82:22, 83:2, 83:7, 83:14, 83:20, 84:3, 84:4, 84:14,

84:17, 84:19, 84:20, 85:15, 85:21, 85:22, 86:3, 87:3, 87:4
**Honor's** [1] - 10:1
**hope** [1] - 32:10
**hours** [6] - 37:25, 58:5, 73:12, 73:13, 84:9
**house** [2] - 33:5, 33:8
**houses** [1] - 32:25
**hunt** [1] - 9:23
**idea** [3] - 25:19, 25:23, 53:20
**identical** [1] - 29:3
**Identify** [1] - 22:23
**identify** [2] - 1:5, 33:14
**identifying** [2] - 33:12, 34:4
**ignore** [1] - 43:17
**image** [1] - 34:23, 64:9
**imaged** [2] - 62:12, 74:15
**imaging** [5] - 25:5, 25:19, 25:24, 27:17, 81:25
**Imaging** [1] - 25:9
**immediately** [4] - 20:20, 73:16, 74:6, 79:17
**important** [1] - 36:2
**imposing** [1] - 54:23
**inappropriate** [1] - 45:12
**Inc** [2] - 66:8, 66:9
**include** [2] - 23:4, 73:13
**includes** [1] - 11:21
**including** [3] - 28:10, 29:5
**inconsistent** [2] - 35:13, 43:20
**incorrect** [1] - 13:11
**increase** [1] - 3:21
**independent** [3] - 3:23, 5:12, 5:14, 16:3, 16:9
**indicate** [1] - 72:25
**individual** [1] - 48:22
**individually** [1] - 25:3
**inevitably** [1] - 17:11
**inform** [1] - 77:22
**information** [24] - 7:19, 8:16, 12:10, 13:21, 20:19, 23:3, 23:6, 23:19, 23:20, 23:22, 26:1, 26:4, 26:7, 26:8, 26:11, 26:19, 26:24, 29:6, 29:18, 30:10, 30:17, 34:2, 62:18, 74:21
**informs** [1] - 84:4
**initial** [1] - 52:20
**initiate** [2] - 56:22, 77:21
**injunction** [14] - 15:7, 42:1, 45:11, 47:2, 52:13, 53:2, 61:21, 66:20, 68:14, 71:24, 76:5, 76:11, 76:22, 77:25
**injunctive** [7] - 46:4, 46:21, 48:8, 49:8, 51:10, 51:11, 61:9
**injured** [1] - 49:6
**inquiry** [1] - 57:1
**inserting** [1] - 57:22
**insist** [1] - 32:17
**insisting** [2] - 54:23, 54:25
**instance** [2] - 34:18, 86:20
**instigate** [1] - 53:15
**instigation** [1] - 21:9
**institution** [1] - 33:20

**instructions** [1] - 31:3
**intend** [1] - 85:5
**intent** [2] - 49:13, 73:10
**interest** [2] - 17:17, 31:15
**interested** [4] - 2:12, 5:1, 63:14, 63:16
**interesting** [1] - 35:25
**interprets** [1] - 41:4
**interrupt** [2] - 12:21, 14:18
**intervention** [1] - 74:18
**investigate** [1] - 67:2
**investigated** [1] - 66:8
**investigation** [1] - 20:12
**Investors** [1] - 66:6
**involve** [1] - 54:10
**irreparable** [1] - 45:12
**issue** [26] - 10:20, 16:22, 16:25, 17:9, 17:22, 24:5, 28:13, 29:11, 30:6, 30:12, 36:5, 43:16, 48:7, 52:9, 54:10, 67:1, 68:10, 68:17, 72:7, 72:17, 73:10, 78:6, 79:12, 85:23
**issued** [7] - 32:21, 39:9, 55:22, 61:5, 76:11, 77:8, 78:11
**issues** [10] - 3:2, 18:12, 31:24, 32:8, 32:10, 48:10, 48:16, 60:5, 85:9
**issuing** [1] - 52:19
**IT** [10] - 13:16, 15:18, 15:19, 16:2, 16:3, 19:14, 19:17, 24:7, 75:19, 76:19
**items** [1] - 57:22
**itself** [2] - 14:22, 27:21
**January** [4] - 45:14, 67:17, 83:3, 84:6
**Jersey** [2] - 10:18, 73:21
**Jeryg** [1] - 66:6
**Jewish** [1] - 73:13
**join** [2] - 57:20, 66:1
**jointly** [2] - 57:7, 77:22
**Jorge** [1] - 65:7
**Judge** [26] - 1:10, 1:15, 2:8, 26:15, 37:1, 46:8, 51:25, 55:9, 57:20, 58:13, 60:12, 60:13, 63:20, 63:23, 64:12, 65:20, 67:3, 67:22, 68:3, 68:15, 68:18, 68:24, 69:20, 76:8, 76:11, 86:14
**judge** [2] - 64:20, 67:7
**JUDGE** [3] - 67:6, 68:4, 68:10
**judicial** [1] - 27:10
**jurisdiction** [1] - 40:19
**jury** [1] - 63:25
**just...** [1] - 79:12
**keep** [3] - 28:3, 53:17, 67:22
**keeps** [2] - 20:1, 51:1
**Kentile** [1] - 73:15
**kept** [2] - 12:3, 86:25
**king** [6] - 34:15, 47:24, 51:15, 63:2, 65:1, 79:1
**KING** [105] - 2:19, 3:11, 5:18, 5:24, 6:2, 6:5, 7:1, 7:6, 7:10, 7:23, 8:4, 8:21, 9:4, 9:7, 9:14, 11:4, 11:8, 11:14, 11:18, 11:20, 11:24, 12:5, 13:13, 14:5, 14:10, 14:17, 14:20, 14:24, 15:4, 17:16, 17:22, 19:6, 19:11, 19:16, 19:21, 20:2, 21:16, 22:13, 22:15, 26:16, 26:18, 31:10, 31:23, 32:6, 36:24, 37:6, 38:17,

*Schreiber vs. Friedman*

7

38:20, 39:7, 42:3, 42:9, 42:12, 43:2, 43:4, 44:3, 44:13, 44:19, 44:25, 47:25, 48:25, 49:10, 49:16, 49:22, 50:11, 53:7, 53:24, 54:2, 54:7, 56:7, 57:14, 57:17, 59:1, 60:3, 60:9, 60:15, 60:21, 61:4, 61:8, 61:14, 61:17, 61:21, 62:25, 63:3, 63:6, 67:21, 69:6, 69:14, 69:17, 70:6, 70:13, 70:21, 71:2, 71:4, 71:10, 72:2, 72:5, 72:11, 72:16, 72:19, 79:4, 82:22, 85:15, 85:18, 85:21, 87:4
**King** [1] - 2:19
**knowledge** [1] - 32:8
**known** [1] - 50:2
**knows** [1] - 1:5
**label** [1] - 14:1
**ladies** [1] - 69:2
**language** [11] - 48:1, 64:16, 67:4, 68:1, 69:4, 69:9, 70:11, 70:15, 76:9, 80:25, 81:13
**laptop** [3] - 62:2, 62:5, 62:18
**last** [16] - 6:2, 9:1, 15:8, 16:11, 47:14, 47:16, 47:18, 54:8, 62:4, 64:23, 66:7, 70:13, 71:12, 81:15, 81:21, 86:3
**late** [2] - 50:1, 67:8
**Launch** [6] - 28:10, 29:2, 29:10, 30:7, 30:25, 35:16
**Law** [1] - 82:16
**law** [6] - 48:24, 50:9, 50:16, 52:9, 52:18, 52:24
**layer** [1] - 69:1
**leads** [1] - 17:10
**learned** [3] - 11:10, 43:5, 62:4
**learning** [1] - 47:25
**least** [4] - 27:19, 35:5, 80:12, 85:4
**leave** [2] - 40:19, 69:24
**left** [3] - 3:2, 32:12, 58:13
**legal** [2] - 44:17, 46:3
**less** [2] - 31:15, 45:5
**letter** [3] - 1:9, 1:19
**level** [3] - 16:15, 55:11, 68:16
**liberally** [2] - 50:4, 50:5
**lift** [1] - 47:2
**likely** [2] - 17:14, 48:19
**likewise** [1] - 18:10
**limited** [2] - 38:24, 45:23
**limiting** [1] - 44:7
**limits** [1] - 52:10
**line** [1] - 13:2
**lines** [2] - 27:3, 27:4
**link** [1] - 19:6
**linked** [2] - 19:2, 19:19
**links** [1] - 19:4
**list** [7] - 13:2, 28:4, 32:9, 32:11, 33:8, 85:6
**listen** [1] - 72:24
**lists** [2] - 6:11, 26:9
**literally** [3] - 20:15, 49:15, 59:1
**litigate** [5] - 27:14, 32:4, 52:24, 54:25, 63:21
**litigated** [1] - 27:14
**litigating** [2] - 40:22, 52:6

**litigation** [5] - 31:20, 49:4, 51:16, 54:15, 55:1
**live** [2] - 46:2, 53:6
**LLC** [1] - 73:6
**loans** [1] - 76:24
**local** [5] - 29:4, 29:17, 30:6, 30:13, 30:14
**location** [5] - 10:25, 20:18, 20:20, 21:13, 33:2
**locations** [1] - 32:23
**locked** [4] - 3:17, 3:18, 3:19, 4:4
**lodged** [1] - 7:13
**logistical** [1] - 86:15
**look** [19] - 4:6, 4:25, 6:15, 13:24, 17:8, 23:13, 36:17, 50:16, 51:3, 51:19, 53:16, 54:19, 54:22, 55:22, 59:7, 64:11, 66:19, 79:10, 83:22
**looking** [11] - 9:8, 12:18, 12:23, 14:7, 22:19, 23:15, 24:7, 28:18, 35:23, 43:22, 64:8
**lose** [3] - 51:12, 59:19
**luck** [1] - 72:12
**lunch** [3] - 69:10, 69:15, 70:7
**luncheon** [1] - 70:2
**Magistrate** [1] - 68:15
**mail** [4] - 73:10, 75:9, 75:11, 77:12
**main** [1] - 17:1
**maintain** [1] - 41:23
**maintained** [1] - 23:2
**maintaining** [1] - 22:16
**maintains** [1] - 62:3
**majority** [1] - 32:11
**Management** [4] - 66:6, 66:8, 66:9, 66:16
**management** [1] - 13:1
**manager** [1] - 13:17
**Manhattan** [2] - 83:21, 84:3
**manner** [1] - 26:21
**MARGOLIS** [9] - 82:15, 83:7, 83:9, 83:17, 84:4, 84:10, 84:14, 85:22, 86:12
**Margolis** [1] - 82:15
**Maryland** [1] - 66:10
**material** [1] - 74:16
**materials** [2] - 11:21, 77:4
**matter** [10] - 7:8, 9:21, 43:14, 43:16, 43:17, 63:24, 65:14, 65:25, 69:9, 83:20
**matters** [2] - 37:10, 54:25
**Maurice** [1] - 22:24
**Maysharim** [1] - 77:23
**mean** [3] - 6:9, 50:6, 68:12
**meaning** [6] - 6:10, 18:24, 39:16, 40:6, 53:25, 58:20
**means** [1] - 53:19
**meant** [2] - 49:14, 76:23
**meantime** [1] - 58:17
**mechanic** [1] - 65:7
**mechanically** [1] - 21:17
**mediate** [1] - 71:3
**meeting** [1] - 55:5

**meets** [1] - 2:14
**member** [3] - 9:16, 75:17, 76:16
**members** [10] - 16:13, 32:16, 36:2, 73:10, 73:16, 73:18, 73:22, 74:13, 77:7, 77:12
**mentioned** [2] - 23:5, 71:13
**Michael** [2] - 64:20, 64:21
**Michelle** [1] - 15:5
**midnight** [1] - 74:23
**might** [10] - 46:19, 46:24, 50:7, 53:4, 53:5, 58:14, 68:10, 69:6, 70:24, 71:11
**million** [1] - 66:24
**mind** [2] - 41:17, 49:13
**minute** [1] - 45:1
**minutes** [9] - 24:6, 36:25, 43:5, 51:24, 64:12, 69:4, 70:9, 70:21, 71:6
**missing** [1] - 51:17
**misunderstanding** [1] - 70:24
**misunderstood** [1] - 76:12
**mix** [2] - 36:21, 51:7
**moment** [4] - 6:3, 10:6, 10:9, 42:8, 47:22
**Monday** [1] - 9:25
**money** [2] - 56:11, 67:2
**morning** [2] - 11:5, 31:25
**most** [4] - 20:3, 37:7, 65:13, 81:4
**motion** [26] - 1:9, 1:15, 38:18, 38:21, 39:2, 40:1, 41:9, 41:25, 44:14, 48:11, 48:14, 48:16, 50:19, 51:7, 51:11, 51:12, 51:25, 52:6, 53:5, 54:12, 55:10, 60:12, 61:10, 64:19, 66:13, 86:1
**move** [4] - 3:3, 26:12, 26:13, 85:23
**moving** [1] - 68:25
**MR** [310] - 1:12, 2:19, 3:8, 3:11, 3:14, 4:3, 4:13, 4:19, 5:4, 5:8, 5:15, 5:18, 5:22, 5:24, 6:2, 6:5, 6:7, 6:10, 6:18, 6:22, 7:1, 7:6, 7:10, 7:23, 8:4, 8:21, 9:4, 9:7, 9:14, 10:12, 11:4, 11:8, 11:14, 11:18, 11:20, 11:24, 12:5, 12:13, 12:15, 12:16, 12:17, 12:20, 12:22, 13:13, 14:5, 14:10, 14:17, 14:20, 14:24, 15:4, 16:18, 17:16, 17:22, 18:19, 18:22, 19:6, 19:11, 19:13, 19:16, 19:21, 20:2, 20:6, 21:2, 21:7, 21:13, 21:16, 21:21, 21:23, 21:25, 22:4, 22:7, 22:9, 22:13, 22:15, 22:22, 22:24, 23:9, 23:18, 24:4, 24:17, 24:23, 25:1, 25:7, 25:11, 25:13, 25:14, 25:17, 25:20, 26:5, 26:16, 26:18, 26:22, 27:16, 27:23, 28:5, 28:8, 28:15, 28:20, 29:20, 30:20, 31:3, 31:7, 31:10, 31:12, 31:21, 31:23, 32:6, 32:15, 32:21, 33:4, 33:10, 33:14, 33:18, 33:21, 33:24, 34:1, 34:9, 34:16, 34:22, 35:1, 35:8, 35:12, 35:18, 35:23, 36:10, 36:16, 36:24, 37:6, 37:8, 37:12, 37:18, 38:11, 38:15, 38:17, 38:20, 39:7, 39:15, 39:24, 40:5, 40:21, 41:9, 41:12, 41:15, 42:3, 42:9, 42:12, 43:2, 43:4, 44:3, 44:13, 44:19, 44:25, 45:3, 45:5, 46:8, 46:14, 47:4, 47:16, 47:20, 47:25,

48:25, 49:10, 49:16, 49:22, 50:11, 50:21, 50:25, 51:18, 52:8, 52:16, 53:7, 53:24, 54:2, 54:7, 54:16, 54:20, 55:4, 55:13, 55:18, 55:21, 56:7, 56:8, 56:14, 56:19, 57:5, 57:11, 57:14, 57:17, 58:1, 58:3, 58:7, 58:11, 58:18, 58:25, 59:1, 60:3, 60:9, 60:15, 60:21, 60:24, 61:4, 61:8, 61:14, 61:17, 61:21, 61:24, 62:2, 62:8, 62:10, 62:11, 62:13, 62:25, 63:3, 63:6, 63:11, 63:18, 64:3, 64:6, 64:7, 64:20, 65:4, 65:6, 65:13, 65:17, 65:19, 66:3, 66:5, 66:16, 66:23, 67:20, 67:21, 67:25, 69:5, 69:6, 69:14, 69:17, 69:20, 69:22, 70:6, 70:13, 70:17, 70:21, 71:2, 71:4, 71:10, 71:11, 71:23, 72:2, 72:5, 72:11, 72:16, 72:19, 73:2, 75:2, 75:6, 75:23, 76:2, 76:6, 76:12, 77:17, 77:19, 78:25, 79:4, 79:6, 79:10, 79:17, 79:19, 79:21, 79:22, 80:1, 80:3, 80:7, 80:11, 80:15, 80:19, 80:22, 80:24, 81:4, 81:8, 81:12, 81:20, 81:24, 82:4, 82:6, 82:9, 82:11, 82:13, 82:15, 82:22, 83:2, 83:7, 83:9, 83:14, 83:17, 83:20, 84:2, 84:4, 84:10, 84:14, 84:16, 84:19, 85:2, 85:15, 85:18, 85:21, 85:22, 86:12, 86:14, 87:3, 87:4

**MS** [23] - 1:20, 7:18, 8:8, 8:12, 8:14, 8:23, 10:7, 10:10, 10:19, 10:23, 15:6, 15:11, 15:22, 16:1, 16:7, 20:10, 20:24, 29:1, 29:8, 29:15, 29:24, 30:3, 30:23
**muller** [1] - 82:10
**multiple** [1] - 84:2
**must** [1] - 49:14
**mutually** [3] - 73:17, 75:19, 76:18
**name** [4] - 16:11, 21:24, 28:14, 33:20
**named** [1] - 16:10
**namely** [1] - 3:2
**names** [3] - 13:3, 65:25, 80:6
**national** [1] - 73:17
**nature** [2] - 65:20, 65:21
**near** [1] - 40:8
**necessarily** [1] - 30:3
**necessary** [2] - 1:16, 67:23
**need** [38] - 2:6, 2:9, 4:16, 6:17, 7:13, 26:3, 26:13, 31:3, 33:11, 36:4, 36:8, 36:11, 39:1, 39:6, 42:6, 42:12, 49:3, 50:16, 54:5, 55:9, 55:18, 58:14, 67:25, 68:7, 69:3, 69:12, 69:25, 70:15, 70:20, 79:6, 79:12, 80:11, 81:1, 81:8, 84:21, 85:13, 85:14, 87:2
**needed** [4] - 23:12, 56:10, 67:13, 83:11
**needs** [3] - 19:17, 27:14, 36:21
**negotiate** [1] - 79:15
**negotiation** [1] - 81:17
**negotiations** [1] - 71:3
**Nelkin** [7] - 3:7, 4:25, 28:3, 59:11, 64:24, 78:22, 80:18
**NELKIN** [127] - 3:8, 3:14, 4:3, 4:13, 4:19, 5:4, 5:8, 5:15, 5:22, 6:7, 6:10, 6:18, 6:22, 10:12, 12:13, 12:15, 12:17, 16:18, 18:19, 18:22, 19:13, 20:6, 21:2,

21:7, 21:13, 22:9, 24:17, 24:23, 25:1, 25:7, 25:11, 25:14, 26:22, 27:16, 27:23, 28:5, 28:8, 28:20, 29:20, 30:20, 31:3, 31:7, 31:12, 31:21, 32:15, 32:21, 33:4, 33:10, 33:14, 33:18, 33:21, 33:24, 34:1, 34:9, 34:16, 34:22, 35:1, 35:8, 35:12, 35:18, 35:23, 36:10, 36:16, 37:8, 37:12, 37:18, 38:11, 38:15, 39:15, 39:24, 40:5, 40:21, 41:9, 41:15, 45:3, 46:14, 47:4, 47:16, 47:20, 50:21, 50:25, 51:18, 52:8, 52:16, 54:16, 54:20, 55:4, 55:13, 55:18, 55:21, 56:8, 56:14, 56:19, 57:5, 57:11, 58:18, 58:25, 60:24, 61:24, 64:3, 64:7, 66:16, 66:23, 67:20, 67:25, 69:5, 69:22, 70:17, 71:11, 71:23, 73:2, 75:2, 75:6, 75:23, 76:2, 76:6, 76:12, 77:17, 77:19, 78:25, 79:21, 80:19, 80:22, 82:4, 83:2, 83:14, 87:3
**Nelkins** [1] - 2:23
**New** [3] - 10:18, 66:10, 73:21
**new** [51] - 2:17, 3:3, 3:24, 3:25, 4:11, 5:22, 6:1, 6:4, 12:6, 37:24, 38:13, 39:9, 39:14, 39:15, 39:23, 40:6, 42:4, 43:11, 43:13, 44:19, 46:15, 48:1, 53:12, 53:13, 53:14, 54:9, 55:25, 56:2, 56:3, 56:7, 56:23, 56:25, 57:1, 57:8, 57:17, 57:22, 58:20, 59:5, 59:14, 61:7, 62:14, 73:17, 74:1, 74:2, 74:4, 77:21, 78:9, 78:10, 78:11
**newer** [1] - 49:24
**next** [3] - 31:2, 51:24, 79:15
**Nicole** [1] - 34:11
**night** [1] - 74:23
**nobody** [1] - 15:2
**nominal** [1] - 24:24
**non** [3] - 75:8, 82:2, 82:6
**non-Two** [1] - 75:8
**non-use** [2] - 82:2, 82:6
**nonentity** [1] - 66:12
**nonuse** [1] - 27:1
**normal** [1] - 2:21
**normally** [1] - 41:5
**note** [1] - 3:8
**notes** [1] - 35:23
**nothing** [8] - 39:14, 39:15, 39:23, 45:10, 45:13, 60:25, 66:10, 66:13
**noting** [1] - 76:10
**number** [2] - 34:3, 37:10, 85:24
**Nussbaum** [21] - 13:16, 13:22, 14:12, 15:22, 16:2, 16:14, 17:1, 17:2, 17:7, 17:24, 18:11, 18:17, 28:15, 28:16, 28:21, 29:10, 30:8, 75:20, 76:19
**Nussbaum's** [1] - 74:20
**object** [5] - 19:10, 20:14, 23:17, 23:18, 30:14
**objection** [18] - 7:14, 19:5, 19:15, 19:16, 20:10, 20:24, 21:15, 21:16, 21:22, 22:3, 22:12, 25:4, 30:23, 31:22, 56:16, 68:6, 69:23, 73:11
**objectionable** [2] - 36:5, 36:20

**objections** [2] - 31:9, 68:23
**obligation** [1] - 7:24
**observe** [3] - 17:24, 18:17, 18:20
**observing** [1] - 7:10
**obstacle** [1] - 30:19
**obtain** [2] - 46:25, 52:13
**obtained** [1] - 74:15
**obviate** [1] - 49:3
**obviously** [4] - 31:1, 45:17, 86:2, 86:18
**occur** [1] - 54:9
**occurred** [1] - 47:12
**occurs** [1] - 59:11
**offer** [1] - 6:2
**offered** [4] - 2:17, 3:1, 61:17, 64:4
**office** [7] - 22:10, 29:21, 32:22, 33:3, 33:9, 33:25, 74:11
**Office** [1] - 22:25
**officer** [1] - 73:8
**Offices** [1] - 82:16
**offices** [3] - 6:19, 8:3, 74:11
**offsite** [5] - 21:3, 21:4, 21:6, 22:2, 23:2
**often** [2] - 68:14, 68:25
**on-site** [2] - 75:15, 76:14
**once** [1] - 72:24
**one** [36] - 6:3, 6:16, 7:6, 10:22, 11:24, 13:7, 14:3, 15:7, 17:2, 17:6, 22:15, 22:16, 23:3, 24:10, 26:1, 30:20, 34:9, 35:6, 37:15, 44:23, 44:25, 46:1, 48:21, 50:16, 53:10, 55:19, 56:11, 59:12, 66:10, 71:17, 72:9, 79:6, 79:7, 81:23, 84:24, 86:1
**ongoing** [1] - 73:4
**open** [5] - 3:2, 43:1, 70:3, 73:16, 85:10, 85:14
**opened** [1] - 3:4
**opening** [1] - 59:2
**opens** [1] - 62:16
**operate** [2] - 4:20, 12:7
**operating** [6] - 4:21, 15:12, 16:21, 16:24, 38:10, 38:24
**opportunity** [5] - 22:5, 30:5, 30:15, 40:11, 65:23
**opposed** [5] - 31:14, 32:22, 40:4, 40:5, 47:13
**opposing** [2] - 28:22, 48:3
**order** [11] - 3:10, 4:7, 37:19, 56:12, 56:19, 66:19, 75:20, 76:8, 76:20, 76:23, 77:2
**ordered** [2] - 3:15, 6:21, 6:24, 7:3, 8:14, 20:8, 83:5
**ordering** [2] - 10:12, 10:14
**orderly** [3] - 22:19, 67:12, 74:1
**orders** [2] - 42:5, 60:5
**Orenstein** [3] - 67:7, 68:19, 68:24
**others'** [1] - 24:8
**otherwise** [7] - 43:25, 44:23, 78:1, 78:7, 78:17, 78:18, 85:23
**ourselves** [5] - 36:6, 56:20, 56:24, 56:25, 69:11
**outcome** [2] - 38:21, 43:14
**outside** [7] - 31:17, 32:23, 33:19, 43:6,

48:11, 64:22, 74:5
**outstanding** [1] - 3:1
**overall** [1] - 31:20
**overtime** [1] - 24:18
**own** [3] - 14:16, 32:17, 70:23
**p.m** [2] - 74:10, 79:25
**P.O** [4] - 33:6, 73:21, 73:22, 73:23
**page** [7] - 8:23, 9:8, 9:15, 12:19, 12:24, 42:17
**Palma** [1] - 80:7
**PALMA** [3] - 45:5, 46:8, 80:7
**papa** [5] - 5:15, 15:15, 18:10, 34:6, 34:9
**Papa** [9] - 5:19, 16:16, 36:12, 63:13, 73:8, 73:9, 74:4, 74:12, 77:6
**Papa's** [1] - 73:24
**paper** [1] - 79:10
**papers** [4] - 5:6, 74:8, 79:21, 79:22
**paragraph** [2] - 10:4, 79:9, 79:11
**paragraphs** [1] - 79:7
**part** [12] - 19:8, 20:21, 31:5, 31:20, 38:6, 41:10, 41:16, 49:13, 55:25, 63:8, 65:24, 71:12
**particular** [1] - 37:16
**particularly** [2] - 30:4, 32:2
**parties** [34] - 15:12, 43:17, 56:15, 56:20, 57:5, 67:11, 67:16, 68:11, 68:17, 68:19, 68:22, 68:25, 72:25, 73:2, 74:4, 74:6, 74:16, 74:17, 74:24, 75:6, 75:10, 75:14, 76:13, 77:7, 77:19, 77:22, 77:23, 78:2, 78:9, 79:17, 82:1, 84:2, 86:3, 86:4
**parties'** [1] - 77:2
**partner** [1] - 9:16
**parts** [1] - 7:11
**party** [5] - 58:19, 76:23, 77:21, 78:3, 78:14
**party's** [1] - 78:20
**passage** [1] - 44:9
**Passaic** [2] - 14:1, 14:7
**passing** [1] - 1:2
**password** [17] - 10:20, 11:9, 11:11, 11:13, 11:15, 11:18, 12:9, 17:6, 28:8, 29:2, 29:3, 29:4, 29:12, 29:25, 30:21, 30:22, 30:24
**passwords** [13] - 9:18, 9:22, 10:2, 11:1, 17:5, 28:22, 28:23, 28:24, 29:17, 31:4, 74:20, 75:8, 75:11
**past** [4] - 30:18, 58:2, 58:4, 58:15
**patience** [1] - 60:16
**pause** [8] - 47:23, 55:15, 58:12, 63:22, 67:5, 75:5, 79:13, 80:16
**payroll** [6] - 31:8, 31:13, 32:22, 74:7, 79:19
**penciled** [2] - 76:2, 76:22
**pendency** [3] - 71:23, 76:21, 78:8
**pending** [6] - 38:14, 38:18, 43:14, 60:2, 86:1, 86:7
**people** [6] - 4:15, 5:2, 17:2, 20:22, 21:4, 24:7, 28:17, 69:25
**percent** [2] - 61:9, 70:11
**perfectly** [1] - 26:24

**perform** [3] - 13:6, 31:8, 31:13
**performed** [3] - 16:2, 75:18, 76:18
**performing** [1] - 16:3
**perhaps** [8] - 26:18, 30:20, 34:10, 34:12, 52:23, 63:11, 66:14, 69:17
**period** [2] - 35:5, 70:7
**permission** [1] - 40:18
**pers...** [1] - 74:25
**person** [15] - 4:3, 4:9, 5:12, 5:14, 14:23, 15:18, 15:19, 17:2, 19:17, 34:2, 34:4, 34:6, 49:6, 81:21, 84:25
**personal** [11] - 11:16, 11:18, 11:20, 12:3, 29:5, 29:25, 30:13, 30:14, 75:11, 75:12, 77:9
**perspective** [2] - 62:18, 64:8
**persuade** [1] - 59:14
**pertaining** [2] - 74:22, 75:12
**phantom** [2] - 66:20, 66:23
**phone** [3] - 2:23, 3:1, 34:3
**physical** [1] - 33:2
**PI** [1] - 76:22
**Picks** [1] - 35:7
**piece** [1] - 12:10
**place** [16] - 4:18, 4:24, 5:22, 27:7, 27:20, 27:24, 38:22, 39:18, 39:25, 40:13, 46:21, 47:7, 49:17, 57:15, 72:1, 73:3
**places** [1] - 32:25
**Plainfield** [1] - 73:21
**plaintiff** [14] - 2:2, 2:18, 16:4, 16:8, 49:5, 59:8, 59:15, 59:19, 74:22, 75:16, 75:17, 76:15, 76:16, 77:5
**plaintiff's** [2] - 24:10, 86:5
**plaintiffs** [7] - 2:15, 17:23, 39:10, 43:21, 48:17, 63:13, 70:8
**plan** [2] - 69:15, 71:7
**planned** [1] - 84:11
**play** [1] - 51:9
**point** [19] - 1:24, 14:10, 16:21, 25:21, 27:18, 36:17, 37:16, 39:15, 40:2, 40:5, 52:25, 54:3, 55:19, 58:16, 58:19, 58:21, 69:9, 87:1
**pointing** [1] - 38:18
**polled** [1] - 81:21
**portion** [1] - 10:5
**position** [3] - 60:19, 69:12, 86:5
**positions** [1] - 42:13
**possibility** [3] - 18:16, 34:10, 55:23
**possible** [8] - 18:15, 21:19, 23:15, 28:21, 34:15, 37:9, 71:14, 85:7
**possibly** [1] - 67:15
**postpone** [2] - 40:11, 44:2
**postponing** [2] - 41:10, 41:15
**posturing** [1] - 5:2
**potential** [3] - 18:12, 37:13, 48:10
**power** [3] - 44:7, 52:21, 52:22
**precisely** [1] - 2:17
**preclude** [7] - 39:10, 41:3, 47:3, 50:9, 52:6, 52:14, 53:2
**precluded** [1] - 48:23
**predates** [2] - 49:25

**predicate** [1] - 46:3
**predicates** [1] - 44:18
**predict** [1] - 46:19
**prefer** [2] - 34:8, 41:19
**preferable** [1] - 2:11
**prejudiced** [1] - 44:23
**prejudices** [1] - 46:23
**preliminary** [16] - 42:1, 46:4, 46:20, 47:2, 48:8, 51:10, 51:11, 52:13, 53:2, 61:8, 61:21, 68:14, 71:23, 76:21, 77:25, 78:6
**prepare** [5] - 13:24, 14:25, 38:2, 67:13, 87:2
**prepared** [6] - 40:9, 41:19, 58:22, 72:15, 73:14, 85:7
**preparing** [1] - 9:24
**prescribed** [1] - 48:23
**presence** [2] - 75:17, 76:16
**present** [2] - 36:3, 65:8
**presented** [1] - 18:14
**presently** [1] - 85:25
**presents** [1] - 28:13
**preserve** [5] - 30:25, 51:20, 54:11, 59:10, 64:8
**preserved** [3] - 27:21, 38:12, 74:15
**preserves** [1] - 37:15
**preserving** [1] - 27:13
**pressure** [1] - 68:13
**presumably** [2] - 45:18, 46:11
**presume** [1] - 63:8
**presumed** [1] - 50:2
**prevail** [1] - 51:10
**prevent** [1] - 26:20
**preventing** [1] - 17:11
**print** [1] - 16:16
**printed** [1] - 73:14
**Printer** [3] - 14:1, 14:2, 14:8
**private** [1] - 29:23
**privileged** [4] - 11:21, 29:6, 30:4, 30:16
**problem** [15] - 4:13, 12:2, 17:1, 22:4, 23:11, 23:19, 26:7, 37:16, 62:13, 62:20, 63:18, 68:2, 80:24, 83:24, 84:13
**problems** [1] - 17:11
**procedurally** [2] - 41:24, 47:8
**proceed** [4] - 40:9, 40:10, 48:19, 67:16
**proceeding** [14] - 40:25, 41:22, 53:13, 53:14, 57:2, 71:20, 77:21, 77:22, 77:25, 78:13, 78:14, 78:15, 78:17, 78:18
**proceedings** [20] - 42:2, 43:6, 43:10, 43:12, 43:13, 47:23, 55:15, 57:14, 58:12, 59:4, 59:6, 63:22, 67:5, 67:12, 72:13, 75:5, 77:24, 79:13, 80:16, 87:5
**process** [3] - 19:8, 64:10, 65:1
**produce** [3] - 74:6, 77:3, 79:17
**produced** [7] - 24:9, 74:8, 74:10, 74:16, 79:20, 79:23, 79:24
**professional** [5] - 69:21, 75:15, 75:19, 76:14, 76:19
**progress** [2] - 58:17, 71:5

**proposal** [1] - 47:19
**propose** [2] - 17:20, 63:12
**proposed** [3] - 2:12, 4:4, 36:19
**proposing** [2] - 25:4, 39:4
**protect** [1] - 64:9
**protected** [1] - 5:1
**protection** [1] - 2:11
**protections** [1] - 18:16
**protested** [1] - 25:15
**provide** [11] - 11:17, 11:19, 11:21, 12:14, 17:25, 20:20, 34:7, 49:4, 74:12, 75:16, 76:15
**provided** [9] - 11:8, 11:13, 18:8, 18:11, 34:25, 37:14, 56:21, 74:22, 76:8
**provisional** [3] - 38:3, 38:21, 38:25
**provisions** [3] - 27:1, 80:12, 82:2
**pull** [1] - 65:21
**purpose** [1] - 84:7
**purposes** [3] - 67:8, 68:12, 68:21
**pursuant** [1] - 78:2
**pursue** [1] - 77:21
**pursuing** [1] - 48:21
**put** [26] - 8:2, 37:20, 38:22, 40:14, 40:16, 44:20, 51:4, 59:24, 61:20, 62:23, 62:25, 64:14, 64:16, 64:18, 67:4, 68:7, 68:24, 70:5, 71:8, 71:18, 72:15, 72:22, 79:16, 81:18, 82:19, 83:4
**putting** [3] - 63:17, 68:12, 72:10
**questions** [1] - 50:24
**quibble** [1] - 8:1
**Quick** [1] - 35:7
**Quickbooks** [4] - 28:10, 35:5, 35:8, 35:14
**quickly** [4] - 21:18, 36:22, 42:10, 70:1
**quite** [2] - 16:19, 70:6
**quo** [12] - 22:17, 27:13, 37:15, 40:12, 41:17, 41:23, 42:2, 47:7, 51:2, 51:20, 51:21, 54:16
**Rabbinical** [1] - 61:5
**raise** [3] - 45:14, 68:11, 85:13
**raised** [1] - 59:2
**raising** [1] - 68:6
**ramifications** [1] - 48:2
**rather** [2] - 32:7, 51:24
**reach** [5] - 2:10, 23:15, 26:2, 37:5, 37:9
**reached** [6] - 37:6, 53:12, 67:15, 70:10, 72:16, 81:2
**reaching** [3] - 1:24, 67:11, 68:2
**read** [10] - 8:8, 49:14, 49:15, 50:4, 72:25, 78:17, 78:22, 79:7, 79:9, 80:14
**reading** [1] - 81:12
**ready** [5] - 67:23, 70:5, 70:6, 72:22, 80:21
**real** [2] - 2:1, 63:18
**realize** [1] - 42:7
**really** [13] - 4:22, 15:17, 26:6, 32:4, 35:4, 45:7, 49:10, 54:24, 62:20, 62:21, 63:14, 66:21, 69:25
**reason** [8] - 3:22, 9:16, 9:20, 41:10, 41:15, 45:9, 46:20, 83:16

**reasonably** [1] - 43:22
**reasons** [2] - 32:3, 44:12
**received** [2] - 56:8, 73:11
**recess** [2] - 70:2, 72:13
**Recess** [2] - 37:2, 42:16
**recite** [1] - 67:23
**recognizing** [1] - 28:12
**recommend** [1] - 4:8
**recommendation** [2] - 2:8, 73:24
**reconsider** [3] - 57:24, 58:14, 60:11
**reconsidered** [2] - 55:11
**reconvene** [1] - 82:20
**record** [26] - 1:1, 9:13, 12:18, 12:20, 12:23, 37:4, 37:20, 42:15, 48:6, 48:9, 48:13, 55:8, 64:16, 64:18, 65:11, 67:4, 68:8, 70:5, 71:7, 71:8, 72:10, 72:15, 72:23, 78:22, 84:21, 84:24
**records** [24] - 3:16, 6:8, 6:11, 6:19, 8:18, 9:17, 12:3, 13:12, 13:15, 20:7, 20:11, 21:11, 24:19, 32:23, 33:2, 33:4, 34:16, 34:20, 34:24, 74:7, 74:9, 78:18, 79:19
**reference** [2] - 10:16, 10:17
**referred** [1] - 68:15
**referring** [1] - 42:5
**reflects** [1] - 65:11
**regard** [3] - 23:5, 27:19, 73:4
**regarding** [4] - 23:3, 23:20, 62:2, 81:24
**regardless** [1] - 50:7
**relate** [1] - 48:10
**related** [1] - 34:17
**relating** [1] - 77:4
**relative** [1] - 24:11
**relevant** [3] - 10:5, 20:22, 24:10
**relief** [27] - 2:3, 5:3, 6:16, 39:10, 41:18, 43:13, 43:24, 44:8, 44:12, 44:14, 46:5, 46:21, 46:25, 47:20, 48:8, 49:5, 49:8, 51:11, 52:7, 52:14, 53:4, 53:13, 61:9, 77:1, 78:6, 78:11
**religious** [1] - 40:24
**rely** [5] - 48:18, 60:4, 61:4, 61:6, 61:7
**relying** [1] - 37:21
**remain** [2] - 73:3, 78:5
**remaining** [1] - 32:10
**remains** [4] - 24:8, 39:17, 46:5, 47:7
**remedial** [1] - 49:15
**remedies** [2] - 38:3, 38:22
**remedy** [4] - 38:25, 48:23, 50:4, 50:10
**remember** [2] - 10:12, 10:13
**remembering** [1] - 80:5
**remind** [1] - 63:9
**removed** [1] - 39:18
**rendered** [1] - 60:13
**renegotiation** [1] - 63:15
**report** [2] - 56:17, 57:6
**reporter** [1] - 1:5
**reporter's** [1] - 71:13
**reports** [1] - 62:17
**represent** [1] - 65:6
**representation** [2] - 1:22, 66:12
**represented** [2] - 66:7, 66:18

**representing** [1] - 22:25
**represents** [1] - 21:20
**request** [6] - 22:16, 43:13, 45:11, 57:17, 74:13, 77:2
**requested** [3] - 44:14, 48:3, 55:21
**requests** [1] - 36:13
**require** [1] - 55:25
**required** [1] - 76:10
**requirement** [1] - 38:25
**requires** [4] - 57:4, 57:5, 75:15, 76:14
**requiring** [1] - 9:22
**reschedule** [2] - 84:1, 84:18
**rescheduled** [1] - 84:8
**research** [1] - 55:22
**researched** [2] - 52:8, 52:18
**reside** [1] - 62:15
**resigned** [2] - 64:22, 74:3
**resolution** [1] - 67:16
**resolve** [4] - 63:3, 86:16, 86:18, 86:21
**resolved** [6] - 78:1, 78:7, 78:17, 78:18, 85:9, 86:9
**respect** [34] - 5:9, 5:10, 7:19, 8:15, 10:7, 15:13, 15:14, 17:22, 19:6, 25:2, 29:9, 30:12, 38:10, 43:23, 45:8, 47:8, 48:7, 48:10, 48:14, 51:7, 54:12, 58:20, 58:21, 59:17, 59:18, 60:1, 61:8, 61:10, 61:16, 71:13, 71:20, 71:21, 77:20, 85:24
**respectfully** [2] - 65:14, 81:4
**respond** [1] - 86:4
**response** [2] - 2:18, 10:1
**responsibility** [1] - 31:19
**responsible** [1] - 17:4
**rest** [1] - 38:22
**restore** [1] - 17:18
**restored** [2] - 14:11, 18:8
**restoring** [1] - 17:23
**restraining** [1] - 37:19
**restraints** [1] - 73:3
**restricted** [1] - 16:20
**restricting** [1] - 25:25
**return** [3] - 20:9, 22:9, 43:25
**returned** [4] - 6:19, 20:8, 34:18, 74:11
**returning** [2] - 20:11, 83:15
**reverse** [1] - 41:1
**review** [6] - 30:5, 30:16, 63:7, 64:10, 68:16, 69:1
**reviewed** [3] - 2:7, 2:8, 27:18
**reviewing** [2] - 11:22, 27:6
**revoked** [1] - 48:19
**Richard** [4] - 64:20, 65:6, 80:3, 80:7
**richard** [1] - 21:25
**RICO** [5] - 48:21, 49:7, 49:14, 49:24, 50:10
**rights** [3] - 60:17, 78:3, 78:15
**Rivera** [12] - 21:8, 21:20, 23:2, 25:6, 62:3, 62:5, 65:7, 73:6, 74:14, 75:10, 75:24, 76:4
**Rivera's** [4] - 25:8, 28:1, 74:19, 74:25
**Rivers** [37] - 12:25, 13:7, 23:4, 23:6, 25:21, 33:20, 33:24, 33:25, 34:2, 34:3,

34:17, 36:3, 73:5, 73:10, 73:16, 73:18, 73:20, 73:24, 74:6, 74:9, 74:11, 74:22, 75:9, 75:13, 75:18, 76:17, 77:3, 77:4, 77:5, 77:7, 77:8, 77:9, 77:10, 77:12, 77:13, 79:18
**Rivers'** [3] - 23:19, 34:20, 73:15
**Road** [1] - 73:15
**roadblocks** [1] - 64:14
**Rogosnitzky** [2] - 16:10, 17:3
**Rogosnitzky's** [1] - 74:20
**room** [2] - 58:14, 63:25
**rule** [3] - 51:25, 55:10, 60:12
**ruled** [1] - 77:24
**ruling** [11] - 1:16, 26:14, 41:1, 43:16, 43:17, 46:16, 46:18, 46:24, 47:8, 64:19, 67:8
**rulings** [3] - 44:19, 46:19, 68:23
**running** [4] - 3:23, 37:22, 51:19, 86:2
**sabbath** [1] - 73:13
**Sabbath** [2] - 7:11, 37:25
**Salcedo** [1] - 65:7
**sanctions** [1] - 4:7
**sat** [1] - 70:8
**satisfactory** [1] - 17:13
**saw** [1] - 1:18
**Schafhauser** [1] - 2:21
**schafhauser** [1] - 1:21
**schedule** [3] - 74:8, 79:20, 79:23
**scheduled** [1] - 1:7
**Schlomo** [1] - 22:25
**Schreiber** [18] - 1:1, 2:24, 7:25, 9:16, 10:2, 13:4, 13:11, 13:14, 13:20, 15:1, 15:10, 15:15, 16:13, 18:6, 25:2, 27:9, 48:22, 50:10
**Schreiber's** [2] - 25:3, 29:19
**scope** [2] - 44:11, 57:1
**screen** [3] - 3:18, 12:12, 12:25
**sealed** [1] - 24:14
**searching** [1] - 10:13
**seat** [5] - 8:19, 9:2, 41:14, 58:9, 69:3
**seated** [1] - 19:25
**seats** [1] - 72:14
**second** [1] - 81:21
**secondly** [1] - 16:21
**see** [18] - 4:19, 4:20, 5:8, 5:12, 5:20, 6:7, 12:12, 19:3, 21:14, 22:19, 24:20, 30:18, 35:14, 36:19, 58:23, 63:9, 65:13, 72:20
**seeing** [1] - 10:16
**seek** [7] - 41:17, 49:7, 53:4, 74:17, 76:24, 78:9, 78:10
**seeking** [11] - 38:3, 38:6, 39:10, 39:11, 48:23, 50:10, 51:10, 52:7, 52:14, 53:3, 55:24
**seeks** [1] - 49:5
**seem** [1] - 17:14
**sekowski** [1] - 8:22
**Sekowski** [8] - 1:19, 2:15, 2:23, 7:16, 8:17, 9:1, 9:19, 79:1
**SEKOWSKI** [23] - 1:20, 7:18, 8:8, 8:12, 8:14, 8:23, 10:7, 10:10, 10:19, 10:23,

15:6, 15:11, 15:22, 16:1, 16:7, 20:10, 20:24, 29:1, 29:8, 29:15, 29:24, 30:3, 30:23
**self** [1] - 5:9
**self-dealing** [1] - 5:9
**sell** [1] - 25:22
**sense** [3] - 34:7, 36:18, 46:9
**sensitive** [2] - 26:10, 26:19
**sent** [1] - 73:20
**sentence** [1] - 75:1
**separate** [5] - 23:21, 24:12, 24:15, 50:22, 62:6
**separated** [1] - 23:21
**separation** [1] - 19:22
**serious** [1] - 55:2
**served** [2] - 65:10, 65:14
**server** [2] - 17:7, 62:15
**servers** [3] - 17:4, 62:5, 62:6
**service** [3] - 31:13, 32:24, 65:15
**services** [2] - 16:2, 16:3
**Services** [1] - 22:25
**set** [4] - 2:14, 23:9, 35:2, 77:3
**sets** [2] - 35:3, 35:4
**settings** [1] - 13:3
**settlement** [2] - 78:17, 85:10
**several** [1] - 29:5
**severed** [2] - 18:23, 19:4
**shadow** [1] - 62:17
**shall** [17] - 24:14, 73:3, 73:13, 74:4, 74:8, 74:9, 74:12, 75:16, 75:18, 76:15, 76:18, 76:23, 77:10, 78:3, 78:5, 79:20, 79:23
**shape** [1] - 41:16
**sharing** [2] - 25:12, 25:15
**sheet** [1] - 1:3
**shifted** [1] - 32:24
**shots** [3] - 3:18, 12:12, 12:25
**shoulder** [2] - 18:7, 28:18
**shoulders** [1] - 24:8
**show** [1] - 75:7
**showing** [1] - 3:19
**side** [12] - 4:25, 22:20, 24:15, 32:2, 36:9, 37:14, 40:1, 41:4, 43:23, 44:23, 59:12, 68:13
**sides** [3] - 3:24, 26:3, 34:5, 34:6, 36:18, 55:22, 57:12
**sign** [3] - 1:3, 2:6, 78:10
**sign-in** [1] - 1:3
**signators** [1] - 73:18
**signature** [1] - 82:19
**Signature** [2] - 73:25, 77:3
**significant** [3] - 54:3, 54:24, 71:5
**simple** [6] - 8:13, 9:12, 10:21, 11:6, 72:9
**simply** [2] - 2:3, 52:23
**single** [3] - 12:9, 12:19, 12:24
**sit** [6] - 18:7, 18:10, 41:13, 63:25, 81:14
**site** [2] - 75:15, 76:14
**sixth** [3] - 52:3, 56:16, 56:24
**skip** [1] - 1:3
**slow** [1] - 75:21
**smooth** [1] - 74:1

**so...** [1] - 66:25
**solution** [3] - 26:16, 32:5, 63:12
**someone** [4] - 15:17, 18:17, 18:19, 76:22
**Sonia** [5] - 15:7, 28:23, 65:6, 73:6, 80:13
**soon** [3] - 29:10, 60:13, 64:25
**sooner** [1] - 85:6
**sorry** [16] - 1:12, 5:24, 10:11, 12:22, 14:3, 14:9, 25:13, 25:16, 35:8, 41:12, 44:3, 58:2, 58:8, 62:8, 68:9, 86:24
**sort** [13] - 3:16, 3:21, 5:11, 6:13, 18:22, 34:3, 40:8, 47:9, 51:9, 53:15, 56:21, 56:23, 64:9
**sorts** [1] - 26:25
**sounds** [2] - 2:13, 23:12, 34:5
**South** [1] - 73:21
**space** [2] - 27:15, 87:1
**speaking** [2] - 50:11, 64:4
**specific** [4] - 4:24, 5:7, 6:17, 67:4
**specifically** [6] - 6:14, 16:16, 16:22, 17:21
**speculate** [1] - 50:17
**spell** [1] - 16:11
**spent** [2] - 65:23, 84:9
**splitting** [1] - 59:7
**spoken** [3] - 1:10, 1:15, 58:13
**spoliation** [3] - 18:12, 18:14, 24:2
**staffing** [1] - 4:11
**staged** [1] - 63:7
**stand** [6] - 1:4, 20:4, 39:25, 72:1, 80:21, 82:23
**standing** [1] - 5:2
**standpoint** [2] - 39:2, 39:4
**stands** [1] - 62:1
**standstill** [23] - 1:24, 4:18, 5:9, 17:10, 17:13, 23:16, 26:2, 26:13, 38:7, 50:18, 59:17, 59:25, 60:7, 61:1, 63:8, 64:17, 67:11, 71:14, 71:22, 77:20, 78:2, 78:5, 78:8
**start** [10] - 1:7, 27:5, 58:5, 60:13, 69:12, 71:8, 72:23, 75:1, 81:3, 81:18
**started** [2] - 69:13, 86:16
**Starting** [1] - 80:9
**starting** [3] - 72:10, 78:21, 85:4
**State** [1] - 84:3
**state** [2] - 83:9, 83:16
**statement** [1] - 65:4
**statements** [1] - 73:20
**status** [14] - 22:17, 27:13, 37:15, 40:12, 41:17, 41:23, 42:1, 42:2, 47:7, 51:2, 51:20, 51:21, 54:16, 74:17
**statutorily** [1] - 48:23
**statutorily-prescribed** [1] - 48:23
**stay** [7] - 19:25, 40:12, 44:14, 57:14, 69:22, 77:23, 78:13
**step** [3] - 32:1, 58:19, 82:22
**steps** [8] - 4:24, 5:7, 6:17, 27:20, 58:21, 59:3, 59:12, 61:16
**Steven** [1] - 13:4
**sticking** [1] - 1:24

**still** [6] - 1:18, 4:4, 16:20, 52:3, 62:12, 82:25

**stone** [1] - 45:24

**stop** [5] - 57:22, 81:6, 81:7, 81:9, 84:24

**stops** [1] - 66:14

**stored** [1] - 8:16

**strikes** [1] - 51:14

**strong** [1] - 50:8

**stuff** [1] - 9:22

**subject** [5] - 4:7, 30:1, 34:23, 56:20, 59:14

**subjecting** [2] - 56:24, 56:25

**submitted** [1] - 56:12

**submitting** [1] - 55:23

**subsequent** [4] - 46:6, 52:11, 52:19, 78:11

**suffice** [2] - 2:4, 4:12

**sufficient** [1] - 2:7

**suggest** [5] - 13:14, 32:7, 64:11, 68:12, 83:4

**suggested** [1] - 4:9

**suggesting** [1] - 46:22

**suggestion** [2] - 27:2, 71:19

**suggests** [1] - 52:10

**summons** [1] - 37:24

**summonses** [2] - 37:23, 39:9

**supervisor** [1] - 13:6

**suppose** [1] - 23:14

**supposed** [11] - 7:4, 8:2, 8:7, 8:10, 8:19, 8:20, 8:25, 11:1, 58:5, 81:21, 82:2

**surprise** [1] - 65:21

**swallowed** [1] - 35:8

**switching** [2] - 19:7, 19:8

**Sylvia** [2] - 65:8, 73:6

**system** [22] - 3:17, 3:18, 3:20, 11:9, 11:11, 13:21, 14:13, 15:18, 15:19, 16:14, 25:12, 25:15, 26:5, 28:10, 28:11, 29:2, 29:10, 30:25, 43:7, 75:14, 76:13

**systems** [12] - 4:4, 12:3, 12:4, 12:8, 18:23, 18:24, 18:25, 19:14, 19:23, 21:10, 28:9

**tab** [1] - 13:1

**tampering** [4] - 18:2, 18:4, 18:6

**tax** [3] - 74:7, 79:21, 79:22

**technical** [2] - 28:13, 37:10

**temporary** [1] - 37:19

**ten** [2] - 36:25, 43:5

**tension** [1] - 49:22

**term** [1] - 54:7

**terms** [25] - 1:24, 12:6, 22:16, 32:9, 34:4, 40:14, 40:16, 42:5, 43:6, 43:10, 44:7, 48:15, 49:14, 52:14, 54:24, 68:7, 69:18, 71:8, 72:15, 72:22, 72:24, 77:15, 78:23, 79:2, 80:4

**that's...** [1] - 78:19

**THE** [311] - 1:1, 1:14, 1:22, 3:7, 3:13, 3:21, 4:6, 4:17, 4:22, 5:7, 5:14, 5:17, 5:19, 5:23, 6:1, 6:4, 6:6, 6:9, 6:14, 6:20, 6:23, 7:3, 7:8, 7:12, 7:21, 8:1, 8:5, 8:10, 8:13, 8:17, 8:22, 8:25, 9:6,

9:9, 10:6, 10:9, 10:11, 10:15, 10:21, 10:24, 11:6, 11:12, 11:17, 11:19, 11:23, 12:2, 12:12, 12:14, 12:18, 12:21, 12:23, 14:3, 14:9, 14:15, 14:18, 14:21, 15:2, 15:9, 15:21, 15:24, 16:5, 16:17, 17:8, 17:20, 18:18, 18:21, 19:5, 19:10, 19:12, 19:15, 19:19, 19:24, 20:3, 20:9, 20:17, 21:1, 21:6, 21:12, 21:15, 21:20, 21:22, 21:24, 22:1, 22:6, 22:8, 22:12, 22:14, 22:18, 22:23, 23:7, 23:11, 23:24, 24:21, 24:24, 25:2, 25:8, 25:16, 25:18, 25:23, 26:10, 26:17, 27:2, 27:22, 27:25, 28:7, 28:12, 28:16, 28:25, 29:7, 29:13, 29:18, 29:22, 30:1, 30:18, 30:24, 31:5, 31:9, 31:11, 31:17, 31:22, 32:2, 32:14, 32:20, 33:2, 33:7, 33:12, 33:16, 33:19, 33:22, 33:25, 34:4, 34:14, 34:19, 34:23, 35:7, 35:10, 35:17, 35:19, 36:8, 36:15, 36:17, 36:25, 37:3, 37:11, 37:17, 38:6, 38:13, 38:16, 38:19, 39:5, 39:8, 39:20, 40:4, 40:14, 40:22, 41:13, 41:21, 42:8, 42:10, 42:14, 43:3, 43:19, 44:5, 44:16, 44:22, 45:2, 45:4, 45:25, 46:10, 46:17, 47:14, 47:18, 47:22, 47:24, 48:20, 49:1, 49:12, 49:20, 49:23, 50:15, 50:23, 51:3, 51:22, 52:12, 53:1, 53:16, 54:1, 54:4, 54:14, 54:18, 54:22, 55:7, 55:14, 55:16, 55:20, 56:5, 56:13, 56:18, 57:4, 57:10, 57:12, 57:16, 57:19, 58:2, 58:4, 58:9, 58:13, 58:23, 59:7, 60:6, 60:11, 60:19, 60:22, 60:25, 61:6, 61:12, 61:15, 61:19, 61:23, 61:25, 62:7, 62:9, 62:12, 62:20, 63:2, 63:5, 63:14, 63:20, 63:23, 64:11, 65:3, 65:5, 65:11, 65:15, 65:18, 66:1, 66:4, 66:13, 66:19, 67:1, 67:18, 67:22, 68:3, 68:5, 69:3, 69:7, 69:15, 69:19, 69:24, 70:4, 70:12, 70:16, 70:20, 71:1, 71:3, 71:7, 71:15, 71:25, 72:3, 72:8, 72:12, 72:14, 72:18, 72:22, 75:1, 75:21, 76:1, 76:5, 76:8, 77:15, 77:18, 78:20, 79:1, 79:5, 79:9, 79:14, 80:2, 80:5, 80:9, 80:14, 80:17, 80:20, 80:23, 81:2, 81:6, 81:9, 81:14, 81:23, 82:5, 82:8, 82:10, 82:12, 82:14, 82:18, 82:24, 83:3, 83:8, 83:12, 83:15, 83:19, 83:22, 84:7, 84:12, 84:15, 84:18, 84:23, 85:3, 85:17, 85:19, 86:7, 86:15

**themselves** [1] - 36:19

**therefore** [1] - 65:19

**they've** [3] - 56:22, 62:22, 75:24

**thinks** [1] - 61:25

**third** [1] - 13:7

**three** [8] - 12:19, 12:23, 14:5, 14:7, 56:11, 81:1, 81:13, 82:6

**throughout** [2] - 65:25, 70:7

**thrown** [1] - 36:21

**Thursday** [5] - 3:2, 11:5, 65:9, 66:7, 76:4

**tight** [1] - 63:25

**timely** [1] - 85:9

**today** [44] - 1:7, 2:22, 14:19, 20:9, 20:18, 20:22, 22:6, 22:8, 27:12, 32:4, 36:23, 39:23, 39:25, 41:1, 41:19, 41:20, 41:23, 44:18, 44:24, 46:4, 46:11, 47:19, 50:20, 51:8, 51:16, 51:23, 52:2, 54:15, 54:17, 54:23, 55:3, 57:24, 61:3, 61:13, 65:19, 72:1, 83:25, 84:9, 85:8, 86:7, 86:17, 86:23

**today's** [2] - 78:24, 79:3

**tomorrow** [5] - 39:18, 52:3, 56:17, 74:23, 83:25

**took** [1] - 86:17

**top** [3] - 9:10, 12:25, 13:1

**total** [1] - 7:24

**towards** [1] - 59:3

**traffic** [1] - 3:12

**transcript** [8] - 7:21, 8:9, 8:24, 9:3, 9:5, 9:11, 71:13, 82:18

**transferred** [3] - 6:11, 20:18, 73:25

**transferring** [1] - 19:2

**transition** [1] - 74:2

**transmit** [1] - 65:2

**trial** [1] - 83:21

**TRO** [1] - 2:2

**true** [1] - 53:20

**trump** [2] - 49:8, 50:13

**trust** [1] - 63:13

**try** [8] - 9:14, 17:9, 17:12, 52:17, 60:16, 67:3, 83:25, 86:19

**trying** [20] - 4:25, 10:22, 27:12, 32:4, 39:20, 40:23, 43:7, 46:2, 47:2, 51:19, 53:17, 54:2, 57:6, 72:3, 72:5, 72:21, 75:2, 84:8, 84:20

**Tuesday** [2] - 74:10, 79:24

**turn** [6] - 9:24, 41:11, 50:12, 51:25, 64:5, 85:8

**turned** [1] - 11:2, 23:6, 23:19

**turning** [5] - 9:21, 26:7, 29:11, 30:12, 30:14

**Two** [40] - 12:25, 13:7, 23:4, 23:6, 23:18, 25:21, 33:20, 33:24, 33:25, 34:2, 34:3, 34:17, 34:19, 36:2, 73:5, 73:10, 73:14, 73:16, 73:18, 73:20, 73:24, 74:6, 74:9, 74:10, 74:22, 75:8, 75:13, 75:18, 76:17, 77:3, 77:4, 77:5, 77:7, 77:8, 77:9, 77:10, 77:12, 77:13, 79:18

**two** [17] - 13:1, 14:3, 16:18, 17:2, 24:9, 35:3, 35:4, 35:10, 36:18, 37:25, 49:22, 53:9, 58:5, 70:21, 80:12, 82:25, 85:5

**two-day** [1] - 82:25

**type** [3] - 5:10, 40:8, 41:18

**unaware** [1] - 42:4

**under** [10] - 13:3, 15:7, 15:11, 22:10, 32:3, 34:11, 38:25, 46:22, 73:7, 74:12

**understatement** [1] - 69:6

**understood** [4] - 10:1, 36:24, 72:2, 72:4

**undertake** [1] - 20:12

**undo** [1] - 39:21

**unfair** [1] - 53:19

**unfortunately** [1] - 23:10

*Schreiber vs. Friedman*

13

**unless** [3] - 14:12, 36:15, 73:11
**unreasonable** [1] - 46:1
**unrelated** [1] - 19:3
**unwilling** [1] - 41:18
**up** [17] - 1:4, 1:13, 9:4, 20:4, 23:9, 27:11, 35:2, 35:25, 38:8, 44:1, 45:19, 45:20, 64:14, 65:25, 68:11, 68:22, 69:24
**update** [1] - 36:25
**usage** [1] - 34:24
**useful** [2] - 23:25, 85:11
**user** [2] - 13:3
**users** [1] - 25:22
**uses** [2] - 29:24, 62:5
**utilize** [1] - 77:12
**utilized** [1] - 6:13
**vacate** [3] - 45:19, 46:6, 47:1
**vacated** [1] - 46:13
**vendor** [2] - 31:17, 33:19
**version** [1] - 70:23
**videotape** [1] - 22:11
**view** [5] - 2:10, 18:14, 40:18, 59:9, 59:23
**Vincent** [1] - 73:8
**violated** [1] - 4:7
**violation** [2] - 48:24, 49:7
**wait** [9] - 8:6, 14:15, 35:20, 39:5, 42:14, 45:4, 67:3, 83:4
**waiting** [4] - 46:23, 64:1, 64:12, 64:15
**waive** [2] - 60:17, 61:1
**waiver** [1] - 78:15
**walk** [1] - 7:22
**walked** [1] - 5:25
**walking** [1] - 22:10
**wants** [4] - 2:16, 18:7, 22:1, 52:4
**watch** [1] - 18:7
**ways** [6] - 19:2, 23:15, 32:5, 41:23, 72:8, 72:9
**weak** [1] - 18:14
**Wednesday** [1] - 20:12
**week** [7] - 15:8, 47:14, 47:16, 47:18, 64:23, 66:7, 83:22
**weekend** [3] - 1:9, 2:13, 7:11
**weekly** [1] - 24:18
**weeks** [1] - 85:5
**whole** [2] - 39:1, 69:8
**willing** [24] - 3:25, 8:18, 15:16, 16:14, 17:12, 18:19, 26:24, 29:8, 43:9, 43:10, 43:12, 43:19, 47:19, 48:5, 48:9, 48:13, 50:18, 50:25, 51:14, 52:23, 53:6, 53:21, 59:23
**win** [1] - 52:3
**wiping** [1] - 17:4
**wish** [1] - 24:16
**wishes** [3] - 57:8, 75:18, 76:17
**withdraw** [1] - 66:11
**witness** [3] - 79:16, 80:18, 83:13
**witnesses** [2] - 85:6, 85:8
**wonder** [1] - 49:2
**wondered** [1] - 49:20
**wonderful** [2] - 21:1, 82:18

**wondering** [1] - 50:6
**word** [1] - 35:7
**words** [12] - 35:10, 41:22, 44:9, 44:19, 45:9, 49:1, 59:21, 62:15, 81:1, 81:13, 81:18, 82:6
**works** [4] - 15:24, 21:10, 46:8, 69:19
**worth** [1] - 66:24
**wrinkle** [1] - 56:7
**write** [1] - 57:7
**writes** [1] - 50:3
**writing** [1] - 5:16
**written** [2] - 56:14, 66:23
**wrote** [1] - 75:3
**years** [1] - 49:17
**yesterday** [5] - 3:19, 31:12, 65:24, 76:4, 81:5
**York** [1] - 66:10
**Yosi** [1] - 16:10
**yourself** [1] - 22:23
**yourselves** [1] - 1:5