1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
                                        :
STEVEN SCHREIBER,                       : 15-CV-6861 (CBA)
                                        :
          Plaintiff,                    :
                                        :
                                        : United States Courthouse
     -against-                          : Brooklyn, New York
                                        :
                                        :
                                        : Wednesday, December 21, 2016
EMIL FRIEDMAN, ET AL.,                  :
                                        :
          Defendants.                   :
                                        :
                                        :
- - - - - - - - - - - - - - - X


          TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT
             BEFORE THE HONORABLE CAROL B. AMON
             UNITED STATES DISTRICT COURT JUDGE


               A P P E A R A N C E S :



For the Plaintiff:    NELKIN & NELKIN
                         5417 Chaucer Drive
                         Houston, Texas  77005
                      BY: JAY P. NELKIN, ESQ.
                         CAROL NELKIN, ESQ.


For the Defendants    CHIESA SHAHINIAN & GIANTOMASI, PC
Emil Friedman and        11 Times Square - 31st floor
New York Best            New York, New York  10036
Coffee, Inc.:         BY: PAUL H. SCHAFHAUSER, ESQ.

2

```
For the Defendants
E&I Investors
Group, LLC, E&J
Funding Co., LLC,          MEYNER AND LANDIS, LLP
E&J Management                 Suite 2500
Inc., and E & Jeryg            One Gateway Center
Management Corp.,              Newark, New Jersey  07102-5311
LLC, 24 Hour Oil          BY:DAVID B. GRANTZ, ESQ.
Delivery Corp., MB
Fuel Transport, MB
Fuel


For the Defendant         CYRULI SHANKS HART & ZIZMOR, LLP
Solomon Birnbaum,             420 Lexington Avenue
Single Serve, et              New York, New York  10170
al.                       BY:JEFFREY C. RUDERMAN, ESQ.


For the Defendant         ABRAMS GARFINKEL MARGOLIS BERGSON, LLP
Hersko:                       1430 Broadway  #17 Floor
                              New York, New York  10018
                          BY:ROBERT J. BERGSON, ESQ.


For the Defendant         AKIVA GOLDFARB, ESQ.
Nussbaum:


Court Reporter:   Richard W. Barry, RPR
                  Official Court Reporter
                  E-mail: rwbarrycourtreporter@gmail.com

          Proceedings recorded by computerized stenography.
          Transcript produced by Computer-aided Transcription.
```

RB        OCR

- Proceedings -                                              3

1        LAW CLERK:  Schreiber versus Friedman, 15-CV-6861,
2   on for oral argument.
3        THE COURT:  Will the parties state their
4   appearances, please, first for the plaintiff.
5        MR. NELKIN:  Your Honor, good afternoon, Jay Nelkin,
6   Nelkin & Nelkin for the plaintiff.
7        THE COURT:  Good afternoon.
8        MS. NELKIN:  Carol Nelkin for the plaintiff, Your
9   Honor.
10       MR. SCHREIBER:  I'm Steven Schreiber, the plaintiff.
11       MR. SCHAFHAUSER:  Good afternoon, Paul Schafhauser
12   of Chiesa, Shahinian & Giantomasi for the defendants Emil
13   Friedman and New York Best Coffee.
14       MR. GRANTZ:  David Grantz, from the law firm of
15   Meyner and Landis, on behalf of the E&J defendants and the oil
16   and trucking defendants.
17       MR. RUDERMAN:  Good afternoon, Jeffery Rudderman,
18   Cyruli Shanks Hart & Zizmor on behalf of the defendant
19   Birnbaum and the coffee defendants.
20       THE COURT:  So we have-- are there two lawyers
21   representing the coffee defendants?
22       MR. RUDERMAN:  Our firm substituted in, instead of
23   Mr. Heller's firm, there was an order entered.
24       THE COURT:  I thought Mr. Schafhauser, you said you
25   represented the coffee defendants.

RW Barry     OCR

- Proceedings -                                    4

1          MR. SCHAFHAUSER:  No, I represent only New York Best
2    Coffee.
3          THE COURT:  Well--
4          MR. SCHAFHAUSER:  Which I think is a different
5    entity than Mr. Rudderman represents.
6          THE COURT:  Who do you represent?
7          MR. RUDERMAN:  The parties have been called the
8    "coffee defendants" throughout.  They are Solomon Birnbaum,
9    Single Serve Beverages Distribution, Crazy Cups, 26 flavors
10   LLC, Office Coffee Services LLC.
11         MR. BERGSON:  Good afternoon, Robert Bergson,
12   Abrams, Garfinkel, Margolis, Bergson, for the Hersko
13   defendants.
14         MR. FINKEL:  Richard Finkel for Salcedo, Rivera and
15   Ezell.
16         THE COURT:  I'm sorry counsel, before that, who did
17   you say you represented?
18         MR. BERGSON:  The Hersko defendants, Jeffery Hersko
19   PC.
20         THE COURT:  Your name?
21         MR. BERGSON:  Bergson, B-E-R-G-S-O-N.
22         THE COURT:  It is helpful when you fill out the
23   sheets if you indicate who you represent when you fill them
24   out.
25         MR. GOLDFARB:  Yes, Akiva Goldfarb for Benzion

- Proceedings -                                        5

1  Nussbaum.

2         THE COURT:  Did you sign in?

3         MR. GOLDFARB:  The clerk-- I gave my information to

4  the gentleman but the clerk was not here at the time.  I

5  didn't fill it out.

6         THE COURT:  Can you tell again who you represent.

7         MR. GOLDFARB:  Akiva Goldfarb.

8         THE COURT:  You represent?

9         MR. GOLDFARB:  Nonparty Benzion Nussbaum.

10         THE COURT:  All right.  I don't know if there will

11  be any further motion practice in this case.  But in the event

12  that there is, I am going to impose in this case, a

13  restrictive requirement that no briefs exceed 25 pages in the

14  future.

15         The briefing in this case is on a discovery issue

16  such as this is really quite astounding.

17         There is a-- the moving brief for Mr. Friedman is

18  65 pages long, and the reply brief is even longer.  It is

19  75 pages long. Mr. Schreiber's motion is over 70 pages long.

20  I mean this is just not called for and if there are strong

21  arguments they can certainly get lost in 75 pages of briefing.

22         So if there is any future motion practice in this

23  case, that restriction is going to apply.

24         Everyone can be seated.

25         Mr. Friedman, you wrote the-- I mean Mr.

- Proceedings -                                    6

1   Schafhauser, you wrote the principal brief as I understand it

2   on behalf of all the parties.  Not on behalf of all the

3   parties, but other parties joined in on it.  So, I will hear

4   from you first.

5           If there are issues that the other parties think are

6   peculiarly applied to their clients, I will hear that.  I

7   don't want to hear repetition of the same arguments that

8   counsel is making.  If there is something you think that is

9   unique to your client, then you can certainly tell me that and

10  I will be happy to hear you on it.

11          Mr. Schafhauser, tell me what you are complaining

12  about here.  What specific order are you appealing?  It is the

13  October order of the Judge, correct?

14          MR. SCHAFHAUSER:  That's correct.  I am appealing --

15  actually there is a couple of orders, one entered on

16  October 13th, which was the order Your Honor-- which was the

17  order in which Magistrate Judge Orenstein directed that the

18  defendants produce their computer devices.

19          THE COURT:  Right.

20          MR. SCHAFHAUSER:  Then the following day, Judge

21  Orenstein entered an order essentially denying plaintiff's--

22  defendants' request.

23          In other words, Judge Orenstein on October 13th,

24  directed that all computer devices be produced by the

25  defendants and on the 14th, his Honor denied our request for

- Proceedings -                                    7

1    relief.

2            THE COURT:  Your request for relief was what?  To

3    compel discovery from the plaintiff?

4            MR. SCHAFHAUSER:  My request for relief were in

5    light of what Your Honor had entered on March 9th regarding

6    the items of discovery that were to be conducted, we wanted

7    those-- that order enforced.  And what Your Honor had directed

8    among other things was that document production should proceed

9    as to both sides.  That never occurred.

10           So, what we were seeking from Judge Orenstein is

11   that if, if the parties were compelled to proceed with

12   discovery, that the discovery should be as to both sides.

13           Your Honor will recall, I will say it at the outset,

14   that it has always been our position--

15           THE COURT:  It has always been your position that

16   the case should be stayed altogether.

17           MR. SCHAFHAUSER:  That's correct.

18           THE COURT:  Your position on these orders is, if you

19   are not going to stay it, then the plaintiff should be

20   directed to answer your document discovery request.  Was it a

21   document discovery request that you had--

22           MR. SCHAFHAUSER:  Well, yes -- that is fair.  It

23   was-- what Your Honor had done, I won't go--

24           THE COURT:  You had made a specific document request

25   that you believe was in line with the March order.

- Proceedings -                                        8

1        MR. SCHAFHAUSER:  Absolutely, yes.

2        THE COURT:  And it was that document request that

3   you were seeking to get answered, correct?  And then Judge

4   Orenstein had denied it without prejudice in light of what was

5   going on, at the hearing that he was having.

6        MR. SCHAFHAUSER:  Yes.  Judge Orenstein denied that

7   request.  He also denied my request for an electronic

8   discovery protocol which plaintiff had said he wanted to

9   negotiate and never did.

10       THE COURT:  What was your request-- you made a

11  request for an electronic discovery protocol to whom?

12       MR. SCHAFHAUSER:  I made it to the plaintiff--

13       THE COURT:  Is there a document that you can--

14       MR. SCHAFHAUSER:  There is.  And then there is

15  actually a motion.

16       THE COURT:  Where are those-- have you appended your

17  materials, the request that was not enforced?

18       MR. SCHAFHAUSER:  I appended it-- it is on PACER.  I

19  can give you the docket entry, Your Honor.  It was actually

20  the subject of a separate-- actually three motions, Your Honor

21  before Judge Orenstein from my side.  The first motion

22  related-- basically to the document exchange issue that I just

23  described.

24       The second motion related to essentially an

25  electronic discovery protocol, because the issue arose as part

1   of this process that if the parties were going to proceed,

2   again understanding our-- if the parties were going to

3   proceed, that there would be an enormous volume of electronic

4   discovery that should be subject to search terms, date ranges,

5   things of that nature.  I sent to Mr. Schreiber's counsel,

6   written proposed protocols which we never-- we never ever got

7   to.  Never got to and I made a motion to Judge Orenstein which

8   was also denied--

9           THE COURT:  A motion to what?  What was your motion

10  to Judge Orenstein to do what?

11          MR. SCHAFHAUSER:  The motion was for the entry of an

12  electronic discovery protocol to allow the parties to proceed

13  pursuant to the very order that plaintiff sought and obtained

14  from Your Honor regarding document production.

15          The--

16          THE COURT:  Did you propose-- so you asked the Judge

17  to determine an electronic discovery protocol.

18          MR. SCHAFHAUSER:  I submitted-- what I had sent to

19  Judge-- I submitted to Judge Orenstein what I sent to the

20  plaintiff, and I asked the Court, either Judge Orenstein

21  either to enter our form, or at the very least direct the

22  parties to negotiate one in good faith so that we can meet and

23  confer and do that.

24          THE COURT:  What docket entry is that that was

25  denied by the Judge, what is that?

1      MR. SCHAFHAUSER:  That denial was part Your Honor
2  of--
3      THE COURT:  I know that you said he denied it on
4  October 14th.  But what was he denying?  You have got a docket
5  entry.  Something you sent to him that you say he was denying,
6  what is that?
7      MR. SCHAFHAUSER:  Yes, Your Honor, let me get that
8  entry for you.
9      THE COURT:  You said you made three motions to him
10  that were denied.  What are the docket entries of those
11  motions?
12      MR. SCHAFHAUSER:  I am about to give you those, Your
13  Honor.
14      Frankly I took apart my notes and I didn't have
15  docket entries but in my larger set of notes I do.
16      THE COURT:  I'm sorry, in any of your 150 pages
17  here, did you reference them or provide copies of them in
18  connection with this motion?
19      MR. SCHAFHAUSER:  Yes, I did, Your Honor.  I spelt
20  them out in both my moving and reply.
21      The first docket entry was docket entry 171 as
22  referenced.  The second motion is docket entry 187, that I
23  just referenced as well.
24      THE COURT:  I thought there were three motions.
25      MR. SCHAFHAUSER:  And the third motion is at docket

1   entry 250.  And that third motion, Your Honor, as I outlined

2   in our papers, the third motion related to the confidentiality

3   stipulation, protective order and a directive again that

4   plaintiff be required to comply with those discovery

5   obligations that the Court ordered it to engage in.

6            So, again, just to repeat, the first--

7            THE COURT:  These are all orders that pertain to

8   discovery that you were seeking, correct?

9            MR. SCHAFHAUSER:  I was seeking them based on Your

10  Honor's order, yes.

11           THE COURT:  So all of these motions pertain to

12  discovery that you were seeking, correct?

13           MR. SCHAFHAUSER:  They did.

14           THE COURT:  Okay.

15           Let me ask you one other question, counsel.  I

16  looked through the record and could not find it.  Perhaps it

17  is there.

18           Did you ever make a pre-motion, seek a pre-motion

19  conference to dismiss this case on the fact that Mr. Schreiber

20  lacks standing to bring this case?

21           I think a discovery motion is-- appeal of a

22  discovery order is kind of an odd place to raise that for the

23  first time.

24           MR. SCHAFHAUSER:  Let me explain.

25           The answer is, I did make a pre-motion request on

1    December 21st, and to fully answer your question--

2              THE COURT:  To--

3              MR. SCHAFHAUSER:  I have to explain the--.

4              THE COURT:  No, did that request-- move to dismiss

5    the case based on standing grounds?

6              MR. SCHAFHAUSER:  I believe that request-- the

7    answer is, yes, I believe so.  I don't have-- I believe what I

8    did on December 21st, was I made a number of different

9    arguments.

10             The first argument, Your Honor, that I made was-- I

11   can get you the docket entry momentarily as well, if Your

12   Honor wishes.

13             THE COURT:  I have the December 21st here.

14             MR. SCHAFHAUSER:  The first argument related to the

15   arbitrability issue of course.  That has always been my lead

16   argument so to speak.

17             THE COURT:  Right.

18             MR. SCHAFHAUSER:  I then made an argument as to the

19   lack of consent under the Two Rivers operating agreement,

20   which is basically the argument I am making again on standing.

21   That the consent and the futility demand arguments were not

22   proper and that the Court therefore should address those as

23   well.

24             So I made that -- as I recall that letter--

25             THE COURT:  Is your standing argument the same as

- Proceedings -                                          13

1   failure to comply with the consent provisions of the Two

2   Rivers operating agreement?

3             MR. SCHAFHAUSER:  Yes, that is--

4             THE COURT:  That is your standing agreement?

5             MR. SCHAFHAUSER:  That is.

6             Again, because under New Jersey law -- I can explain

7   why that is, Your Honor.

8             Under New Jersey law, that standing argument

9   pertains to what the parties, under the operating agreement

10  were required to do in terms of consent.  So that is where I--

11  on December 21st, when I made the pre-motion request, I

12  included that.  I included a number of other things by the

13  way.

14            THE COURT:  I think that was resolved by the parties

15  agreeing that you would just as an initial matter deal with

16  the arbitrability issue, correct?

17            MR. SCHAFHAUSER:  You are correct that what happened

18  was-- I would not say resolved.  What happened was that when

19  we were here before Your Honor on March 8th, you asked the

20  parties, and I think Mr. Nelkin agreed on behalf of the

21  plaintiff, that the threshold issue-- I know I said this

22  phrase many times because it is significant, I believe in the

23  case.

24            That the threshold matter of arbitrability would be

25  decided first before all other matters.  So all other matters

- Proceedings -                                    14

1    have been held in abeyance.

2              By the way, for that reason, I don't think any of

3    the defendants have ever filed answers because I believe they

4    all said that they would be moving to dismiss in lieu of

5    answer, if the arbitrability issue did not go the way we hoped

6    it will.

7              So that threshold issue, you are absolutely correct,

8    the threshold issue was agreed on March 8th, to be

9    arbitrability.  All other issues be held in abeyance.

10             THE COURT:  So don't you think it is odd that you

11   are raising this in connection with a discovery order?

12             MR. SCHAFHAUSER:  The reason I am raising it, Your

13   Honor, is that what has happened is this-- this discovery

14   order goes far a field of what Your Honor actually ordered the

15   scope of discovery to be on March 9th.  I go back to what Your

16   Honor ruled.

17             THE COURT:  What does that have to do with the

18   question I'm asking you about standing?

19             MR. SCHAFHAUSER:  Well--

20             THE COURT:  I mean if the discovery order is too

21   broad, the discovery order is too broad, that is an argument

22   you make.  Raising this question of standing?

23             MR. SCHAFHAUSER:  Your Honor, I am trying to make

24   the point very respectfully, that before plaintiff is allowed

25   to go through the most invasive kind of discovery, that he

- Proceedings -                                          15

1    should be required to address the threshold issues in the

2    case, one of which is his own standing to proceed.  Which in

3    his verified complaint, Your Honor, which he has filed more

4    than a year ago now, he said that he seeks a declaration from

5    the Court that he is entitled to bring direct and derivative

6    claims.  He never demonstrated that he is entitled to do any

7    such thing.

8            So it is a jurisdictional--

9            THE COURT:  But I mean, you throw this in the

10   context of-- I have understood your position which you have

11   made repeatedly about seeking stays of discovery, all of that.

12   But you purport to be appealing the Magistrate Judge's order

13   and you have got 20 pages on standing.

14           That is not the time-- I mean the Magistrate Judge

15   did not decide standing, correct?

16           MR. SCHAFHAUSER:  Well, I raised it with the

17   Magistrate Judge.  I actually raised it.  In fact I made the

18   same arguments with the Magistrate Judge on --

19           THE COURT:  When we have a pre-motion conference and

20   decide that the issue that we should first deal with is

21   arbitrability, and everyone -- we reached that conclusion.

22   Then you file a discovery, an objection to a discovery order,

23   and you bring up an issue we had decided wasn't going to be

24   brought up.

25           But in any event, why don't you go to your central

- Proceedings -                                    16

1    argument about the discovery.

2              MR. SCHAFHAUSER:  Your Honor, thank you.

3              The central argument about discovery-- but-- may I

4    just briefly respond on the standing issue?

5              THE COURT:  No.

6              MR. SCHAFHAUSER:  Very well.  I will go on.

7              The central issue on discovery, Your Honor, and I

8    appreciate that Your Honor has read the papers, so I won't

9    repeat essentially what we have already explained.

10             But, the first issue that I would-- at least

11   highlight for Your Honor now, is that the orders that Judge

12   Orenstein entered in favor of the plaintiff, are at least

13   premature.  Judge Orenstein actually made no findings.  As

14   plaintiff says, the evidentiary hearing was not concluded.

15   The plaintiff says that Judge Orenstein kept an open mind.

16   And yet in the midst of a hearing that had not been

17   concluded--

18             THE COURT:  That is if you assume that his order was

19   a sanction.

20             MR. SCHAFHAUSER:  Well--

21             THE COURT:  Basically it seems to me what the

22   Magistrate Judge is confronted with in the middle of this

23   hearing, is evidence produced that items have been deleted

24   from computers.  What it seems to me, he was seeking to do,

25   was to just make sure that this did not happen, he could get

- Proceedings -                                    17

1   to the bottom of what happened before ultimately ruling on

2   whether there should be sanctions.

3          MR. SCHAFHAUSER:  Well--

4          THE COURT:  And you know you don't really address

5   anywhere the findings of the Storz report which are really

6   concerning.  You don't substantively address those.

7          MR. SCHAFHAUSER:  The Stroz report, Your Honor.  I

8   submitted a rebuttal report to the Stroz report, which is also

9   in evidence.

10          But, the point I would make about both reports is

11  Stroz hasn't testified; K-2, my expert, has not testified.

12  That is really my threshold point, is that those reports -- no

13  one has heard evidence or testimony yet.  The hearing is not

14  over.

15          Yet in the midst of the hearing, if this isn't a

16  sanction, Judge Amon, it surely feels like a sanction.  It

17  sure feels like a sanction.  If it is not a sanction to have

18  61 computer devices, 61 be directed to be produced.  It sure

19  feels like a sanction if it is not a sanction.

20          And if it is not a sanction, Your Honor, then I

21  respectfully submit that it should not have been entered

22  because as I have said in my brief, there was really no basis

23  to find that these 61 devices-- by the way, some of them are

24  personal cellphones, some of them are for businesses having

25  nothing to do with Two Rivers.  Some of them are for wives,

- Proceedings -                                    18

1   children.  iPads that are used by Mr. Friedman's wife, having

2   personal information on it.

3            61 devices, Your Honor.  There was no showing before

4   Judge Orenstein that these devices were necessary or even

5   relevant to the discovery issue that Judge Orenstein was

6   addressing.

7            But by the way, Your Honor, I would also note in

8   passing, that in terms of the alleged concern in the Stroz

9   report, that there would be deletions or some other thing.

10  Well, that issue was actually off the table for the moment

11  because the devices have now been imaged.

12           THE COURT:  They have been imaged.  What is it that

13  you are seeking to preclude happening now?

14           MR. SCHAFHAUSER:  What I am seeking to preclude from

15  happening now, Your Honor, is what I submit is an unheard of

16  remedy.  That is to turn over those 61 images to plaintiff's

17  counsel and to plaintiff's expert for unfettered, unlimited

18  review of all data on 61 devices owned by parties, family

19  members, competitors.

20           The only exception to all of that is a claw back

21  provision for attorney/client provision.  Not even for

22  relevance, not even for confidential information, not for

23  personal information, not for proprietary information.  There

24  is no claw back.

25           The one claw back, Your Honor, that would exist

- Proceedings -                                    19

1    because this data is so gargantuan, I believe I explained in

2    the reply, just to process, forensically process the 61

3    images, would cost hundreds of thousands of dollars, just for

4    the imaging.

5              And then, on top of that, you would have to spend

6    hundreds of thousands of dollars more to search the enormous

7    amount of data on these 61 images, to pick and choose and see

8    what privilege exist.

9              And if we didn't incur that expense, you are

10   probably talking a million dollars just to ensure against a

11   waiver of privilege for devices that have not been shown Your

12   Honor, respectfully, to have anything to do with the issues at

13   hand.

14             Under the cases we cited, and I appreciate that Your

15   Honor has read the briefs, but I just want to highlight a

16   couple of cases, because sometimes you know my words and my

17   able adversary's words, we have both been a little long

18   winded.  So let me focus on some of the cases instead of my

19   own arguments.

20             The Ford case for instance.  And the Ford case is

21   345 F3d 1315 in Re:  Ford Motor Company.

22             I am now quoting.  In its order, the District Court

23   granted Russell unlimited direct access to Ford's databases.

24   The District Court established no protocols for the search.

25   The Court did not even designate search terms to restrict the

- Proceedings -                              20

1  search.  Without constrain, the order grants Russell access to

2  information that would not and should not otherwise be

3  discoverable without Ford first having had an opportunity to

4  object.

5          Russell is unentitled to this kind of discovery

6  without at the outset a factual finding of some non compliance

7  by Ford.

8          That is the Ford case, Your Honor.

9          THE COURT:  There is a basis-- the Judge found that

10  there was non compliance here.

11          MR. SCHAFHAUSER:  The Judge-- again, made comments

12  at the start of a hearing, which he then hastened to add near

13  the end of the hearing, were not dispositive comments, and in

14  fact he had kept an open mind and that his Honor had not

15  rendered any written findings or recommendations or

16  conclusions.

17          So, yes, so plaintiff on the one hand argues that

18  the Judge decided and then in the next page, he argues that

19  the Judge didn't decide.  It can't be both.

20          So, Judge Orenstein hastened to add, I believe it

21  was my colleague to my left, Mr. Grantz who asked his Honor,

22  near the end of the hearing, and he hastened to add that he

23  did not mean those comments to be indicative of any

24  dispositive finding of any kind.

25          But my point on the Ford case actually, goes back to

- Proceedings -                          21

1   the comments on no protocol.  No protocol.  There are a number

2   of cases like that.  I will quote another one.

3           Boston Scientific Corporation versus Leif cited in

4   my brief.  By demanding nothing less than a complete forensic

5   image of not just one, but two-laptops belonging to a direct

6   competitor to Boston Scientific, demands too much.  Such

7   imaging will disclose privileged communications related to the

8   litigation as well as irrelevant trade secrets from a non

9   party competitor.

10          The risks attached --

11          THE COURT:  Well, these are for "attorneys eyes

12  only", correct?  That is what the Judge limited this to.

13          MR. SCHAFHAUSER:  Once the information is out there,

14  Your Honor, the information is out there.

15          THE COURT:  What do you mean by that?  That counsel

16  is not going to abide by the statement that it be for

17  "attorneys eyes only".

18          MR. SCHAFHAUSER:  I am suggesting that there is no

19  basis for counsel to have proprietary information, personal

20  information, competitively sensitive information and indeed,

21  information that has nothing to do with the case.

22          There is no reason, and in fact--

23          THE COURT:  Assuming-- how would you limit it.  You

24  talk about the fact that there is personal information.  There

25  is a claw back provision for privilege.  What other categories

- Proceedings -                                          22

1   are you suggesting that there should be claw backs for,

2   assuming that the order itself is not invalidated.

3            MR. SCHAFHAUSER:  Let me answer that by pointing out

4   that the claw back provisions, again that-- I'm going on

5   precedent here, I am trying to go on precedent.  The other

6   case I cited the Musket Corp case, addresses Your Honor's

7   question better than I can.

8            Again, I quote, courts that have allowed inspection

9   of an opponent's hard drive only allow such inspections under

10  specific protocols that would preserve claims of

11  attorney/client privilege and protection of the

12  confidentiality of personal information located on the hard

13  drives, that is not related to the claims and defenses or the

14  subject matter of the lawsuit.

15           It is likely-- continuing the quote.

16           It is likely that confidential communications and

17  matters entirely extraneous to the present litigation, as well

18  as privileged communications, will be exposed to Musket's

19  expert. In this case, the issue was going to the expert.

20           A paid representative of Musket, the opposing party,

21  due to the nature of the information, the Court finds that

22  Musket even if only through its expert, should not have access

23  to the entire hard drive.  And the Court goes on.

24           So, in that case it was not even the attorney.  It

25  was the expert the Court found should not have the

- Proceedings -                                        23

1    information, let alone the attorney, and there we were talking

2    about one hard drive Your Honor.  Here we are talking about

3    61.  61.

4              THE COURT:  Well, the order provides for the

5    attorney/client information not to be turned over, right?

6              MR. SCHAFHAUSER:  The order however provides that A,

7    that attorney/client information would be subject to a claw

8    back that would cost probably a million dollars for me and my

9    client, and the rest of the defendants to protect the

10   attorney/client privilege.  Which I submit is onerous.  If

11   that is not a sanction, I don't know what is.  It is so

12   onerous.

13             But, B, attorney/client privilege is one thing, what

14   about E-mails between a husband and wife.  What about tax

15   returns?

16             THE COURT:  That is my question to you.  Why can't

17   you claw back that in the same way that you would do the

18   attorney/client privilege?

19             MR. SCHAFHAUSER:  Well, because again without the

20   kind of protocol.  This goes back to my comment earlier about

21   an electronic discovery protocol.  Without some kind of

22   boundaries of date ranges, of search terms, it becomes on this

23   kind of 61 set of images, it becomes so enormously costly that

24   just doing the search would cost more than the whole case is

25   worth, Your Honor.  With all due respect.

- Proceedings -                                    24

1      The search would swallow the damages in the entire

2  case.

3      The plaintiff puts a verified complaint in, it is

4  more expensive to conduct electronic discovery than the case

5  is worth.

6      THE COURT:  So you would not take that.  If the

7  Court said, all right, in addition to the attorney/client

8  privilege, you can review the material for personal

9  information, discussions between husband and wife.  Any

10  personal conversations there maybe with children, anything

11  like that.  You are just saying, no, I don't even want you to

12  say that that is something we can claw back because it just

13  costs too much money.

14      MR. SCHAFHAUSER:  My-- well, my position, Your

15  Honor, to be clear, is that these computers have never been

16  shown to have information, relevant to what is before the

17  Magistrate Judge Orenstein.  They have never been shown.

18      Yes, we should not have to go through this exercise,

19  respectfully that is my position.

20      THE COURT:  Assuming I disagree with that, you are

21  not seeking any further limitations other than what Judge

22  Orenstein has already put on you.

23      MR. SCHAFHAUSER:  If Your Honor were to disagree

24  with that, then let me be clear as to what I would be seeking.

25      If Your Honor were to disagree with that, then I

1   would respectfully submit that there should be-- yes, there

2   should be limitations.

3           And what are those limitations?  The first

4   limitation-- because let's go back and talk about what Judge

5   Orenstein was doing.  Judge Orenstein was directed by Your

6   Honor in June to address the pending discovery issues and Your

7   Honor also stated that the premature litigation of other

8   issues should not occur.

9           So, what we are talking about before Judge Orenstein

10  is post complaint activity.  Activity that occurred, frankly

11  occurred after the entry of orders, allegedly by plaintiff.

12  But it certainly occurred after December 2nd of last year.

13  The Complaint was filed on December 2nd of last year.

14          So, if one were to eliminate documents, E-mails that

15  predate the filing of that complaint, that would be a large

16  step in the direction of in my view, tailoring this to

17  something that would at least be remotely along the lines of

18  what is at issue before Judge Orenstein.

19          Judge Orenstein is not addressing the substantive

20  issues in the claims that go back years.  So there is no

21  reason to go back years and years and years on computers that

22  are 10 years old, and look at what was E-mailed back and forth

23  five years ago, because that is not part of a discovery order

24  motion.

25          So, the first thing that I would ask for is a date

- Proceedings -                                    26

1   limitation, it should not be anything that predates the filing

2   of the Complaint.

3          The second thing that I would ask for, to answer

4   Your Honor's question, is that it should relate to Two Rivers,

5   because plaintiff talks about the preliminary injunction.  The

6   preliminary injunction relates to matters regarding Two

7   Rivers, not to every single document that was ever created by

8   27 different defendants. It relates to Two Rivers.

9          So, the search term should be a "Two Rivers" related

10  search term, Your Honor.

11         The third thing I would say is that again we touched

12  on the personal confidences, the proprietary information.  And

13  what I do mean by that.  It is easy to throw around these

14  terms.  What do I mean?

15         Well, you have here among other computers that are

16  being imaged, computers of oil companies, computers of-- you

17  heard my counsel to the left talk about his coffee company

18  defendants.  You have computer-- in other words, you have

19  corporate computers that have nothing to do with Two Rivers.

20  Don't do business with Two Rivers.  And if they do, if the

21  they have exchanged an E-mail or two, we could limit it to

22  that.

23         But it doesn't get to a basis to have a wholesale

24  imaging of all those computers.

25         So, that would as well, Your Honor, be a request

- Proceedings -                                27

1    that proprietary confidential information should be able to be

2    extracted, personal information should be able to be

3    extracted.

4           And again, search terms, date ranges and search

5    terms, I hate to repeat myself, I am trying to be clear as I

6    possibly can.  The search terms should relate to Two Rivers,

7    if it is not a Two Rivers hit, than it should not be necessary

8    to produce or search.  And if it is not post dating

9    December 2nd, of last year, which is when this case was

10   originally filed, it shouldn't be relevant.

11          Then last but not least, Your Honor, I would ask if

12   Your Honor is inclined to grant any relief to the plaintiff,

13   although obviously, you read my briefs and I respectfully

14   submit otherwise.  If Your Honor were to be so inclined to

15   require the defendants to do this, then at a minimum while we

16   are moving forward, the plaintiff should be required to post a

17   bond or other security for the payment of this, in the event

18   that it turns out that this kind of search, this kind of

19   production was unwarranted.  The plaintiff should post

20   security for that.

21          THE COURT:  I take it that is the first time you

22   ever proposed that is just now, correct?

23          MR. SCHAFHAUSER:  That is actually-- respectfully

24   that is incorrect.

25          THE COURT:  I'm sorry.  It is on page 84--

- Proceedings -                                    28

1        MR. SCHAFHAUSER:  It is in my brief as well, Your

2   Honor.

3        THE COURT:  Okay.  I might have missed it.

4        Any other counsel want to raise anything that they

5   believe is specific to their client?

6        MR. GRANTZ:  Yes, Your Honor.

7        THE COURT:  For the record your name for the?

8        MR. GRANTZ:  David Grantz, representing the E & J

9   defendants and the oil and trucking defendants.

10        My comments are specific to them.  It appears that

11   Judge Orenstein has lumped all of these defendants together

12   when he shouldn't have done so.  I know I'm not supposed to

13   repeat Mr. Schafhauser's comments, but there has been no

14   findings, despite the arguments by plaintiff that Judge

15   Orenstein has made some sort of conclusion.  He specifically

16   told us, that he hadn't made any conclusion.  He certainly

17   didn't make any findings of fact or conclusions of law, yet

18   notwithstanding that, he still ruled and plaintiff's counsel

19   suggested that it is not really a ruling, and our briefs and

20   motions are premature.  He still ruled that all these

21   computers needed to be turned over from all of these

22   companies.

23        Where we delineate in our briefs, that there has

24   been very few facts testified to, or even discussed at these

25   hearings related to E & J, E & I, E & Jeryg, E & Jeryg

- Proceedings -                        29

1   computers have all been turned over, a real estate company.

2   There is probably nothing on these 7, 8, 9 computers that has

3   anything to do with Two Rivers.  Yet, the computers have been

4   imaged and potentially are going to be turned over and we are

5   going to be subjected to having to search those computers for

6   privilege, at an extraordinary cost.

7           We are talking about the-- according to Mr.

8   Shapiro's affidavit, $200,000 just to get the images in a

9   condition that we can run search terms on them.  Even if it

10  wasn't intended as a sanction, and even if it wasn't intended

11  as a final ruling, the practical ramifications of forcing us

12  to search those computers in this way, by search terms and

13  having everything turned into a OCR, and a searchable

14  document, that practical ramification is a sanction.  It is

15  too costly considering the issues that are at play.

16          So, yes, I have some concerns that Associated Fuel,

17  which is a company in Hawthorne, New York that has absolutely

18  nothing to do with Two Rivers has turned over its computers

19  and now going to have to incur an expense potentially to try

20  to determine whether there is privileged information on those

21  computers, and potentially based upon what we just heard

22  between your colloquy with Mr. Schafhauser, potentially also

23  have to search for proprietary, personal and other

24  information.  That cost should not be born by these

25  defendants.

- Proceedings -                                    30

1        The other topic that I think needs addressing is, is

2   the argument that somehow Mr. Nussbaum, his conduct should be

3   imputed upon all of the defendants.

4        There is no question that we named Mr. Nussbaum as a

5   30(b)(6) witness, although I don't know that is necessarily a

6   proper designation for an evidentiary hearing, that is a

7   deposition designation.

8        We named him because he is the only person that we

9   believe could testify about the computers.

10       The fact that we named him for a hearing, to testify

11  about computers, doesn't make him our agent for all purposes.

12  It makes him our agent to testify.  It doesn't make him-- his

13  actions, whatever he does or whatever conduct is associated

14  with him, it doesn't get imputed on every single defendant,

15  particularly where the conduct is outside of the scope of the

16  agency, and adverse to those parties' interests.

17       So, that issue is critical because--

18       THE COURT:  How do you get to the fact it is

19  necessarily adverse to the parties' interest.  If he is

20  monkeying around with computers and deleting stuff, it could

21  be very well to the parties.

22       MR. GRANTZ:  He is violating court orders

23  potentially.  That is adverse to our interest.  We didn't

24  direct him to do that.  We certainly didn't want him to

25  violate a court order.

- Proceedings -                          31

1        To the extent he did it, he did it on his own

2   volition without direction from our client.  It is adverse to

3   our interest and done without direction.  Outside of the scope

4   of his designation as a 30(b)(6) witness.

5        To the extent he is the person setting up a

6   computer, doesn't make him our agent for these improper

7   intentional acts on his part.  That is not negligence we are

8   talking about.  So, we have a problem with that.

9        But basically the overall issue for us is, Judge

10  Orenstein's decision which we think is premature, because he

11  hasn't made any findings.  How you can make a decision without

12  any findings, is--

13       THE COURT:  He made a decision in the middle of this

14  hearing, he learned it as a result of this expert's report

15  that he becomes concerned that things are being deleted from

16  computers that are relevant to the case.

17       Indeed he says, there is little doubt in my mind

18  based on the reports I have seen and the submission I have

19  seen, that the defendants have impeded the fair litigation of

20  this matter.  There is a real problem in not complying with

21  orders to disclose computers and other materials.

22       I think much of the testimony that I heard from the

23  defendants and people associated with him such as Mr.

24  Nussbaum, was in many respects false.  Some ways deliberately

25  so.

- Proceedings -                                    32

1        So the Magistrate Judge is having a hearing, he has

2   before him.  He finds out that people are monkeying around

3   with computers and says, listen, I will order all this stuff

4   imaged to make sure we have a status quo.

5        MR. GRANTZ:  Then he went a step further than that.

6   He didn't order it imaged, he ordered it turned over for their

7   inspection.  Your Honor ordered they be imaged.  They are

8   imaged.  The status quo is preserved.  There is no reason for

9   them to be turned over to Mr. Nelkin for his view of 61

10  computers, especially at the cost it will cost our side to

11  have to go back.

12       THE COURT:  Except it has information based on the

13  reports of the expert, it has information highly relevant to

14  the hearing that could be highly relevant to the hearing he is

15  conducting.

16       MR. GRANTZ:  There has not been a connection between

17  my clients and those computers that are relevant or

18  potentially relevant.  There just hasn't been that factual

19  finding.  We outlined this in the moving papers.  There has

20  just not been facts found or testified to, and our clients

21  have testified at this hearing.  The plaintiff hasn't rested.

22  The Judge said he was going to continue the hearing.

23       So our position is, it is overbroad and it is

24  premature for him to direct these to be turned over.

25  Especially because of the costs it is going to incur which is

- Proceedings -                                    33

1   punitive and it is essentially as a practical effect, a

2   sanction.

3            THE COURT:  Okay.

4            MR. SCHAFHAUSER:  Thank you, Your Honor.

5            MR. RUDERMAN:  Jeffrey Ruderman on behalf of Mr.

6   Birnbaum.

7            THE COURT:  Right.

8            MR. RUDERMAN:  Obviously we are joining in the

9   arguments that were made by counsel here.

10            I think the Court needs to take a quick look and see

11   who these defendants are, and understand the nature of the

12   relationship between the parties, something I think that

13   Magistrate Judge Orenstein did not do when issuing his order.

14            And, there is a huge distinction between my client,

15   Mr. Birnbaum, and the companies he controls and all of the

16   other defendants.

17            Mr. Birnbaum is majority owner and controls 26

18   Flavors and the Office Coffee Service, the other parties are

19   d/b/a's.

20            So he controls those companies, not Mr. Friedman.

21   Mr. Friedman controls the other companies, I will not comment

22   on any of those activities, that is for his attorney to

23   comment on.

24            But as it applies to my client, he owns

25   sixty percent of the company that competes with Two Rivers.

1    And, as we pointed out, Mr. Birnbaum handled all the operation

2    side of the business.  And Mr. Friedman handles the financial

3    side of the business.

4              So, there has been testimony about some of the

5    documents that Mr. Friedman may have had contact with, on the

6    financial side, some of the people who maybe working.  Again I

7    will not comment on that part of it.

8              But Mr. Birnbaum, has turned over pursuant to the

9    Court order, eight or nine computers and on the operations

10   side of the business.  There is nothing to indicate there is

11   anything in any of those eight or nine computers that has

12   anything to do with any of the allegations in the Complaint.

13             It is sales and marketing data of the competitor,

14   research and development of competitor.

15             What the Judge-- Judge Orenstein has done, is lumped

16   together these defendants saying, oh, all the Friedman

17   defendants, since he touched them are all the same.  They are

18   not the same Your Honor.

19             Mr. Birnbaum runs the operation side of the

20   business.  He doesn't have access to the financial documents.

21   He doesn't have control of the finances of even the companies

22   he controls.  He does run the operation side.  So he has

23   turned over those documents.  And what the order does, is it

24   flips the discovery on its head.

25             Discovery is done, by having the parties produce

- Proceedings -                                    35

1   those documents relevant.  You don't produce everything you

2   have, and claw back that which is not relevant.

3           So if the Magistrate Judge wanted, feels that that

4   was the proper way to proceed with discovery, first of all,

5   that's just not the way discovery is done under federal rules.

6   There has to be a compelling reason to have that type of an

7   order.

8           And, the only thing that the Magistrate Judge has

9   relied upon to require my client, who is a competitor and

10  doesn't have Two Rivers' information, will be some showing

11  that my client has done something wrong.  There is nothing.

12  The Stroz report doesn't mention my client's operation of

13  computers, the eight or nine turned over.  There is nothing to

14  indicate that it has any information about Two Rivers other

15  than perhaps, competitive information as to how are we going

16  to succeed over Two Rivers since they are our competitor.

17          That will cost our client tens of thousands, if not

18  hundreds of thousands of dollars just to -- that is

19  information that we have to claw back, which again Your Honor

20  has put discovery on its head, claw back all of our

21  proprietary information, all of the non relevant information

22  and we end up clawing back 99.9 percent of the documents we

23  turned over.  We spent hundreds of thousand of dollars for no

24  reason whatsoever.

25          Again Your Honor, you read through all the papers, I

- Proceedings -                              36

1    am sure you have.  I respectfully submit there is nothing in

2    there that indicates Mr. Birnbaum or the operations have

3    anything to do with this case.

4         Certainly nothing wrong, there is no order entered

5    earlier on in this case, directing that it be turned over.

6    There was nothing indicating any of the earlier motions that

7    anything was spoiled or deleted from those computers.

8         So the only time ever mentioned Your Honor these

9    computers, was on October 13th.  When suddenly Judge Orenstein

10   felt something was wrong and said, okay, all the defendants

11   have to do that.  That is going far a field from the evidence

12   necessary to require my client to turn over all the

13   proprietary information and spend hundred of thousands of

14   dollars on this.

15        Again, Your Honor, if there was a concern, and it is

16   unfounded with regard to my client, if there was a concern,

17   that anything could have been erased it is preserved for now.

18   Let's foresee what is turned over by my client because there

19   is no real indication my client had anything.

20        THE COURT:  I'm sorry, you said let's see what is

21   turned over.

22        MR. RUDERMAN:  Discovery demands out there.  My

23   client in discovery will produce whatever documents it may

24   have.

25        It would not be uncommon for my client to have no or

RW Barry    OCR

- Proceedings -                                    37

1   few documents, considering again I'm talking about the

2   operations files of this company.  The operation, who they buy

3   products from, who they sell to.  This is all competitive

4   information.

5           All that would happen, is that experts and the

6   counsel for Two Rivers would get this information, and we

7   would have to spend hundreds of thousands of dollars to get it

8   back to us, so they can't use it.  There is absolutely no

9   reason for that expense for the Court to go down that path.

10          So again Your Honor, there has been nothing

11  indicating that there is any reason why we should be lumped in

12  together, the operations files handled by Mr. Birnbaum have

13  nothing to do with Two Rivers, other than it is a competitor.

14  They can be produced in the ordinary course, normal course of

15  discovery demand if there is anything that is relevant to Two

16  Rivers.

17          THE COURT:  Thank you.

18          Anyone else want to be heard specifically on behalf

19  of their client?

20          MR. GOLDFARB:  It is not particular to my client

21  there is a note, I have not heard any attorney offer,

22  analytical.  The general rules offer -- I believe given that

23  Mr. Nelkin stated this is not a sanction, essentially from my

24  understanding of discussions a discovery order.  A discovery

25  order, the federal rules, as applied to my client impose a

1  balancing requirement.  I have not heard anyone say that that

2  is analytical.  Given what we heard about the costs, that is

3  clearly extremely substantial especially with regard to my

4  client who is an individual, not of no particular means.

5          THE COURT:  How many computers are involved with

6  your client?

7          MR. GOLDFARB:  I believe two computers and a number

8  of thumb drives.  I have not done the sort of working it out.

9  In terms-- he is a very, part-time consultant for Two Rivers.

10 Sort-- more specifically as I raised in the brief there is

11 no-- no objection, if they can show a connection between a

12 device and Two Rivers, that has been interacting with Two

13 Rivers at all.  That then would have a protocol.  Given that

14 is a much smaller scope if we run an effective protocol that

15 is not necessarily that large, notwithstanding my client's

16 resources.

17         The plaintiff makes a threshold showing, in any way

18 with a Two Rivers computer then, again, they want to suggest

19 protocol that would gather the relevant Two Rivers information

20 that then could be, you know, reviewed for privilege or

21 confidentiality. I don't-- you know, I don't have a major

22 objection to that.

23         Again, those are with those threshold showing.  The

24 issues I'm talking about are again, those other counsel has

25 already made, there has not been showing that these-- any or

- Proceedings -                         39

1   substantial.

2           As I noted in my brief that seems to be sort of the

3   burden, under the rules to show there is at least reasonable

4   belief there is going to be something on the computers.

5           Again given the substantial costs, also more

6   importantly, the Court said and the plaintiff repeatedly

7   pounds the table.  They say, voluminous evidence, endless

8   evidence.

9           One of the cornerstones of the balancing

10  requirement, how much is additional evidence going to show.

11  The plaintiff has essentially asserted they don't need any

12  additional evidence.  Their papers say we have it.  The Court

13  already found it.

14          I don't really understand how the balancing

15  requirement, given what we heard about costs can substantially

16  work for the evidence.  They are claiming they have it.

17          So, let's just work with the Stroz report.  Again, I

18  will repeat then, there is nothing further going to happen.

19  These computers have all been imaged.  There is no

20  prophylactic issue at all.  The issue is simply one of extreme

21  costs on the part of anyone and for what -- given where we are

22  today, appointing in the plaintiff's own words is going to be

23  a minimal, minimal value.  Stroz report already says it.

24  Judge Orenstein as the court seems to say, Judge Orenstein has

25  already made something along the lines of a finding of fact.

- Proceedings -                                40

1        What additional evidence there will be, would again

2   point to what Judge Orenstein says and plaintiff says would be

3   minimal.  And the expense is clearly, affidavit put in,

4   extremely substantial even with the protocols.

5        You know, that is a huge issue.  My understanding

6   that the proper frame work here, the plaintiffs have not

7   briefed at all that concern, that I expressly raised in the

8   brief.  There is a balancing requirement.

9        In the 74 pages, they don't cite a single case,

10  don't bother to say, that is the rule we are under.  The rule

11  would be a discovery motion, we are under the discovery rule.

12  The rule imposes absolutely clearly, such a balancing

13  requirement.

14       THE COURT:  Thank you.

15       Mr. Schafhauser, you referred to 61 computers, are

16  they 61 computers owned by your client?

17       MR. SCHAFHAUSER:  No, the--

18       THE COURT:  How many pertain to your client?

19       MR. SCHAFHAUSER:  I'm smiling.  It is a tricky

20  question to answer for this reason.

21       We-- the explanation I will give you, I was over

22  cautious, if I may say so.  Let me explain what I mean.

23       At the risk of being deemed in violation for

24  instance, I directed my client to produce, and he did produce

25  for instance, his wife's iPhone.  His wife's laptop.  His

- Proceedings -                           41

1   wife's home computer.

2           So, it is hard to answer.  So for instance--

3           THE COURT:  I am just asking you to count up the

4   numbers.  His wife's, how many computers?  Could you -- you

5   said there were 61 computers involved.  I don't think all of

6   them pertain to your client.

7           MR. SCHAFHAUSER:  That's correct.  The 61 is in the

8   aggregate of these.

9           THE COURT:  How many pertain to your client, that is

10  my question.

11          MR. SCHAFHAUSER:  Well, I believe that he produced

12  originally under the -- in July, he produced a computer that

13  was located at the Two Rivers facility.  He produced his

14  cellphone.  He produced--

15          THE COURT:  This was all produced in July.

16          MR. SCHAFHAUSER:  No, I'm sorry, the cellphone was

17  produced more recently.

18          Again because-- what I'm trying, because of the

19  nature of the orders, Judge, Judge Orenstein said he should

20  produce what is within his custody, possession--

21          THE COURT:  What he produced earlier by the way,

22  can't be the subject of this appeal.

23          MR. SCHAFHAUSER:  That--

24          THE COURT:  That is what I'm trying to figure out.

25  What is the subject of your appeal.  Computers he provided

- Proceedings -                                    42

1    earlier and turned over, can't be the subject of this appeal.

2            MR. SCHAFHAUSER:  Again, what I am struggling to

3    answer, and the reason I am struggling to answer is because

4    plaintiff has alleged that all of these defendants are

5    essentially controlled by Mr. Friedman and therefore, Judge

6    Orenstein in his Honor's order said, that Mr. Friedman

7    initially should identify and then subsequently under the

8    order produce all computers within his custody, possession and

9    control.

10           In other words, there are a number of corporate

11   entities that I-- you know for instance, Mr. Grantz who is

12   sitting here.  Mr. Grantz represents companies in which Mr.

13   Friedman has interests in some of these companies.  So it is

14   hard for me to say, you know, whether-- and many of the

15   devices that we are talking about of the 61, are actually Mr.

16   Grantz' clients, although you see by the dynamics we work in

17   tandem because Mr. Friedman has interests in a number of those

18   companies.

19           That is why I can't give you a specific answer

20   because it is custody and possession, control, that depends on

21   how one defines it according to plaintiff.

22           THE COURT:  How do you define it?

23           MR. SCHAFHAUSER:  I believe that Mr. Friedman's

24   cellphone is his.  He has produced that.  He has produced-- I

25   don't have the list in front of me.  He also produced a home

- Proceedings -                              43

1   computer that was located in Lakewood, New Jersey, that he

2   himself used.

3           So there are at least those two that are his

4   personal devices for sure.  And then we get to the issue of

5   corporate entities.

6           THE COURT:  You said his wife's iPhone.

7           MR. SCHAFHAUSER:  Yes, thank you.  His wife has an

8   iPhone, again I'm going by memory, an iPhone, iPad and home

9   computer.  Those were located in Lakewood, New Jersey.

10          There was also, I will tell you, I had offered to

11  plaintiff a-- there was a computer in West Palm Beach, Florida

12  that Mr. Friedman's wife utilized, that she owns.  So that

13  computer because it is in Florida has not yet been-- we

14  addressed in the papers.

15          But the point is, his wife has three or four

16  computer devices which I submit should have nothing to do with

17  this case.  And nobody has ever made a showing that Mr.

18  Friedman's wife has done anything here that would warrant an

19  imaging of her computer devices.

20          THE COURT:  All right.

21          MR. GRANTZ:  Can I make one comment.

22          I wanted to point you to page 35 of the transcript

23  of the October 13th hearing.  There was a colloquy between

24  myself and Judge Orenstein.  And Judge Orenstein said, at line

25  4, just so it is clear, I don't think you are suggesting

1  otherwise but my-- maybe shading what I said in a way that

2  might create a misimpression for the convenience of counsel in

3  framing arguments.  I told you the impression that has been

4  created thus far.  I made it very clear that I had an open

5  mind to what remains to come.  So to the extent you are

6  concerned about pre-judging, not in the slightest.  But I

7  assess what I hear as it comes in, and since we are at this

8  point where we have a pause in the hearing, I'm sure you all

9  have your own views of what the evidence has been shown to be.

10           THE COURT:  Okay.  Thank you.

11           Counsel.

12           MR. SCHAFHAUSER:  Just to again clarify, my answer

13  to your question.  What I was trying to address is the

14  ambiguity in the Court's order and plaintiff's argument.

15           But it is my position, I want to be clear, it is my

16  position that the computers that Mr. Grantz' client own are

17  actually not within Mr. Friedman's custody, possession or

18  control.  They are within the custody, possession, control of

19  Mr. Grantz' clients, I wanted to clarify that.

20           MR. GOLDFARB:  If I can add one thing, this is

21  quoting the plaintiff.  Plaintiff originally requested, I am

22  reading from their brief 26, 27.  That they asked Judge

23  Orenstein in the original order for delivery to Stroz of any

24  computer used by Nussbaum defendants or the agents to access

25  office H --

- Proceedings -                                    45

1          THE COURT:  You are going way too fast.

2          MR. GOLDFARB:  I'm sorry.

3          That what the plaintiffs had requested from Judge

4    Orenstein, was a delivery to Stroz of any computer used by

5    Nussbaum defendants or the agents to access office HP, Sylvia

6    PC one, and the time computers, so as to prevent further loss

7    of material evidence.  This is what plaintiffs originally

8    requested.

9          That is exactly sort of what I was prepared to

10   offer.  They can show these computers are-- they want an

11   affidavit from Mr. Nussbaum, he will do research and see which

12   computers.  In fact what plaintiff originally requested, Judge

13   Orenstein granted a much broader order.

14         Again, I just wanted-- this was plaintiff's original

15   request.

16         THE COURT:  Where did the original request come

17   from, in a letter or where are you reading from, the original

18   request?

19         MR. GOLDFARB:  I'm reading in their brief to the

20   Court citing docket 3051, paragraph 50.  I assume a brief to--

21         THE COURT:  Docket what?

22         MR. GOLDFARB:  They are cited 305-1, paragraph 50.

23   This is plaintiff's request what they are asking of Judge

24   Orenstein.  Just from reading their brief to this court.

25         THE COURT:  Okay.

- Proceedings -                                    46

1    Counsel.

2    MR. NELKIN:  Yes.

3         I think that it is important to understand what has

4    happened in this case and what Judge Orenstein heard and was

5    trying to accomplish.

6         The record in this case is full of evidence of the

7    defendant's spoliation of evidence on a unprecedented level.

8    The day before the hearing, the initial hearing on the

9    preliminary injunction, right after the hearing on the

10   preliminary injunction, when they agreed to turn over the

11   computers, the day before the evidentiary hearing, immediately

12   after on the first day of the hearing, when they agreed to

13   turn over some computers, and then roughly hours before those

14   computers were delivered to Mr. Schafhauser's office,

15   according to Mr. Schafhauser's timeline on the 8th.

16        The evidence is also undisputed that Mr. Nussbaum

17   who is employed by the defendants.  When he describes himself

18   as a part-time employee, basically all of his business comes

19   from Mr. Friedman and these companies.  That was testified to

20   at the hearing.

21        And, Mr. Nussbaum who testified that after it was--

22   they were -- Stroz discovered evidence that the hard drives of

23   these computers that were supposed to be preserved for imaging

24   had been removed, hooked up to Mr. Nussbaum's computer and/or

25   to a computer, and then doctored with, with files being

- Proceedings -                                        47

1    deleted and wiping software deployed.  Mr. Nussbaum owned up

2    to that fact and said he had done that.

3           The testimony was that he had reviewed these

4    computers as part of his effort to prepare for his testimony

5    in this case.  He was acting on behalf of the defendants.

6           When Judge Orenstein ordered him to turn over the

7    computer that he hooked up to use to wipe these computers

8    clean, he testified-- his lawyer said that Mr. Nussbaum had

9    already wiped that computer clean.  So, presumably there is no

10   personal information on it, presumably there is no propriety

11   information, presumably there is no information on it because

12   he told the Court he wiped it clean destroying all the

13   evidence to what he actually did.

14          We are dealing with a situation where this Court's

15   orders, not just with respect to computers, but with respect

16   to things such as using the credit cards of Two Rivers, to do

17   things like pay for defense counsel, in violation of the

18   preliminary injunction, have been documented with actual

19   credit card bills being submitted to the Court.  While they

20   say in papers those things have been debunked.  They have not.

21   They were denied in the face of evidence of the actual bills

22   obtained from their computers.

23          We are dealing with a situation where the defendants

24   want to classify this as a discovery dispute.  It is not a

25   discovery dispute.

- Proceedings -                                      48

1      THE COURT:  So what is the purpose of getting these

2  computers and examining them.  You said it is not a discovery

3  dispute.  Is it not for discovery is it for some other reason?

4      MR. NELKIN:  It is to explore the full extent of the

5  defendants' spoliation and to figure out the full extent of

6  their violations of the Court's orders.  Both using those

7  computers to do things such as file insurance claims on behalf

8  of Two Rivers, to do certain business transactions that are in

9  violation of the preliminary injunction.

10     To explore other violations that were evident from

11  the few computers that were turned over.

12     THE COURT:  So it is not discovery of your claims in

13  the litigation.  That is not the reason to examine these

14  computers.

15     MR. NELKIN:  No, in fact Judge Orenstein at the

16  hearing basically said that he was wondering why Stroz could

17  not just examine these computers to figure out how, if they

18  had been doctored with or not.  And we explained that because

19  of just the nature of some of the file names.

20     For instance the ones they got.  They overwrote

21  certain file names that meant stuff to us, didn't mean

22  something to Two Rivers.

23     THE COURT:  What is your expert going to look for.

24  He has got all these computers, all imaged now.  You say that

25  the information on there is not directly related to your

- Proceedings -                                    49

1    claims.  The claims in the litigation.  But it is directed

2    towards whether the preliminary injunction was violated,

3    whether there has been deletion of evidence; is that correct?

4              MR. NELKIN:  Yes.  I mean there are a number of ways

5    the preliminary injunction can be violated not the least of

6    which the destruction or deletion of computer information,

7    which is-- there was extensive evidence based on the earlier

8    computers.

9              The defendants are also arguing that we can't show

10   that we have been injured in any way because the information

11   might be available from other sources.  And while we dispute

12   the application of some of the laws and precedents that they

13   are citing, they are still trying to argue that somehow that

14   what Judge Orenstein has seen, and what we presented through

15   Stroz, is not sufficient to establish spoliation and not

16   sufficient to establish violations of the order.

17             So I think what Judge Orenstein is trying to do was

18   in light of the fact that the defendants failed to be able to

19   testify as to whose computers these were -- or who used the

20   computers, and in light of the testimony from the defendants

21   themselves that they were overwriting the computer files that

22   they had.  There was no way to preserve things.

23             As they told Your Honor the same thing in their

24   briefing practice leading up to the imaging order.  There was

25   no way to prevent the deletion of files.

- Proceedings -                              50

1        That they are trying to hide what they have done and

2   tried to hide the evidence from the Court.  Their protocols

3   they are talking about are designed to prevent the discovery

4   of any information about spoliation.  They want to stop it at

5   the moment the Complaint was filed when what they have been

6   trying to do is delete different things that relate to the

7   evidence necessary in the Complaint.  Which they are required

8   to preserve under the preliminary injunction.  And they are

9   required to preserve a number of things in a preliminary

10  injunction not limited to Two Rivers.

11       Which is why the second protocol is designed to hide

12  that fact.  The preliminary injunction, specifically provides

13  they are required to maintain, and not in any way destroy or

14  erase or write over or whatever, anything that relates to

15  entities directly or indirectly under the control of any

16  defendant.

17       Or the business practices or finances of entities

18  directly or indirectly under common control with any

19  defendant.  They are required to preserve all that electronic

20  information which they were clearly not on the ones that we

21  have already been able to have Stroz examine.

22       So, they are trying to cut off the fact that-- what

23  they did is, is they went in and they destroyed the evidence

24  that is relevant to the case.  They destroyed the evidence

25  that has to do with different activities that they may have

- Proceedings -                                    51

1   done, both with respect to Two Rivers, and with respect to the

2   claims that are alleged in our complaint relating to money

3   laundering and things of that sort.

4           And, now they are trying to hide that fact by

5   saying, oh, you have to come in with these protocols that

6   start when the Complaint was filed, that only relate to Two

7   Rivers, that require you to use search terms, when we are

8   dealing with people who-- I would say, well-- they are clearly

9   there is criminal history among the defendants, such as

10  Friedman and where you have a pattern of utilizing slight

11  misspellings.

12          MR. SCHAFHAUSER:  I have to object to that comment

13  for the record.

14          MR. NELKIN:  Mr. Friedman, I believe is a convicted

15  felon.

16          MR. SCHAFHAUSER:  Objection.

17          MR. NELKIN:  But they intentionally misused names.

18  We have introduced just one, for one of the d/b/a's of which

19  they have, where it is associated missing the "E".  So if you

20  come up with search terms and you are looking for Two Rivers

21  and it is Two Rivers but Rivers is spelled with an "E" or

22  something, instead of "I", it will be hidden.

23          So, what Judge Orenstein was trying to do, was he

24  had found that it was fruitless.  We have the quote in our

25  briefing, to try to sort out the corporate entities because

- Proceedings -                                      52

1   the defendants were unable to explain their relationships.

2   You had the computers being commingled where you had Mrs.

3   Ezell and Ms. Rivera doing work for all defendants and using

4   commingled computers to do it.

5            You had a situation where you had-- even in their

6   papers, they talk about how E & J Funding, who is the entity

7   that supposedly lent money to Two Rivers, doesn't have a

8   computer. It stores all its records on some other defendant's

9   computers.

10           They told Judge Orenstein that Ms. Rivera did-- had

11  only one computer required-- that had anything to do with Two

12  Rivers.  And even though he was required to produce all of her

13  computers, they only produced one that they claimed had Two

14  Rivers' business.

15           When we were able to examine the computer we

16  discovered she had a computer which they called the oil

17  computer, they claim only serving for the oil business.  It

18  had some of the most relevant documents in the case.  It had

19  loan schedules, the checks, it had all the different

20  information, payments and things related to Two Rivers and E&J

21  Funding, and stored on the computer supposedly doesn't belong

22  to E&J Funding, doesn't have anything to do with Two Rivers

23  based on representations to the Court and that is all false.

24           What you have is, you have a corporate shell game.

25  Mr. Friedman, one of the people who controls those entities

- Proceedings -                                    53

1   and there is a facade that is going on, that Mr. Grantz

2   represents independent companies and Mr. Birnbaum whose

3   changed his story repeatedly, including recently as last

4   night, that they are shifting representations to this court as

5   to who controls these companies, and who operates these

6   companies.  It doesn't even make sense.

7           They are claiming that Mr. Birnbaum whose computers

8   are supposedly the computers of the coffee defendants, doesn't

9   have any access to the financial records.  So if not, where

10  are the financial records of those coffee companies stored and

11  who has custody and possession over them?  Did Mr. Friedman?

12  Mr. Friedman's lawyer told you he only has two or three

13  computers.

14          But when you look at the evidence presented to Judge

15  Orenstein, they were asked to bring in a 30(b)(6) witness, Mr.

16  Nussbaum to testify as to who had the most knowledge about

17  their computers and their employees.  And they just could not

18  do it.

19          At one point Judge Orenstein instructed me to stop

20  asking questions about the relationships.  He said they could

21  not explain it any more.  There is no way to explain their own

22  affidavits.

23          This is a situation where they want to present this

24  as a discovery dispute.  Mr. Schafhauser mentioned a number of

25  motions that he had filed.  Plaintiff also had a number of

- Proceedings -                              54

1   motions related to discovery.  They have all been postponed.

2   We had motions to compel related to Mr. Friedman's deposition,

3   his subpoena duces tecum.  He would not answer questions, that

4   goes to the heart of disputes.  He would not tell us who the

5   partners were.  He said at the deposition --

6            THE COURT:  Why are we talking about this now?

7            MR. NELKIN:  I am trying to explain that there is an

8   amorphous shell game that is going on with respect to the

9   computers and to the companies.

10           THE COURT:  All right.  Ordinarily in discovery, you

11  know, you would make a discovery request and the computer

12  and-- it would be complied with.

13           Here, the request is that you get all of the

14  computers without-- the information on all the computers with

15  the exception of something that is attorney/client privilege,

16  with no determination of relevancy.

17           Now, why is it unique to this case.  Why should you

18  get this.  In this case which you might not get in the

19  ordinary case.

20           MR. NELKIN:  The case law that even the defendants

21  cite.  Cases like Life Shaming(ph).  All state that when there

22  has been evidence of spoliation or evidence that the computers

23  have been used in furtherance of some violation or furtherance

24  of some improper purpose, that at that point, that those

25  computers get imaged.  That is exactly the situation we have

- Proceedings -                                    55

1    here.

2           THE COURT:  They are imaged.  They are already

3    imaged.

4           MR. NELKIN:  Now, with respect to the issue at hand,

5    the issue at hand is, we have pending motions for sanctions

6    before Judge Orenstein.  We have motions where we basically

7    say that the defendants have spoliated evidence and violated

8    the preliminary injunction, and we have requested terminating

9    sanctions as a result, as well as any other sanctions the

10   Court thinks are appropriate.

11          The defendants' response to that, is that they want

12   to present evidence to try to explain away that.  They have

13   requested that from Judge Orenstein.  They have requested to

14   have the hearing continued.  They then turn around and

15   requested this Court cancel that hearing, and not allow Judge

16   Orenstein to explore the issue further, to continue the

17   evidentiary hearing or to impose any sort of sanctions related

18   to the defendants' actions.

19          Judge Orenstein is trying to figure out what the

20   defendants have done.  That is his primary, maybe his sole

21   purpose in the order that he has issued.

22          Now, there are two parts to that.  One part is,

23   there are a number of parts of that order that can't or-- his

24   orders that can no longer be challenged.

25          Mr. Friedman's computers can't be challenged because

- Proceedings -                                    56

1    they were ordered to be turned over and they didn't appeal it.

2    Mrs. Rivera's and Mrs. Ezell also fall into that category.

3           Also, any of the computers that fall into the

4    August 5th order, which I think there is an order 266, docket

5    number, where they were ordered to be turned over.  None of

6    those can be turned over.

7           Now, defendants are on -- have been less than

8    forthcoming as to whose computers they have turned over.  We

9    have requested that they identify whose computer they are, who

10   owned the computer devices, and who used the computer.  They

11   refused to do that.

12          We have exchanged E-mails with counsel regarding

13   that. For them to come in and argue that somehow the order is

14   overbroad, when they are themselves trying to create a

15   misimpression as to-- or failure to disclose information that

16   would allow us to further pinpoint those computers, I think

17   negates their--

18          THE COURT:  What have you been told about the

19   computers.  You said you don't know whose computers is whose?

20          MR. NELKIN:  We requested that the defendants

21   identify, for the computers they were turning over, whose

22   computers it was, who used it, who owned it.  Because there is

23   so much information.

24          Just to give you one example from the papers in the

25   reply brief Mr. Grantz filed.  He says his company MB Fuel and

- Proceedings -                    57

1   MB Fuel-1, both of them -- neither of them own any computers.

2   Mr. Nussbaum who is the 30(b)(6) on the computers, for MB Fuel

3   and MB Fuel-1, testified that MB Fuel had computers sitting in

4   Mr. Friedman's office.

5          Ms. Rivera testified that she worked for MB Fuel or

6   MB Fuel-1, and she used a computer to do her work.  Yet we

7   can't figure out-- they could not explain--

8          THE COURT:  So, what did you get?  What did your

9   expert get, 61 unidentified computers?

10         MR. NELKIN:  We have computers that -- some

11  information was obtained for.  They say, where the location

12  they were picked up from.  They were picked up from Newark or

13  they were picked up from-- dropped off to the office by Mr.

14  Friedman.

15         But as far as specifying in any detail who those

16  computers were owned by or originated from, or more

17  importantly, who utilized them, that is something that the

18  defendants refused to respond to us about.

19         So, for them to come in and argue that somehow Judge

20  Orenstein is being overbroad, in light of both the fact that

21  they could not explain who owned the computers at the hearing.

22  I asked Mr. Nussbaum, he is the 30(b)(6).  Who owns these

23  computers.  He could not tell me.  Who uses the computers, he

24  could not tell me.

25         So, and when you ask people who they worked for,

- Proceedings -                              58

1    they could not tell you.  And the reason is, is that they are

2    really is no corporate existence.  This is somebody, a group

3    that when they want to be one entity, they are that entity.

4    When it is somebody needs to hide, they change to a different

5    entity.  We have given some examples.

6               THE COURT:  So the information that you will get

7    from-- that you are seeking to get from these computers.  You

8    are looking for information that is relevant to your

9    allegations as well as evidence of spoliation, correct?

10              MR. NELKIN:  I think that there are two types of

11   information that we are looking for.  One is what I would

12   consider to be and I'm not a computer person.  I think it is

13   called metadata.

14              What I mean by that, information that relates to the

15   information that is on the computer, that would allow you to

16   identify when files are created, deleted, who used the files.

17   The different names of the owners of the files, the creators

18   of the files, all that information that the computer maybe

19   storing, but may not be visible or even accessible to someone

20   with my level of computer skill.

21              But there is also additional information, and that

22   information relates to violations of the injunction.  And to

23   just give several that were in the papers, we discovered on

24   the computers we were able to image that there was a-- in

25   violation of the preliminary injunction, there was a credit

- Proceedings -                                    59

1    card in the name of Two Rivers that was being utilized by the

2    defendants after the entry of the preliminary injunction, with

3    hundreds of thousands of dollars in charges being used for

4    things such as paying for defense counsel.  An express

5    violation of the order.

6           And we introduced evidence that showed from the

7    computer devices, we were able to show one, that they

8    requested for American Express to switch the name on the card

9    or switch the allowable limits on the card to a different

10   card, in a different defendants' name.  American Express

11   refused to.  Then they chose to use it anyway.

12          THE COURT:  Do you have a list of the computers,

13   specific computers that were turned over prior to the Judge's

14   order that you claim should be exempted from any appeal?

15          MR. NELKIN:  The answer to that is, the orders

16   required them to turn over all of Mrs. Ezell's computers, all

17   of Ms. Rivera's computers.  All the computers that were listed

18   in different types of affidavits that had affidavits that had

19   been filed or reports Stroz mentioned.  Where they identified

20   certain things.

21          And the truth of the matter is, we don't know.  We

22   have been able to glean evidence that suggests that they have

23   not turned over all the computers, because Stroz identified

24   computers with names like Rivera and Ezell that were not

25   turned over.  We were able to identify from bills that there

- Proceedings -                               60

1   are things like Friedman's iPad and things on bills.  Where

2   Two Rivers is paying for those iPads.

3          THE COURT:  But to the extent your argument is, that

4   the Judge ordered computers to be turned over, and-- earlier

5   on, and there was no appeal from that.  What do you see about

6   this later order that is, if anything, was broader than the

7   earlier order?

8          MR. NELKIN:  I think that this later order is

9   broader in that it seeks to have the defendants turn over

10  their computers, so that those computers can be analyzed to

11  see, one, whether or not they fall into one of the categories

12  that was ordered to be turned over.

13         And two, based on the fact that there has been

14  significant evidence of spoliation, post complaint spoliation

15  and post complaint violations of the orders of the Court,

16  those computers are being sought so that they can be examined

17  to determine if the pattern that has been exhibited, the

18  computers turned over, extends to these other computers.

19         But basically the main thing is, that they were

20  ordered to turn over the computers of Mrs. Ezell and Ms.

21  Rivera and didn't do it.  And Judge Orenstein was able to

22  satisfy himself that they didn't do that.  So he ordered them

23  to turn over a broader number of computers.

24         Just to give you an example, the oil computer that

25  Ms. Rivera has, there is a computer, she says this is my

- Proceedings -                                        61

1    computer, was not turned over.  It has Two Rivers' information

2    on it.  We assume that it is one of the ones turned over, we

3    don't know that for a fact.  They have not even identified

4    which computer might qualify as that computer.

5            So, there are a number of computers.  Mr. Friedman

6    testified at the hearing about different computers that he

7    used.  We assume that some of those have been turned over.

8    But, again, we don't know that they have been turned over.

9            Mr. Friedman testified--

10           THE COURT:  Were they-- computers that would have

11   been a subject of the earlier order?

12           MR. NELKIN:  Yes.

13           They were ordered to turn over their computers and

14   they didn't do that.  And they were ordered to preserve those

15   computers, and the evidence absolutely established that they

16   didn't do it.  We were able to show the time stamps for the

17   computer utilization, when things were deleted off the

18   computers that were turned over.  And every single one of them

19   was contrary to the testimony of Mr. Friedman, Ms. Rivera, Ms.

20   Ezell, Mr. Nussbaum.

21           They were all-- they said we unplugged it.  We put

22   it in Mr. Friedman's offices.  When Stroz looked at the

23   computers, not one of them was actually preserved.  They were

24   continued to be used and spoliated.

25           THE COURT:  What about, you know, there is the Judge

- Proceedings -                                    62

1   Orenstein, or ordered the claw back provisions about

2   attorney/client privilege.  Counsel has argued that because of

3   the nature of some of these computers, that there could also

4   be a lot of personal information on the computers.

5            Why shouldn't a similar order govern the personal

6   information, the medical information?

7            MR. NELKIN:  Well, first off, there-- I think the

8   word, claw back, which the defendants use is unfair.  Judge

9   Orenstein's protocol, he clearly said, they get to review it

10  and they get to request things be preserved for privilege.

11           THE COURT:  That means not turned over to you.

12           MR. NELKIN:  Right.  Not like we get it all and they

13  get to claw it back.  They have a 3-week period or some period

14  of time.

15           THE COURT:  To delineate things not turned over to

16  you.

17           MR. NELKIN:  Correct.

18           THE COURT:  Should there be a similar provision for

19  personal information?  If you have somebody's cellphone,

20  phones of the kids.

21           MR. NELKIN:  I think there is unfortunately in this

22  case a history of the defendants' over classifying things.

23           The best example is, they classified something a

24  privilege document, when it was actually 8500 plus

25  unprivileged documents.

- Proceedings -                    63

1     THE COURT:  Here you have the Magistrate Judge still

2  nonetheless ordered they can do this privilege.

3     MR. NELKIN:  But I think that in the earlier case

4  what Judge Orenstein did, was he had that they were required

5  to have in camera review of privileged information to prevent

6  over designation of things.

7     THE COURT:  Has he with regard to this privilege

8  issue indicated that he would do an in camera review?

9     MR. NELKIN:  I believe-- I'm not one hundred percent

10  clear as to that.  I thought that that is what the 3-week

11  period was designed to do.  Give defendants a chance to have

12  an in camera review.  Everything up until this point for

13  attorney/client privilege has required an in camera review.  I

14  would not expect him to deviate from that, for this.

15     But my assumption was, the 3-week thing was to give

16  them a chance to identify it and to put it before him and --

17     MR. GRANTZ:  He specifically said otherwise.  I

18  asked him that question point blank.  Are you going to do

19  these things on an in camera basis, he said, no.  It was a

20  3-week period given to the defendants to look through all of

21  the images, designate the privileged material, tell Stroz what

22  needs to be culled from the images before turned over.

23     I specifically asked the Judge and told him that

24  three weeks was certainly not enough time to accomplish that

25  considering the volume of computers.  So he was not inclined

RW Barry    OCR

- Proceedings -                          64

1   to look at thousands of pages of documents.

2          Remember, why-- first of all, why would he want to

3   look at all that.  Secondly, we are talking about a year's

4   worth of litigation that is going to contain E-mails from all

5   of these defense counsel to Mr. Friedman and other people

6   involved.  All have to be claw backed or designated to not to

7   be turned over, a monumental task.

8          THE COURT:  Did you have anything further?

9          MR. NELKIN:  No.

10          Again, there are a couple of things defendants

11   raise.

12          One, the issue of the bond.  You had asked where

13   they raised it.  They raised it for the first time in the

14   reply.  We think they waived that requirement.  If by raising

15   it for the first time in the reply.

16          We also note that this is a situation of their own

17   creation.  They are the ones that got caught spoliating the

18   evidence.  It is not just a single instance.  They have been

19   given repeated chances, ordered to produce an affidavit about

20   their computers.  Judge Orenstein found that affidavit

21   improper.  Then he gave them a second chance.  They didn't--

22   were not fully forthcoming on that.  He held an evidentiary

23   hearing.  What he noted about credibility, truthfulness,

24   compliance with orders, is all in the record.

25          And we would point out that we think that he did

- Proceedings -                          65

1   make certain findings.  He made findings with respect to non

2   compliance with things such as turning over the computers.  He

3   is entitled to have a reasonable just order.  Actually not

4   even reasonable.  Just a just order to remedy that or to do

5   anything that is necessary to address that situation.

6            And, we don't think that that is in the form of

7   sanction, we feel--

8            THE COURT:  What did you request.  Did you request

9   at the hearing what he ordered?

10           MR. NELKIN:  This was not at our request.  This was

11  something that Judge Orenstein did.  We think sua sponte to

12  protect his authority and the Court's authority with respect

13  to its orders.

14           We had requested that the defendants-- well, we were

15  having an evidentiary hearing.  We were focused on the

16  computers that had been turned over and whether those

17  computers had been spoliated.

18           Judge Orenstein felt that there had been non

19  compliance with his earlier orders about turning over

20  computers, and obviously felt that there was also evidence of

21  extensive spoliation, that did not appear based on its

22  pervasiveness and the fact it affected all the computers that

23  were turned over, to necessarily be limited to just the few

24  computers that were turned over.

25           And so, I think Judge Orenstein felt and I think it

- Proceedings -                                            66

1   is in the record, that in order for him to assess the

2   situation, for him to-- in order for him to understand the

3   situation, he needed to have a fuller evaluation of the

4   computers that were in the defendants' possession and he felt

5   that based on everything that he had seen, he could not

6   pinpoint who had control or custody of those computers, who

7   owned them or used them.  So therefore he entered this order.

8           THE COURT:  How many computers were turned over

9   before the subject of the hearing?

10          MR. NELKIN:  There were four that were turned over.

11          And the history of that is, is that-- the T.R.O.

12   went into effect on the 2nd or third of December, and the

13   hearing was scheduled for the 10th.

14          The computers in question, at least some spoliated

15   on the 9th with wiping software.  Right after the hearing on

16   the 14th, ordered that the computers be turned over without

17   restriction, not for attorney/client privilege.

18          There was testimony that these computers were used

19   by both the coffee defendants, and for Two Rivers' business

20   and all of it on there.  Judge Orenstein said that that is

21   your own doing and therefore when you commingled it, we will

22   image these computers.

23          They didn't turn over those computers right away.

24   On the 18th, there was again wiping software deployed.

25          Then we argued as to how many computers there should

- Proceedings -                                           67

1   be that were subject to it.  We had evidence showing Mr.

2   Friedman and other personnel walking out the door with them on

3   video tape.  And so, we contacted defense counsel saying look,

4   we think there are more computers, you are telling us there is

5   one, we think several are missing.  They told us that there

6   were not.  Unless -- we want to show them our evidence, we

7   could discuss it after that.  We said, you have to tell us the

8   truth, not what we can prove.

9          And so, we filed our motion to compel with our

10  evidence.  Judge Orenstein found that credible, ordered the

11  evidentiary hearing after two affidavits related to the

12  computer were deemed insufficient.

13         The computers again, hearing was supposed to start

14  on the 6th, wiped on the 5th, wiped on the 6th, right after

15  they agreed to the first day of hearing, trying to preempt the

16  hearing.  They ordered them turned over by the 8th.  They

17  asked for an extra day for one of them and on the 8th they

18  were wiped again.

19         They were-- Mr. Schafhauser wrote to the Court

20  saying they were in his office on the 8th.  Now come up with a

21  timeline that suggested that Mr. Nussbaum without any

22  authority from the defendants walked into a locked building,

23  got ahold of computers.

24         MR. SCHAFHAUSER:  It is a false statement that you

25  have repeated and I object.

- Proceedings -                               68

1        THE COURT:  Do not interrupt him.  You will have an

2   opportunity to respond.  Do not stand up and interrupt him.

3        MR. NELKIN:  We know they were spoliated on the 8th.

4   Mr. Schafhauser has a timeline suggesting--

5        THE COURT:  Are you talking about October?

6        MR. NELKIN:  July 8th.  That they were not in his

7   office at that time, and we are not contesting, we are not at

8   this point saying otherwise.  We will work with his timeline.

9   We are not trying to impute Mr. Schafhauser.  We are saying

10   that sometime on the 8th, shortly before Mr. Schafhauser's

11   timeline, those computers were wiped again.  They were turned

12   over to the plaintiff and all that was discovered by Stroz.

13        Mr. Nussbaum, when Stroz discovered the wiping on

14   the 8th and the disconnecting the hard drives, attaching them

15   to another computer, then submitted an affidavit related to

16   that and said he had done that.

17        The defendants claim that that was not at their

18   instructions and Mr. Nussbaum's computer was then wiped clean,

19   erasing the evidence of what he did.

20        THE COURT:  Well, all of the computers that you

21   received before, were the subject of this order.  They have

22   all been imaged, Stroz analyzed all of those, correct?

23        MR. NELKIN:  The four.

24        THE COURT:  That is four.

25        MR. NELKIN:  Yes.

- Proceedings -                                    69

1          And now computers have been turned over.  For

2    instance Mr. Nussbaum's computers turned over because Judge

3    Orenstein ordered him to turn them over after admitting to

4    connecting.

5          THE COURT:  But is that an order entered subject to

6    appeal or not appeal?

7          MR. NELKIN:  Mr. Nussbaum has appealed that order to

8    this court.

9          THE COURT:  What I'm still trying to determine the

10   earlier orders, is it your position that some of the 61

11   computers that were turned over recently, after Judge

12   Orenstein's order in October, that some of those computers

13   were subject to the earlier order?

14         MR. NELKIN:  Absolutely.

15         THE COURT:  I take it Mr. Schafhauser, it is your

16   position that the computers that were in fact turned over, not

17   as a result of Judge Orenstein's order in October, but

18   earlier, the computers that you were-- were the only ones

19   subject to earlier orders.

20         MR. SCHAFHAUSER:  Yes, there were four computers

21   subject.

22         THE COURT:  They are the only ones responsive to the

23   earlier orders, is that your client's position?

24         MR. SCHAFHAUSER:  Yes, not only is it my client's

25   position, but it is actually the position that plaintiff took

- Proceedings -                              70

1   until this appeal.  So, yes.

2           MR. NELKIN:  Your Honor, we have always taken the

3   position that there are a number of computers that have not

4   been turned over.  We have introduced numerous Stroz reports

5   on that subject indicating that there are computers whose

6   names are Sylvia, as in Sonia and as in Sonia Rivera missing

7   that were not--

8           THE COURT:  Just so I understand the position.  I

9   take it from Friedman's position, he is not appealing the

10  earlier orders that he in fact complied with the earlier

11  orders, is that what your position is?

12          MR. SCHAFHAUSER:  That's correct.  The earlier

13  orders involved the turn over of four computers, they were

14  turned over in August, I believe or maybe it was July.

15          THE COURT:  But the order generically referred to

16  computers of certain people, correct?

17          MR. SCHAFHAUSER:  No, the order-- well, this is

18  where it gets complicated.

19          There was an agreement on December 14th, between the

20  parties.  Actually it was an agreement that Mr. Nelkin placed

21  on the record about four computers had been discussed that

22  day.

23          And what happened was that I actually-- after that

24  agreement was entered, I offered Mr. Friedman-- the Friedman

25  computer, I represent Friedman.  The Friedman computer that

- Proceedings -                             71

1  was at issue, was sitting in South Plainfield.  We talked

2  about it.  It is produced, imaged it.  Why they actually sent

3  them recommendations of people to image the computers in

4  December--

5          THE COURT:  You made no request for attorney/client

6  privilege.

7          MR. SCHAFHAUSER:  Yes, there was going to be.  There

8  was going to be a protection, under the agreement between the

9  parties back in December.  So that computer was always

10 available for imaging.

11         Ms. Rivera had a computer that was available for

12 imaging that was-- so, what happened-- they never imaged those

13 computers at the time.  That is an important detail since you

14 have-- they never imaged those computers.

15         Four months went by.  December 14th to April 14th.

16 On April 14th, plaintiff files a motion to compel.  The

17 plaintiff does not say in that motion, oh, you have to produce

18 61 images.  You have to produce 61 computers.  The motion to

19 compel-- the argument that plaintiff is foisting, attempting

20 to foist on Your Honor today, is not the argument that was the

21 motion to compel.  The motion to compel related to a computer

22 of Ms. Ezell, which by the way, Ms. Ezell has now also turned

23 over.

24         So there were four computers and a stipulation that

25 is in the transcript on July 6th, we were in front of Judge

- Proceedings -                                        72

1    Orenstein, and there were four computers that were specified.

2            THE COURT:  That is because those were the ones that

3    you had said existed.

4            MR. SCHAFHAUSER:  That were subject.

5            THE COURT:  Mr.-- he, Mr. Nelkin didn't know what

6    existed.

7            MR. SCHAFHAUSER:  Most respectfully that is not

8    true.  I appreciate the question.  This actually makes my

9    point, which is that months before that stipulation is the

10   four computers.  We had identified pursuant to Judge

11   Orenstein's request, other computers in the custody,

12   possession, control.  But those orders that Judge Orenstein

13   entered to identify and provide affidavits, and I think I

14   provided two sets of affidavits, Mr. Finkel's clients provided

15   two sets of affidavits.  They didn't say, produce those

16   computers.  They said, identify the computers.

17           So the only four computers that were subject to an

18   order to produce were based on the stipulation and the order

19   of Judge Orenstein on day one of the hearing.

20           THE COURT:  Which hearing?

21           MR. SCHAFHAUSER:  On July 6th, the evidentiary

22   hearing.

23           Those computers were produced.  And so, yes, Your

24   Honor, just to be clear, we are not seeking to-- we are not

25   seeking relief as to those four.  Those four computers were

- Proceedings -                                73

1    produced subject to the parties' original agreement and then

2    the stipulation on the record with Judge Orenstein.

3          But again, what bears great significance here is

4    when Mr. Schreiber filed his motion to compel, at no time did

5    he take the position that plaintiff is taking today that the

6    prior orders encompassed anything other than the computers at

7    issue.  That is number one.

8          Number two, Your Honor heard a very significant

9    admission, most respectfully from plaintiff's counsel just

10   now.  And that admission was that you asked whether he had

11   sought this relief.

12         The plaintiff did not even seek the relief that we

13   are here on today.  The plaintiff did not make a showing for

14   the relief that we are-- that we are talking about today.

15         Your Honor heard from plaintiff's counsel himself.

16   This was a sua sponte order entered, not even plaintiff made

17   the showing and not even plaintiff sought this broad relief.

18   The relief wasn't actually sought.

19         And Your Honor heard another admission from

20   plaintiff's counsel a few moments ago.  Your Honor asked the

21   question, whether these computers, whether the information on

22   the computers related to discovery.  I took my notes down and

23   plaintiff's counsel said, no, it doesn't relate to a discovery

24   dispute.  He is trying to prove some kind of spoliation claim.

25         Well the spoliation claim is in his verified

1   complaint, Your Honor, that was filed on day one.  It is a

2   substantive claim that should be in a Beth din proceeding.  He

3   is-- this is not about a discovery dispute.  Your Honor--

4           THE COURT:  It is spoliation after this lawsuit

5   began.  Not earlier.

6           Let me ask you another question.

7           MR. SCHAFHAUSER:  Thank you.

8           THE COURT:  The 61 computers turned over, have you

9   identified them in any way?

10          MR. SCHAFHAUSER:  And thank you, Your Honor, thank

11  you for the question.  Because this was another thing that I--

12  I was itching to say.

13          Your Honor heard from Mr. Nelkin a few moments ago,

14  that Mr. Friedman has not identified the computers.  If I may

15  hand up to Your Honor, this was filed on PACER, this was filed

16  docket 349-1.  I want to hand up an E-mail that I sent to Mr.

17  Nelkin on November 18th, one month ago.  With permission, I

18  would approach.

19          THE COURT:  Is this on the docket?

20          MR. SCHAFHAUSER:  It is on the docket.  I'm amazed.

21  It is docket 349-1.  I am also amazed that Mr. Nelkin

22  represented to Your Honor that we didn't list.  There is a

23  list also on the docket.  Number 349-2.  And Mr. Nelkin said,

24  to Your Honor, that there is no way to figure out what the

25  coffee company defendants produced.

- Proceedings -                                     75

1          Well, Your Honor, I'm going to hand you the docket

2     entry and the list, and the list has the address of the coffee

3     company defendants.  So you don't have to be a rocket

4     scientist to figure out, if you are going to the coffee

5     company defendants' address, and the only people there are the

6     coffee company defendants, and the list says their address, I

7     think it is a pretty good indication of where it came from.

8          May I hand these up.  These go right to something

9     that Your Honor heard from plaintiff's counsel.  Then I want

10    to continue.

11         THE COURT:  No, I'm not sure I want you to continue.

12         MR. NELKIN:  Your Honor, with respect to that

13    document, as I said --

14         MR. SCHAFHAUSER:  I wasn't finished Mr. Nelkin.

15         THE COURT:  What else did you want to add about

16    this?

17         MR. SCHAFHAUSER:  As to that, that goes to something

18    you just heard that I didn't specify.  I wrote him an E-mail a

19    month ago.  It is on the docket.

20         Let me go on, Your Honor.

21         Your Honor, also heard-- in addition to the fact

22    that this does not relate to discovery, Your Honor also heard

23    from Mr. Nelkin that really what we are talking about here is

24    metadata.

25         There is no need for plaintiff's counsel to review

- Proceedings -                                76

1   metadata.  There is no need for it.  If that is all it is.

2   Then we can save ourselves a whole bunch of headaches and an

3   enormous amount of money.

4          Mr. Nelkin doesn't have to review every E-mail and

5   every document and every tax return and every invoice on 61

6   images.  If what we are talking about is metadata.  That is

7   what Mr. Nelkin said.

8          Because remember, he said critical point.  He said

9   it doesn't relate to a discovery dispute.

10         And moreover, what Mr. Nelkin also said, because I--

11  it sounded like it was a closing argument.  He accused my

12  client of being a criminal.  He accused my client of engaging

13  in spoliation.  He accused my client of all kinds of

14  misconduct, which has never been founded by Judge Orenstein.

15  Never found.  Nobody has ever said spoliation.

16         But it sounds like the closing argument.  But

17  because Mr. Nelkin says so, he believes that he has got more

18  than enough information.  Your Honor heard a half hour of it.

19  He has more than enough information.  He doesn't need this

20  information, Your Honor.  He doesn't need 61 additional

21  computer devices because the plaintiff already has

22  information, according to plaintiff's counsel himself, he has

23  all he needs.  This is all cumulative.

24         THE COURT:  Come on.  Cumulative?  I mean he is--

25  the Judge has this hearing, the Judge gets this information

1   about what is going on.  The Judge thinks it is important to

2   see these other computers, to establish whether in fact what

3   Stroz is saying has happened.  Whether it has happened in

4   other instances and you are standing here today, calling this

5   cumulative.

6          MR. SCHAFHAUSER:  Yes, Your Honor.  What I am

7   standing here saying, is that if you look at the actual Stroz

8   reports, and you look at the request that plaintiff made,

9   Stroz never makes the connection between the four computer

10  devices and what happened on those four computer devices and

11  61 other computer devices by other people.  Never makes that

12  connection.

13         So when we talk about the Stroz report, that

14  connection is not made.

15         THE COURT:  They didn't make it because he doesn't

16  have the other computers to look at.  That is why he doesn't

17  make it.

18         MR. SCHAFHAUSER:  The only thing that the Plaintiff

19  sought Your Honor was insofar as any computer devices,

20  connected to those four, they wanted evidence as to those

21  connections.  That is not what Judge Orenstein ordered.

22         Judge Orenstein ordered every computer device that

23  any defendant has in his custody, possession or control.  Not

24  only to be preserved, but to be turned over.

25         By the way, the preservation is not an issue any

- Proceedings -                              78

1   more.  We don't need to-- plaintiff said, yeah, there maybe

2   deletions.  Well, if there is deletions or no deletions, we

3   don't need to worry about it because Stroz has the images.

4           So the only--

5           THE COURT:  But if they can't-- your position is

6   that they can't look at them.  They shouldn't be able to

7   examine them.

8           MR. SCHAFHAUSER:  My position is, there was never a

9   showing.  The plaintiff did not even make the request and

10  therefore didn't even make the showing.

11          THE COURT:  Thank you.  Thank you gentlemen.

12          MR. GOLDFARB:  If I can add one point.

13          THE COURT:  No, I have had two hours, that is

14  enough.

15          (Matter concluded.)

16

17          - - o o O o o - -

18

19  I CERTIFY that the foregoing
    is a correct transcript from
20  the record of proceedings
    in the above entitled matter.
21
    s/Richard W. Barry
22  _____
    Richard W. Barry, RPR
23

24

25

RW Barry     OCR