```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2
     -------------------------------x
 3                                   :
     STEVEN SCHREIBER,               :        15-CV-6861 (CBA)
 4                                   :
                Plaintiff,           :        United States Courthouse
 5                                   :        Brooklyn, New York
                -against-           :
 6                                   :        March 8, 2016
     EMIL FRIEDMAN, ET AL.,          :        3:00 p.m.
 7                                   :
                Defendant.           :
 8                                   :
     -------------------------------x
 9

10

11              TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
                BEFORE THE HONORABLE CAROL BAGLEY AMON
12                 CHIEF UNITED STATES DISTRICT JUDGE

13

14

15   APPEARANCES:

16
     For the Plaintiff:        NELKIN & NELKIN
17                             5417 Chaucher Drive
                               Houston, Texas 77055
18
                               BY:  JAY P. NELKIN, ESQ.
19                                  CAROL NELKIN, ESQ.

20

21   For the Defendants:       HERRICK FEINSTEIN, LLP
                               Attorneys for Emil Friedman
22                             and NY Best Coffee
                               2 Park Avenue
23                             New York, New York 10016

24                             BY:  PAUL H. SCHAFHAUSER, ESQ.

25
```

1    APPEARANCES CONTINUED:

2

3                        GARVEY SCHUBERT BARER
                         Attorneys for Solomon Birnbaum,
4                        26 Flavors, Office Coffee Services
                         100 Wall Street
5                        New York, New York 10005

6                        BY:  MAURICE W. HELLER, ESQ.

7

8                        ROSENBERG FELDMAN SMITH, LLP
                         Attorneys for Michael Devine,
9                        Michael Devine, CPA
                         551 Fifth Avenue
10                       New York, New York 10176

11                       BY:  RICHARD B. FELDMAN, ESQ.

12

13                       MAYNER & LANDIS, LLP
                         Attorneys for E & J Funding, E & I
14                       Investors Group, E & Jeryg Management
                         One Gateway Center
15                       Newark, New Jersey 07102

16                       BY:  DAVID B. GRANTZ, ESQ.

17

18                       RICHARD A. FINKEL, ESQ. &
                         ASSOCIATES, PLLC
19                       Attorneys for Sylvia Ezell, Sonia
                         Rivera, Jorge Salcedo,
20                       270 Madison Avenue
                         New York, New York 10016

21

22                       BY:  RICHARD A. FINKEL, ESQ.

23

24

25

                    LAM      OCR      RPR

```
 1    APPEARANCES CONTINUED:

 2

 3                         ABRAMS GARFINKEL MARGOLIS BERGSON, LLP
                          Attorneys for Geoffrey Hersko,
 4                        Geoffrey S. Hersko, P.C.
                          1430 Broadway
 5                        New York, New York 10018

 6                        BY:  ROBERT J. BERGSON, ESQ.

 7

 8                        THOMPSON HINE, LLP
                          Attorneys for 165 Realty Corp., 24
 9                        Hour Oil Delivery, Associated Fuel
                          Oil, Light Trucking, MB Fuel Transport
10                        1, MB Fuel Transport, Park Avenue
                          Associates
11                        335 Madison Avenue
                          New York, New York 10017
12
                          BY:  BRIAN D. WALLER, ESQ.
13

14

15    Court Reporter:     LINDA A. MARINO, RPR
                          225 Cadman Plaza East
16                        Brooklyn, NY 10021
                          (718) 613-2484
17

18

19    Proceedings recorded by mechanical stenography.  Transcript
      produced by computer-aided transcription.
20

21

22

23

24

25
```

1          THE CLERK:  Schreiber, et al., versus Friedman, on

2     for oral argument.

3          THE COURT:  Good afternoon.  Will the parties state

4     their appearances, please?

5          First, for the plaintiff?

6          MR. NELKIN:  Jay Nelkin, Nelkin & Nelkin, P.C., for

7     the plaintiff.

8          THE COURT:  And for the defendant?

9          MR. SCHAFHAUSER:  Good afternoon, your Honor.  Paul

10    Schafhauser, Herrick Feinstein, for defendants Emil Friedman

11    and New York Best Coffee.

12         MR. GRANTZ:  Good afternoon, your Honor.  David B.

13    Grantz, G-R-A-N-T-Z, from the law firm of Mayner & Landis, on

14    behalf of E & J Funding Company, LLC; E & J Management, Inc; E

15    & Jeryg Management Corp, and E & I Investors Group, LLC.

16         THE COURT:  David Grantz?

17         MR. GRANTZ:  Grantz, G-R-A-N-T-Z.

18         MR. BERGSON:  Good afternoon, your Honor.  Rob

19    Bergson, Abrams Garfinkel Margolis Bergson, for defendant

20    Geoffrey Hersko.

21         THE COURT:  I'm sorry, your name again?  I have a

22    series of names here.

23         MR. BERGSON:  Robert Bergson, B-E-R-G-S-O-N.

24         MR. FELDMAN:  Richard Feldman, Rosenberg Feldman

25    Smith, for Michael Devine and Michael Devine, CPA.

1                    THE COURT:  Okay.

2                    MR. FINKEL:  Richard A. Finkel, your Honor, for

3    Sylvia Ezell, Sonia Rivera, and Jorge Salcedo.

4                    THE COURT:  Okay.

5                    MR. HELLER:  Good afternoon, your Honor.  Maurice

6    Heller, Garvey Schubert Barer, for Solomon Birnbaum; Single

7    Serve Beverages Distribution; Crazy Cups; 26 Flavors, LLC; and

8    Office Coffee Services, LLC.

9                    THE COURT:  All right.

10                   MR. WALLER:  Good afternoon, your Honor.  Brian

11   Waller, Thompson Hine, LLP, for defendants 24 Hour Oil

12   Delivery Corp.; MV Fuel Transport, Inc.; MV Fuel Transport 1,

13   Inc.; Associated Fuel Oil Corp.; Light Trucking Corp., 165

14   Street Realty Corp.; Park Avenue Associates, LLC; and John

15   Ahearn.

16                   THE COURT:  Thank you.

17                   This is an appeal from the magistrate judge's

18   discovery order.

19                   And Mr. Schafhauser -- did I even come close?

20                   MR. NELKIN:  You did a wonderful job.

21                   THE COURT:  Everyone else can be seated.

22                   Do you want to be heard first?

23                   MR. NELKIN:  Yes.  I appreciate the opportunity.

24   Your Honor I'm sure has read the paper, so I won't go through

25   everything but simply to highlight a couple of points.

1        Your Honor is aware of the procedural history here

2   which led up to Magistrate Judge Orenstein's ruling.  I

3   respectfully submit that under the governing standard, with

4   every respect to Magistrate Judge Orenstein, the decision that

5   his Honor rendered should be vacated by your Honor.  And I'll

6   go through the reasons.

7        First of all, as to my client, Mr. Friedman -- and

8   Mr. Friedman admittedly is in a little bit of a different

9   posture than a number of defendants -- Mr. Friedman, as your

10  Honor is aware, is a party to a written agreement that is at

11  the center of this case.  It's the Two Rivers operating

12  agreement, your Honor.

13       And, in fact, when this case was commenced, the

14  plaintiff in this case said in his verified complaint at

15  Paragraph 647, and I quote:  The Two Rivers operating

16  agreement is a valid and subsisting contract between plaintiff

17  and the other members of Two Rivers, including Friedman.

18       So, we have a valid and subsisting agreement.  And

19  in that agreement, your Honor, in that agreement, the parties

20  stipulated to arbitration as follows, and I'm quoting now at

21  Section 11.1 of the agreement, which says, in relevant part:

22  All disputes with respect to any claim for indemnification and

23  all other disputes and controversies between the parties

24  hereto arising out of or in connection with this operating

25  agreement shall be submitted to a Beth Din arbitration in

1    accordance with Orthodox Jewish religion.

2              It then goes on to say, your Honor, and I'm quoting:

3    Except as set forth below, the parties stipulate that the

4    provisions of this paragraph shall be a complete defense to

5    any suit, action, or proceeding instituted in any federal,

6    state, or local court, or before any administrative tribunal

7    with respect to any controversy or dispute arising out of this

8    agreement.

9              And then what is set forth below is that:

10   Notwithstanding anything to the contrary, any party may seek

11   from the Court any provisional remedy.

12             So, the presumption under this agreement is that

13   except for provisional remedies, the parties are required to

14   go to a Beth Din and that this provision shall be a complete

15   defense.

16             As your Honor is aware, the plaintiff in this case

17   applied for a provisional remedy by way of order to show cause

18   that your Honor entered on December 2.  That provisional

19   remedy was entered by way of a consent order for preliminary

20   injunction on January 19.  So, what we're now talking about is

21   not a provisional remedy but merits discovery.  That's what

22   was the issue before Magistrate Judge Orenstein, whether

23   merits discovery should proceed in the face of a written

24   arbitration agreement as to my client, which shall be a

25   complete defense.

1          As your Honor is aware, under the Federal

2   Arbitration Act, where, in fact, there is a written agreement,

3   if the Court is satisfied that that agreement covers a

4   dispute, under Section 3 it says that the District Court,

5   quote:  Shall, on application of one of the parties, stay the

6   trial of the action until such arbitration has been had in

7   accordance with the terms of the agreement.

8          And that's what Section 3 says.

9          Your Honor, in a case entitled *Teah v. Macy's, Inc.*,

10   that we cited in the papers, recognized that under Section 3

11   of the Federal Arbitration Act, and I'm quoting now:  A

12   district court, upon application by one of the parties, must

13   stay proceedings if satisfied that the parties have agreed in

14   writing to arbitrate an issue or issues underlying the

15   district court proceeding.  The act, thus, leaves no place for

16   the exercise of discretion by a district court but, instead,

17   mandates that district court shall direct the parties to

18   proceed to arbitration on issues as to which an arbitration

19   agreement has been signed.

20          Again, *Teah v. Macy's*.  In this case --

21          THE COURT:  Well, we're not there yet, counsel.  The

22   Court hasn't decided that, in fact, these are issues that are

23   subject to that arbitration clause.  The phrase that you just

24   quoted was in the context of the Court enforcing the

25   arbitration laws, but we're not at that point, we haven't

1  gotten to that point.  Indeed, that's what we need, to set

2  down dates for briefing on that point.

3       MR. SCHAFHAUSER:  That's correct, your Honor, we

4  will be addressing in briefing.  But in the meantime, I

5  respectfully submit that what we do have, because we've had it

6  from the very day that the case was filed, the agreement that

7  I'm referring to is an exhibit to the first filing docket;

8  literally, Docket Entry No. 1 is the written agreement that

9  contains an arbitration provision.

10      So, there may be a dispute by plaintiff as to which

11  of the various claims are subject to that agreement, but

12  certainly some of them are because, certainly, plaintiff

13  himself in his complaint says that he's bringing claims under

14  that agreement.  So, certainly some of them are.

15      The answer by plaintiff cannot be that he's suing

16  under an agreement and yet there's no claims covered by that

17  same agreement.  I don't think plaintiff can plausibly so

18  suggest.

19      So, your Honor is correct, that is a motion that we

20  have sought leave to file.  But in the meantime, what I would

21  respectfully submit is that given the fact that there is as to

22  my client a written agreement to arbitrate at least some of

23  the provisions -- and we can debate in motion practice with

24  plaintiff which of those are subject to the agreement and

25  which are beyond --

```
 1              THE COURT:  Well, to the extent that some of them
 2    are not subject to the agreement, then there's discovery to be
 3    had.
 4              MR. SCHAFHAUSER:  But under the Federal Arbitration
 5    Act, your Honor, the presumption is in favor -- as your Honor
 6    is well aware, in favor of arbitration.
 7              THE COURT:  You mean even if claims aren't subject
 8    to the agreement?
 9              You're just saying that there may be an argument
10    that some of the causes of action are not subject to the
11    arbitration agreement.  To the extent that that's the case,
12    then discovery would go forward on those claims.
13              MR. SCHAFHAUSER:  I'm saying that plaintiff is
14    certainly arguing that there are some claims that are not
15    subject.  What I'm saying is the presumption under the Federal
16    Arbitration Act is to read agreements to arbitrate broadly,
17    especially, whereas here, the agreement in question contains
18    language as to "arising under," all claims arising under.
19              We've cited case law which, in fact, so holds.  For
20    instance, the Moses Cone case, 460 U.S. at 24, in which --
21    it's the Second Circuit -- I'm sorry, the Second Circuit at
22    WorldCrisa Corp. says at 129 F. 3rd 71:  In accordance with
23    the strong federal policy in favor of arbitration, the
24    existence of a broad agreement to arbitrate creates a
25    presumption of arbitrability which is only overcome if it may
```

1   be said with positive assurance that the arbitration clause is

2   not susceptible of an interpretation that covers the asserted

3   dispute, doubts should be resolved in favor of coverage, end

4   quote.

5          So, under the governing law, I respectfully submit,

6   doubt should result in favor of arbitrability, not in favor of

7   nonarbitrability; and, therefore, the burden is not on my

8   client to demonstrate arbitrability, the burden is on

9   plaintiff to demonstrate that any claims he has asserted are

10  not subject are, in fact, not subject.  The agreement is broad

11  and should be broadly construed.

12         Again, given the existence of the written agreement

13  that should be broadly construed under the Federal Arbitration

14  Act; given the statute, Section 3 of the Federal Arbitration

15  Act, which mandates a stay, as the Court held in *Teah v.*

16  *Macy's*, I respectfully submit that at a very minimum the Court

17  should stay merits discovery unless and until such time as the

18  Court has ruled on the threshold issue of whether my client's

19  entitled to go to arbitration and whether the entire case goes

20  to arbitration or whether a portion of the case goes to

21  arbitration.  That is the threshold issue.

22         I cited a case in the papers by Judge Posner, the

23  CIGNA Healthcare case, 294 F. 3rd at 855, in which Judge

24  Posner said that:  Allowing discovery to go forward before a

25  determination of whether the dispute is arbitrable -- and

1  these are his words -- puts the cart before the horse,

2  quote/unquote.

3       I respectfully submit that that is not the

4  appropriate way to proceed in this case.  There is a

5  preliminary injunction that's been entered.  There's no issue

6  as to a provisional remedy, we're talking about discovery on

7  the merits.  The plaintiff would not be prejudiced or harmed

8  in the least by a brief stay.  There would be no prejudice

9  whatsoever by a brief stay on merits discovery.  He's already

10 got a preliminary injunction.

11      By contrast, if no stay were implemented, your

12 Honor, my client would be required to litigate a case in

13 federal court that he bargained under a signed written

14 agreement for the right to have arbitrated in a Beth Din.  My

15 clients bargained-for rights would essentially be vitiated by

16 having to proceed on the merits in a case where there's a

17 written arbitration agreement.

18      I also wanted to point out, your Honor, that with

19 the argument raised by plaintiff in his papers that my client

20 purportedly waived his right to arbitrate, your Honor has now

21 received my letter on Friday which sets forth the facts of

22 that.  And the facts are these, your Honor, in brief:  At no

23 time before this case was filed did Mr. Friedman refuse to

24 arbitrate.  In fact, he was moving in state court for the very

25 right to arbitrate.

1          How do I know?  I was there.  He moved to arbitrate.

2    And the state court judge, what she did is she entered a

3    provisional remedy --

4          THE COURT:  In this case?

5          MR. SCHAFHAUSER:  No, in a state court action.

6          THE COURT:  A state court action involving lease

7    types in this case?

8          MR. SCHAFHAUSER:  A state court action involving

9    claims brought by Two Rivers Coffee against Emil Friedman

10   personally in state court involving the same operating

11   agreements that we're talking about here, this very same

12   agreement.  And those claims were brought by Two Rivers

13   through Mr. Schreiber and his other co-members against

14   Mr. Friedman in state court.

15          And what did Mr. Friedman do?  He was the one, he

16   was the one, your Honor, who moved to compel arbitration in

17   state court.  And the state court judge directed that except

18   for the provisional remedy, the parties, indeed, would be

19   required to submit to a Beth Din arbitration in accordance

20   with the agreement.

21          So, the two points I would make on that basis are,

22   number one --

23          THE COURT:  They're not the same claims that were

24   raised and are raised in this case that you're talking about.

25   You're talking about different claims, different issues.

1    You're not talking about the claims that are the subject of

2    the complaint in this case, right?

3           MR. SCHAFHAUSER:  They are different claims, right.

4    What I'm addressing is the argument that somehow Mr. Friedman

5    refused to go to arbitration --

6           THE COURT:  The claim is not that he refused to go

7    to arbitration in that instance, it's in the separate instance

8    that the plaintiff here brought that he claims he refused to

9    go to arbitration, that he didn't pay the $250,000, et cetera.

10   That's a different setting than the one that you're --

11          MR. SCHAFHAUSER:  And as to that claim, by the

12   way --

13          THE COURT:  That's the one he was claiming that he

14   didn't agree to arbitrate, not something else that happened in

15   another court.

16          MR. SCHAFHAUSER:  But your Honor --

17          THE COURT:  He decides to arbitrate some things but

18   he doesn't decide to arbitrate other things?

19          MR. SCHAFHAUSER:  No, your Honor, and that's not

20   what happened.

21          What happened is not what the plaintiff is alleging.

22   He's not alleging that he ever brought the claims in this case

23   before the Maysharim.  He's not alleging that.  Because he

24   never did.  He never brought RICO claims before the Maysharim.

25          But Mr. Friedman, in any event, whether the claims

                        LAM      OCR      RPR

1  are the same or different, Mr. Friedman never refused to do

2  what Maysharim directed on September 25 of last year.  Mr.

3  Friedman, in fact, did what Maysharim directed.  And Maysharim

4  on January 28 of this year held that Mr. Friedman had

5  satisfied its requirements and, thus, vacated the Heter.

6          So, in fact, the very rabbinical court that

7  plaintiff is now citing has ruled against plaintiff on the

8  issue of whether Mr. Friedman complied.  That very rabbinical

9  court has ruled against plaintiff and in favor of my client.

10  So, the idea that Mr. Friedman failed to do what Maysharim

11  directed is belied by what Maysharim itself has ruled.

12          But, in any event, as to that issue, the plaintiff

13  did not rely on that interim award dated September 25.  In

14  fact, in the correspondence that we submitted to your Honor,

15  the plaintiff sought clarification thereafter from Maysharim,

16  pointing out that there was no deadline for Mr. Friedman to do

17  what Maysharim had directed.  And the plaintiff, as late as

18  five days before plaintiff commenced this action before your

19  Honor, five days before was sending submissions to Maysharim

20  asking Maysharim to enforce its jurisdiction.

21          So, plaintiff did not certainly rely on anything

22  that Maysharim did.  And the best evidence of that, your

23  Honor, is plaintiff never sought to confirm or enforce

24  Maysharim's September 25, 2015, award until after I sought, on

25  behalf of my client, to enforce Maysharim's January 28 award.

1  Plaintiff never sought to enforce it, never bothered to,

2  wasn't important at the time for plaintiff.  Now he claims he

3  relied on it.

4          So, for those reasons, your Honor, I respectfully

5  submit that the Court should stay discovery pending the

6  outcome of the motions that are to be filed under the Federal

7  Arbitration Act and governing law, and then we would ask for

8  your Honor to set an appropriate schedule as to the filing and

9  the hearing of those motions.

10         THE COURT:  Thank you.

11         MR. SCHAFHAUSER:  Thank you.

12         Your Honor, I have a separate application which I

13  don't know whether your Honor wants me to address now or --

14         THE COURT:  Is this paying the rent?

15         MR. SCHAFHAUSER:  Yes.

16         THE COURT:  You can make that application to the

17  magistrate judge.

18         MR. SCHAFHAUSER:  Thank you.

19         THE COURT:  Does anybody else want to be heard in

20  connection -- I don't need arguments repeated, but if there's

21  anything that pertains to a given defendant, I'll hear it.

22         MR. GRANTZ:  Your Honor, I just want to briefly

23  state --

24         THE COURT:  If you would, I think it's hard for the

25  reporter to keep everyone straight, if you could state your

1   name.

2          MR. GRANTZ:  Of course, your Honor.  I apologize.

3   David Grantz.

4          I want the briefly state that it's our position that

5   Magistrate Judge Orenstein made his decision prematurely.  The

6   issues of arbitration are before your Honor, and, as you

7   pointed out, it hadn't yet been decided.  So, to the extent

8   that those issues are undecided, the issue of whether or not

9   discovery should move forward also should be in your Honor's

10  purview and it should wait until your Honor makes the decision

11  on arbitrability.

12         So, our position is his decision is clearly

13  erroneous because he appears to have determined the issue of

14  arbitration in making the decision to move forward with merits

15  discovery.

16         THE COURT:  How does he appear to have made that

17  decision?  He doesn't say he made that decision.

18         MR. GRANTZ:  He doesn't say --

19         THE COURT:  He says that there are questions about

20  the scope of the arbitration clause, the meaning of the

21  arbitration clause; he points out that a lot of the claims

22  would not be as to other of the defendants, are not subject to

23  the arbitration clause because those defendants weren't party

24  to it.  But he doesn't determine the issue of arbitrability.

25         MR. GRANTZ:  I think that's the point.  He has

1   pointed out that there's open questions about those very

2   issues.  And if there's open questions that still need to be

3   determined by your Honor, we shouldn't be going forward with

4   merits discovery in advance of deciding those open questions.

5        THE COURT:  I thought you told me a moment ago he

6   took it upon himself to decide the issue of whether the claims

7   were arbitrable.  He didn't do that.

8        MR. GRANTZ:  I think that's the implication from his

9   questioning whether or not the arbitration agreement is

10  enforceable.  He then reaches the determination that should go

11  forward when the question of whether there should or should

12  not be an arbitration needs to be decided in advance of

13  determining whether or not merits discovery should go forward.

14  I think the merits discovery should wait until your Honor

15  makes a determination as to the arbitrability issues.

16        Thank you, your Honor.

17        THE COURT:  Thank you.

18        MR. BERGSON:  Your Honor, Rob Bergson for Geoffrey

19  Hersko.  Mr. Hersko is an attorney.  He's referenced in

20  passing in this 226-page complaint.

21        The only basis for federal jurisdiction is the RICO

22  claim.  The main defendant in the RICO claim is Mr. Friedman.

23  And you've heard from his counsel with respect to the

24  arbitration agreement.

25        It seems to me that the magistrate judge, when he

1   focused on the fact that there were many parties who were not

2   subject to arbitration, lost sight of the fact as to why we're

3   here.  For discovery to go forward with respect to my client

4   when you have the main player in the RICO claim subject to an

5   arbitration window and the plaintiff as well, again --

6           THE COURT:  But your client isn't subject to an

7   arbitration agreement, correct?

8           MR. BERGSON:  He is not.

9           THE COURT:  And he hasn't agreed to be bound by any

10  arbitration.

11          MR. BERGSON:  He has not.

12          THE COURT:  What happens to the claims against your

13  client, they just go away regardless of what happens in the

14  arbitration?

15          MR. GRANTZ:  If the Court ultimately determines that

16  arbitration should proceed with respect to the principal

17  parties and Mr. Friedman, then my argument would be that the

18  balance of the action should be stayed.  How can we go forward

19  with a RICO claim when the main parties are in arbitration?

20          And my client is just on the periphery.  That, to

21  me, does not seem logical, and I don't think Magistrate

22  Orenstein took that into account in his decision.

23          THE COURT:  But, ultimately, at some point the

24  clients have to come forward against your client regardless of

25  what happens in the arbitration, correct?

1          MR. BERGSON:  Well, no, that's not --

2          THE COURT:  How would you be positively impacted by

3    a decision in the arbitration such that the complaint could

4    never go forward against your client?

5          MR. BERGSON:  Well, it does involve some degree of

6    speculation.  We don't know what that decision would be.

7          THE COURT:  If the decision found Mr. Friedman

8    liable and all of the -- assuming that it even has

9    jurisdiction to address RICO claims, your client wouldn't be

10   bound by that, right?

11         MR. BERGSON:  That's correct.  But it may well moot

12   this, the entire proceeding, in --

13         THE COURT:  How would it do that?

14         MR. BERGSON:  Again, I don't know at this point in

15   time, but, again, when you have the principal players and

16   they're in arbitration, the likelihood is very strong that

17   will occur.

18         In addition, we have a 12(b)(6)motion that we will

19   be making.  To compel my client to go through with discovery

20   at this point under these circumstances when he's on the

21   periphery of this claim, he's barely mentioned in this

22   complaint, there is an arbitration provision with the

23   principal parties, doesn't make sense.

24         THE COURT:  Okay.  Thank you.

25         MR. FELDMAN:  Good afternoon, your Honor.  Richard

1    Feldman for Michael Devine.

2            Like Mr. Hersko, Mr. Devine is an outside

3    accountant.  The two enterprises that have been identified in

4    the complaint are the Friedman enterprise and the Friedman

5    Birnbaum enterprise.  If Mr. Friedman is determined not to

6    have violated any of the obligations under the operating

7    agreement and is not found to be liable in any way, then the

8    enterprises themselves could not exist.

9            THE COURT:  If who finds them?

10           MR. FELDMAN:  Because they're claiming that

11   Mr. Friedman --

12           THE COURT:  But you say if he is found not to be

13   part of an enterprise.  Found by whom?

14           MR. FELDMAN:  By the arbitrators.  If he's found not

15   liable for any misdoings, if he's found not to have taken any

16   money inappropriately, if he's found not to have overbilled.

17   Those are the essence of the claims.

18           THE COURT:  So, would that preclude plaintiff from

19   proceeding against you in a RICO claim here?

20           MR. FELDMAN:  Absolutely.

21           THE COURT:  I wouldn't be bound by any finding of

22   that --

23           MR. FELDMAN:  Well, as --

24           THE COURT:  I, or a jury, let's say, could find

25   without Friedman being a defendant.  But it's possible that a

1    jury could find that Friedman was, in fact -- there was an

2    association, in fact, there was a RICO of which he was a part,

3    and that your client was a part of it, regardless of what

4    happened in the Beth Din, correct?

5              MR. FELDMAN:  If the Beth Din finds that there was

6    no wrongdoing, that would be collateral estoppel as to those

7    facts.  If they find that there have been no --

8              THE COURT:  You're saying plaintiff would be

9    collaterally estopped from arguing in this case that --

10             MR. FELDMAN:  Absolutely.  If they find that the

11   reclassification of commissions has building construction

12   expenses, in fact, was proper and those were construction

13   expenses, how then can you relitigate that issue here if the

14   Beth Din determined that those were proper?

15             THE COURT:  Okay.  So, you're arguing collateral

16   estoppel.

17             MR. FELDMAN:  I am, your Honor.  And I think it's a

18   very strong argument because the underlying claims are all the

19   same, based upon the same facts.  And the allegation is that

20   Friedman was the hub --

21             THE COURT:  Of course, the other way around, you're

22   not collaterally estopped.  So, assuming that the Beth Din

23   decided everything that the plaintiff, in fact, said was

24   correct about all of the wrongdoing, you're not bound by that.

25             MR. FELDMAN:  Correct.  They'd still have to show

1   that my client was a knowing participant and not simply an

2   outside accountant who received information from management,

3   and there was an in-house controller, Vincent Papa who

4   provided information to him, and he did what any outside

5   accountant who doesn't do a review or audit but simply does a

6   tax return or payroll tax return:  They have to show that he

7   actually knew and was part of that conspiracy --

8           THE COURT:  Quite apart from your client, would you

9   be bound by the findings that Friedman was involved?

10          MR. FELDMAN:  I haven't thought about that, your

11  Honor.  I'm not sure, I'm not sure about that.

12          THE COURT:  All right.

13          MR. FELDMAN:  These would be -- my client, there

14  would be other hurdles that the plaintiff would have to reach

15  in order to reach my client.  That's part of the nature of my

16  12(b)(6) motion.  I don't believe they've alleged enough that

17  he's part of an enterprise and that he directed and there are

18  various other issues.

19          THE COURT:  Okay.  Thank you.

20          Anyone else want to be heard on this discovery?

21          MR. FINKEL:  Your Honor, I represent three

22  employees; two bookkeepers and the mechanic.  They were not --

23          THE COURT:  I'm sorry, sir?

24          MR. FINKEL:  I'm Richard Finkel.  Sorry, your Honor.

25  I represent Sylvia Ezell, who is a bookkeeper for several of

1   the defendant entities; Sonia Rivera, who is the bookkeeper

2   for Two Rivers; and Jorge Salcedo, who is a mechanic.

3        Your Honor, from my client's perspective, this case

4   is simply for control of Two Rivers.  My clients are not

5   involved in that.  They're, excuse the expression, merely

6   employees.  They followed the directions that the owners,

7   whether it be plaintiff or defendant Mr. Friedman or the other

8   managers, provided to them.

9        If this proceeding goes to arbitration and the

10   arbitrators rule in favor of Mr. Friedman, then for sure there

11   would be no basis for proceeding against my clients, and I

12   agree that collateral estoppel would bar that.  And I would

13   respectfully suggest that given my clients' position as

14   alleged by plaintiff in the complaint, even if plaintiff

15   prevailed in the arbitration, it's more likely than not that

16   there would be still no basis for proceeding against my

17   client.

18        Your Honor, most respectfully, I was very impressed

19   with the decision of Judge Gleeson that we cited to your Honor

20   in *Acquaire v. Canada Dry*, which I think is very similar to

21   this case, albeit that case is much larger and more

22   complicated.  It too was involving in RICO, but it involved a

23   host of other claims, including securities claims, and I

24   forget the number, a hundred some odd parties, not the dozen

25   parties that we have here.  And the vast majority of parties

1    in that case were not subject to the arbitration agreement.

2         Judge Gleeson determined that the claims against the

3    parties not subject to the arbitration agreement were

4    peripheral and that whatever the determination of the

5    arbitrators would be against the principal parties -- here,

6    Friedman and Schreiber -- that would be at least instructive

7    and assisting in determining and moving forward more

8    efficiently on any civil case in court that might survive --

9    that might survive -- and, also, that it was possible that the

10   arbitrators could resolve the whole package.

11        Given that situation, most respectfully, following

12   the logic and analysis of Judge Gleeson, this case is an

13   easier one to decide because it's smaller, less parties, and

14   less complicated.  I respectfully suggest to your Honor that

15   Judge Gleeson was correct:  The Federal Arbitration Act and

16   the decisions of the Second Circuit and the other federal

17   courts across the country are clear.  There's a presumption

18   towards arbitration.  The arbitration provision in the

19   operating agreement is a very broad one, and it clearly

20   encompasses probably all of the claims in this case, certainly

21   the most substantial of the claims in this case.

22        Decide the arbitration issue first.  Why put all the

23   parties through the expense and the toil of discovery and of

24   other motion practice?  The RICO motions, the substantive

25   motions, for example, may be unnecessary.  If your Honor

1   decides that arbitration is appropriate in this situation,

2   then we don't have to do any of those things, we just wait for

3   the arbitrators and proceed as they direct.  I think that's

4   what the Arbitration Act provides, I think that's what the

5   decisions of the Court indicate should be done.

6           Thank you.

7           THE COURT:  Let me ask if this is the case:  Is it

8   the view of the other defendants here that the issue of

9   arbitrability should be first briefed and not the balance of

10  their motions?  Is every defendant of that view?

11          MR. FINKEL:  That's my view, your Honor, because I

12  think the threshold issue is arbitration.

13          THE COURT:  I don't know that that's anyone else --

14          MR. FINKEL:  If your Honor decides that this case

15  should go to arbitration and stayed -- the main parties, the

16  plaintiff and Mr. Friedman, should go to arbitration and that

17  the other parties involved are peripheral and stay the other

18  parties, then there's no need to present 12(b)(6) motions on

19  substantive issues regarding RICO.  It becomes not appropriate

20  at that time.

21          At a later date it might be appropriate, but more

22  likely not because there is a very substantial chance, maybe a

23  little likelihood, that the result of the arbitration will

24  either necessarily or just as a practical matter resolve the

25  whole case and we don't have to do 12(b)(6) motions and we

LAM        OCR        RPR

1    don't have to go through the expense and the toil of doing

2    12(b)(6) motions and we don't have to do merit discovery.

3           It seems if you read Judge Gleeson's opinion, I

4    think that's what he had in mind.  Why burden this Court with

5    all this extra work and the parties with all the work and

6    expense if the parties have already made one agreement, the

7    threshold agreement:  Arbitration.  That's what they bargained

8    for, that's what they should have.

9           THE COURT:  I didn't understand that to be the

10   position of the other defendants in this case.

11          MR. FELDMAN:  Your Honor, I just canvassed everyone

12   else sitting at the defense table, and we're all in agreement

13   that the issue of arbitrability is a threshold issue and

14   should be determined because it may end the case once the

15   arbitration goes forward.

16          MR. SCHAFHAUSER:  That is, indeed, the position,

17   your Honor.  The first thing we raised when we made an

18   appearance was the premotion request to compel arbitration to

19   dismiss on that basis.  So, we do agree.

20          MR. GRANTZ:  Your Honor, when we were here last,

21   your Honor directed us to address the 12(b)(6) motions as part

22   of the overall motions.  That's the reason why we presented

23   our motions together, because I believe you said you didn't

24   want to see --

25          THE COURT:  I did, I did.  But I didn't understand

1   that you had all taken this position, that you shouldn't have

2   to make those motions now, that the arbitration should be

3   decided first.  I didn't realize you had taken that position

4   previously.

5           MR. GRANTZ:  We all are uniformly in agreement that

6   we would like to see the Court determine the arbitration issue

7   first and foremost and then the stay issue if that arbitration

8   is granted to the main defendant or any of the other

9   defendants.  That's, I think, the joint understanding.

10          THE COURT:  Let me ask a question:  Assuming that

11  this case did go to arbitration, are you all willing to be

12  bound by the findings of the arbitration?

13          MR. GRANTZ:  To the extent that the arbitration

14  includes my clients and we are participating, yes.  We've

15  asked in the motion that we were prepared to make in our

16  premotion letter to be joined with the defendant, at least my

17  clients have, and go to the arbitration as well.  That was

18  certainly part of our premotion letter, and we'll be seeking

19  that relief --

20          THE COURT:  I'm sorry, explain more clearly the

21  nature of that relief.  The arbitrator --

22          MR. GRANTZ:  My clients would be willing to go to

23  the arbitration with Mr. Friedman.  The E&J defendants would

24  certainly be prepared to arbitrate before a Beth Din, and I

25  think we outline --

1          THE COURT:  Right.  But you don't have any agreement

2     to do that.

3          MR. GRANTZ:  That's correct.

4          But there are some cases in this district and in

5     other districts where defendants that did not have arbitration

6     agreements that were signed, the Court determined that the

7     appropriate place for resolution would be to have all of those

8     parties go to the arbitration.

9          So, I think we cited those cases, your Honor, in the

10    premotion letter.  And that's the basis on which we will be

11    asking for that relief.

12         THE COURT:  Are all the defendants asking to be part

13    of that arbitration?

14         MR. GRANTZ:  I'll let the other defendants speak for

15    themselves, but my clients are certainly asking for that.

16         MR. BERGSON:  Your Honor, Rob Bergson for Geoffrey

17    Hersko.

18         My client would not want to participate in the

19    arbitration and does not believe that he would be bound by it;

20    however, the argument that was made that the threshold issue

21    should be arbitrability still holds true, whether or not my

22    client participates in that.  Certainly, it would obviate the

23    12(b)(6) motions, it would obviate a decision on whether or

24    not discovery should be stayed, I guess to a certain degree.

25         So, we're all in agreement that a motion as to

1  arbitrability should be decided first, but the defendants are

2  differently situated as to who would be willing to go to

3  arbitration and who wouldn't.

4  　　　　　THE COURT:  Who else is willing to go to arbitration

5  that's not bound by an agreement?

6  　　　　　MR. FINKEL:  Your Honor, I've actually discussed

7  this with my clients, and two of them would be willing and the

8  third is thinking about it, quite candidly, your Honor.

9  　　　　　MR. HELLER:  Your Honor, Maurice Heller for Solomon

10  Birnbaum, 26 Flavors, Office Coffee Services, et cetera.

11  　　　　　My clients have a separate arbitration agreement.

12  　　　　　THE COURT:  I'm sorry?

13  　　　　　MR. HELLER:  My clients have a separate arbitration

14  agreement with Two Rivers Coffee, which is the party in

15  interest here.  This is a derivative action.  An issue -- and

16  it has virtually the same language compelling arbitration as

17  does the language of the Two Rivers operating agreement, also

18  compelling it to arbitrate before an Orthodox Jewish Beth

19  Din --

20  　　　　　THE COURT:  That's not the claim being litigated

21  here.  The fact that you have that agreement with some other

22  entity isn't the issue.  The question is:  Would you be

23  willing to have the arbitrator selected under the operating

24  agreement judge the merits of your client's case?

25  　　　　　MR. HELLER:  Your Honor, my client has a provision

1   that specifically selects the Beth Din of America, which is a

2   specific --

3               THE COURT:  A provision with whom?

4               MR. HELLER:  With Two Rivers Coffee, which is the

5   party in interest on the other side.  This whole action is

6   being brought derivatively by Mr. Schreiber.

7               THE COURT:  So, you think the whole case should be

8   brought before some other Beth Din.

9               MR. HELLER:  The claim's that my clients' should.

10              And the plaintiff has raised questions in response

11  to my application to make a motion to compel arbitration,

12  alleging that certain assignments, the obligations on my

13  client's side of that contract, and they've used all kinds of

14  hyperbole such as fraud, et cetera, et cetera, basically

15  questioning the validity of those assignments.

16              Those were assignments that were done pursuant to

17  the contract.  If they have questions, they can be raised

18  before the Beth Din.  That's the way this works, your Honor.

19  There is a provision in the contract which specifically says

20  that the contract is assignable for my clients.  So, if they

21  want to raise that, that's fine.  Putting aside all hyperbole,

22  that's certainly something that can be raised later on.

23              But, yes, my clients, the entirety of their

24  relationship with Two Rivers Coffee is governed by this

25  contract.  The other aspect of their relationship is that they

1   share a common derivative member, Mr. Friedman.  To the extent

2   that Mr. Friedman's claims go to arbitration, everything that

3   involves those particular activities that they claim my

4   clients had some participation in would go to arbitration

5   before the panel that's already operating in that regard.

6           With regard to those claims, your Honor, I would be

7   happy to discuss it with my client.  I think my client would

8   consent, most likely, to have a talk with them about it, to

9   have those claims arbitrated and have them involved in that

10  arbitration as well.

11          THE COURT:  Who haven't we heard from of?

12          Mr. Waller?

13          MR. WALLER:  Yes, your Honor.  I filed letters on

14  behalf of the seven oil trucking --

15          THE COURT:  Right.

16          MR. WALLER:  -- and also Mr. Ahearn individually

17  seeking to compel arbitration as to my clients.  So, my

18  clients would consent to have the issues in the complaint

19  arbitrated.

20          THE COURT:  Mr. Feldman?

21          MR. FELDMAN:  I spoke to my client about it a month

22  ago, and at the time he was not inclined to arbitrate.  He

23  doesn't speak Yiddish, he had some concerns about how a Beth

24  Din for Orthodox Jews is run, and, so, I dropped it at that

25  point.  I haven't spoken to him since.

1    So, I don't have an answer for your Honor.  I didn't

2  know that that was one of the issue that would come up today.

3    THE COURT:  Do you want to be heard?

4    MR. NELKIN:  Yes, your Honor.

5    As I understood it, this was to be an oral argument

6  with respect to the appeal of the discovery order by Judge

7  Orenstein, as opposed to a discussion as to the merits of

8  their respective requests to arbitrate or to stay this.

9    THE COURT:  Well, that's certainly relevant to the

10  issue, isn't it?

11    MR. NELKIN:  I understand that.

12    It's our position that -- I believe that the

13  defendants have backed off their original position, it sounds

14  like, that all discovery should be stayed.  It certainly

15  appears that they're now conceding that discovery should take

16  place with respect to issues of arbitrability, I assume with

17  respect to issues of compelling or confirming arbitration, and

18  I think --

19    THE COURT:  What discovery is that?  What is the

20  discovery that's needed in terms of determining arbitrability.

21    MR. NELKIN:  Well, we've argued that the defendant

22  has refused to arbitrate, Mr. Schafhauser has put some things

23  into the record; we certainly think that is a subject for

24  discovery.

25    We think that Mr. Schafhauser in his own filing

1    originally with respect to this issue, Docket No. 90, on Page

2    1, and also Footnote 1 on that same thing, indicated that this

3    was things that declarations and a record was necessary to

4    determine.  And I think that the case law in the Second

5    Circuit is clearly -- is clear that when the issue of

6    arbitrability is on the table, when the issue of confirming an

7    arbitration award is on the table and the issue of compelling

8    arbitration is on the table, that those are all things that

9    are subject to discovery, it's a Rule 56 standard, and, as a

10   result, parties are entitled to the full range of discovery

11   techniques to determine the issue that may be relevant to the

12   issue of arbitrability.

13            THE COURT:  Have you had specific discovery requests

14   towards that issue?

15            MR. NELKIN:  We have requested a number of requests

16   towards that issue, but we also think that there would be

17   additional discovery, depositions, requests for admissions,

18   and things like that that would go towards that as well.

19            We think that there are issues with respect to the

20   issue of the fairness and impartiality of particular

21   arbitration panels and things of that sort that also would be

22   at issue.

23            THE COURT:  Have you sought discovery on that?

24            MR. NELKIN:  Yes, we have.

25            THE COURT:  What kind of discovery have you sought

1    on that.

2         MR. NELKIN:  Well, we've asked for all

3    communications with different Beth Dins, we asked for all

4    communications, we've asked for transfers of -- documents with

5    respect to payments towards Beth Dins, we've asked for a

6    number of things about that.  But we also believe that

7    additional discovery, particularly depositions and requests

8    for admissions, would be important to that regard.

9         THE COURT:  You talk about fairness.  How is that

10   issue raised?

11        MR. NELKIN:  Well, to the extent that Mr. Friedman

12   is seeking to compel arbitration before a particular Beth Din,

13   then we think that to the extent that there are payments to

14   that Beth Din, that there's been ex parte communications with

15   that Beth Din, things of that sort would be important to

16   determine beforehand.

17        We also think that once there has been an issue

18   that's raised, all the other defendants have raised with

19   respect to arbitrability and whether they're intertwined with

20   Mr. Friedman, they have tried to minimize their roles while at

21   the same time saying they're completely intertwined.  But we

22   believe that discovery is appropriate into their roles and

23   their actions by which they're claiming that their actions and

24   the claims that we've asserted against them are intertwined

25   with any other claim that might be arguably subject to

1    arbitration.

2         We think that none of these other parties have an

3    arbitration agreement with our client with the exception of

4    Mr. Heller's clients, which we've raised issues with.  We

5    think that that's a subject for discovery.  We believe there

6    are forged documents or fraudulent documents.  We think that's

7    grounds for discovery.  Just for an example there, the

8    provisions that he is seeking to rely on have been assigned

9    based on Brian Sanders' member assigning them, yet in both his

10   Rule 26.1 disclosures and in his prior statements before other

11   tribunals he's argued that Mr. Friedman and Mr. Birnbaum own

12   that company, or one of Mr. Friedman's companies owns it, and

13   Brian Sanders appears nowhere as a member.

14        To the extent they're arguing that there is a

15   contract that's been signed, we think that we're entitled to

16   discovery as to whether it's signed by an authorized party and

17   whether it was a true and not fraudulent document.

18        THE COURT:  Go ahead and address the magistrate

19   judge's order, if you would.

20        How are you prejudiced by it, this stay of discovery

21   at this point?

22        Assuming we were to decide just to do briefing on

23   the issue of arbitration and were to decide that issue first,

24   let's say, if we now were at that issue, how would you be

25   prejudiced by that?

1          MR. NELKIN:  If I could ask for your Honor to

2     clarify one point for me.

3          Are we assuming that there would be discovery with

4     respect to arbitrability?

5          THE COURT:  Right.  Assuming there's discovery with

6     regard to the question of arbitrability but not full-blown

7     merits discovery.

8          MR. NELKIN:  We would think --

9          THE COURT:  How would you be prejudiced by the lack

10    of let's say full-blown merits discovery if you were permitted

11    discovery on the questions and issues that you've talked

12    about?

13         MR. NELKIN:  Again, I think that the issue would be

14    that the defendants couldn't object to the scope as to they're

15    claiming on the one hand that their claims are so intertwined

16    we would have to have some leeway to explore those types of

17    things, which I think would raise issues with respect to

18    duplicative discovery in that if you're asking someone about

19    their role in connection with Mr. Friedman, then it seems to

20    me that that's also something that might go to the merits of

21    the case later, their interactions and things of that sort.

22    So, I think that there's some overlap between when they're

23    claiming that they should somehow come into his arbitration

24    and the merits-based exploration.

25         Now, I do think that with respect to the order that

1  has been entered, the order that's been entered, the

2  preliminary injunction, it does give us access to all of their

3  documents and electronic documents that are not -- well, all

4  of their stuff without restriction -- I think their words were

5  without qualification or anything else -- that pertain to Two

6  Rivers.  So, to the extent that was to be made available as

7  opposed to them objecting that we have to wait for that, then

8  that would go towards minimizing some of the --

9         THE COURT:  I'm sorry, I thought you said you do

10  have access to it now.

11         MR. NELKIN:  It was entered in the order, but they

12  had told us that we have to wait for discovery to get that.

13  So, to the extent that we're allowed access to that material

14  in accordance with what we think are the clear wording of the

15  order, then that would minimize any prejudice that we suffer.

16         But they've taken the position that we can't have

17  any of that and I said we were going to make an application

18  to --

19         THE COURT:  So, if you got that material, would that

20  be the kind of discovery that you need that we could go

21  forward with a briefing on the arbitration issue?

22         Would that give you what you need to do that before

23  we get into full-blown discovery?

24         MR. NELKIN:  I believe if we were granted that, that

25  would go a long way towards it.

1          THE COURT:  So, what is it that you're seeking to be

2    granted, so it is clear?

3          MR. NELKIN:  The order calls for -- it allows us to

4    inspect and copy any books, records, electronically-stored

5    data, or other documents related to or pertaining to Two

6    Rivers, including, but not limited to, all bank statements,

7    wire transfers, checks, registries, and all financial records

8    of Two Rivers.

9          THE COURT:  And you don't have access to that now

10   under the order?

11         MR. NELKIN:  No, the order has been entered.  We've

12   requested dates to go and inspect and copy and they've told us

13   that we're not entitled to in their view of the...

14         THE COURT:  Mr. Schafhauser, if you don't want to go

15   through full-blown discovery here and plaintiff's counsel is

16   making the reasonable proposition that if they got this

17   material we could go forward without the other material and

18   resolve the issue of arbitrability, why can't you do that?

19         MR. SCHAFHAUSER:  What your Honor has just heard

20   from plaintiff's counsel is an application that he's not made

21   to your Honor or Magistrate Judge Orenstein.

22         THE COURT:  Well, is it in the order?

23         MR. SCHAFHAUSER:  He's not telling your Honor what's

24   in the order.  He's misreading the order.  Let me explain what

25   Mr. Nelkin is talking about, but, again, this is not an

1    application that he's ever submitted.

2             THE COURT:  I know.  This is something that we're

3    talking about.  All the defendants at the table are screaming

4    bloody murder about all of this discovery and we can't go

5    through this before you solve this issue.  Counsel for the

6    plaintiff comes up with an alternative, which is something he

7    says he's entitled to in the order.  This was in response to

8    my question:  How can we narrow this?  What is it that you

9    need now as opposed to what I think the magistrate judge has

10   ordered, which is full-blown discovery?  And you've got to

11   show me that that decision of his is clearly erroneous.

12            So, the reason counsel hasn't made this argument

13   before is because I'm sitting here trying to explore some way

14   that might be helpful to both sides.

15            MR. SCHAFHAUSER:  Let me explain what plaintiff's

16   counsel is telling your Honor.

17            When the Court initially issued the temporary

18   restraining order on December 2 that plaintiff sought for and

19   asked and the Court entered an order, and in that order the

20   Court set forth that defendant should be required to show

21   cause as to several items, one of those items was -- and there

22   were eight items.  And one of those items was that Two Rivers

23   should not be allowed to -- should be, I'm sorry, the

24   defendant should be enjoined from, and I quote, destroying,

25   altering, concealing, removing, or disposing of or refusing to

1   permit authorized representatives of Two Rivers or the

2   plaintiff to inspect and copy any books, records,

3   electronically-stored data, or other documents related to or

4   pertaining to Two Rivers, including, but not limited to, bank

5   statements, wire transfers, checks, registries, and all

6   financial records of Two Rivers.

7           So, the point was that the defendants should be

8   enjoined from destroying, altering, concealing, removing or

9   disposing of, or refusing to permit access to books and

10  records.

11          We have -- and by the way, that language, then,

12  found its way into the preliminary injunction order that was

13  entered, as well as the other eight items that were entered in

14  the preliminary injunction.

15          We have not violated or refused to provide access.

16  But what plaintiff is asserting, what plaintiff is asserting,

17  your Honor, is that that provision means that it need not even

18  serve discovery requests.  It need not even demand under the

19  Federal Rules of Civil Procedure of 1B discovery that need not

20  specify requests, that that provision means that every single

21  document, so long as it's conceivably related to Two Rivers,

22  must be produced in the ordinary course.

23          That's not what that order provides.  It prevents

24  the destruction, concealment, or refusing to permit access to

25  books and records.  We produced the books and records to Two

1    Rivers pursuant to Magistrate Judge Orenstein's order that was

2    entered on December 14.  The books and records are in the

3    possession of Vincent Papa, Two Rivers' CFO.  So, that

4    document -- that provision has nothing to do with discovery as

5    to whether a Beth Din arbitration is necessary.

6            What plaintiff is seeking to do -- and I was

7    listening carefully -- plaintiff said something else a moment

8    ago in response to your Honor's question.  Your Honor asked

9    what discovery was necessary, and the answer was:  Well, there

10   would be discovery as to whether the co-defendants are

11   intertwined because they claim to be intertwined.

12           What the co-defendants claim to be is co-defendants

13   in a lawsuit that plaintiff commenced.  He was the one who

14   intertwined everyone by allegations in the complaint.  He's

15   the one who intertwined them.  There's no discovery necessary

16   as to whether the defendants are intertwined.  They're

17   co-defendants.  That's the argument in term of arbitration.

18           And in terms of the other arbitrability issues, as

19   to my client, I heard Mr. Nelkin talk about fraudulent

20   documents, I believe he said, or forged documents with respect

21   to Mr. Heller's client, but as to my client there's no forged

22   operating agreement.  The document has been admitted to be

23   valid and enforceable.  In fact, that's the whole point of the

24   case, is to seek enforcement of that operating agreement.

25           So, there's no issue as to my client, no issue

1    regarding whether or not there is a valid agreement to

2    arbitrate, and there's been no showing, your Honor, I

3    respectfully submit, as to a need for discovery as to my

4    client on the arbitration issue.

5              THE COURT:  What would be the problem with

6    permitting plaintiff to examine all of these records?  What's

7    the problem with that?

8              I mean, these are records that the order refers to,

9    not that you're restrained and enjoined from destroying, et

10   cetera, but what would be the burden of having plaintiff

11   examine those records?

12             MR. SCHAFHAUSER:  The books and records of Two

13   Rivers have been produced.

14             THE COURT:  To who?

15             MR. SCHAFHAUSER:  To Two Rivers CFO, Vincent Papa.

16             THE COURT:  Okay.

17             MR. SCHAFHAUSER:  What I'm saying is Mr. Nelkin is

18   making a different argument.  Mr. Nelkin is saying that any

19   document that exists in the world, to the extent that he

20   claims it's related to, must be immediately produced.  That's

21   what he's saying; notwithstanding what the discovery rules

22   provide for, it must be produced.  I respectfully submit

23   that's not what this order provides.  And that was the issue

24   that we were addressing, which, again, he didn't raise before

25   today, so I'm kind of addressing it on the fly, but that's the

1    issue that I believe he's addressing.

2          To go back to Mr. Finkel's comment, which your Honor

3    had asked most other counsel, obviously, as to my client, my

4    client would be, of course, bound by a ruling by a Beth Din.

5    So, that's not an issue.

6          I do respectfully submit, your Honor, that the best

7    approach would be to address as a threshold matter the

8    arbitration issue.  And to Mr. Nelkin's point, no, we don't

9    concede -- I don't concede anyhow, I can't speak for others --

10   I don't concede that there are genuine issues of material fact

11   as to the arbitrability of the claims against my client.  I

12   believe that -- and that's really the standard.  It's akin to

13   a summary judgment standard.  I believe that the document is

14   clear and unambiguous on its face, and courts like your Honor

15   construe and enforce written agreements all the time and can

16   and should do so here as well in favor of arbitration.  So,

17   there's no issue.

18         He says payments to a Beth Din.  I don't know what

19   he's referring to.  I haven't seen a single shred of evidence

20   about a payment, but he hasn't raised a material issue.  It's

21   easy to stand up and say so in a courtroom, but he hasn't

22   raised a material issue.

23         THE COURT:  Why wouldn't he be entitled to discovery

24   on something like that?

25         Assuming there were payments to a Beth Din or there

1    was some influx of e-mails back and forth, why wouldn't he be

2    entitled to discovery?  There have been a lot of odd

3    circumstances going on in connection with how these cases have

4    been proceeding.

5           Why isn't he entitled to discovery?  If the answer

6    is there's none, there's none, but why wouldn't he be entitled

7    to discovery?

8           Wouldn't it make a difference whether you enforced

9    an arbitration clause if they were able to show someone walked

10   in with a cloth sack with half a million dollars in hundred

11   dollar bills?

12          MR. SCHAFHAUSER:  Of course it would make a

13   difference.

14          THE COURT:  Okay.  So, why isn't he entitled to

15   discovery?

16          MR. SCHAFHAUSER:  Because he hasn't made a plausible

17   prima facie showing of any such thing.  What he's shown are

18   two indisputable things.  The Beth Din that we're talking

19   about, your Honor, is the Beth Din that plaintiff chose, not

20   me.

21          THE COURT:  But your client went to another one in

22   the interim, correct?

23          MR. SCHAFHAUSER:  But that's not the one we're

24   talking about.

25          THE COURT:  I know.  And now he's back to the one

                        LAM      OCR      RPR

1      that they went to at first.

2                But in the interim, he went to another one, correct?

3                MR. SCHAFHAUSER:  That is correct.

4                THE COURT:  Okay.

5                MR. SCHAFHAUSER:  That is correct.  But we're not

6      talking about that, we're talking about enforcing the award of

7      the Beth Din that plaintiff chose.  So, unless he's talking

8      about payments to his own Beth Din, I don't see --

9                THE COURT:  Thank you, counsel.

10               What is the minimum you need?

11               I take it you don't have any position with whether

12     we proceed on the motions to dismiss at this point.  In other

13     words, do you object to first deciding the question of

14     arbitrability?

15               MR. NELKIN:  No, your Honor.

16               THE COURT:  So, we'll decide that question first.

17               What discovery do you need on that?

18               Can you limit discovery demands that you need to

19     address that issue?

20               MR. NELKIN:  First off, your Honor, we read the

21     preliminary injunction dramatically differently.

22               THE COURT:  Show me what provision you're relying on

23     that you view it as their having to produce the information to

24     you.

25               MR. NELKIN:  No, but they have to at least make it

```
 1    available for inspection and copying.

 2              THE COURT:  Okay.  Where's that?

 3              MR. NELKIN:  On Page 3, numbered paragraph five.

 4              First off, this is not limited to the books and

 5    records of Two Rivers, it's for all defendants, which means

 6    all the oil company defendants, all the coffee company

 7    defendants, the accounting firm, the law firm.  We're entitled

 8    to see the documents that pertain to Two Rivers.  That was

 9    what they agreed to without qualification when they wanted to

10    get out of discovery the first time around.  That's why...

11              And, so, we think that this is clear and we put that

12    into our papers; it's not only paragraph five, but it's the

13    first paragraph where it starts on page --

14              THE COURT:  All right.  So, if you were granted the

15    right to inspect books and records, et cetera, under paragraph

16    five, you need that.  That's what you want to have now.

17              MR. NELKIN:  We need that and we need that to be

18    clear that that covers any contact with any Beth Din of any

19    sort by Mr. Friedman or any of his agents or any of the other

20    defendants.  And I think we would like a deposition of

21    Mr. Friedman as well.

22              THE COURT:  Okay.  So, you want the enforcement of

23    paragraph five and the deposition of Mr. Friedman.

24              MR. NELKIN:  Correct.

25              THE COURT:  And that is what you need to address the
```

1    initial issues.

2              MR. NELKIN:  I believe so.

3              THE COURT:  Okay.  Sounds fair to me.

4              MR. SCHAFHAUSER:  Again, your Honor --

5              THE COURT:  Look what it says.  It says:  Refusing

6    to permit a representative to inspect and copy books.

7              That's what it says.

8              MR. SCHAFHAUSER:  Again, it does, but Mr. Papa, Two

9    Rivers CFO, has the books and records.  What this refers to is

10   destroying, altering, concealing, removing, disposing or

11   refusing to permit.

12             I haven't refused to permit inspection of books and

13   records.  Mr. Papa has the books and records.  That's the --

14   Mr. Papa has the books and records.  We produced what we have

15   in our possession, custody, and control to Mr. Papa on shortly

16   after December 14, when this was a subject of a hearing before

17   Magistrate Judge Orenstein.

18             That's why I say -- this was on December 14, it's

19   now March 8, and all of a sudden plaintiff is alleging that --

20             THE COURT:  Do you have access to what's been

21   submitted to Mr. Papa?

22             MR. NELKIN:  What's been submitted to Mr. Papa is

23   about one banker's box worth of stuff.  And Mr. Papa says as

24   far as the missing books and records, they're too numerous to

25   list.  He sent that to Mr. Schafhauser in response to

1    Mr. Schafhauser's communication back and forth with him.  But

2    this is not about just some narrow category of Two Rivers

3    books and records, this is about the documents for the

4    different defendants.  They're claiming that they're

5    intertwined.

6              THE COURT:  What documents?  What other documents

7    are you looking for there?

8              MR. NELKIN:  Well, they're --

9              THE COURT:  Have you made a discovery request that

10   encompasses this paragraph?

11             MR. NELKIN:  Yes, we have.

12             THE COURT:  Which discovery request is that?

13             MR. NELKIN:  I don't remember the exact number, but

14   we simply copied the wording of this and put it into a

15   discovery request.  We also put in others with respect to the

16   Beth Din that were more particular, communications and things

17   with particular people.

18             For instance, there are e-mails that Mr. Schafhauser

19   has attached to this Court's record that show communications

20   back and forth with Beth Dins from e-mail accounts that we're

21   unfamiliar with, like lotsarich@aol.com.  That was subject to

22   discovery requests that we've put in, different names we've

23   been able to glean.  But we're just trying to get the

24   information that we don't have access to.

25             But it's not the books and records of Two Rivers

1    solely, although we don't even think that that's been

2    produced.  This has got to do with the documents that pertain

3    to Two Rivers that are in the possession of the other parties.

4    Mr. Grantz's clients produced not a single document;

5    Mr. Bergson's clients produced not a single document; Mr.

6    Devine produced some tax documents, although they still don't

7    have the signed tax returns; Mr. Waller's people have produced

8    no documents; Mr. Birnbaum's companies have produced no

9    documents; and Mr. Ezell and his clients -- Mr. Finkel's

10   clients, who are the bookkeepers for Two Rivers, produced no

11   documents.

12          MR. FINKEL:  That's not correct, your Honor.  In

13   accordance with Magistrate Judge Orenstein's order, my

14   clients, the two bookkeepers, turned over their passwords for

15   Two Rivers' books.  All the Two Rivers books, your Honor, are

16   in the cloud.  They have the passwords.  They have everything.

17   They have full and complete access to Two Rivers' books.  All

18   of them.

19          And there was a complaint that they alleged that

20   certain boxes were taken out at some time when one of my

21   clients, Ms. Rivera, who's the bookkeeper of Two Rivers,

22   transferred herself out of Two Rivers' facilities in South

23   Plainfield, New Jersey, to an office in the Bronx where she

24   had been previously.

25          We turned over those boxes.  Those boxes went back

1    in December, the same day that the passwords were provided.

2    They have all the books and records.

3              MR. SCHAFHAUSER:  Your Honor, there's something else

4    that needs to be added.  When Mr. Nelkin says no defendants

5    have produced documents, well, plaintiff served document

6    production requests on the defendants last week.  So, pursuant

7    to Magistrate Judge Orenstein's merits discovery order, the

8    one that we're talking about here, document production

9    requests were to be served by March 2.  Plaintiff served his

10   requests on March 2.  We have 30 days to respond.  So, to say

11   we haven't produced requests...

12             Plaintiff, by the way, has produced zero as well;

13   zero, despite the fact that plaintiff commenced this case and

14   on Page 2 of the complaint talks about many documents --

15             THE COURT:  When did you make a document request of

16   plaintiff?

17             MR. SCHAFHAUSER:  Excuse me?

18             THE COURT:  When did you make a document request of

19   plaintiff?

20             MR. SCHAFHAUSER:  Right about the same time.

21             THE COURT:  So, he hasn't had opportunity to respond

22   yet either.

23             MR. SCHAFHAUSER:  Correct.  In fairness, I think we

24   did ours two days before he did his.

25             THE COURT:  And you're not objecting to responding

1    to their documents request.

2                MR. NELKIN:  I'm not.  It seems they won't --

3                THE COURT:  Here's what we're going to do --

4                MR. FELDMAN:  Your Honor, I'm sorry, can I just be

5    heard on one thing?

6                THE COURT:  Sure.

7                MR. FELDMAN:  Mr. Nelkin says he wants every

8    document.  My client is accountant for some of the defendants.

9    So, he's asked for all the financial records of all these

10   other defendants; clearly having nothing to do with

11   arbitrability, clearly having nothing to do but with merits

12   discovery.

13               In this case, it's my experience with these sort of

14   discovery proceedings in terms of arbitrability is what's the

15   intention of the parties with reference to that clause if it's

16   a close call?

17               If it doesn't have the broad language, what claims

18   should be brought under that?

19               And I understand, there's a nuance here in terms of

20   the confirmation of the award and whether or not there's

21   propriety in that and whether or not there's grounds for

22   overturning that subsequent order.  I understand that.  But in

23   terms of merit -- in terms of discovery other than that, the

24   plaintiff should be limited to the complaint.

25               He's alleged this enterprise, this conspiracy, this

 1   intertwining.  He's gone through page after page of the

 2   interrelationship.  There's no discovery necessary on that.

 3   He already has alleged everything.  It's really what's the

 4   intention of the parties with reference to that clause and the

 5   Maysharim and any communications with the Maysharim.  That

 6   should be the limit and not -- by saying any document related

 7   to Two Rivers doesn't get free and unbridled access to all the

 8   financial records of whatever these other companies and other

 9   co-defendants have, either through Mr. Devine or through

10   themselves.

11            That seems to be overbroad and certainly beyond the

12   scope of the arbitrability issue.

13            MR. SCHAFHAUSER:  Your Honor, there's one other

14   aspect that Mr. Nelkin had raised about the deposition of

15   Mr. Friedman.  Mr. Friedman is the only one here with the

16   plaintiff who's subject to a written agreement.  So, he's the

17   one who has the least to be deposed -- as to the issue of

18   arbitrability, as to the issue of arbitrability, I submit that

19   there's no need for a deposition of the person who actually

20   signed an agreement that was subject of this lawsuit.

21            MR. HELLER:  Your Honor, can I be heard on this as

22   well?  It will be quick.

23            The clause that Mr. Nelkin is referring to, clause

24   number five, paragraph five in the order, those -- in addition

25   to all the other eight paragraphs, those relate to the ability

1    of Two Rivers to do business.  That is what they came here --

2    they claimed they couldn't do business because Mr. Friedman

3    was interfering with their ability to do business.  That's

4    what this was here to address.  This was not intended to be

5    the eye through which he's going to drag the camel of federal

6    discovery through.  That's not what all this is about.

7         My clients have documents pertaining to Two Rivers.

8    Yeah, they did business with Two Rivers; therefore, they have

9    accounting entries, they may have e-mails that reference Two

10   Rivers.  But that has nothing to did with Two Rivers' ability

11   to do business.  That's not what this clause is all about.

12        To the extent they don't have documents that they

13   need to do their business, they should get them.  Undoubtedly,

14   Mr. Papa knows what he needs.  Let him request it.  But

15   there's nothing in this clause that says -- that gives them

16   license to do Rule 26 discovery based on paragraph five.

17   That's not what this is all about.

18        MR. NELKIN:  Your Honor, we think the clause speaks

19   for itself.

20        THE COURT:  Why don't you just tell me now this

21   limited discovery you need to proceed at this juncture?

22        You want a deposition of Mr. Friedman.  On

23   everything?

24        MR. NELKIN:  We want a deposition.  They're all

25   alleging that they're intertwined.  They claim we made it up.

1    But if you look at Document 100 on Page 2, you'll see that's

2    the basis for the E & J defendants' motion to compel

3    arbitration, and you'll see the word "intertwined" I believe

4    appears in a number of the other --

5             THE COURT:  What do you want discovery of

6    Mr. Friedman to do?

7             MR. NELKIN:  We want discovery of Mr. Friedman to

8    explore the contact -- to explore the whole Beth Din process;

9    his refusal, everything else with regard to that, all of his

10   contacts with respect to any Beth Din as well.

11            We also would like to explore his connections with

12   the other people.  They're alleging that they're all

13   intertwined.  We would agree that it would be better and more

14   important for us to do depositions of each of the parties to

15   explore exactly how they're intertwined, and that may, in

16   fact, be something that is necessary.

17            We also want the grant --

18            THE COURT:  I thought you said at this point in time

19   in terms of trying to narrow discovery that you would be

20   satisfied with the deposition of Mr. Friedman.

21            MR. NELKIN:  I think that we would certainly like

22   the deposition of Mr. Friedman.  I believe that a 30(b)(6)

23   deposition with respect to the different defendants, it could

24   be combined into one thing, but to explore their respective

25   roles vis-a-vis Mr. Friedman both from Mr. Friedman's

```
 1  perspective and from their perspective would be --
 2           THE COURT:  Meaning you now want to depose all the
 3  principals?
 4           MR. NELKIN:  What I'm saying is we would like to
 5  understand exactly what they're claiming their relationship is
 6  with Mr. Friedman.
 7           THE COURT:  How would you get that other than a
 8  deposition?
 9           MR. NELKIN:  We could try for interrogatories, we
10  could try for requests for admission, but it would require
11  them to be forthcoming in those as opposed to, you know, using
12  all sorts of --
13           THE COURT:  But for briefing this motion on
14  arbitration, what is the essence of what you need to brief the
15  motion on arbitration?
16           MR. NELKIN:  I believe that if we were to get the
17  discovery the way we read the clause, that they have to
18  provide all the records pertaining to Two Rivers, then we can
19  see exactly how they interacted with Two Rivers and every role
20  that they played with Two Rivers.  So, I think that getting
21  those documents --
22           THE COURT:  You're talking about each separate
23  defendant giving you all of their records of their
24  relationship with Two Rivers.
25           MR. NELKIN:  Correct.
```

```
1              THE COURT:  So, each separate defendant giving you

2    documents.

3              MR. NELKIN:  Yes.  That's how we read the order.

4    The order was all defendants joining in on that by consent,

5    and it says, if you look at the page before -- the paragraph

6    on Page 2:  The defendants and their representatives, whether

7    directly or indirectly, through any entity, corporation,

8    affiliate, executive director, director, manager, member --

9              THE COURT:  And why is it that you need this right

10   away and that this can't await a decision on the arbitration

11   issue?

12             MR. NELKIN:  First off, we think that we're entitled

13   to it just under the terms of the injunction, that that's

14   what -- we were supposed to have full discovery, it was

15   expedited discovery, they wanted to stop it, and, as a result,

16   we were given this, which we felt would give us most of the

17   documents that we needed to defend against any of the motions

18   that they're talking about.  And they agreed to it without

19   qualification or reservation.

20             To the extent that they're now trying to cut back on

21   it and say that it means some very narrow thing, then we feel

22   that we were denied our right to do what we were getting ready

23   to do.  They agreed to it on the eve of depositions for all of

24   the different parties.  There were depositions scheduled,

25   there were 30(b)(6) depositions scheduled, and then they came
```

1    and said:  We'll agree to all this without reservation.

2            And, so, when we saw that, we said:  Fine.  That

3    will give us most of what we need.

4            Now we've asked them repeatedly, we've conferred

5    with them, we've met with them, we said give us a time to come

6    and inspect these documents, and they say:  You're not

7    entitled to them.  Get them under discovery.

8            THE COURT:  Who have you asked to come and inspect

9    the documents?

10           MR. NELKIN:  We've asked each of the defendants and

11   we conferred after the last hearing in this courtroom and said

12   we want to be able to go but we've had a number --

13           THE COURT:  Go to the premises and look through the

14   books and records, that's what you want to do, according to

15   this?

16           MR. NELKIN:  Or they can produce them at some other

17   location.  We're happy to do it, but, basically, we weren't

18   trying to go beyond the wording of the provision, but we're

19   prepared to discuss things that are more convenient for the

20   parties and we don't have any objection to any sort of

21   reasonable -- I mean, we would prefer, in fact, if they were

22   to gather it up and make it available.

23           Your Honor, just one thing with respect to the books

24   and records.  I refer your Honor to Document 145, I think dash

25   4.  It's Page 3.  That's the letter I referred to where

```
1    Mr. Papa is saying he doesn't have --

2              THE COURT:  Sorry, where are you?

3              MR. NELKIN:  Docket No. 145-4.

4              THE COURT:  Where is that?

5              MR. NELKIN:  It's something that Mr. Schafhauser

6    just filed, but one of the attachments is a letter to

7    Mr. Schafhauser from Mr. Papa saying that the missing books

8    and records are too numerous to list and asking for a number

9    of documents.

10             My point is just they haven't produced --

11             THE COURT:  Have you separately in a discovery

12   request requested the same thing, in a written discovery

13   request?

14             Have you already made that discovery request?

15             MR. NELKIN:  We have.

16             THE COURT:  In the format of, for instance, what's

17   in paragraph five, you have made that in the form of a

18   discovery request?

19             MR. NELKIN:  I believe so.

20             But we would point out, your Honor, that we think

21   that the order doesn't have any qualifications or objections,

22   which we expect the discovery requests --

23             THE COURT:  So, you think the order entitles you to

24   do what, go in there tomorrow and ask to see all the stuff?

25             MR. NELKIN:  We think that they should make
```

1    available to us the books and records and all the other things

2    that are specified.

3              THE COURT:  And how do you want them to make that

4    available to you?

5              MR. NELKIN:  I'm assuming in the ordinary course of

6    business.  We're not asking them to prepare it in any fashion

7    for us.

8              THE COURT:  And you want a deposition of

9    Mr. Friedman.

10             MR. NELKIN:  Yes.

11             THE COURT:  And with that information, you can

12   respond to the arbitration motion, correct?

13             MR. NELKIN:  I believe so, your Honor.

14             THE COURT:  Okay.  Then that discovery will go

15   forward.

16             MR. SCHAFHAUSER:  Your Honor, may I just be heard?

17             THE COURT:  No, I've heard enough.

18             Let me set the motions.  We'll brief the arbitration

19   motion first.  All the parties want to do that, everybody is

20   onboard about that.  I had thought earlier that it might make

21   sense to get it all done at one time, but since everybody's on

22   the same page about that, I understand how that can cut down

23   on expense.

24             Can the motions be filed -- let's see, motions

25   should be filed by April 6 --

1          MR. SCHAFHAUSER:  Your Honor, we're happy to file

2    them much sooner if your Honor wishes.  Again, I'm happy to

3    abide by whatever schedule --

4          THE COURT:  Motions to be filed April 6, oppositions

5    is May 6, any replies May 20, and oral argument will be on

6    June 10 at 2 o'clock.

7          Is that right, Alex?

8          THE CLERK:  That's fine.

9          MR. GRANTZ:  Would you repeat the days?

10         THE COURT:  April 6, May 6, May 20, and June 10 at

11   2 p.m.

12         MR. GRANTZ:  Thank you.

13         THE COURT:  That's it.

14         MR. GRANTZ:  Your Honor, before you go off, I have a

15   clerical question.

16         You said that Judge Orenstein was going to deal with

17   the issue of the --

18         THE COURT:  The rent issue, yes.

19         MR. GRANTZ:  That issue was presented by a letter to

20   your Honor.  Should we recharacterize it to a letter to Judge

21   Orenstein?

22         THE COURT:  No, you don't have to recharacterize it,

23   I'll just refer it to him.  You haven't responded to it yet.

24   It came in yesterday, I guess.

25         MR. GRANTZ:  It came in on Friday, your Honor.

```
1              THE COURT:  Friday.

2              When are you going to respond to that?

3              MR. NELKIN:  It would be helpful for us if we could

4    respond the following Monday, a week from this past Monday.

5              MR. GRANTZ:  Remember, there's concerns about there

6    being a pivotal summary to dispossess.

7              THE COURT:  Who's filed the summary to dispossess?

8              We don't need everybody to speak at ones.

9              Did the landlord file a summary to dispossess?

10             Who is the landlord, Friedman?

11             MR. GRANTZ:  No.

12             THE COURT:  Who's the landlord?

13             MR. SCHAFHAUSER:  The landlord is, I believe,

14   Kentile Industrial, LLC.  We reference -- the landlord is not

15   affiliated with -- it's a separate party.

16             THE COURT:  Okay.

17             MR. SCHAFHAUSER:  The landlord's counsel I believe

18   indicated that he had been directed to file, and we're trying

19   to find out whether it has, in fact, been filed.

20             THE COURT:  It hasn't been filed yet, correct?

21             MR. SCHAFHAUSER:  I don't know.

22             THE COURT:  And you filed your papers on Friday,

23   last Friday?

24             MR. SCHAFHAUSER:  I did.

25             THE COURT:  Can you respond to it this Friday?
```

1          MR. NELKIN:  Yes, your Honor.

2          THE COURT:  I'll refer that application to Judge

3  Orenstein so it's clear it's before him.

4          MR. SCHAFHAUSER:  Just so I understand, merits

5  discovery is held in abeyance pending --

6          THE COURT:  No.  I said he can go forward with the

7  document discovery as it's defined in the order and he can

8  have the deposition of Mr. Friedman.

9          And the deposition, I take it, will deal with the

10  interrelationship between the companies and the questions of

11  arbitrability.  That's what you need, correct?

12          MR. NELKIN:  The interrelation of the companies and

13  the arbitrability, but the interrelation is what role he

14  performed at the companies --

15          THE COURT:  I'll allow discovery on that.

16          You had to show that the judge's order was clearly

17  erroneous.  I don't think that that showing has been made

18  under all the circumstances.  I understand the parties'

19  concerns about the breadth of discovery.

20          I think there are serious questions about

21  arbitrability here that have been raised, and I think that

22  plaintiff is entitled to go forward with the document

23  discovery.  And I'll permit the one deposition.

24          We have a scheduled arbitration that has somewhat

25  alleviated the breadth of discovery here that was ordered by

1    Judge Orenstein.  So, I think I've done my best to narrow it

2    to get to the central issues, but my view is that plaintiff is

3    entitled to that document discovery, they're entitled to a

4    deposition of Friedman, they can ask Friedman about the

5    interrelationship of the companies, they can ask him all the

6    questions about arbitrability.  They're entitled to document

7    discovery on the question of arbitrability.

8              MR. SCHAFHAUSER:  Your Honor, just so I can

9    understand --

10             THE COURT:  I'm sorry you don't understand, counsel.

11   Is there something that I've said that's not plain?  Because

12   you continually seem to have problems with what I'm saying,

13   and I apologize if I haven't been plain.

14             What now is the problem?

15             MR. SCHAFHAUSER:  Your Honor talks about document

16   discovery that he may do.

17             THE COURT:  That he has done.

18             MR. SCHAFHAUSER:  It's pursuant to his request, and

19   does he then --

20             THE COURT:  He would have to answer your document

21   discovery as well.

22             MR. SCHAFHAUSER:  Thank you.

23             THE COURT:  The two outstanding document discoveries

24   have to be responded to.

25             MR. SCHAFHAUSER:  Thank you.  That's what I wanted

1    to know.

2                MR. NELKIN:  Thank you.

3                THE COURT:  Okay.

4

5                (Matter concluded.)

6

7

8                            * * * * *

9

10

11

12   I certify that the foregoing is a correct transcript from the

13   record of proceedings in the above-entitled matter.

14

15        /s/ Linda A. Marino                March 10, 2016
     _____    _____
16        LINDA A. MARINO                       DATE

17

18

19

20

21

22

23

24

25

                        LAM      OCR      RPR