UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
STEVEN SCHREIBER,            *     Case No. 15-CV-6861(CBA)
individually and derivatively *
on behalf of Two Rivers      *
Coffee, LLC,                 *
                             *
            Plaintiff,       *     Brooklyn, New York
                             *     September 19, 2017
      v.                     *
                             *
EMIL FRIEDMAN, et al.,       *
                             *
            Defendants.      *
                             *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE JAMES ORENSTEIN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:              JAY PHILIP NELKIN, ESQ.
                                CAROL NELKIN, ESQ.
                                Nelkin & Nelkin
                                3730 Kirby Drive
                                Suite 1200
                                Houston, TX  77098

For the Defendant,              PAUL H. SCHAFHAUSER, ESQ.
 Emil Friedman:                 MARIE MATTHEWS, ESQ.
                                Chiesa Shahinian &
                                 Giantomasi, PC
                                11 Times Square, 31st Fl.
                                New York, NY  10036

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

APPEARANCES:  (Cont'd)

For the Defendant,           DAVID B. GRANTZ, ESQ.
 E&I Investors Group:        CATHERINE M. PASTRIKOS, ESQ.
                             Meyner & Landis LLP
                             One Gateway Center
                             Suite 2500
                             Newark, NJ  07102

For the Defendant,           RICHARD A. FINKEL, ESQ.
 Sylvia Ezell:               Richard A. Finkel, Esq. and
                              Associates, PLLC
                             270 Madison Avenue
                             Suite 1203
                             New York, NY  10016

For the Defendant,           RICHARD B. FELDMAN, ESQ.
 Michael Devine:             Rosenberg Feldman Smith, LLP
                             551 Fifth Avenue
                             New York, NY  10176

For the Defendant,           ROBERT J. BERGSON, ESQ.
 Geoffrey Hersko:            Abrams Garfinkel Margolis
                              Bergson, LLP
                             237 West 35th Street
                             New York, NY  10001

For the Defendant,           JEFFREY C. RUDERMAN, ESQ.
 Solomon Birnbaum:           Cyruli Shanks & Zizmor, LLP
                             420 Lexington Avenue
                             Suite 2020
                             New York, NY  10120

3

1      (Proceedings commenced at 10:35 a.m.)

2               THE CLERK:  Civil cause for a status conference,

3      Schreiber versus Friedman, et al, docket Number 15-CV-68661.

4               Will the parties please state their appearances for

5      the record starting with the plaintiff.

6               MR. NELKIN:  Good morning, Your Honor.  Jay Nelkin

7      and Carol Nelkin for the plaintiff.

8               THE COURT:  Good morning.  And You've got your

9      client with you.

10              Good morning.

11              MR. SCHREIBER:  Good morning.

12              MR. SCHAFHAUSER:  Good morning, Your Honor.  Paul

13     Schafhauser, of Chiesa Shahinian & Giantomasi, for the

14     pleading defendants.

15              THE COURT:  Good morning.

16              MR. SCHAFHAUSER:  Good morning.

17              MS. MATTHEWS:  Good morning, Your Honor.  Marie

18     Matthews, also from Chiesa Shahinian & Giantomasi.

19              THE COURT:  Good morning.

20              MR. GRANTZ:  Good morning, Your Honor.  David

21     Grantz, from the law firm of Meyner & Landis, on behalf of the

22     E&J defendants and the oil and trucking defendants.

23              THE COURT:  Good morning.

24              MR. FELDMAN:  Good morning, Your Honor.  Richard

25     Feldman, Rosenberg Feldman Smith, on behalf of the Devine

4

1    defendants.

2         THE COURT:  Good morning.

3         MR. RUDERMAN:  Good morning, Your Honor.  Jeffrey

4    Ruderman, from Cyruli Shanks Hart & Zizmor, on behalf of the

5    coffee defendants.  I'm new to the table, Your Honor, before

6    Your Honor taking over for Maurice Heller.

7         THE COURT:  All right.  Good morning.

8         MR. BERGSON:  Good morning, Your Honor.  Rob

9    Bergson, Abrams Garfinkel Margolis Bergs on for Geoffrey

10   Hersko.

11        THE COURT:  Good morning.

12        MS. PASTRIKOS:  Good morning, Your Honor.  Catherine

13   Pastrikos, on behalf of the E&J and the oil and trucking

14   defendants.

15        THE COURT:  Good morning.

16        MR. FINKEL:  Good morning, Your Honor.  Richard A.

17   Finkel for Sylvia Ezell, for Jorge Salcedo and Sonia Rivera.

18        THE COURT:  Good morning.

19        All right, all.  We've got a number of things that

20   have cropped up since I last saw you.  I'll try to get to them

21   in turn.

22        One housekeeping note, in light of the continued

23   problems that we have over just proliferating and prolix

24   filings.  Three pages in a letter.  No more without leave.

25   12-point type.  I hate to get into this level of detail, but

5

1    you folks are abusing your rights.  So we need to do this.

2    Three pages, 12-point type, one-inch margins.  Don't cheat.

3    Okay?  Don't try and sneak in extra just to --

4            And on the defense side, I don't need eight, nine,

5    ten letters for the same point.  You all agree with each

6    other, just say in the one letter you all agree.  Don't file

7    multiple letters unless you've been leave to, unless you are

8    trying to request different relief.

9            And please don't look for ways around that or I'll

10   find more ways to constrain.  Okay?  But the number of

11   submissions is out of control.

12           Second, I'm aware of my individual practice

13   requirements.  I'll monitor them.  I don't think it's terribly

14   useful for there to be back and forth about that.

15           If I think something shouldn't be heard on the

16   merits because of non-compliance with my procedural

17   requirements, I'll let you know.

18           And just as I'm letting you know now when I think

19   you're abusing the rights that you have and they need to be

20   brought under more predictable control, I'll let you know.

21           But, again, it's a waste of all of your efforts and

22   time to be fighting over whether something complies with my

23   procedural rules.

24           They are there for -- to provide predictability to

25   the parties as a matter of convenience, but they don't create

1    any rights for anybody.

2          All right.  So it strikes me we've got a couple of

3    basic things to attend to.  I don't anticipate we're going to

4    resolve any substantive matters today as much as map out a

5    procedural path forward.

6          We've got the completion of the sanctions motion for

7    violation of the preliminary injunction.  And then more

8    recently we've got requests from the plaintiffs, from the

9    plaintiff for attachment to bond receiver and various other

10   forms of relief.

11         So let's -- before we jump into it -- and I'll hear

12   from you about what you think is an appropriate procedural

13   path forward -- let me suggest this.

14         I think a lot of what has been requested in the

15   recent requests, they are misplaced in a sense that they were

16   directed to me.  They're requesting largely injunctive relief

17   that I'm not authorized to order.

18         However, I don't think it's a waste to put the

19   parties on notice of it, as I'm confident that virtually all

20   of these issues will be referred to me in one form or another

21   for ordering that which I'm empowered to order, and

22   recommending relief where I'm not.  So I don't think it's

23   misdirected.

24         I do think, however, that it's a nature that

25   shouldn't just be tucked into another-wise unsolicited status

1    report.

2              I'm going to treat today's conference as a pre-

3    motion conference on those matters and we'll chart an orderly

4    path forward.

5              A lot of what's in that status report may or may not

6    warrant the relief that's requested, but some significant

7    chunk of it, I think, and some of it is even characterized

8    this way is, if true, a violation of -- leaving aside any

9    other rights -- of matters covered by the preliminary

10   injunction.

11             So I think some of this can properly be folded into

12   completion of the hearing on the motion for sanctions on the

13   preliminary injunction.

14             The last piece before I turn over the floor to all

15   of you, I was more than a little disappointed for a number of

16   reasons to see the allegation recently that there are a number

17   of computers and other devices that haven't been turned over

18   pursuant to my order of October, 2016.  It clearly should have

19   been done.

20             I want to hear from the other side their response as

21   to what, if anything, hasn't been turned over.  But also if

22   true, it should have been brought to my attention and Judge

23   Amon's long before.  Because the benefit of having it, having

24   these devices imaged while you went forward with litigation

25   before Judge Amon is largely lost if there's a delay.  We'll

8

1    have to consider other potential remedies.

2            So let's perhaps start there.  And from all -- let

3    me just go around the table.

4            I'm not accepting anybody's assertions on either

5    side at face value necessarily, but I just want to know what

6    those assertions are.

7            So if we could just go around the table.  If each

8    defendant's counsel could state whether in your view every

9    computer, information processing device, you know what I'm

10   talking about, has been turned over for imaging or not.

11           Mr. Schafhauser?

12           MR. SCHAFHAUSER:  There is a computer device which

13   we have raised with Mr. Nelkin.  It's a computer device that

14   has been in actually West Palm Beach, Florida.

15           I actually sent Mr. Nelkin correspondence about this

16   on November 16th of last year.  And I advised Mr. Nelkin that

17   computer would be made available for imaging in West Palm.

18   That correspondence was then put on the docket.  I actually

19   reported the same thing --

20           THE COURT:  Has it been turned over yet or not?

21           MR. SCHAFHAUSER:  It remains available --

22           THE COURT:  So the answer is no?

23           MR. SCHAFHAUSER:  The answer is it remains --

24           THE COURT:  By Friday, please.

25           MR. SCHAFHAUSER:  Yes, Your Honor.

```
 1              THE COURT:  Mr. Grantz.

 2              MR. GRANTZ:  Your Honor, I have a couple of

 3    different issues.  One is --

 4              THE COURT:  Let's start with --

 5              MR. GRANTZ:  Yeah.

 6              THE COURT:  The first issue is answering the

 7    question.

 8              MR. GRANTZ:  Yes.  I'm going to -- that's what I'm

 9    talking about.

10         So Jack Ahern's wife has a computer.  I never

11    thought that for a second that her computer was in his

12    possession, custody or control, or that it was available to

13    him, but we requested it and the wife wouldn't give it.  So

14    I've since again requested it -- this is back in November --

15    and he said that he will make it available for imaging at his

16    house which is the procedure that took place last year.

17              THE COURT:  By Friday, please.

18              MR. GRANTZ:  That's fine, Your Honor.  That's one of

19    the issues.

20         There's a second issue.  The companies -- one of the

21    companies pays for phones for many, many people.  Some of

22    those phones have clearly been produced already.  Some of the

23    phones have numbers that don't actively have any usage.

24         So if you look at the bill, it has no data or phone

25    calls on it so it's not actually being used by anyone.  And
```

1  then other phones are belonging to children and family

2  members, but they're paid at least initially as a pass through

3  by one of the companies --

4              THE COURT:  Are you objecting to the contents of the

5  order?

6              MR. GRANTZ:  No, I'm not objecting to that.

7              THE COURT:  Have you complied with it?  Have you

8  turned them over?

9              MR. GRANTZ:  The phones have not been turned over,

10  Your Honor.

11              THE COURT:  Do it -- do it by Friday, please.

12              MR. GRANTZ:  They're not available because they're

13  not in the company's possession, custody and control.  It's,

14  you know, there's children in --

15              THE COURT:  All right.  I'll consider the

16  appropriate contempt sanction.

17              What next?

18              MR. GRANTZ:  That's the only things that I have,

19  Your Honor.

20              THE COURT:  All right.  Explain to your clients that

21  the next step is contempt sanctions.

22              MR. GRANTZ:  I will explain it.

23              THE COURT:  See how they respond.

24              MR. GRANTZ:  I will put something in writing to Your

25  Honor to detail exactly what we've done in connection with

1    these phones to provide Your Honor with the understanding of

2    who has the phones and why they're not in our possession,

3    custody and control.  And if the --

4                   THE COURT:  He's paying for them?

5                   MR. GRANTZ:  The company pays for them as a pass

6    through.

7                   THE COURT:  The company is paying for them?  Turn

8    them over or cut off the payments.

9                   MR. GRANTZ:  As I understand it, the company pays

10   for them and then they're reimbursed.

11                  THE COURT:  I don't care.  Look, you understand that

12   this is covered by the order.  Your clients understand this.

13   They can turn them over or they can be in contempt.  Those are

14   the options.  By Friday.

15                  MR. GRANTZ:  Thank you, Your Honor.

16                  THE COURT:  Next?  Mr. Feldman?

17                  MR. FELDMAN:  The Devine defendants were excluded

18   from producing.

19                  THE COURT:  All right.  Mr. Ruderman?

20                  MR. RUDERMAN:  I'm not aware of any computers that

21   have not been turned over pursuant to the court order, Your

22   Honor.

23                  THE COURT:  Have you done a full review with your

24   clients?

25                  MR. RUDERMAN:  I've asked my clients about the

1    computers that he's had.  He said he's produced all the

2    computers that they use in connection with the operations of

3    the coffee entities.

4              THE COURT:  Not with the operations.  I didn't put

5    that limitation on it.

6              MR. RUDERMAN:  Plus the individual computers and

7    phones, et cetera and so forth, the laptops, et cetera.

8              THE COURT:  You've reviewed the order, yes?  It's an

9    extensive one.

10             MR. RUDERMAN:  Yes, Your Honor.  And I'm not aware

11   of any computer that is --

12             THE COURT:  I'm not asking if you are aware of

13   something that hasn't been turned over.  I'm asking if you

14   have made sure that everything has been turned over.  There's

15   a difference.  And there's an obligation on counsel to make

16   sure they have discussed this with their clients.  Have you

17   done that?

18             MR. RUDERMAN:  I've discussed it with my clients

19   whether he has produced or they have produced all devices --

20             THE COURT:  Have you asked him for an inventory of

21   all devices in the possession, custody and control?

22             MR. RUDERMAN:  Not beyond what was done by Mr.

23   Heller, Your Honor.

24             THE COURT:  Check.

25             MR. RUDERMAN:  Yes, Your Honor.

13

```
1              THE COURT:  Mr. Bergson?

2              MR. BERGSON:  The Hersko defendants were excluded

3     from the order, Your Honor.

4              THE COURT:  Ms. Pastrikos?

5              MR. GRANTZ:  She's with me.

6              THE COURT:  Yeah.  With Mr. Grantz.

7              And Mr. Finkel?

8              MR. FINKEL:  Yes, Your Honor.  I've spoken with my

9     clients.  Everything has been turned over for imaging.

10             THE COURT:  Okay.  So we've got Mr. Grantz's clients

11    and Mr. Schafhauser's that will turn over everything that they

12    acknowledge hasn't yet been turned over by Friday subject --

13    on pain of contempt.

14             MR. SCHAFHAUSER:  Your Honor, I would just request

15    that you extend that time until Tuesday because of the Jewish

16    holidays.  You spoke --

17             THE COURT:  Yes.  The Jewish holidays complicate

18    things for people who haven't complied with their obligations

19    to the Court.  No.

20             MR. GRANTZ:  Your Honor.

21             THE COURT:  Yes.

22             MR. GRANTZ:  I would just request that they be

23    turned over to Stroz because there won't be anyone on our side

24    to collect them.

25             THE COURT:  Make your arrangements.  They were
```

1 originally going to be sent over to Stroz in any event.

2    MR. SCHAFHAUSER:  Actually that's not the way it

3 happened.  Stroz came out to all of the locations --

4    THE COURT:  Work it out so that they are turned over

5 by Friday.  You make arrangements to have somebody pick them

6 up.  If you don't, you don't get them.

7    MR. GRANTZ:  We'll do our best.

8    THE COURT:  All right.  Now on the continuation of

9 the hearing, Mr. Nelkin, on your side, you've collected some

10 more issues that you want to raise as violations of the

11 preliminary injunction hearing.

12    MR. NELKIN:  Your Honor, I think those were just --

13 our intention was simply to denote things that had been raised

14 in our earlier -- with respect --

15    THE COURT:  Okay.  So is it -- are you -- I just

16 forget where we left off with the hearing at the time when we

17 had the problems with what appeared to be spoliation and we

18 took a pause so that we could explore that.  And then we had a

19 much longer pause for litigation over that order.

20    MR. NELKIN:  Right.  So the issues with respect to

21 the usage of the credit card and those matters that were at

22 sort of the end of the status report, those were raised

23 before.

24    THE COURT:  Okay.

25    MR. NELKIN:  And we're simply raising them to say

1    that they hadn't been addressed.

2              THE COURT:  Is there anything further?  Had you

3    rested or was there evidence you were going to produce?

4              MR. NELKIN:  The way I believe, Your Honor had set

5    the schedule was, is that the computers were to be imaged --

6              THE COURT:  Right.  And then they actually did the

7    report.

8              MR. NELKIN:  -- there was privilege review, and then

9    each expert would be cross-examined, but that there would be

10   no more evidence that was put on.

11             THE COURT:  All right.  Have you -- so now that

12   Judge Amon has issued her ruling, Stroz has the -- is doing

13   the analysis and is providing it to you?

14             MR. NELKIN:  No.  We're under order that we don't --

15   are not to get a copy until they've conducted their privilege

16   review as I understand it.

17             THE COURT:  Oh, okay.  So let's have the privilege

18   review in two weeks, please.  And then we'll move on from

19   there.

20             MR. SCHAFHAUSER:  Your Honor.

21             THE COURT:  Yeah.

22             MR. SCHAFHAUSER:  The timing is -- well, first of

23   all, there's extensive machines.  We had 61 machines that were

24   copied.  There are going to be some more --

25             THE COURT:  What do you propose?

16

1          MR. SCHAFHAUSER:  Well, first of all, we've gone

2     through the machines with our -- with K-2 and K-2 indicated

3     that 14 of the machines were unreadable.  So they contacted

4     Stroz and asked for additional copies.  So there's been two

5     sets of copies.  One that Stroz has --

6          THE COURT:  I don't know if you heard the question

7     the first time.  Let me repeat it.  What do you propose?

8          MR. SCHAFHAUSER:  I think our e-discovery company

9     needs about six weeks to get the things in a position for us

10    to go through the images and to complete a review of the

11    privileged material so that we can advise Stroz what they need

12    to pull from the images.

13         THE COURT:  Have you looked at all in this period

14    that the case has been pressed?

15         MR. SCHAFHAUSER:  Have we personally looked at it?

16         THE COURT:  No.  Have you -- have you asked them?

17         MR. SCHAFHAUSER:  Yes.

18         THE COURT:  Because there's nothing stopping you

19    from knowing what you have and doing some review on your side,

20    correct?

21         MR. SCHAFHAUSER:  What we did was --

22         THE COURT:  Is that correct?

23         MR. SCHAFHAUSER:  Yes.  What we did --

24         THE COURT:  Have you done it?

25         MR. SCHAFHAUSER:  What we did was, we hired K-2.  We

1    spent money with them to take the machines and put them in

2    readable form because we had images that needed to be

3    searched.  That process was done and they told us there were

4    23 terabytes of material.

5              THE COURT:  Have you looked through that material

6    for privilege review?

7              MR. SCHAFHAUSER:  We need a -- we have to hire an e-

8    discovery company for that because there's so much --

9              THE COURT:  Have you done that?

10             MR. SCHAFHAUSER:  We got two proposals last night.

11   We've been working on that, Judge, for quite some time.

12             THE COURT:  Wait.  This has been -- it's been a

13   year, almost a year, since this order was issued.  You haven't

14   looked through these materials yet?

15             MR. SCHAFHAUSER:  None of the materials have been

16   reviewed by any --

17             THE COURT:  Well, then, get it done in the next

18   three weeks.

19             MR. SCHAFHAUSER:  Your Honor, we're going to need

20   more time than that.

21             THE COURT:  Well, you're going to have to hire some

22   more staff to do it.  You've had a year.

23             MR. SCHAFHAUSER:  We didn't look through it during

24   the time period --

25             THE COURT:  I don't know why.

1          MR. SCHAFHAUSER:  -- the judge's decision was

2     pending, Your Honor.

3          THE COURT:  Okay.  Well, you're going to be busy.

4          MR. SCHAFHAUSER:  I understand that.  But it's not

5     just the attorneys who have to look through.  It's the e-

6     discovery company's --

7          THE COURT:  I understand.  You've got -- it's a

8     tremendous amount to do.  If you had been doing it over the

9     course of the year, you'd be well positioned to have it done

10    in three weeks.

11         MR. GRANTZ:  Your Honor, may I just be heard on that

12    subject?

13         The reason -- and Your Honor, obviously, I was

14    asking the question what we did we do?  The reason we didn't

15    do it was because Judge Amon specifically stayed that

16    privilege obligation.

17         On November 7th of last year, Mr. Nelkin made an

18    application that we be required to conduct the privilege

19    review and Judge Amon said that need not be done during the

20    pendency of that -- of the appeal.

21         THE COURT:  When was the order resolved?  When was

22    the order issued rather?

23         MR. SCHAFHAUSER:  August, Your Honor.

24         THE COURT:  August.  We're in September.

25         MR. SCHAFHAUSER:  And we immediately started this

1    process at that point.  It took several --

2              THE COURT:  You want four weeks?  You can have four

3    weeks.  We are not -- this is what we're not doing.  We're not

4    waiting six weeks for you to get started looking at things.

5              MR. GRANTZ:  We intend to get started immediately,

6    Your Honor.

7              THE COURT:  Good.  So in four weeks --

8              MR. FINKEL:  More than four weeks.  I'm a single

9    practitioner, Your Honor.

10             THE COURT:  And you've got how many people at that

11   table?  You know --

12             MR. FINKEL:  They can't -- they can't make rulings

13   and decisions.

14             THE COURT:  They can't make rulings.  But, Mr. --

15             MR. FINKEL:  Most respectfully, Your Honor, they

16   can't decide whether certain aspects of my emails or

17   conversations with my three clients are privileged.  I can

18   decide that.

19             In addition to that problem, the reality is the next

20   two weeks, actually the next three weeks, are filled with

21   Jewish holy days so we don't have a full two weeks.  Beginning

22   tomorrow at one o'clock, my week stops.

23             I will not work past 1:00 because I have to go home

24   and make the (indiscernible) with my wife and then go to shul

25   tomorrow night.  Have dinner with the family and go to shul

1    tomorrow night.  Thursday and Friday I'm out of commission

2    totally.  The following Friday, the same thing because Friday

3    night is Kolydra (ph) is Yom Kippur.

4              THE COURT:  I have some familiarity, sir.  Please.

5    Don't feel that you need to lecture me on --

6              MR. FINKEL:  I'm not lecturing you.

7              THE COURT:  Excuse me.

8              MR. FINKEL:  I'm trying to give you the values that

9    I face.

10              THE COURT:  Feel free.  Feel free to skip the

11   lecture on what dates are in the Jewish calendar.  I'm

12   familiar with it.  You may not have known that.  I understand.

13   I'm telling you now you don't have to tell me day by day

14   what's in the Jewish calendar.

15              MR. FINKEL:  I apologize.  But that's my problem.

16              THE COURT:  It is a problem.

17              MR. FINKEL:  (Indiscernible)

18              THE COURT:  Good.  Okay.

19              Yes, Mr. Nelkin, you wanted to say something.

20              MR. NELKIN:  No.  I was just going to point out,

21   Your Honor, that while they've been focusing on the imaging,

22   they've had the computers.

23              Judge Amon had all the computers returned to them

24   and so they've had full access to the computers and the images

25   since this time.  And they also I think would know what was in

21

1     their emails.

2          THE COURT:  All right.

3          Folks, in deference to the holidays ahead -- not in

4     deference to your role as a sole practitioner, Mr. Finkel,

5     because there are certainly things that you have to do on your

6     own -- but there's a great deal of work that is in common to

7     all of you.

8          And one thing that has become clear throughout this

9     litigation is that the fine distinctions between corporate

10    entities and the individuals that work for different corporate

11    entities have not been respected.  You join in each other's

12    motions quite understandably.  There's a lot that you can do

13    in common.  Yes, there are certain decisions that you have to

14    make each for your own clients.  I get that.  Six weeks.

15         MR. FINKEL:  Thank you very much, Your Honor.

16         UNIDENTIFIED:  Thank you, Your Honor.

17         THE COURT:  All right.  So in six weeks, you'll

18    advise them of the privilege review.  Then you'll have what,

19    two weeks, three weeks for Stroz to review it?

20         MR. NELKIN:  Your Honor, I think that they may

21    require -- I think you said a month for them to do it just

22    because -- and there are going to be new computers that

23    they're going to have.

24         THE COURT:  A month.  Okay?  So that gets us ten

25    weeks out.  And then -- sit down -- and then the next step

22

1    will be to submit additional evidence that you want to -- or

2    present evidence at a hearing.  Yes?

3               MR. NELKIN:  I think what Your Honor had specified

4    before was -- I mean, we can do it however Your Honor wishes,

5    but --

6               THE COURT:  If I've forgotten something I said

7    before, everybody feel free to remind me.  I don't pretend to

8    remember everything I've done in this case.  And I'm sure --

9               MR. NELKIN:  It was October --

10              THE COURT:  -- we've all forgotten.  Yes.

11              MR. SCHAFHAUSER:  The last time when we were here,

12   Your Honor set a schedule to complete the privilege review,

13   provide the information to Stroz so they could extract the

14   material --

15              THE COURT:  All right.  Okay.

16              MR. SCHAFHAUSER:  -- then have Stroz go through the

17   machines, prepare a report.  And then after that report, K-2

18   was going to respond with a rebuttal report.

19              THE COURT:  Okay.

20              MR. SCHAFHAUSER:  And then you were going to set a

21   rebuttal for Mr. Nelkin to submit at a hearing thereafter.

22              THE COURT:  Okay.  Let me find the order.

23              MR. NELKIN:  At that point, you had actually said

24   three weeks for the privilege review I think.

25              THE COURT:  No.

1          MR. GRANTZ:  It's October 13th.

2          THE COURT:  Okay.  Hold on a second, please.

3          MR. GRANTZ:  I think 308.

4          THE COURT:  308?

5          MR. GRANTZ:  Yeah.

6          THE COURT:  Well, we're already off that schedule

7     now because we've been caused for -- I'm sorry.  Forgive me.

8     I'm sure I've offended all of you by saying it was a year when

9     it was only 11 months.  Forgive me.

10         So, yeah, I had three weeks.  We had parties who

11    will not comply with that so I'll make it six weeks.  I'll

12    adopt the -- all the deadlines in there are adapted to where

13    we are now.

14         So since we will have Friday as the equivalent of

15    November 3rd in document number 308, I guess that gets us into

16    February for a hearing.  All right.

17         I'll put -- I'll just enter an order plugging these

18    same dates, these same intervals.  And let's look for some

19    dates.  We're going to need a hearing in February.

20         Yes?

21         MR. NELKIN:  I just -- I don't know when the date

22    for the plaintiff's initial thing is, but we have our -- they

23    have an interlocutory appeal in our Fifth Circuit.  Our Second

24    Circuit brief is due on the 26th.

25         THE COURT:  Yes.

24

 1          MR. NELKIN:  We just --

 2          THE COURT:  Whatever.  Look --

 3          MR. SCHAFHAUSER:  That's not going to be impacted

 4   because we're going to have six weeks to do privilege and

 5   that's going to pass that date.

 6          THE COURT:  Yeah.  Okay.

 7          MR. NELKIN:  Okay.  All right.  Fine.

 8          THE COURT:  Let's not worry about that.  Okay.

 9   Yeah.

10          That was -- that was going to be my next question.

11   We're going to hear some additional, you know, expert

12   testimony on both sides about computers.

13          And then you guys have your case to present.  How

14   long do you anticipate?

15          MR. SCHAFHAUSER:  Yes, Your Honor.

16          THE COURT:  Hold on.  Let him speak.

17          MR. SCHAFHAUSER:  Within the schedule that Your

18   Honor has outlined, I believe Your Honor only wants expert

19   testimony and, therefore, we would submit our expert.

20          THE COURT:  Yes.  But what I'm hoping is we can

21   proceed from there to complete the record.

22          MR. SCHAFHAUSER:  Very well.

23          THE COURT:  I'm hoping to do other things in my

24   career than -- as enjoyable as it is spending time with you,

25   I'm hoping to do other things in my career than this case.  So

1      let's get this done.

2              MR. SCHAFHAUSER:  Understood.

3              THE COURT:  What do you want to do?  A lot of your

4      evidence I know has come in through the plaintiff's case, but

5      have you folks all considered what you want to present?

6              MR. SCHAFHAUSER:  Well, if given the opportunity, we

7      would likely recall Mr. Friedman.  You heard his testimony.

8      We would recall him.

9              THE COURT:  I did.

10             MR. SCHAFHAUSER:  We would perhaps also call

11     plaintiff who we had --

12             THE COURT:  All right.  So do you have a time

13     estimate?

14             MR. SCHAFHAUSER:  I'm thinking a couple of days.

15             THE COURT:  Okay.  Anyone else, Mr. Grantz?

16             MR. GRANTZ:  I'm going to need to call Jack Ahern

17     and Larry Ahern.  And I'm probably going to want to recall Ben

18     (inaudible) for a limited purpose.

19             THE COURT:  Okay.  Anyone else?

20             MR. GRANTZ:  And possibly Philip Sandburg.

21             THE COURT:  Who?

22             MR. GRANTZ:  He's a partner in some of the -- at

23     least one of the companies that --

24             THE COURT:  Okay.  Five witnesses.

25             MR. FELDMAN:  Mr. Devine for maybe an hour.

```
1              THE COURT:  Six.  Yeah.  Okay.

2              MR. RUDERMAN:  Your Honor, if necessary, Mr.

3      Birnbaum would be called.  But if I may just address a matter,

4      a preliminary matter, if you will, concerning this issue?

5              As the Court is aware, back in March, this court,

6      excuse me, Judge Amon granted the motion to stay the action

7      and compel arbitration concerning three out of the five

8      defendants that I represent.

9              THE COURT:  Yeah.

10             MR. RUDERMAN:  And that arbitration --

11             THE COURT:  All right.  So you don't have to

12     participate in the hearing, but your clients will be available

13     as witnesses.

14             MR. RUDERMAN:  If necessary, my clients might be

15     available as witnesses, Your Honor.

16             THE COURT:  Okay.  But, yes.  So you don't need to

17     call anybody because as stated as to your clients in terms of

18     the litigation against your clients, their --

19             MR. RUDERMAN:  The action --

20             THE COURT:  -- their availability to provide

21     evidence or, you know, respond as basically a non-party

22     discovery source that continues.

23             MR. RUDERMAN:  If my clients are subpoenaed,

24     obviously, Your Honor, they're subject to whatever subpoena

25     powers --
```

1          THE COURT:  Okay.  So you don't need to participate

2     in the hearing.

3          MR. RUDERMAN:  And, Your Honor, two of the -- two of

4     my clients, the motion was not granted as to them.  There was

5     a re-argument, a reconsideration motion and Judge Amon stayed

6     the action as to them as well pending that reconsideration.

7          THE COURT:  All right.

8          MR. RUDERMAN:  So I would ask that it would apply to

9     all five of my clients, Your Honor.

10          THE COURT:  Well, if -- the ones as to whom it is

11     currently stayed won't participate.  And when the hearing

12     comes around, if that remains the case, you'll stay on the

13     sidelines.  If you're back in the case, you'll participate.

14          MR. RUDERMAN:  Thank you, Your Honor.

15          THE COURT:  Okay.

16          MR. BERGSON:  No witnesses for the Hersko

17     defendants, Your Honor.

18          THE COURT:  All right.  And Mr. Finkel?

19          MR. FINKEL:  I may wish to call one or more of mine.

20          THE COURT:  Okay.  So it sounds like what, four

21     days, five days total?

22          MR. SCHAFHAUSER:  I think that sounds right, Your

23     Honor.

24          THE COURT:  Okay.  Yes, Mr. Nelkin.

25          MR. NELKIN:  Two points, Your Honor.

1          One is Your Honor obviously can set whatever he

2     wants, but I believe at the last session, Your Honor basically

3     indicated that it was just going to be limited to the reports

4     and the cross-examination of the --

5          THE COURT:  But then we're still going to have

6     potentially, unless, you know, something happens to obviate

7     the need for it, you're still going to want to continue with

8     your motion for sanctions.  No?

9          MR. NELKIN:  Yes.  I --

10          THE COURT:  So you do not want me to develop the

11     record?

12          MR. NELKIN:  No.  No.

13          THE COURT:  Okay.

14          MR. NELKIN:  We do.  I just -- I thought that you

15     had set a procedure before that -- I'm happy to go however you

16     want, Your Honor.

17          The only other point I would say is with respect to

18     Mr. Birnbaum and his companies, I believe that Judge Amon's

19     last order on August 15th gave you discretion as to how to

20     include or not include them.

21          THE COURT:  Yeah.

22          MR. NELKIN:  All of them.

23          THE COURT:  Right.  But I can't -- look, what I

24     don't have discretion to do is contradict the order staying

25     the case.

1          MR. NELKIN:  No.  But --

2          THE COURT:  As non-party -- as a non-party source of

3     discovery, it's certainly available, but you're not proceeding

4     on your claims against them while the case is stayed against

5     them.

6          MR. NELKIN:  No.  But I think with respect to

7     sanctions, she left it open as to whether they would be

8     included up to your discretion.

9          THE COURT:  I see.  For violating the preliminary

10    injunction?

11         MR. NELKIN:  Yeah.

12         THE COURT:  Yeah.  If they don't want to

13    participate, they won't.  That doesn't mean they can't be

14    sanctioned for past conduct.

15         MR. NELKIN:  That's all I wanted.

16         THE COURT:  Yeah.  Okay.

17         MR. RUDERMAN:  Your Honor, let me just speak to that

18    for a moment.

19         THE COURT:  Yeah.

20         MR. RUDERMAN:  I'm just -- I was looking back there.

21    Again, Your Honor, I was newer to the case.

22         THE COURT:  Hey, can I ask you a question?

23         MR. RUDERMAN:  Certainly.

24         THE COURT:  Does preliminary injunction remain in

25    force against your clients?

1              MR. RUDERMAN:  Was it in force?

2              THE COURT:  Does it remain in force against your

3      clients?

4              MR. RUDERMAN:  Does it remain in force against my

5      clients?

6              THE COURT:  Can they violate the terms of the

7      preliminary injunction today?

8              MR. RUDERMAN:  Well, the preliminary injunction is

9      until the action is resolved, Your Honor.  That's the

10     preliminary injunction.

11             THE COURT:  So if they did something today that was

12     clearly in violation of the preliminary injunction, they could

13     be sanctioned, correct?

14             MR. RUDERMAN:  The action has been stayed, Your

15     Honor, so I guess it is still continuing and, therefore, the

16     preliminary injunction is still in place.

17             THE COURT:  Right.  And they'd be committing

18     contempt of court if they violated the terms of an injunction

19     that remains in place, right?

20             MR. RUDERMAN:  Yes, Your Honor.

21             THE COURT:  So like I said, you don't have to

22     participate.  It doesn't mean the sanctions motion isn't

23     pending.  But you can do what you want.

24             MR. RUDERMAN:  Well, Your Honor, I just -- then I'd

25     like a little clarity if you will with regard to what the

1    Court's intention is.  Will the Court be hearing the sanctions

2    application against my client?

3         THE COURT:  I've been hearing.  Look, it continues.

4    The motion remains pending.

5         MR. RUDERMAN:  The motion was made, Your Honor.

6    There are actually two motions or one -- one is a spoliation

7    motion, Your Honor.  And I would submit that even --

8         THE COURT:  I'm taking it a non-party source of

9    discovery can spoliate evidence and be sanctioned, yes?

10        MR. RUDERMAN:  Your Honor, spoliation -- there is an

11   arbitration, Your Honor, which should hear -- an arbitrator

12   should hear any spoliation issues.

13        THE COURT:  Mr. Ruderman, one thing I'm sure you'll

14   find -- and maybe you'll learn from your colleagues -- if I

15   ask a question, that's the question I'd like answered.

16        MR. RUDERMAN:  Can a non-party spoil evidence, Your

17   Honor?

18        THE COURT:  Yeah.  And be sanctioned for doing so?

19        MR. RUDERMAN:  And be sanctioned for doing so?  As a

20   sanction, Your Honor, unrelated to the merits of the case,

21   Your Honor.  In other words --

22        THE COURT:  I don't think they care if it's related

23   to the sanctions of the case or not, but there could be

24   sanctions imposed, yes?

25        MR. RUDERMAN:  Yes, Your Honor.  And I just want --

32

1          THE COURT:  Let's complete the hearing on that.

2          MR. RUDERMAN:  I just need -- I just need to

3    understand whether this court -- will the spoliation sanctions

4    that the plaintiff is seeking are, for example, a default

5    judgment, et cetera, and so forth, withdrawing the answer.

6          And since my client is now subject to arbitration

7    and an arbitrator will hear and will actually address the

8    spoliation issue --

9          THE COURT:  Well, look, if it gets to that point,

10   I'm sure we will talk about what the appropriate sanction is.

11         But whether a sanction -- whether a sanctionable

12   violation of the preliminary injunction has occurred, that

13   remains on the table.

14         MR. RUDERMAN:  Yes, sir, Your Honor.

15         THE COURT:  Okay.  Good.  All right.  So, look,

16   let's do this.

17         Let's find -- anyone think it's going to be more

18   than a week for the experts?  I'm really hoping not.  I'm sure

19   you are all as well.

20         MR. SCHAFHAUSER:  A week?  Excuse me.  A week to

21   present the expert testimony by itself?

22         THE COURT:  Yeah.  For everybody to examine the

23   experts on both sides.  I can't --

24         MR. SCHAFHAUSER:  I don't think it would take longer

25   than that for sure.

```
1              THE COURT:  What do you all think?

2              MR. NELKIN:  We wouldn't disagree with that.

3              THE COURT:  What do you think?  What do you

4    anticipate?  I know there's some guesswork involved.

5              MR. SCHAFHAUSER:  Your Honor had actually set up a

6    schedule.  You said that the expert reports were going to be

7    the direct testimony.

8              THE COURT:  Yeah.  Right.

9              UNIDENTIFIED:  You said we're going to start with --

10             THE COURT:  Right.  With cross-examination.

11             UNIDENTIFIED:  -- cross-examination.

12             THE COURT:  A day?

13             UNIDENTIFIED:  Two or three days.

14             THE COURT:  Okay.  So let's find -- let's do this.

15             Let's find a week where we can get two or three days

16   worth of testimony on the experts.  Have a break.  We can

17   assess that and then come back with the remaining witnesses on

18   the hearing.

19             It may be that in the interim we'll all agree it's

20   not useful, but I just want to have this ready to go because,

21   you know, how old is this case?

22             It's coming up on its second birthday and we've

23   barely scratched the surface of where we need to go to resolve

24   the case on the merits.  We need to get moving.

25             UNIDENTIFIED:  You want us to meet and confer and
```

1     get dates for you right now?

2             THE COURT:  Let's look at the calendar.  First of

3     all, let me tell you when I'm available.

4             When do I have like two weeks with a week or two in

5     between.  Okay.  So let's do the week of the 12th for the

6     experts.

7             UNIDENTIFIED:  February 12th?

8             THE COURT:  Yeah.  And then two weeks later for

9     remaining witnesses.  Not the following week.  I want to have

10    a break in between in the event that we need to pause or

11    change course.  I don't know.  The 12th?  Purim, is that going

12    to interfere with anybody's ability to come to court?  I

13    didn't think so, but -- it won't -- I'll be here on Purim.

14    March 1st is Purim.

15            MR. NELKIN:  I thought you were setting it for the

16    week of the 12th you said.

17            THE COURT:  Yes.  I'm looking ahead to the second

18    week of it.

19            UNIDENTIFIED:  You want to start the second part on

20    a Thursday?

21            THE COURT:  Is that Thursday?  12th?

22            UNIDENTIFIED:  Does that make sense?

23            UNIDENTIFIED:  February 26th is the Monday.

24            THE COURT:  February 26th would be the Monday.  And

25    then the Friday is March 1st or --

1          UNIDENTIFIED:  Thursday.

2          THE COURT:  -- Thursday.  Is that going to interfere

3     with anybody's ability to be in court?

4          MR. NELKIN:  It's got a fast day and --

5          THE COURT:  It's a fast day.  Okay.  I'll be here,

6     but I'm not as observant as many.  So, all right.  We'll start

7     it that Monday and we'll be off the Thursday.

8          UNIDENTIFIED:  February 12th?  I'm sorry, I missed

9     that.

10          UNIDENTIFIED:  February 26th.

11          THE COURT:  I'm sorry.  February 12th for the expert

12     week.  The following week off.  The following week thereafter,

13     that's the week of the 26th, resuming with non-expert

14     witnesses.  We'll be off on the 1st.

15          MR. NELKIN:  Well, Your Honor, the 28th is the fast

16     day.

17          THE COURT:  Okay.

18          MR. NELKIN:  And the 1st the -- is Purim.  And Purim

19     actually technically one of the big readings is the night of

20     the --

21          THE COURT:  Let's look to the following week,

22     please.  So weeks of -- block off the weeks of February 12th

23     and March 5th.  All right.

24          We'll need a briefing schedule on the motions for

25     what I'm going to call the attachment and other relief.

1              UNIDENTIFIED:  Your Honor, before we get to that,

2     can we just get the dates that the expert reports are due?

3              THE COURT:  I'm going to have that in the order.

4     I'm just going to take --

5              UNIDENTIFIED:  Okay.

6              THE COURT:  -- the dates that were in the October

7     13th order and extend them out.  I'll have them in an order

8     later today.

9              UNIDENTIFIED:  Fine, Your Honor.  Sorry to

10    interrupt.

11             THE COURT:  That's fine.  Okay.  Give me a moment

12    here.  On the motion for attachment and other relief, let me

13    hear exactly what you want to accomplish, Mr. Nelkin.

14             MR. NELKIN:  Your Honor, would you like me to speak

15    at all to whether we think you have the power or not to do it,

16    because I believe --

17             THE COURT:  As between magistrate judge and district

18    judge?

19             MR. NELKIN:  Yeah.

20             THE COURT:  No.

21             MR. NELKIN:  Okay.

22             THE COURT:  No.

23             MR. NELKIN:  Okay.

24             THE COURT:  Some of it is injunctive relief.  It all

25    should have been directed to Judge Amon in the first instance.

1    I'll take the first cut at it.  What I can order, I will if

2    it's warranted.  What I can't, and think is warranted, I'll

3    recommend.

4              MR. NELKIN:  Okay.  But we'll put something in our

5    brief about that part.

6              THE COURT:  Please don't.  Look, it's --

7              MR. NELKIN:  Okay.  We just -- we think the case law

8    is pretty clear that --

9              THE COURT:  Does it matter which judge's name is on

10   the order to you?

11             MR. NELKIN:  No.

12             THE COURT:  Then let's see what it is you think

13   you're entitled to and if you're entitled to it.  Come on,

14   what is it you want?

15             MR. NELKIN:  Our concern, Your Honor, is, is that,

16   as you pointed out, this case has been delaying and taking a

17   long time to progress.

18             And what we're seeing is, is as the defendants are

19   receiving rulings that they perceive to be adverse, that

20   they're transferring their assets and they're shutting down

21   their companies and --

22             THE COURT:  So why aren't you filing a separate

23   action in the state court for fraudulent conveyance?  You

24   could do that, right?

25             MR. NELKIN:  But I think this court has the power

1    and we thought we were here already to do that.  I mean, I

2    guess we could do something in state court, but I think we

3    have defendants that are from different locations.  We might

4    get removed back anyway.  But what we're trying to accomplish

5    is we're trying to prevent having to litigate this case only

6    to find that the assets have disappeared.

7                THE COURT:  Well, as I read what was in -- to the

8    extent that you guys were addressing the substance of it as

9    opposed to the procedure -- and I think Mr. Schafhauser, your

10   response in particular -- not that I didn't read the others,

11   just that's the one that's on the top of my mind at the moment

12   -- you said what they're complaining about wasn't fraudulent

13   as to the plaintiff.  But is there a factual dispute about

14   these transfers of property?

15               MR. SCHAFHAUSER:  I don't believe it was fraudulent.

16               THE COURT:  Is there a factual dispute about the

17   transfers of property?  That A transferred X property to B for

18   Y price?

19               MR. SCHAFHAUSER:  I don't dispute the documents.

20   I'm being careful in answering.  I don't dispute the --

21               THE COURT:  You are always careful.

22               MR. SCHAFHAUSER:  I don't --

23               THE COURT:  Responsive would be nice too.

24               MR. SCHAFHAUSER:  I'm trying to answer.  I don't

25   dispute the documents that I've seen.

1          I haven't had a chance to do a full investigation of

2     the circumstances that led up to these transactions.  So I,

3     you know, I don't dispute what --

4          THE COURT:  Okay.  But if there are -- and, guys,

5     all of you, ladies and gentlemen, please feel free to weigh in

6     separately -- but is there any dispute that regardless of the

7     precise remedy being sought, if the -- if some or all of the

8     defendants here are changing the ownership of assets to make

9     them inaccessible to the plaintiff should there be a judgment

10    in his favor, that that is something about which this court

11    can take some action?  Anybody disagree with that proposition?

12         MR. GRANTZ:  You're asking whether or not you have

13    the authority to rule on (inaudible).

14         THE COURT:  Yeah.  Well, no.  It's not that --

15         MR. GRANTZ:  Yeah.  I was just going to --

16         THE COURT:  I'm trying to say -- because, look,

17    there have been a number of procedural objections.  This isn't

18    the right remedy.  It's not the right judge.  It's not the

19    right time.

20         But there are a lot of very disturbing allegations

21    being made.  I've no idea if they're true and I'm having

22    difficulty finding out from Mr. Schafhauser the extent to

23    which the facts are in dispute.

24         But what I'm asking about is whether anybody

25    disagrees with the basic proposition that there is some remedy

40

1    to be had if it's true that some or all of the defendants are

2    squirreling away assets in a way to make them inaccessible to

3    a prevailing plaintiff.

4           MR. GRANTZ:  Subject to the understanding that we

5    think that the application is premature, yes.

6           THE COURT:  Yeah.  I get that.  Okay.

7           MR. GRANTZ:  But the issue that you asked Mr.

8    Schafhauser about is, is there apt dispute about transfers --

9           THE COURT:  Yeah.

10          MR. GRANTZ:   -- and I don't think there is a fact

11    dispute about the fact that properties were transferred.  They

12    were bona fide transfers to unrelated parties.

13          THE COURT:  I get that.  Okay.  So --

14          MR. GRANTZ:  That was what you asked him.

15          THE COURT:  That was.  And I wasn't getting a clear

16    answer of whether it's in dispute.

17          MR. GRANTZ:  Right.

18          THE COURT:  Thank you, Mr. Grantz.  I appreciate it.

19          So look, what I think we need to do is there are

20    clearly disputes about whether a particular -- one particular

21    remedy being sought or another is available.  I get that.  You

22    should be able to fight about it.  But I don't think it's a

23    waste of time for us.

24          In the absence of any disagreement that doing the

25    thing that the plaintiff basically alleges, trying to hide

1      assets that should be available to cover a judgment so that a

2      judgment cannot be paid is something that the Court can take

3      action to prevent.

4              If that's generally not in dispute, I think we

5      should get to litigation of what's -- what facts are agreed

6      upon, resolve those that are disputed, and to the extent that

7      they show a basis for some remedy, just litigate what the

8      appropriate remedy is.

9              MR. GRANTZ:  I'm not sure that we're prepared to

10     agree with Your Honor as to that first point.  And certainly

11     to the extent that we don't agree, we want to take the

12     opportunity to object to it in our papers.

13             THE COURT:  Yeah.  Of course.  Yeah.

14             MR. GRANTZ:  To the extent that Your Honor concludes

15     that you do have that authority --

16             THE COURT:  When you say me as opposed to Judge Amon

17     or the Court?

18             MR. GRANTZ:  The Court.

19             THE COURT:  Okay.

20             MR. GRANTZ:  I'm talking about the Court.  I presume

21     that if Your Honor thinks you don't have the right to deal

22     with the injunctive issue, you'll talk to -- send it up and --

23             THE COURT:  Okay.

24             MR. GRANTZ:  Yeah.

25             THE COURT:  I just wasn't sure what distinction you

1    had brought.

2            MR. GRANTZ:  No.  That's the distinction I'm making,

3    which is we will object to it.

4            THE COURT:  Yeah.

5            MR. GRANTZ:  And if Your Honor or Judge Amon

6    believes that you have the authority, then we'll deal with the

7    next issue which is we clearly have fact disputes all

8    throughout the status report, not to mention the fact that the

9    status report is not an affidavit.  And there are documents

10   coming from --

11           THE COURT:  I'm not taking the -- I'm not taking it

12   as an affidavit.

13           MR. GRANTZ:  Right.

14           THE COURT:  Look, I essentially view it as a

15   procedurally, improvident, pre-motion conference letter.

16           MR. GRANTZ:  Okay.

17           THE COURT:  Okay?  That's all.

18           MR. GRANTZ:  That's fine.  So addressing those

19   issues --

20           THE COURT:  Yeah.

21           MR. GRANTZ:  -- we think that the allegations that

22   are being brought forth to Your Honor are -- we have to go

23   through them with our clients.

24           Obviously, we haven't done that.  We got this

25   request in what a week and it's filled with information that's

43

1    not within our knowledge.  So if we go through that with our

2    clients, we have to investigate these transactions.  We have

3    to understand what happened so that we can be in a position to

4    respond on the factual basis, not just on the legal basis.

5           THE COURT:  Okay.  So why don't you give me a notice

6    of motion and a brief in 30 days.

7           And you guys will respond in 30 days.  Okay?  Single

8    brief, please, unless there's something -- what we're not

9    going to do is what was -- what's been done in the past where

10   you've inundated the Court with just hundreds and hundreds of

11   pages of briefing on an issue.

12          MR. GRANTZ:  I'm fine with that, Your Honor.  Sorry

13   to interrupt you.

14          THE COURT:  Single brief.  If you want to have a

15   slight page extension, talk to each other about that.  I'm

16   happy to have a proposal from you all.  We'll work that out.

17   It's not going to be multiple briefs on the same issue.

18          MR. GRANTZ:  (Inaudible).  I mean, we have a lot of

19   concerns.

20          THE COURT:  Affidavits.  Look, that's the proof you

21   bring to bear on it.

22          MR. GRANTZ:  Okay.

23          THE COURT:  But, you know, just a unified set of

24   briefing on each side to tee up the issue.  All right.  So 30

25   days and 30 days.  And you guys can talk to each other about

1        the length of brief and see if you can come to an agreement?

2                    MR. SCHAFHAUSER:  Yes, Your Honor.

3                    THE COURT:  Okay.  Anything else that we need to

4        plan for today, Mr. Schafhauser?

5                    MR. SCHAFHAUSER:  There is one thing that counsel

6        and we discussed before the hearing and that is that we

7        discussed -- if Your Honor were amenable to it, I think both

8        sides would be amenable to having a settlement conference.

9                    THE COURT:  My goodness.

10                   MR. SCHAFHAUSER:  We concur with Your Honor's

11       sentiment that this litigation has already gone on pretty

12       long.  So if Your Honor were amenable, we would --

13                   THE COURT:  I am amendable.  Shame on me that I

14       haven't been asking.  Just given the nature of the litigation,

15       I assumed any hope of settlement was out of reach.  But, no,

16       really shame on me for not pursuing it at every opportunity.

17       I'm happy to pursue settlement.

18                   MR. SCHAFHAUSER:  I had asked counsel before the

19       hearing started this morning.  And when Your Honor came out on

20       the bench, we were exchanging dates.  But of course what dates

21       were available doesn't really matter because it depends on

22       your availability.

23                   THE COURT:  Okay.  Well, I'll make myself available.

24       Are you all in agreement that this is a useful exercise?  You

25       know.  I'm always happy to have a settlement discussion, and I

1    don't want to throw cold water on it, but what I don't want to

2    do is throw anything that we've been discussing as a schedule

3    off for us to come into a room together and have everybody

4    pump their chests off the record and then realize we're going

5    nowhere.

6              Have you explored actual settlement terms that would

7    be on the table?

8              MR. SCHAFHAUSER:  We actually had a mediation with

9    Judge Martin in -- I'm looking at counsel trying --

10             MR. GRANTZ:  It was right around the time the case

11   was filed.

12             MR. SCHAFHAUSER:  In January 2016, we had a back and

13   forth that day.  And quite honestly, I'm trying to remember,

14   Mr. Nelkin, whether we've had substantive communications since

15   then.

16             Sporadically, Your Honor, I think we've had

17   discussions frankly outside, but I can't remember offhand the

18   last substantive discussion.

19             MR. NELKIN:  I believe, and my memory could be

20   faulty, but I believe that the only exchange where numbers

21   were discussed was at the initial mediation at the very

22   beginning of the case.

23             THE COURT:  Well, look, there's a lot of water under

24   the bridge.  Let's leave it this way.

25             I am not just willing, I am eager to have you guys

1     settle this case and to help in any way I can with that.

2            What I would like you to do is talk among

3     yourselves.  If you get to the point where you're satisfied

4     that this is a good use of our time -- because you've got a

5     lot to do and I do not anticipate lightly changing the

6     schedule we've been talking about today.

7            If you all agree this is a good use of our time,

8     given all the other stuff that you've got to do, let me know

9     and I will find a time to put you on the calendar.

10           MR. NELKIN:  I mean, we had discussed doing it

11    sooner rather than later.

12           THE COURT:  Yeah.

13           MR. NELKIN:  I don't know if that works with your

14    schedule or not.

15           THE COURT:  We'll make it work.

16           MR. SCHAFHAUSER:  We had actually -- and again we're

17    back at the holidays which complicates things, but we had

18    discussed Monday as a possible date.

19           THE COURT:  That soon may be difficult.

20           MR. SCHAFHAUSER:  Okay.

21           THE COURT:  It probably is.  Let me just take a

22    look.  Let me just take a look at what I've got here.

23           MR. NELKIN:  Tuesday we're before Judge Amon in the

24    afternoon.

25           THE COURT:  Tuesday the 26th?

1             MR. NELKIN:  Yeah.

2             THE COURT:  Oh.  For some reason I was talking to

3     her and I thought she -- I think she was telling me it was

4     Thursday.  But you're sure it's Tuesday of next week?

5             MR. NELKIN:  Yeah.

6             UNIDENTIFIED:  Tuesday the 26th.

7             UNIDENTIFIED:  Three o'clock.

8             UNIDENTIFIED:  Three o'clock.

9             THE COURT:  Three o'clock.  Oh, boy.  No.  I'm

10    hesitating only because I had hoped to be there just to get up

11    to speed more quickly, but I've got something else that I

12    can't skip in a different case.

13            I could -- oh, boy, I could do the afternoon with

14    you on Monday.

15            MR. SCHAFHAUSER:  The problem we have -- and I told

16    this to Mr. Nelkin -- is my client is leaving for Israel out

17    of JFK at 6:00 so we were hoping to start earlier.

18            THE COURT:  Yeah.

19            MR. SCHAFHAUSER:  But that's fine.  We can perhaps

20    confer on another date and get back to Your Honor or --

21            THE COURT:  Well, let me see.  I think we could move

22    the stuff on Monday morning.

23            THE CLERK:  Yes.

24            THE COURT:  Okay.  All right.  Let me move some

25    things around and we'll meet Monday morning.  You going to

1    have principals here?

2              MR. SCHAFHAUSER:  I would intend to bring, yes, my

3    client.

4              MR. GRANTZ:  I don't think I'll have Mr. Ahern here

5    because of his condition.

6              THE COURT:  Okay.

7              MR. GRANTZ:  But I'll have him available by phone.

8              THE COURT:  Okay.  Look, what I want is to just make

9    this a good use of our time especially now I'm going to be

10   moving some things around to accommodate you.

11             My standard rule is principals in the court or on

12   the phone, whichever in your judgment you think is most useful

13   to making progress.  As long as progress can be made, that's

14   fine.

15             Can you get me something by Thursday with your

16   respective statements to settlement position?  I want to be up

17   to speed.

18             MR. NELKIN:  We're out of pocket --

19             THE COURT:  Oh, right, of course, yeah.  All right.

20   Look, I'm going to -- somewhat against my better judgment,

21   I'll do this on spec, you know, going into it without getting

22   anything in advance.

23             MR. SCHAFHAUSER:  The other alternative, and I,

24   again, I don't mean to speak this way, I'm addressing the

25   Court --

1           THE COURT:  Yeah.

2           MR. SCHAFHAUSER:  -- but it really depends on Mr.

3      Nelkin's preference too.  The other alternative is we could

4      pick another date which allows us both to put in our

5      submissions.

6           THE COURT:  Talk to each other.  Let's set aside

7      Monday to do this.

8           If you among yourselves think that -- whether

9      because of your respective positions or because I won't be up

10     to speed enough, you prefer to do it another date, contact

11     chambers and work something out.  It's fine with me.

12          The one thing I'll say, particularly if we're going

13     ahead on Monday morning and I don't have your settlement

14     statements in, I really don't want to spend the time with each

15     of you explaining why you're right.  I want to get down to

16     what you're prepared to do to end the case.

17          If early on, on both sides you're digging in and

18     we're not making progress, that's fine.  I'm not going -- I

19     promise you I'm not going to twist anybody's arm to settle the

20     case.

21          But if it looks like we're not making progress, I'll

22     call a halt to it pretty quickly.  So, the burden's going to

23     be on the parties to let me know that you're serious about

24     getting to a settlement.  Okay?

25          MR. SCHAFHAUSER:  Understood.

50

1          THE COURT:  Okay.

2          MR. SCHAFHAUSER:  Your Honor, may I ask this?  Could

3   I have the opportunity to consult --

4          THE COURT:  You need a few minutes?

5          MR. SCHAFHAUSER:  After discussing this with Mr.

6   Nelkin, perhaps we can --

7          THE COURT:  You just want a few minutes before we

8   wrap up for the day?

9          MR. SCHAFHAUSER:  Right.  Right.  I just want --

10          THE COURT:  Okay.

11          MR. SCHAFHAUSER:  -- I want to talk schedule with

12   him.

13          THE COURT:  Take a break.  Let's come back in five

14   minutes.  Okay?

15          MR. SCHAFHAUSER:  Thank you.  Thank you.

16   (Recess from 11:28 a.m. to 11:40 a.m.)

17          MR. NELKIN:  Yeah.  We can do that.

18          MR. GRANTZ:  Your Honor, before we get to the

19   settlement issue --

20          THE COURT:  Okay.  We're back on the record again.

21          MR. GRANTZ:  Sorry.

22          THE COURT:  Go ahead.

23          MR. GRANTZ:  We both have issues with the production

24   of the computers by Friday.  And mutually we will produce them

25   by next Wednesday.

```
1              THE COURT:  Okay.

2              MR. GRANTZ:  (Inaudible).

3              THE COURT:  Okay.  So that's -- I'm sorry.  Today

4     is the -- next Wednesday will --

5              MR. GRANTZ:  Next Wednesday is the 27th.

6              THE COURT:  27th.  Thank you.  Okay.

7              MR. SCHAFHAUSER:  Thank you, Your Honor.

8              MR. NELKIN:  And I assume that you will have yours

9     delivered to Stroz too.

10             MR. SCHAFHAUSER:  We're going to have it delivered.

11    Of course we're going to comply with it.

12             THE COURT:  Okay.  All right.

13             MR. NELKIN:  Yeah.  Thank you.

14             THE COURT:  For Monday, are we on?  Do you want to

15    do something else?  What do you have in mind?

16             MR. NELKIN:  The plaintiff is prepared to come in

17    on Monday and I believe it will be a worthwhile exercise.

18    I'm not sure where the defendants are right now.

19             MR. SCHAFHAUSER:  We have a concern that while it

20    might be a worthwhile exercise, (inaudible).  So what we've

21    asked for is a demand because (inaudible) so that we can come

22    in and deal with it.

23             But we haven't gotten --

24             THE COURT:  Okay.  Perfectly reasonable.  Look,

25    guys, I mean it.  I will do what I can to promote settlement.
```

1          I don't think it's useful until there's been a

2     demand.  Exchange a demand and offer.  Do it promptly.  All

3     right.  When you think that we are at the point where we can

4     schedule something, I will do it.  As you saw, I will move

5     things around to accommodate you.

6          MR. NELKIN:  Your Honor, I think because of

7     scheduling that we would like to have it on Monday.  And we

8     will give them a demand by tomorrow.

9          THE COURT:  You know, it's not that simple.  If you

10    -- there are a lot of parties on the other side.

11         They may have a lot of common interests and they

12    may border the lines, but there are a lot of people who have

13    to get to yes.  It doesn't happen overnight.

14         And I don't know where you've been with the demand,

15    but I'm not going to -- I'm not going to force anybody.  If

16    somebody says to me they're not ready to talk yet, I'm not

17    going to make them talk.

18         MR. SCHAFHAUSER:  The other --

19         THE COURT:  So that said, talk to each other.  If

20    you get a demand out and you decide it's worthwhile going on

21    Monday, I'll make it happen.

22         MR. SCHAFHAUSER:  The other alternative we

23    proposed, Your Honor, was any time -- subject of course to

24    the Court's available, any time the week of October 15th or

25    October 22nd, which is after the holidays for everyone.

53

1          THE COURT:  Okay.  Well, talk to each other.

2     What's the magic of Monday?

3          MR. NELKIN:  The magic of Monday is it's the first

4     and pretty much only day that the parties can do it before

5     the holidays and before we start having all of the hearings

6     and all of the other matters.

7          So we thought that on the plaintiff's side that if

8     there was a chance to resolve it before the parties had to do

9     all the work and the Court had to do all the work, that it

10    was worthwhile.

11         If that's going to be the case --

12         THE COURT:  Look, Mr. Nelkin. It just surpasses

13    belief that almost two years into the case your client

14    doesn't know what he wants.  Talk to them.

15         You think we can -- and look, guys, if you get a

16    demand today and you think we can be in a position to take

17    advantage of a settlement opportunity that we may not get

18    before you expend a lot of resources, maybe you want to go

19    forward on Monday.  I am not going to force it.

20         In fact, if you're not all in agreement that we

21    should go forward on Monday, we won't.  But if this is an

22    opportunity that's going to pass, I hope it won't.

23         MR. SCHAFHAUSER:  Fair enough, Your Honor.  We'll

24    look for packages tomorrow on that.  Thank you.

25         THE COURT:  Okay.  All right.  Thank you, all.

54

1          ALL COUNSEL:  Thank you.

2          THE COURT:  Have a good day.

3       (Proceedings concluded at 11:45 a.m.)

4          I, CHRISTINE FIORE, court-approved transcriber and

5    certified electronic reporter and transcriber, certify that

6    the foregoing is a correct transcript from the official

7    electronic sound recording of the proceedings in the above-

8    entitled matter.

9

10

11    _____          September 20, 2017

12    Christine Fiore, CERT

13

14

15

16

17

18

19

20

21

22

23