UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


STEVEN SCHREIBER,                    *      Case No. 15-CV-6861(CBA)
  *individually and derivately* *
  *on behalf of Two Rivers*       *
  *Coffee, LLC,*                  *
                 Plaintiff,       *      Brooklyn, New York
                                  *      March 2, 2018
       v.                         *
                                  *
EMIL FRIEDMAN, et al.,            *
                                  *
                 Defendants.      *
                                  *
* * * * * * * * * * * * * * * *

        TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
            BEFORE THE HONORABLE JAMES ORENSTEIN
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:            JAY P. NELKIN, ESQ.
                              CAROL NELKIN, ESQ.
                              Nelkin & Nelkin PC
                              3730 Kirby Drive, Suite 1200
                              Houston, TX  77098


For Emil Friedman,            PAUL HANS SCHAFHAUSER, ESQ.
  Defendant:                  Chiesa Shahinian & Giantomasi
                               PC
                              11 Times Square
                              31st Floor
                              New York, NY  10036


For E&J Defendants:           DAVID B. GRANTZ, ESQ.
                              Meyner & Landis LLP
                              One Gateway Center, Suite 2500
                              Newark, NJ  07102


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.


**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

```
APPEARANCES (Cont'd)

For Ezell, Rivera,
 and Salcedo, Defendants:      RICHARD A. FINKEL, ESQ.
                               Richard A. Finkel, Esq. &
                                Associates PLLC
                               270 Madison Avenue
                               Suite 1203
                               New York, NY  10016


For Michael Devine,
 Defendant:                    RICHARD B. FELDMAN, ESQ.
                               Rosenberg Feldman Smith, LLP
                               551 Fifth Avenue
                               24th Floor
                               New York, NY  10176


For Geoffrey Hersko,
 Defendant:                    ROBERT J. BERGSON, ESQ.
                               Abrams Garfinkel Margolis
                                Bergson, LLP
                               1430 Broadway
                               17th Floor
                               New York, NY  10018


For Solomon Birnbaum,          JEFFREY C. RUDERMAN, ESQ.
Crazy Cups, 26 Flavors,        Cyruli Shanks & Zizmor LLP
Office Coffee Services &       420 Lexington Avenue
Single Serve Beverages Dist,   Suite 2020
 Defendants:                   New York, NY  10170

For Interested Party
Mayer Koenig:                  NICHOLAS J. FASO, ESQ.
                               JASON M. DiMARINO, ESQ.
                               Whiteman Osterman & Hanna LLP
                               One Commerce Plaza
                               Suite 1900
                               Albany, NY  12260
```

3

1        (Proceedings commenced at 12:33 p.m.)

2            THE COURT:  Okay.  I'm on the record in Schreiber

3    against Friedman, 15-CV-6861.

4            Can we have appearances, please?

5            MR. NELKIN:  Good afternoon, Your Honor.  Jay Nelkin

6    and Carol Nelkin for the plaintiff.

7            THE COURT:  Good afternoon.

8            MR. SCHREIBER:  Steven Schreiber.

9            THE COURT:  Mr. Schreiber.

10           MR. KOENIG:  Mayer Koenig.

11           THE COURT:  Mr. Koenig.

12           MR. FASO:  Good afternoon, Your Honor Nicholas Faso

13   Whiteman Osterman & Hanna for Mayer Koenig.

14           THE COURT:  How do you spell your name, sir?

15           MR. FASO:  F, as in Frank, A-S-O.

16           THE COURT:  Good afternoon.

17           MR. DiMARINO:  Jason DiMarino, also from Whiteman

18   Osterman & Hanna.

19           THE COURT:  Good afternoon.

20           MR. SCHAFHAUSER:  Good afternoon, Your Honor.  Paul

21   Schafhauser, Chiesa Shahinian & Giantomasi for Emil Friedman.

22           THE COURT:  Good afternoon.

23           MR. GRANTZ:  Good afternoon, Your Honor.  David

24   Grantz, from the law firm of Meyner & Landis on behalf of the

25   E&J defendants and (indiscernible).

4

```
1                THE COURT:  Good afternoon.
2                MR. FELDMAN:  Richard Feldman on behalf of Michael
3      Devine (indiscernible).
4                THE COURT:  Afternoon.
5                MR. BERGSON:  Good afternoon, Your Honor.  Rob
6      Bergson, Abrams Garfinkel Margolis Bergson, on behalf of
7      Geoffrey Hersko.
8                THE COURT:  Good afternoon.
9                MR. FINKEL:  Good afternoon, Your Honor.  Richard
10     Finkel for Ezell, Rivera, and Salcedo.
11               THE COURT:  Good afternoon.
12               MR. RUDERMAN:  Good afternoon, Your Honor.  Jeffrey
13     Ruderman, Cyruli Shanks & Zizmor, on behalf of defendant
14     Birnbaum.
15               THE COURT:  Good afternoon.  All right.  Welcome
16     back everybody.
17               So I know we had all hoped to avoid the need to
18     appear today, and I have Mr. Nelkin's letter filed earlier
19     today.
20               So it seems like we've got a free rider problem
21     that's getting in the way of the settlement.  I am happy to be
22     guided by what you all think makes sense.
23               If the settlement can't be achieved because of Mr.
24     Koenig's position, we'll go forward with the litigation and
25     we'll talk about Mr. Koenig's role, perhaps as a necessary
```

1    party, which would of course, you know, share the burdens that

2    you're all bearing with him.

3           If you prefer to focus your efforts on settlement,

4    I'm open to discussing that in light of what's in the letter,

5    but you guys tell me.  Where do we stand?

6           UNIDENTIFIED SPEAKER:  Well, Your Honor, I mean, the

7    plaintiff and all the defendants have been working diligently

8    (indiscernible) to avoid the need for this hearing today.

9           THE COURT:  Yes.

10          UNIDENTIFIED SPEAKER:  We agree that we do have a

11   free rider problem.  We felt --

12          THE COURT:  And the solution is to stop making it a

13   free ride.

14          UNIDENTIFIED SPEAKER:  Right.  And, well, and we had

15   actually tried a different approach, which was to, from the

16   outset we thought we had an agreement with -- we think we did

17   have an agreement with the -- Mr. Koenig, and now it appears

18   that Mr. Koenig, in fact, that he will have not only a free

19   ride but he won't actually take the horse and shoot the rider

20   because he appears to be unwilling to allow for the

21   distribution of proceed to Mr. Schreiber.

22          And he also appears unwilling to do a settlement,

23   which poses a problem for the --

24          THE COURT:  Walk me through, and anybody tell me

25   what the problem is going to be if you all settle on the terms

1      that you agree to.

2             UNIDENTIFIED SPEAKER:  So, I believe the original

3      problem from the plaintiff's perspective was that Mr. Koenig,

4      having in our opinion, agreed to how the proceeds would be

5      distributed, would not -- is that's (indiscernible).

6             THE COURT:  No, please.  I just have a question I'm

7      trying to figure out.  If you just ignore Mr. Koenig's

8      position and say, we have an agreement among ourselves, what

9      can't you accomplish?

10            UNIDENTIFIED SPEAKER:  So I believe, and Mr.

11     (inaudible) may be able to brief this issue better than I can,

12     but my impression is, is that we could settle all of the

13     derivatives as the direct claims and the derivative claims

14     that my client has, and plaintiff would be prepared to

15     (inaudible) to that agreement.

16            I believe, and I believe that the Court could wipe

17     out any derivative claim from a res judicata approach.  I

18     believe Mr. Schafhauser may be concerned as to whether or not

19     Mr. Koenig could come up with some creative --

20            THE COURT:  Well, let me turn to Mr. Schafhauser.

21     What's going to happen from your perspective if you don't get

22     Mr. Koenig to sign on?

23            MR. SCHAFHAUSER:  If I don't get Mr. Koenig to sign

24     on and I don't get a release from him, then I face -- Mr.

25     Friedman faces the prospect of having this same case brought

1    by Mr. Koenig the day after we settle with Mr. Schreiber,

2    which would be obviously a calamity for my clients.

3              THE COURT:  Right.

4              MR. SCHAFHAUSER:  In other words, when we were

5    before Your Honor -- actually before we came to Your Honor, we

6    had discussions that this was going to be a global deal, that

7    this was going to involve every defendant.

8              I actually got Mr. Nussbaum to sign on, who is not a

9    party.  Kind of like Mr. Koenig, he's not a party, but he had

10   signed on.  We actually contacted Mr. (Indiscernible) be a

11   name Your Honor will remember.  And he's agreed to do certain

12   things under this deal with the plaintiff.

13             And we came to Your Honor and it was going to be

14   releases by everyone against (indiscernible), and that's the

15   problem.

16             THE COURT:  Well, what exposure are you worried

17   about that's more than just you'd prefer to nail everything

18   down?  But is there a realistic threat of litigation that

19   you've got to bat away?

20             MR. SCHAFHAUSER:  Again, Mr. -- I knew none of this

21   until Tuesday of this week.

22             THE COURT:  Right.

23             MR. SCHAFHAUSER:  But on Tuesday of this week I

24   found out that Mr. Koenig had obtained counsel.  Who I --

25             THE COURT:  Yeah.

1          MR. SCHAFHAUSER:  -- now have met.  And I can't

2   assess quite honestly, Your Honor, whether Mr. Koenig is

3   serious about pursuing claims against my client or not.  I

4   haven't had a discussion with him.  I found out about this,

5   this week.

6          THE COURT:  So, Mr. --

7          MR. SCHAFHAUSER:  But in all candor, Your Honor, for

8   five and a half months I thought I -- you know, we had a

9   normal (indiscernible).

10         THE COURT:  No, no, you guys have been working at

11  it.  I get it.

12         All right.  So, Mr. Faso or Mr. DiMarino, what is

13  you want to accomplish here?

14         MR. FASO:  Well, Your Honor, respectively we don't

15  agree with (indiscernible).

16         THE COURT:  All right.  Well, respectfully I do.  So

17  tell me -- answer my question.  What would you like to

18  accomplish?

19         MR. FASO:  Well, we are interested in settlement.

20  Absolutely  And we don't want to be (indiscernible) about

21  that.  We have some questions as to whether the settlement is

22  reasonable and in the best interest of the corporate entity.

23         THE COURT:  Where have you been for the last few

24  years?

25         MR. FASO:  I understand we've been monitoring the

9

1    litigation and --

2            THE COURT:  Well, you've monitored it and this is

3    what we've got.  Where have you been if you have any interest

4    that wasn't adequately being addressed?

5            MR. FASO:  Well, Your Honor, we understood that

6    under Rule 231 we have to have an opportunity to address and

7    object to the settlement.

8            THE COURT:  Mr. Faso, where have you been while

9    these folks have been spending a lot of their money

10   litigating?  What has happened that has been dissatisfactory

11   to your client?

12           MR. FASO:  The main thing that's dissatisfactory to

13   our client is the way that the distribution of the settlement

14   proceeds are structured.

15           THE COURT:  All right.  Bring the case.

16           MR. FASO:  So --

17           THE COURT:  Or, let's implead you, right?  We'll

18   share the litigation, but we've got a lot of litigation costs

19   ahead.  A lot.  And I'm sure they'll all be happy to share

20   them with you.

21           MR. FASO:  Well, we understand that, Your Honor, and

22   we don't want to cause any future litigation.  What we'd like

23   to do is hammer out a couple of points on the settlement

24   agreement and --

25           THE COURT:  You're pretty late to the table for

1    that.  If you can work something out in the next week or two,

2    good for you.  But --

3              MR. FASO:  Your Honor, it's my understanding --

4              THE COURT:  Excuse me.  But if you want to come in

5    and reap the benefits of the work that these folks have all

6    been doing, without your client having to pay his fair share,

7    you might not find that they're willing to share with you in

8    that regard.

9              So if they can't, you know, your client has a right

10   to do that.  And they have a right to make sure that your

11   client is part of this litigation.  We'll do that.

12             Is there some relief you want from me, Mr. Faso?

13             MR. FASO:  Well, Your Honor, if you're willing to

14   consider approving the settlement we'd like an opportunity to

15   submit our objections in writing.

16             THE COURT:  What -- is there anything that the Court

17   needs to approve?  It's a private settlement.

18             MR. FASO:  The derivative actions, our understanding

19   is that the Court has to approve the settlement to make sure -

20   -              THE COURT:  What do you mean derivative action?

21   We've got a complaint that's in this court.  It will be

22   settled.  There will be a stipulation of dismissal.  Does

23   anybody think, who is a party, that there would be anything

24   for the Court to approve?

25             MR. NELKIN:  Well, Your Honor, I think as a

1    practical matter, there is no settlement right now without his

2    client's signature.

3              THE COURT:  But does the Court need to sign off on

4    the fairness, the procedural propriety of it, or is it just a

5    matter of ending the litigation by a stipulation of dismissal?

6              MR. NELKIN:  I believe that the direct claims do not

7    require any -- any approval.  I believe that it's possible to

8    read the rules as requiring the Court to approve the dismissal

9    of the derivative claim.

10              THE COURT:  When you say the derivative claim, the

11    claim on behalf of the company?

12              MR. NELKIN:  Yes.

13              THE COURT:  I see.

14              MR. NELKIN:  However, and so -- but Mr. Faso is

15    assuming that there is a settlement.  And right now I believe

16    it's Mr. Schafhauser's position that unless there's a release

17    and a signature, there is no settlement.

18              THE COURT:  Uh-huh.

19              MR. NELKIN:  So there's noting for us to approve.

20    So we either go forward with the litigation, or we reach some

21    sort of an agreement as to how we're all going to resolve it.

22              But I don't think, and under that scenario I believe

23    that all parties who could possibly object would approve it,

24    so there wouldn't be anything for the Court to need to approve

25    because everyone would approve.

1           THE COURT:  Right.  To the extent that there is a

2    concern on the defendant's side about potential litigation,

3    obviously, the clock is ticking on that.  We've been at this

4    for a couple years.  I guess a little over two years.

5           So we've got presumably what -- when is the statute

6    going to run on the claims that have been asserted?

7           UNIDENTIFIED SPEAKER:  Well, Your Honor, one thing I

8    might suggest is perhaps Your Honor could ask Mr. Faso to put

9    forth all possible direct claims that his client has.  If he

10   has none, then I believe that we're --

11          THE COURT:  Can I force him to do that?

12          UNIDENTIFIED SPEAKER:  Well he -- part of his case.

13          THE COURT:  He's not.  What you're worried about is

14   a claim that he will bring, right?

15          UNIDENTIFIED SPEAKER:  Correct.  Correct.

16          THE COURT:  When is the statute going to run out on

17   these claims?

18          UNIDENTIFIED SPEAKER:  Well, some -- I think RICO is

19   four years.

20          UNIDENTIFIED SPEAKER:  And may have run already.

21          UNIDENTIFIED SPEAKER:  But if, you know, it depends.

22          THE COURT:  Right.

23          UNIDENTIFIED SPEAKER:  Your Honor, my position is

24   very simple.

25          THE COURT:  Yeah.

1           UNIDENTIFIED SPEAKER:  My position is we were before

2     Your Honor in September.  We agreed on the terms then.  We've

3     done yeoman's work.

4           I think Mr. Nelkin will agree, we've spent more time

5     than any of us would have imagined to even more further

6     perfect the terms in the attached (indiscernible).

7           I'm not going to bore you with all the details, but

8     we had accountants look at this, we had tax lawyers looking.

9     We had all kinds of people look at this.  And spent on both

10    sides I think it's fair to say, a lot of time and money on it.

11          But I think we have a view that this is an agreement

12    that has been reached.  I mean, you know, yesterday we agreed

13    that -- I think, again, not to put words in counsel's mouth,

14    but there's no issues as to the settlement -- the form of the

15    settlement agreement.

16          THE COURT:  Uh-huh.

17          UNIDENTIFIED SPEAKER:  I literally spent time on the

18    phone with --

19          THE COURT:  Again, you're in agreement with them.

20    So look, I'm trying to figure out, when is the statute going

21    to run?  Yeah, it's different for different claims.  I think

22    the longest is probably RICO.

23          UNIDENTIFIED SPEAKER:  Well, I think there's a

24    breach of -- there's arguably a breach of contract, breach of

25    fiduciary duty claim.

14

1          THE COURT:  Which is going to be when?

2          UNIDENTIFIED SPEAKER:  It's six years in New York, I

3   think.

4          UNIDENTIFIED SPEAKER:  Which also gives us a direct

5   fraud claim, which is six years in New York.

6          THE COURT:  Six?  Okay, going back to '15.

7          UNIDENTIFIED SPEAKER:  Right.

8          THE COURT:  Presumably.

9          UNIDENTIFIED SPEAKER:  So we have until 2021 where

10  Mr. Koenig can do things.

11         THE COURT:  Can do things.  Right.

12         And it's not my first choice, necessarily, but I'm

13  wondering if the absence of a better alternative, there is a

14  way forward for the parties to this case to go forward with

15  things as they've settled to basically put that in motion,

16  transfer of money, transfer of rights, and put the case on

17  hold.  And everybody, you know, preserves their rights to go

18  forward in the litigation if Mr. Koenig comes in and upsets

19  the apple cart by asserting new claims.

20         But at that point, obviously, for him to do that

21  effectively he'd need to share in exchange of information that

22  you've achieved up to now at great cost to yourselves, and

23  that would implicate the need for cost sharing.

24         UNIDENTIFIED SPEAKER:  Agreed, Your Honor.

25         THE COURT:  And if he never does it then, at the

1    end, you know, when the statute runs out, you say okay, now we

2    have a stip.

3         UNIDENTIFIED SPEAKER:  And that's the -- that is a

4    very good possibility too.

5         Your Honor, if I may?  What I would, in my heart of

6    hearts like to see, because we literally have everything done.

7         There is only -- we've done Exhibits A through O,

8    and we've agreed on all of those except for two exhibits.  And

9    the reason those two exhibits aren't done is that there's two

10   versions of those exhibits.

11        One version is if Mr. Koenig is a participant, and

12   one version is if Mr. Koenig is not a participant.  That's

13   holding up the signing of a document that my client would

14   otherwise be prepared to sign right now.

15        What I would like to see, in other words, is I'd

16   like to see these parties, however they need to do it, I don't

17   know the details.  I found out about it this week only, but

18   I'd like to see them resolve their issues.

19        And if Mr. Nelkin believes he has an enforceable

20   agreement with Mr. Koenig, perhaps the Court can entertain

21   whether that agreement is enforceable, and that resolves the

22   whole case (indiscernible).

23        We were here on (indiscernible).  I believe there

24   was even a phone call made (indiscernible).

25        THE COURT:  Yeah.

1          UNIDENTIFIED SPEAKER:  And that he approved the

2    settlement.  So (indiscernible) as to whether or not

3    (indiscernible) settlement terms (indiscernible) and the

4    amount of time -- I didn't spend time with Mr. Schafhauser and

5    Mr. Nelkin (indiscernible) settlement.

6          But (indiscernible) shouldn't have been ignored by

7    anyone on this side or that side if this is going to get

8    overturned.  He approved it.

9          THE COURT:  That's my recollection.  You know, I

10   didn't speak with Mr. Koenig personally, and obviously, you

11   know, if we're going to go down that road, there's going to

12   need to be a hearing on that.

13         UNIDENTIFIED SPEAKER:  That was my point, which

14   is --

15         THE COURT:  Yeah.

16         UNIDENTIFIED SPEAKER:  -- are you talking about

17   (indiscernible) spending --

18         THE COURT:  Uh-huh.

19         UNIDENTIFIED SPEAKER:  -- just to get us here today,

20   and they're going to upset it now at the very last minute.

21   They should have to pay for that.

22         THE COURT:  They may well.  I don't want to predict

23   whether they will or they won't.

24         If we go down that road, there will be a hearing.

25   You know, he'll testify, and you'll all testify and -- no, you

1    all, but you know.  As needed, we'll develop the record.

2              But, Mr. Koenig, am I right that you were contacted

3    telephonically during the settlement conference?

4              MR. KOENIG:  I was.  I did not give an answer on the

5    spot.  I requested to obtain legal counsel (indiscernible).

6              THE COURT:  Oh, that's entirely different from what

7    I recall, but you know, if we need to, we'll develop the

8    record further on that.

9              MR. KOENIG:  (Indiscernible.)

10             THE COURT:  But look, you know, I'm happy to give

11   you guys a week or so to work this out as best you can.  Then

12   we'll move forward.

13             MR. FASO:  Your Honor, I think one point that you

14   briefly touched on is that it is our position that the Court

15   does need to include the settlement (indiscernible).

16             THE COURT:  You're not a party here.  So, I don't --

17   look, you may well become a party and at that point I'll have

18   to worry about what your position is.

19             But right now I just need to know if we have a

20   settlement or not.

21             MR. FASO:  Because of that procedure --

22             THE COURT:  Yes.

23             MR. FASO:  -- (indiscernible) --

24             THE COURT:  Yes.

25             MR. FASO:  -- as a member of the LLC we have an

1    opportunity to object to the settlement, despite not being a

2    party.

3            THE COURT:  There's no settlement to object to.

4            Mr. Faso, I get it.  You've got a client who finds

5    himself in a position of leverage to extract some value that

6    he might not otherwise have if you were a party here.  God

7    bless you.

8            You want to do the best for him that you can, but

9    let's not pretend it's something that it isn't.

10            MR. FASO:  And, Your Honor, I think our objection

11    should be clear.  The objection is not --

12            THE COURT:  Objection to what?  What is going on in

13    this court now to which you object?

14            MR. FASO:  To the proposed settlement.

15            THE COURT:  There is no proposed settlement.

16            MR. FASO:  We received one last night.

17            THE COURT:  There is nothing pending in this court

18    that is a proposed settlement.  I have not looked at the rule

19    about this.  I'm not sure that there has to be.  Maybe there

20    does.  I don't know.

21            Maybe it can properly be just done by virtue of a

22    stipulation dismissal.  I don't know.  But right now, there's

23    nothing pending to which you have any reason to object because

24    they haven't, apparently, settled.  And they may not.

25            And if they don't, I'm going to set an expedited

1    schedule and you know, part of that schedule will include how

2    best to bring in your client and then move forward with the

3    hearings that we need to continue, and the discovery that we

4    need to continue.

5         And a threshold issue will be to get your client up

6    to speed, you know, what should his allocation of the costs

7    borne to date be.  So, we'll talk about that.

8         But I'm sure that in the interim, before we get to

9    that point, you want to work with the other counsel here to

10   see if he can avoid incurring those burdens.

11        MR. FASO:  (Inaudible.)

12        THE COURT:  All right.  Anything else you want to

13   tell me?

14        MR. FASO:  We've had some difficulty engaging with

15   opposing counsel, but I think after this conference today,

16   Your Honor, that all parties will work in good faith and sit

17   down and hammer out the settlement.

18        THE COURT:  Well, if not before, better after.

19        UNIDENTIFIED SPEAKER:  Your Honor, I

20   (indiscernible).

21        THE COURT:  Well, there's no question there's been

22   trouble communicating.  Who's responsible for that trouble

23   communicating I'm not in a position to know right now.  I

24   don't think I need to.  But why don't I suggest this?

25        Let's come up with a schedule where, at least in the

1    first instance, the conversations have to be among the lawyers

2    on this -- at this table, on the plaintiff's side.

3            So, do you want me to impose a schedule where you

4    all sit down so you don't have to worry about a problem

5    communicating?  Or do you think that like reasonable

6    professionals, you can manage that on your own?

7            UNIDENTIFIED SPEAKER:  I don't think a schedule is

8    necessary.

9            THE COURT:  Okay.  So you'll talk to each other.

10           What do you think makes sense?  A week or two before

11   we get back together?

12           I want to make sure that whatever we're going to do,

13   we get on track to do it before the next holiday interferes

14   with a lot of your schedules.

15           UNIDENTIFIED SPEAKER:  Your Honor, I think it would

16   be around the 21st or the 22nd.  That would be preferable to

17   the plaintiff.

18           THE COURT:  Anybody have a problem with either of

19   those dates?

20           (No audible response.)

21           THE COURT:  No?

22           UNIDENTIFIED SPEAKER:  I don't believe so.  I just

23   don't know what my kids' vacation week is.  It sounds like

24   (indiscernible), but I don't believe so, Your Honor.

25           But in all candor, I think this is an issue between

1    that side of the table.

2           THE COURT:  It may well be.  It may well be.  I

3    assume --

4           UNIDENTIFIED SPEAKER:  (Indiscernible.)

5           THE COURT:  Yeah, yeah.  Okay, look --

6           UNIDENTIFIED SPEAKER:  Everybody on this side is

7    ready to sign.

8           UNIDENTIFIED SPEAKER:  Yeah, Your Honor.

9           THE COURT:  Okay.

10          UNIDENTIFIED SPEAKER:  We have a deal, as far as

11   we're concerned.

12          THE COURT:  I get it.

13          UNIDENTIFIED SPEAKER:  Subject to that.

14          THE COURT:  To the extent that what they come up

15   with, if they come up with something, requires some tweaking

16   just of the form of the release or something like that.

17   You'll need to be involved.

18          But more importantly, to the extent that we can't

19   resolve this, we do need everybody back in court at the next

20   session to, you know, plan for the litigation.

21          All right.  So 21st and 22nd were the dates.  Does

22   anybody have a problem with either one of those?  Sounds like

23   no?

24          UNIDENTIFIED SPEAKER:  Just if, I don't have a

25   calendar in front of me.  But if either of them is a Friday,

1    I'd prefer one that's on --

2            THE COURT:  No, no, the 21st and 22nd.

3            UNIDENTIFIED SPEAKER:  It's Wednesday and Thursday.

4            THE COURT:  Wednesday and Thursday.

5            UNIDENTIFIED SPEAKER:  And then, no, I don't have a

6    problem.

7            THE COURT:  Okay.  Why don't we plan Thursday the

8    22nd at 10:30?

9            All right.  Anything else anyone thinks we can

10   accomplish today?

11           UNIDENTIFIED SPEAKER:  No, Your Honor.  Thank you.

12           THE COURT:  Yeah.  And --

13           UNIDENTIFIED SPEAKER:  Your Honor.

14           THE COURT:  Best of luck working things out.  If you

15   think I can be of assistance in that, you let me know.

16           UNIDENTIFIED SPEAKER:  Your Honor, (indiscernible)

17   this could be either on the record or off the record, and this

18   is (indiscernible).

19           THE COURT:  We're on right now.

20           UNIDENTIFIED SPEAKER:  Oh, that's fine.

21           THE COURT:  Yeah.

22           UNIDENTIFIED SPEAKER:  I'm an observer to what's

23   going on, but it seems to me that if Your Honor were

24   (indiscernible) and it had time, it may be helpful for Your

25   Honor to help to resolve (indiscernible).

1           THE COURT:  Well, I'm available when called.

2    Thanks, everybody.  Have a good day.

3           (Proceedings concluded at 12:56 p.m.)

4

5       I, CHRISTINE FIORE, court-approved transcriber and

6    certified electronic reporter and transcriber, certify that

7    the foregoing is a correct transcript from the official

8    electronic sound recording of the proceedings in the above-

9    entitled matter.

10

11           _Christine Fiore_

12    _____          April 2, 2018

13    Christine Fiore, CERT

14

15

16

17

18

19

20

21

22

23

24

25