UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


STEVEN SCHREIBER,                    *      Case No. 15-CV-6861(CBA)
 *individually and derivately*       *
 *on behalf of Two Rivers*           *
 *Coffee, LLC,*                      *
                  Plaintiff,         *      Brooklyn, New York
                                     *      March 22, 2018
     v.                              *
                                     *
EMIL FRIEDMAN, et al.,               *
                                     *
                  Defendants.        *
                                     *
* * * * * * * * * * * * * * * * *

        TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
           BEFORE THE HONORABLE JAMES ORENSTEIN
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:              JAY P. NELKIN, ESQ.
                                CAROL NELKIN, ESQ.
                                Nelkin & Nelkin PC
                                3730 Kirby Drive, Suite 1200
                                Houston, TX  77098


For Emil Friedman,             PAUL HANS SCHAFHAUSER, ESQ.
 Defendant:                    Chiesa Shahinian & Giantomasi
                                 PC
                                11 Times Square
                                31st Floor
                                New York, NY  10036


For E&J Defendants:            DAVID B. GRANTZ, ESQ.
                                Meyner & Landis LLP
                                One Gateway Center, Suite 2500
                                Newark, NJ  07102


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

APPEARANCES (Cont'd)

```
For Ezell, Rivera,
 and Salcedo, Defendants:      RICHARD A. FINKEL, ESQ.
                               Richard A. Finkel, Esq. &
                                Associates PLLC
                               270 Madison Avenue
                               Suite 1203
                               New York, NY  10016

For Michael Devine,           RICHARD B. FELDMAN, ESQ.
 Defendant:                    Rosenberg Feldman Smith, LLP
                               551 Fifth Avenue
                               24th Floor
                               New York, NY  10176

For Geoffrey Hersko,          ROBERT J. BERGSON, ESQ.
 Defendant:                    Abrams Garfinkel Margolis
                                Bergson, LLP
                               1430 Broadway
                               17th Floor
                               New York, NY  10018

For Solomon Birnbaum,         JEFFREY C. RUDERMAN, ESQ.
Crazy Cups, 26 Flavors,        Cyruli Shanks & Zizmor LLP
Office Coffee Services &        420 Lexington Avenue
Single Serve Beverages Dist,   Suite 2020
 Defendants:                   New York, NY  10170

For Interested Party
Mayer Koenig:                  NICHOLAS J. FASO, ESQ.
                               JASON M. DiMARINO, ESQ.
                               Whiteman Osterman & Hanna LLP
                               One Commerce Plaza
                               Suite 1900
                               Albany, NY  12260
```

3

```
1              (Proceedings commenced at 10:41 p.m.)

2              THE CLERK:  Civil cause for a status conference,

3       Shreiber v. Friedman, et al, docket no. 15 Civil 6861.

4              Will the parties please state their appearances for

5       the record, starting with the plaintiff?

6              MR. NELKIN:  Jay Nelkin and Carol Nelkin for the

7       plaintiff.

8              THE COURT:  Good morning.

9              MR. SCHREIBER:  Steven Schreiber.

10             THE COURT:  Good morning.

11             MR. KOENIG:  Mayer Koenig.

12             THE COURT:  Good morning.

13             MR. FASO:  Nicholas Faso for Mayer.

14             THE COURT:  I'm sorry, it was?

15             MR. FASO:  Nicholas Faso for Mayer.

16             THE COURT:  Mr. Faso.  Good morning.

17             MR. SCHAFHAUSER:  Good morning, Your Honor.  Paul

18      Schafhauser, Chiesa Shahinian & Giantomasi for the Friedman

19      defendants.

20             THE COURT:  Good morning.

21             MR. GRANTZ:  Good morning, Your Honor.  David

22      Grantz from the law firm of Meyner & Landis, on behalf of the

23      Oil and Trucking defendants, and the E & J defendants.

24             THE COURT:  Good morning.

25             MR. SMITH:  Good morning, Your Honor.  Michael
```

4

1    Smith, Rosenberg Feldman Smith, for the Devine defendants.

2            THE COURT:  Good morning.

3            MR. BERGSON:  Good morning, Your Honor.  Rob

4    Bergson, Abrams Garfinkel Margolis Bergson for Geoffrey

5    Hersko.

6            THE COURT:  I'm sorry, it was Mr. Bergson?

7            MR. BERGSON:  Bergson.

8            THE COURT:  Yes.  Okay.  Yes, sir.  Good morning.

9            MR. RUDERMAN:  Good morning, Your Honor.  Jeffrey

10   Ruderman, Cyruli Shanks & Zizmor for the Birnbaum defendants.

11           THE COURT:  Good morning.  And I've just gotten a

12   letter from Mr. Finkel, saying that he was unable to get out

13   of his driveway.  So, we'll proceed.

14           Okay.  So, I've seen a lot of letters from you all.

15   One thing is clear, feel free to correct me if I'm wrong, but

16   it sounds like you haven't reached an agreement about how to

17   move forward.  Is it fair enough?

18           MR. NELKIN:  Fair enough, Your Honor.

19           THE COURT:  Okay.  So, next steps.  Let's take the

20   easier thing first.  Mr. Nelkin, you've asked to strike Mr.

21   Koenig's letter.

22           I'm not going to do that.  You have remedies

23   against your partner if you -- or your client's partner if

24   you want, but I'm not striking it.

25           MR. NELKIN:  Your Honor --

5

1          THE COURT:  I've made a ruling.

2          MR. NELKIN:  No, I was just going to say, but he's

3     not in the case.

4          THE COURT:  Yeah.

5          MR. NELKIN:  And so --

6          THE COURT:  Yeah, he's not in the case.  I asked

7     him to submit a letter, he submitted it.  You don't like what

8     he said.  You think he's violated a contract among

9     yourselves, among your clients, take appropriate action if

10    you like, sue him for defamation.  Sue him for breach of

11    contract.  I'm not striking it.  It's a public document.

12         Next, Mr. Schafhauser, you asked to enforce the

13    settlement.  I'm sure you're familiar with the Winston

14    factors, the four Winston factors.  You know -- look, I'm not

15    going to stop you from making the motion, but you know you

16    can't possibly prevail on it.

17         MR. SCHAFHAUSER:  May I be heard?

18         THE COURT:  Of course.

19         MR. SCHAFHAUSER:  What I think, and I think all of

20    us have been guilty of sending Your Honor letters, but what I

21    think everyone agrees on, I think, and we'll hear if I'm

22    mistaken, is that we have -- there is one issue.  There's one

23    issue which --

24         THE COURT:  Could you confine yourself to -- look,

25    I want to take one issue at a time.  The one issue -- do you

1    want to make a motion to enforce the settlement?

2            MR. SCHAFHAUSER:  Yes, but I would actually prefer

3    that all the issues between all the parties be resolved.

4            THE COURT:  Okay.  But if you're going to make this

5    motion --

6            MR. SCHAFHAUSER:  And I think there's a way to get

7    there.

8            THE COURT:  Excuse me.  We'll get to that.

9            MR. SCHAFHAUSER:  Okay.

10            THE COURT:  If there's a motion you want to make.

11    First of all, what, precisely is the settlement you want to

12    enforce, and who are the parties to it?

13            MR. SCHAFHAUSER:  Well, the settlement, Your Honor,

14    would be the terms that were agreed on before Your Honor that

15    we spend six months back and forth finalizing --

16            THE COURT:  Right.  Six months after the settlement

17    conference.  Look, if you're going to seek to enforce an

18    agreement, I have to know what agreement you'd want to

19    enforce.  Can you tell me where I could find that agreement?

20            MR. SCHAFHAUSER:  There's an agreement that on

21    March 2nd, actually at 1:00 in the morning.

22            THE COURT:  Uh-huh.

23            MR. SCHAFHAUSER:  Before the last conference, I

24    emailed Mr. Nelkin.  We spent the prior, whatever it was,

25    three or four hours finalizing the form of settlement

1      agreement --

2                 THE COURT:  Okay.

3                 MR. SCHAFHAUSER:  -- which reflected, I submit

4      respectfully, that reflected the terms that we had actually

5      agreed on, on September 25th.

6                 THE COURT:  Okay.  So the --

7                 MR. SCHAFHAUSER:  That's the documents though.

8                 THE COURT:  The attachment -- the attachment to

9      your email that you've just referenced is the agreement that

10     you'd want to enforce?

11                MR. SCHAFHAUSER:  That would be the agreement --

12                THE COURT:  Okay.

13                MR. SCHAFHAUSER:  -- that I would want to enforce.

14                THE COURT:  All right.  So let's just briefly --

15     again, we're not resolving something here, but just to see if

16     you're going make a motion.

17                The four Winston factors, right?  One, does it have

18     an expressed reservation of rights?  I'm sorry, an expressed

19     reservation of rights in the absence of an agreement, of a

20     written agreement.  Sorry, I'm misstating it.

21                Does it expressly require a signed agreement?

22                MR. SCHAFHAUSER:  The --

23                THE COURT:  The agreement that you want to enforce.

24                MR. SCHAFHAUSER:  It certainly contemplates

25     signatures and I've been very --

8

1          THE COURT:  Express -- look, if it --

2          MR. SCHAFHAUSER:  Yes.  Yes.

3          THE COURT:  If it expressly says, not effective

4     unless it's signed, right?

5          MR. SCHAFHAUSER:  That document does.  Yes, Your

6     Honor.

7          THE COURT:  Okay.  And that's the one you want to

8     enforce?

9          MR. SCHAFHAUSER:  That document -- what I want to

10    enforce, Your Honor, is --

11         THE COURT:  Mr. Schafhauser --

12         MR. SCHAFHAUSER:  Yes.

13         THE COURT:  -- you're going to sit down in a moment

14    unless you give me straight answers.  You told me that the

15    attachment to your email is the agreement you want to

16    enforce.  Correct?

17         MR. SCHAFHAUSER:  That's correct.

18         THE COURT:  That agreement, that you want to

19    enforce, says it's not effective unless signed, correct?

20         MR. SCHAFHAUSER:  That agreement --

21         THE COURT:  Correct or incorrect?

22         MR. SCHAFHAUSER:  Correct, Your Honor.

23         THE COURT:  Okay.  Look, you're not going to get

24    any -- make any progress by avoiding the questions.

25         Second, have all terms been agreed to?

9

1              MR. SCHAFHAUSER:  I believe the answer is yes, Your

2    Honor.

3              THE COURT:  Okay.

4              MR. SCHAFHAUSER:  And I believe --

5              THE COURT:  Fine.  Who are the parties to this

6    agreement?

7              MR. SCHAFHAUSER:  The parties to this agreement are

8    Steven Schreiber, plaintiff individually and derivatively on

9    behalf of Two Rivers and every defendant in this case have --

10             THE COURT:  Does it require Koenig's signature?

11             MR. SCHAFHAUSER:  Yes, it does.

12             THE COURT:  Is he a party to the agreement?  To the

13   agreement.

14             MR. SCHAFHAUSER:  He was a party to the agreement.

15             THE COURT:  Has he agreed to it?

16             MR. SCHAFHAUSER:  Well, I don't know, actually.

17             THE COURT:  So you can't --

18             MR. SCHAFHAUSER:  I don't know.

19             THE COURT:  So, in seeking to enforce it, you

20   couldn't demonstrate that all parties to the agreement have

21   agreed to it.

22             MR. SCHAFHAUSER:  Well, actually, Your Honor, I

23   have a letter -- I have a letter from Mr. Koenig's counsel

24   saying that he agrees to those -- the terms of the

25   settlement.

10

1          THE COURT:  Okay.  Look, like I said, I'm not going

2   to stop you from making it.  But I think you're a smart

3   enough lawyer to understand how the law applies here.  I do.

4   But if you want to make this motion, go ahead.

5          MR. SCHAFHAUSER:  Your Honor --

6          THE COURT:  Has anybody performed on it?

7          MR. SCHAFHAUSER:  Your Honor, may --

8          THE COURT:  Has anybody performed on it?

9          MR. SCHAFHAUSER:  For six months, Your Honor, I

10  spent countless hours --

11         THE COURT:  Sit down.

12         MR. SCHAFHAUSER:  May I be heard?

13         THE COURT:  Sit down, sir, if you're not going to

14  answer my questions.  Please.  You refuse?  Okay.  You

15  refuse.  I'm not going to hold you --

16         MR. SCHAFHAUSER:  I've answered --

17         THE COURT:  -- in contempt but --

18         MR. SCHAFHAUSER:  Your Honor, the answer is that --

19         THE COURT:  But you will be silent, sir, because I

20  have other things to discuss today.  If you're not going to

21  engage in good faith and answer the questions I ask, we're

22  not going to waste time on it.

23         MR. SCHAFHAUSER:  Your Honor, may I briefly be

24  heard?

25         THE COURT:  No, we'll set a schedule -- we will set

1    a schedule for your motion.  When would you like to file it?

2           MR. SCHAFHAUSER:  Your Honor, I would prefer not to

3    file the motion is what I'm trying to say.

4           THE COURT:  File it within one week, please.

5           MR. SCHAFHAUSER:  What I'm trying to say, Your

6    Honor, is that the case --

7           THE COURT:  We will take a five --

8           MR. SCHAFHAUSER:  -- can be resolved.

9           THE COURT:  -- minute break.  We will take a five-

10   minute break.  When we return  you will follow my

11   instructions.

12           (Off the record from 10:48 a.m. to 10:53 a.m.)

13           THE COURT:  Have a seat, please.  All right.

14           So, I have the motion to enforce a settlement a

15   week from today, March 29th, response a week later.  That

16   will get us to April 5th.  Those could be letter motions.

17           All right.  Give me one moment.

18           MR. NELKIN:  Your Honor, can we just --

19           THE COURT:  Just give me one moment, please.  Okay.

20           MR. NELKIN:  I just want to make sure our letter

21   motion is not due during Passover.

22           THE COURT:  Okay, two weeks.

23           MR. NELKIN:  Thank you.

24           THE COURT:  Yours would be due -- let's see.

25   Passover ends the 7th, I believe.  The 8th?

12

1          THE CLERK:  I think it's the 9th, Your Honor.

2          THE COURT:  Ninth.

3          THE CLERK:  I'm not certain.

4          UNIDENTIFIED SPEAKER:  Saturday the 7th, I believe

5     is the last --

6          THE COURT:  7th.  Okay.  9th?

7          MR. NELKIN:  That's fine.

8          THE COURT:  Okay.

9          MR. SCHAFHAUSER:  Your Honor, may this be heard on

10    what the motion would be?

11         THE COURT:  You want to enforce the settlement

12    agreement.

13         MR. SCHAFHAUSER:  Yes, what I wanted to --

14         THE COURT:  So --

15         MR. SCHAFHAUSER:  -- say is, this --

16         THE COURT:  Satisfy -- so satisfy the requirements

17    for enforcing the settlement and, you know, a basic part of

18    it will be provide, you know, the agreement that you want to

19    enforce.

20         MR. SCHAFHAUSER:  Right.  But what I wanted to say

21    is, there's another agreement that was reached, and under --

22    as I explained in my letter yesterday, under New Jersey law,

23    that agreement that was reached, the essential terms of which

24    bf Your Honor --

25         THE COURT:  Whatever agreement you think --

13

1          MR. SCHAFHAUSER:  -- on September 25th.

2          THE COURT:  -- you can enforce.

3          MR. SCHAFHAUSER:  I just, because the Winston

4     factors, I don't believe apply necessarily to that agreement.

5          THE COURT:  Yeah.  Well, if you don't think they

6     do, you'll need to address that because --

7          MR. SCHAFHAUSER:  And I will.

8          THE COURT:  -- I'm quite sure that they do.

9          MR. SCHAFHAUSER:  I just wanted to be clear on the

10    record.

11         THE COURT:  All right.

12         MR. SCHAFHAUSER:  Thank you.

13         THE COURT:  Okay.  Okay, wait.  Okay.  Now, one of

14    the issues that's been raised by different people at

15    different times is the possibility of a settlement conference

16    of one sort or another.

17         To the extent that the parties had reached terms

18    with which they were satisfied, I don't intend to invite

19    renegotiation of those.

20         To the extent that the plaintiff and Koenig wish to

21    have a settlement conference about how the proceeds of the

22    settlement between the plaintiff and the defendants is

23    divided up, we could do that.

24         Another option, if you want to discuss that is you

25    all agree to the settlement with a provision that the

14

1      proceeds will be resolved among yourselves, either through

2      settlement or litigation in this court or another tribunal.

3      Have you guys discussed that?

4              MR. NELKIN:  We've discussed various options, Your

5      Honor.  We had not discussed that particular option.  I would

6      also say that, I believe that one of the issues is that Mr.

7      Koenig believes he has direct claims against Mr.

8      Schafhauser's clients.

9              THE COURT:  Could be.

10             MR. NELKIN:  And Mr. Schafhauser wants a release

11     from Mr. Koenig.

12             THE COURT:  Uh-huh.

13             MR. NELKIN:  And what Mr. Koenig wants us to

14     somehow make sure that he's whole for unrelated litigation

15     involving a different company that --

16             THE COURT:  If that's the goal, then we're just

17     going to proceed straight to the rest of the litigation.

18             But Mr. Koenig's letter, I forget which one, I

19     believe it was March 15th, was quite explicit in proposing

20     that the settlement agreed to among the parties to the case

21     go forward and there be a separate, either settlement or

22     litigation of the way to divide up those.

23             Is that no longer something your client is

24     interested in, Mr. Faso?

25             MR. FASO:  Your Honor, that is something that my

1    client is interested in.

2                THE COURT:  Okay.

3                MR. FASO:  In fact, with respect --

4                THE COURT:  He does.

5                MR. FASO:  -- to the release that --

6                THE COURT:  Okay.

7                MR. FASO:  -- Mr. Nelkin mentioned --

8                THE COURT:  Sit down.  I got a yes.  You want to do

9    that?

10               MR. NELKIN:  We're willing to have a settlement

11   conference.  We're not willing to litigate beyond -- we don't

12   want to have another litigation about the proceeds.

13               So, we are prepared to go to a settlement

14   conference to try and resolve any issues that will get this

15   litigation settled and resolved.  But we're not interested in

16   having one deal and then having another litigation to divide

17   up the proceeds.

18               THE COURT:  Okay.  So if you can reach an agreement

19   as to -- limited to what's already been agreed to on the

20   defendant's side, about how to divide that up, you're going

21   to do that?  You're going to sign on to the agreement?

22               MR. FASO:  I'm not sure I fully understand what you

23   mean.

24               THE COURT:  Are you all prepared to say, we'll sign

25   on to the agreement as long as we can agree how it's split up

1    among us, and not as a condition for signing on to the

2    agreement, getting something more out of the defendants?

3              MR. FASO:  That's correct.  We'd be prepared to --

4              THE COURT:  And you are too.

5              MR. NELKIN:  With the caveat that there were still

6    a couple of exhibits that needed to be resolved and removing

7    some indemnifications the defendants wanted.  I believe that

8    those can be easily resolved.

9              THE COURT:  All right.  Are you guys prepared to

10   have that conversation today?

11             MR. NELKIN:  Yes, Your Honor.

12             MR. FASO:  We are, Your Honor.

13             THE COURT:  Would you all excuse us, please?

14             UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

15             MR. NELKIN:  And, Your Honor, just two technical

16   matters (indiscernible).  There's another attorney and

17   another law firm that appears to have shown up to represent

18   Mr. Koenig.

19             THE COURT:  Uh-huh.  Somebody new at the table?

20             MR. SCHWAB:  Yeah, sorry, Your Honor.  Ephrem

21   Schwab.  I represent Mr. Koenig.

22             THE COURT:  Have you filed a notice of appearance?

23             MR. SCHWAB:  I did not file a notice of appearance,

24   no.  But I will.

25             MR. GRANTZ:  Your Honor.

```
 1              THE COURT:  Yeah.

 2              MR. GRANTZ:  I wanted to make a comment before we

 3     left, which is, and I mentioned it to the Nelkins beforehand.

 4     I'm sorry, I was packing my stuff up to go outside.

 5              There's still another member of Two Rivers that's

 6     not here, and I realize that Eugene Schreiber is Steven

 7     Schreiber's father, but we can't go through this process and

 8     then have the same thing come up again if he's not satisfied

 9     with --

10              THE COURT:  I understand.

11              MR. GRANTZ:  So I'm bringing it to Your Honor's

12     attention.

13              THE COURT:  I'll be more than happy to just say,

14     look, it's not worth going through this now, and let's go

15     forward with the litigation.

16              MR. GRANTZ:  I'm not --

17              THE COURT:  I'd just as soon not have any further

18     settlement talks with you people and just schedule things.

19     That's what I'd like to do.  If that's what you're asking me

20     to do --

21              MR. GRANTZ:  No.

22              THE COURT:  -- say it and we'll do it right now.

23              MR. GRANTZ:  I didn't ask that, Your Honor.

24              THE COURT:  Then let me talk to them, please.

25              MR. GRANTZ:  Fine.  Thank you, Your Honor.
```

```
 1                    THE COURT:  You folks prefer to speak on the

 2      record, or off?

 3                    MR. NELKIN:  I think off, at least initially.

 4                    THE COURT:  Off?

 5                    MR. FASO:  Yes, Your Honor.

 6                    THE COURT:  Okay.  Let's go off the record.

 7             (Off the record from 11:00 a.m. to 11:23 a.m.)

 8                    THE COURT:  All right, folks.  Back on the record.

 9      Oh, we're back on the record.  All right.

10                    We're not able to reach a settlement among the

11      other partners of Two Rivers, so we need to gear up for

12      presumably the litigation.

13                    I want to have a plan in place in the event that

14      the motion to enforce the recorded settlement isn't granted.

15      But, of course, we will, you know, wait and see what you all

16      have to say about that.

17                    Let's have a schedule in place.  I think the first

18      thing that needs to be figured out is the role that Mr.

19      Koenig will have going forward in the litigation.  So let me

20      start with the plaintiff.

21                    Do you folks anticipate asserting any claims

22      against Koenig?

23                    MR. NELKIN:  Yes, we do, Your Honor.

24                    THE COURT:  Okay.  So that, I think, makes it the

25      simplest.  Just file an amended complaint that names them as
```

1    a defendant.  When do you anticipate doing that?

2              MR. NELKIN:  It's a complex complaint that we have,

3    Your Honor, but I would say if we could have one month after

4    Passover.

5              THE COURT:  Any objections?

6              UNIDENTIFIED SPEAKER:  No objections, Your Honor.

7              THE COURT:  Okay.  So that gets us to May 8th, I

8    think.  May 7th.  Okay.  So, Mr. Faso, will you accept

9    service?

10             MR. FASO:  Yes, Your Honor.

11             THE COURT:  Okay.  All right.  So we'll have the

12   answer, then, by the end of May.  Let's have a conference

13   late -- I'm sorry, mid-June, to talk about getting up to

14   speed on discovery.  Okay.

15             So, when we get together on June 12th, we'll have

16   all -- oh, I'm sorry.  Do you guys anticipate asserting

17   cross-claims against the defendants or counterclaims against

18   the plaintiffs?

19             MR. FASO:  At this time we'd just like to reserve

20   our rights to do so, but we have not -- we likely will --

21             THE COURT:  Okay.

22             MR. FASO:  -- (indiscernible).

23             THE COURT:  All right.  Okay.  So, you'll have your

24   20 days to do that.  Obviously, you have time between now and

25   then to start working it out.

1          So, there are sort of two basic tasks that I have

2     in mind, and I'm happy to hear about others that we'll need

3     to address on June 12th.

4          But one is to the extent that Koenig will need to

5     have access to discovery that you folks have exchanged, and

6     also the information, not necessarily strictly speaking

7     discovery, but about the spoliation issue, I guess, the

8     violation of the injunctive order.  Information that's been

9     exchanged about that, including the forensic work.

10         To the extent that's to be shared, you'll need to

11    confer about how the expenses are going to be allocated so

12    that Koenig has equal access on the same basis as all of you,

13    to what should be shared.

14         To the extent your adversaries aren't planning to

15    share it, you know, you're not going to do it and they're not

16    responsible for sharing in the costs.

17         But to the extent that there's been discovery that

18    one party has borne the burden for, they don't get to be a

19    free rider.  I want you all to talk about what, if anything,

20    needs to be done so that everybody can be moving forward with

21    discovery once we're ready to.

22         The other thing that we'll need to do is to set a

23    schedule for completing the hearing that got interrupted way

24    back when.  Not something, I'm sure, that anyone is looking

25    forward to, but we'll need to do that.

1          So, I will expect all of you to come here on June

2     12th, having conferred in good faith on those issues and

3     having a proposal to me a week in advance.  All right?

4               MR. NELKIN:  Your Honor.

5               THE COURT:  Yes.

6               MR. NELKIN:  If we can request, because one of the

7     issues in this case is whether Mr. Koenig is holding back on

8     (indiscernible) the defendants, can we request that Mr.

9     Koenig be ordered to, since it is his litigation to try it,

10    that any claims that he has be brought by --

11              THE COURT:  Well, when we get together on June

12    12th, we're going to set a schedule.  One of the deadlines I

13    always set in this schedule is, you know, amendments,

14    pleading amendments.

15              But I'm not going to say that right now he has to

16    say everything because he doesn't know what he's responding

17    to yet.

18              MR. NELKIN:  No, I understand.  I'm just saying

19    that if he has any claims to bring against any party, that

20    they be brought in this lawsuit.  That's all I'm saying.

21              THE COURT:  I can't enforce that, can I?

22              MR. NELKIN:  Well, I think if under the -- if it's

23    relevant as a -- to the issues of this case --

24              THE COURT:  Look, I can't force people to bring

25    claims in a forum not of their choosing.  If you think that

22

1      they waive something by not bringing it, you have that

2      argument.  But what is my authority, or the court's authority

3      to say, if you have a claim, you must bring it in this court?

4      Do I have that authority?

5              MR. NELKIN:  I think you have inherent authority.

6      You may have authority under the necessary party rules to

7      bring in a party who may claim interest in any of the assets

8      that are at issue.

9              THE COURT:  But if they don't -- look, you make

10     whatever motion you want.  You think I need to order

11     something.  I'm a little skeptical that I can force somebody

12     to do that, but if you think I can and should, or Judge Amon

13     can or should, you make that motion.  All right?

14             MR. NELKIN:  I think we can.

15             THE COURT:  All right.  Mr. Schafhauser, or Mr.

16     Grantz?

17             MR. GRANTZ:  Yes.  Can you just clarify the timing

18     for the motion to enforce, because there was some confusion

19     outside?

20             THE COURT:  Oh, yeah, yeah.

21             MR. GRANTZ:  Because you changed the date in the

22     middle and it wasn't clear whether you --

23             THE COURT:  April 9th for the motion, April 16th

24     for the response.

25             MR. GRANTZ:  Thank you.

```
 1              THE COURT:  Yes.  And, Mr. Schafhauser?

 2              MR. SCHAFHAUSER:  Your Honor, on that, I've checked

 3     my calendar and that happens to be the day I'm coming --

 4     could I have until April 11th, the Wednesday?

 5              THE COURT:  Uh-huh.

 6              MR. SCHAFHAUSER:  Just an extra couple days.

 7              THE COURT:  Okay.

 8              MR. SCHAFHAUSER:  Thank you.

 9              THE COURT:  April 11th and April 18th.

10              MR. SCHAFHAUSER:  Thank you.

11              MR. GRANTZ:  Thank you, Your Honor.

12              THE COURT:  Okay.

13              MR. GRANTZ:  Just a couple other items, Your Honor.

14     And I think -- I just don't want to run afoul of Your Honor's

15     rules or any privileges.

16              As I read Your Honor's order this morning, whatever

17     we talk about in our papers on settlement should be simply

18     filed on PACER without seal.  Is that --

19              THE COURT:  I'm sorry.  As you read my ruling this

20     morning?

21              MR. GRANTZ:  I believe this morning, Your Honor --

22              THE COURT:  The cut it out order?

23              MR. GRANTZ:  Well, yes, but Your Honor then said,

24     should any matters need to be litigated, the parties as I

25     will forseek to see will not in and of itself be a reason to
```

24

1    shield --

2              THE COURT:  Yeah, that --

3              MR. GRANTZ:  -- their submissions.

4              THE COURT:  And that means only what it says; that

5    just because you want something secret, doesn't mean it's

6    shielded from public scrutiny.  There's law about this.

7              If there's something other -- if there's a reason

8    to keep something sealed, other than we would just rather not

9    have it on the public record, let me know.

10             MR. GRANTZ:  Very well.  I --

11             THE COURT:  Purely settlement discussions, I'm

12   happy to receive ex-parte.  But I was getting stuff that

13   wasn't about settlement.

14             MR. GRANTZ:  I'm just -- when I make an argument

15   about the terms of a settlement, obviously, I just don't want

16   to run afoul of any --

17             THE COURT:  No, no, if you want to enforce a

18   settlement, you're going to do that in a publicly filed

19   document.

20             MR. GRANTZ:  Very well.

21             THE COURT:  Yeah.

22             MR. GRANTZ:  That's all I wanted to know.

23             THE COURT:  Yeah.

24             MR. GRANTZ:  But the last item, Your Honor, is if

25   we are reinstituting proceedings, and I think Your Honor has

1      been clear that that would be --

2              THE COURT:  I don't see we have a choice.

3              MR. GRANTZ:  Then the other proceeding that had

4      been pending at the time of the settlement was defendant's

5      motion to dismiss under Rule 23.1, and under the RICO

6      statute.

7              THE COURT:  Uh-huh.

8              MR. GRANTZ:  I just didn't want that to be you

9      know --

10             THE COURT:  Where did that stand?  Was it fully

11     briefed?

12             MR. GRANTZ:  I believe it was fully briefed and it

13     was argued as -- I think it was argued, as well, before Judge

14     Amon, and it was fully briefed.

15             THE COURT:  Okay.

16             MR. NELKIN:  I think the way I remember it,

17     procedurally, Your Honor, was that in light of the spoliation

18     and in light of the motion about fraudulent transfer assets -

19     -

20             THE COURT:  Uh-huh.

21             MR. NELKIN:  -- that Your Honor had decided to

22     focus immediately on the issue of spoliation and also the

23     transferred assets appointing a receiver, which were

24     important for the plaintiff, particularly if the deadlines

25     keep moving out because they've been transferred since the

1     initial settlement conference with Your Honor.

2          And so we think that the appropriate thing to

3     protect the plaintiff's interests, and with respect to the

4     case itself is that the motion with respect to spoliation and

5     Your Honor's ruling, or that that was going to the heart of

6     the fairness of the plaintiff to litigate this case, was

7     front and center, and also the issue about protecting the

8     asset was also necessary under the fourth injunction.

9          THE COURT:  Well, look, that's going forward.  We

10    have to get a schedule for completing the hearing.

11         MR. NELKIN:  I'm just saying, those --

12         THE COURT:  In terms of the other motion, that's

13    not even before me.  I don't know if -- I just don't recall

14    if Judge Amon was planning to defer ruling on that until the

15    issues that I'm having a hearing on were resolved.  I think

16    that's where it was, but I could be wrong about that.  I just

17    don't recall.

18         MR. NELKIN:  I think I misspoke a moment ago, by

19    the way.  I think what -- and I have to check the docket,

20    Your Honor, but I believe that argument on that motion was

21    scheduled for the next week, or thereabouts, which is why we

22    had the settlement conference when we did.  That's my

23    recollection.

24         THE COURT:  Okay.  So, if you want to get it back

25    on the argument calendar, you can write to Judge Amon.

1           MR. NELKIN:  Very well.

2           THE COURT:  Yeah.

3           MS. NELKIN:  Judge Orenstein, actually I believe

4      that after we reached the agreement from the report that you

5      terminated all pending --

6           THE COURT:  Yes.  So just to the extent you've got

7      an unresolved motion, yeah, it was, of course, terminated.

8      But you just ask to reinstate it.

9           MR. NELKIN:  Very well, Your Honor.

10          THE COURT:  On the papers that you've already

11     filed.  And ask for an argument date if you think that's

12     appropriate.

13          MR. NELKIN:  Very well.

14          THE COURT:  Okay.

15          MR. NELKIN:  Thank you, Your Honor.

16          THE COURT:  All right.  The last thing I'll say is,

17     we couldn't get anywhere with settlement.  I will tell you, I

18     think you people are crazy.  I really do.  You should be able

19     to get past this.  You want to go for mediation, go for

20     mediation.  But --

21          MR. NELKIN:  Your Honor, we're --

22          THE COURT:  -- this is nuts.

23          And all of you on this side, all of you are now

24     hurting Two Rivers.  And to the extent that a receivership is

25     on the table, that's something I'm going to take into account

1    in whatever recommendation I make.

2              I hope you'll go to mediation and try and work this

3    out, but I'm not trying to make you do it.  Have a good day,

4    everybody.  I'll see you on June 12th.

5              MR. NELKIN:  Thank you, Your Honor.

6         (Proceedings concluded at 11:35 a.m.)

7         I, CHRISTINE FIORE, court-approved transcriber and

8    certified electronic reporter and transcriber, certify that

9    the foregoing is a correct transcript from the official

10   electronic sound recording of the proceedings in the above-

11   entitled matter.

12

13   *Christine Fiore*

14   _____          April 2, 2018

15   Christine Fiore, CERT

16

17

18

19

20

21

22

23

24

25