1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2

3     ------------------------------------X
                                          :
4     STEVEN SCHREIBER,                   :
                                          :
5                    Plaintiff,           :
                                          :   15-CV-6861 (CBA)
6            v.                           :
                                          :   August 30, 2018
7     EMIL FRIEDMAN, et al,               :   Brooklyn, New York
                                          :
8                    Defendants.          :
                                          :
9     ------------------------------------X

10          TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
                  BEFORE THE HONORABLE JAMES ORENSTEIN
11                  UNITED STATES MAGISTRATE JUDGE

12
      APPEARANCES:
13

14    For the Plaintiff:        JAY P. NELKIN, ESQ.
                                CAROL NELKIN, ESQ.
15                              Nelkin & Nelkin
                                5417 Chaucer
16                              Houston, Texas 77005

17                              HILLEL IRA PARNESS, ESQ.
                                Parness Law Firm, PLLC
18                              136 Madison Avenue, 6th Floor
                                New York, New York 10016
19
      For the Defendant:        PAUL H. SCHAFHAUSER, ESQ.
20                              Chiesa Shahinian & Giantomasi PC
                                11 Times Square
21                              New York, NY 10036

22    For E&I, et al.:          DAVID GRANTZ, ESQ.
                                Meyner & Landis
23                              One Gateway Center
                                Newark, New Jersey 07102
24

25
      (Appearances continue on next page.)


      Proceedings recorded by electronic sound recording,
      transcript produced by transcription service

```
 1                                                            2

 2

 3    APPEARANCES CONTINUED:

 4
      For Interested Party:      NICHOLAS FASO, ESQ.
 5                               Cullen and Dykman LLP
                                 99 Washington Avenue
 6                               Suite 2020
                                 Albany, New York 12210
 7

 8    Court Transcriber:         SHARI RIEMER, CET-805
                                 TypeWrite Word Processing Service
 9                               211 N. Milton Road
                                 Saratoga Springs, New York 12866
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1   (Proceedings began at 11:05 a.m.)

2   **(MICROPHONES GO IN AND OUT DURING CONFERENCE)**

3       THE CLERK:  Civil Cause for a Status Conference,

4   <u>Schreiber v. Emil Friedman, et al.</u>, Docket Number 15-CV-6861.

5       Will the parties please state their appearances for

6   the record starting with the plaintiffs?

7       MR. NELKIN:  Your Honor, I'm here today, Jay Nelkin

8   on behalf of Nelkin & Nelkin.  I believe Mr. Parness is going

9   to be acting on behalf of the plaintiff in this case.

10      THE COURT:  Good morning.

11      MR. PARNESS:  Good morning, Your Honor.  I'm sorry.

12      MS. NELKIN:  Carol Nelkin on behalf of Nelkin &

13  Nelkin, Your Honor.

14      THE COURT:  Good morning.

15      MR. PARNESS:  Good morning, Your Honor.  Hillel

16  Parness representing Eugene Schreiber, Two Rivers Coffee and

17  for purposes of the fee disputes Steven Schreiber, but it's

18  our position that the attorney-client relationship between the

19  Nelkins and Steven Schreiber remains intact.

20      THE COURT:  All right.  Good morning.

21      MR. SCHREIBER:  Steven Schreiber.

22      MR. SCHREIBER:  Eugene Schreiber.

23      THE COURT:  Good morning.

24      MR. SCHAFHAUSER:  Good morning, Your Honor.  Paul

25  Schafhauser of Chiesa Shahinian & Giantomasi for the Friedman

4

1  defendants.

2          THE COURT:  Good morning.

3          MR. SCHAFHAUSER:  Good morning.

4          MR. GRANTZ:  Good morning, Your Honor.  David Grantz

5  from the law firm of Meyner & Landis on behalf of the E&J

6  defendants and the oil and trucking defendants.

7          THE COURT: Good morning.

8          MR. FASO:  Good morning, Your Honor.  Nicholas Faso,

9  Cullen & Dykman on behalf of non party Mayer Koenig.

10         THE COURT:  Good morning.  Okay, folks.  You managed

11 to create a mess.  I guess what I've got is a couple of

12 premotion conference requests.  Before I get to that let me

13 just get a sense of the lay of the land for where we stand.

14         You guys all have a fee dispute.  I get that.

15 Defendants, you guys want to stick with the settlement that is

16 not yet completed but that you had agreed on in principle;

17 right?  You just want to put in your money and go.

18         MR. SCHAFHAUSER:  Yes.  Although it is completed in

19 the sense that everybody signed off on it already.  It's

20 signed.

21         THE COURT:  It's not consummated.

22         MR. SCHAFHAUSER:  Did not consummated, exactly.

23         THE COURT:  Okay.  Sit down, please.  You just want

24 to put your money in, go on your way and leave it to them to

25 fight it out.

5

1          MR. SCHAFHAUSER:  That's correct, Your Honor.

2          THE COURT:  Anybody have an objection to that?

3          MR. NELKIN:  We have no objection to that.  In the

4    letter that came in --

5          THE COURT:  I just want -- no arguments.  I really

6    just want to get a sense of where we stand.  Have a seat,

7    please.

8          MR. NELKIN:  Sure.

9          THE COURT:  Mr. Faso.

10         MR. FASO:  Your Honor, there are certain benefits

11   under the settlement agreement that are not subject to the

12   charging lien.  Those benefits go to Mr. Koenig --

13         THE COURT:  I just want to know if you have any

14   objection to defendants depositing money with the Court and

15   leaving everybody else to fight out what happens next and then

16   being out of the case.

17         MR. FASO:  Only to the extent that that postpones

18   our funds that are supposed to be transferred to Mr. Koenig.

19         THE COURT:  To the extent that they can be

20   transferred to Mr. Koenig we can work that out but what I'm

21   saying is do you or anyone else -- does anybody have any

22   objection to the defendants being out of the case once they

23   deposit money into the court?

24         MR. FASO:  No, Your Honor.

25         THE COURT:  Anybody?  Yes?

6

1        MR. NELKIN:  We don't but we just want to make it

2  clear that there's -- there are property and other assets

3  besides money that's being transferred as part of the

4  settlement and we would want to have it made clear that those

5  were restricted along with whatever funds --

6        THE COURT:  Well, you guys all -- look, the reason

7  I'm asking this, and the mealy mouth responses don't help me

8  in the slightest, Mr. Nelkin.  What I'm trying to find out is

9  whether we can cabin this to a dispute among the various

10  partners who will remain in Two Rivers, Two Rivers itself and

11  their lawyers, we can cabin it to them and let the defendants

12  out of the case pursuant to the signed settlement agreement.

13  Does anybody have a problem with that?

14        No?  Because you told me in your letter, Mr.

15  Schafhauser, that you couldn't agreement on that and I don't

16  know -- exactly know why.

17        MR. SCHAFHAUSER:  There were nuances that I'm not

18  hearing today from counsel that I heard yesterday about -- I

19  think you heard a little bit from Mr. Nelkin about the fact

20  that it's not just money.  It's other benefits and that I

21  think the Nelkin & Nelkin position at least as of yesterday at

22  4:30 was that those benefits could not be transferred because

23  that would affect the charging lien rights and --

24        THE COURT:  So you're saying that it's not possible

25  to do it effectively; right?

7

1          MR. NELKIN:  No, that's not what I'm saying, Your

2   Honor.  I'm saying it is possible to do it effectively.  It

3   just requires the appropriate language and stipulation to

4   insure that those assets --

5          THE COURT:  Well, work it out then.  Because one

6   thing that concerns me greatly is if this dispute, regardless

7   of who's responsible for it, is interfering with the ability

8   to consummate the settlement including by means of the

9   charging lien then it's one possible outcome, the resolution

10  would be that a finding that the assertion of the charging

11  lien as opposed to other remedies at counsel's disposal might

12  be viewed as a basis for the client to fire counsel for cause.

13  If you're interfering with their rights, if you're acting

14  contrary to their interest and if they fire you for cause then

15  of course you forfeit any fee and I'm sure that's not a result

16  anyone wants to see happen.

17          Though I'm trying to figure out a way that you can

18  resolve this on consent without anybody being unreasonable,

19  like refusing to pay expenses that they agreed to pay.  Are

20  you listening, Mr. Schreiber?

21          MR. SCHREIBER:  Yes, I am.

22          THE COURT:  So if we can let the defendants out and

23  cabin this maybe we can work towards an agreement that doesn't

24  require excessive use of resources in litigation and that

25  leads to a reasonable result.  Does anybody have a problem

8

1   with doing it that way?

2        MR. NELKIN:  No problem here.

3        THE COURT:  No, no, no?

4        MR. SCHAFHAUSER:  We'd be delighted with that.

5        THE COURT:  So I'm going to expect by Friday --

6   well, today is Thursday.  By next Thursday, a week from today,

7   a stipulation that does exactly that.

8        Now, let's move on to -- excuse me.

9                    [Pause in proceedings.]

10        THE COURT:  Let's move on to the fight you're all

11   having.  Why can't you resolve this?  Why do you think I can

12   or should be doing?

13        MR. PARNESS:  Your Honor, just to be clear again I'm

14   here representing Two Rivers and the two Schreibers in the fee

15   dispute.  I've already represented Two Rivers and Mr. Eugene

16   Schreiber as a non party.  An issue --

17        THE COURT:  Wait.  Let's stop there.

18        MR. PARNESS:  Sure.

19        THE COURT:  Mr. Schreiber, Steven and Eugene

20   Schreiber, who do you want to be your lawyer?  I don't want to

21   hear both of them because you're at odds with Nelkin & Nelkin.

22        MR. SCHREIBER:  We were having trouble dealing with

23   our attorneys and I was asking for help --

24        THE COURT:  Are you prepared, Mr. Parness, to step

25   in as counsel for both Mr. Schreibers going forward in all

9

1 respects?

2          MR. PARNESS:  Is the court ordering me to do so,

3 Your Honor?

4          THE COURT:  I'm not ordering you.  I'm asking if

5 that's something that you're prepared to do and if that's

6 something that the Schreibers want to do because I think it's

7 untenable to have a situation where counsel of record and

8 clients are in a dispute.

9          MR. PARNESS:  I understand, Your Honor, and part of

10 what I was going to talk to you about is that that has become

11 clear over the last few weeks when the clear conflict has

12 emerged during these discussions.

13          THE COURT:  Do you seek to be relieved?

14          MR. NELKIN:  Yes, Your Honor.

15          THE COURT:  Do you have any objection to them being

16 relieved as your counsel?

17          MR. SCHREIBER:  I do because they took the case on

18 contingency fees and Mr. Parness --

19          THE COURT:  Do you want them to stay as your

20 counsel?

21          MR. SCHREIBER:  I believe they have the duty to

22 represent my best interests.  It's become clear they're not so

23 I --

24          THE COURT:  Well, do you wish to discharge them for

25 cause?

10

1          MR. SCHREIBER:  Then according to the retainer

2   agreement it says even if I discharge them with cause I still

3   owe them money.  So I'm just --

4          THE COURT:  I'm not -- I'm not sure that your

5   agreement would supercede New York law but we can discuss

6   that.

7          MR. SCHREIBER:  If that's the case I believe that

8   [inaudible] was saying.  This relation is contingency.  This

9   one is hourly.  So by me accepting him [inaudible].

10         THE COURT:  Any reason why you guys shouldn't be

11  relieved and you can fight about whether it's for cause later?

12         MR. NELKIN:  You can't -- I don't believe so, Your

13  Honor.  I mean it's our position that the settlement is

14  actually binding and effective.  So we --

15         THE COURT:  Well, so ordered.  To the extent that

16  it's predicated or the realignment of the party was predicated

17  on my being misinformed about what was going on I'm happy to

18  vacate it and go back to scratch on that.

19         Look, you guys are headed for a result that is going

20  to disappoint somebody greatly.  Perhaps it's going to

21  disappoint a lot of people greatly.  I'll be honest.  I don't

22  think you want me to resolving this or the Court but if that's

23  what you insist on that's the road we're going to go down.

24  You'll be relieved.  He'll step in.  I'll decide whether the

25  Court should exercise ancillary jurisdiction over your

11

1    dispute.  We'll take it from there.  We'll set a schedule

2    unless you all want some time to try to work things out before

3    I take these steps.

4            MR. PARNESS:  We've been trying, Your Honor,

5    including me personally before I officially stepped in

6    [inaudible] background.  We reached impasse after impasse and

7    there wasn't [inaudible] work it out.

8            THE COURT:  Can somebody walk me through exactly who

9    wants what and what you can't agree on?

10            MR. PARNESS:  Sure, Your Honor.  So the engagement

11    letter which is -- which we maintain is [inaudible] talks

12    about -- and I'll quote it for you.

13            THE COURT:  Pause there.  Is it between -- is

14    anybody else a signatory?

15            MR. PARNESS:  So I'll explain, Your Honor.  And I

16    have copies if you'd like.  The engagement letter is addressed

17    to both Schreibers and signed by both Schreibers in

18    anticipation of bringing litigation against Friedman.  As Your

19    Honor knows though, they only brought the litigation on behalf

20    of Steven Schreiber and throughout the case told you that

21    Eugene Schreiber was a non party.  That's why I needed to be

22    brought in to represent him.  He's a non party in the case

23    over and over again.

24            It's our view at the outset that this engagement

25    letter despite being signed by both of them is an engagement

12

1   of Steven Schreiber.

2           THE COURT:  Oh, come on.  Look, he signed the

3   letter.  Just because they don't bring a suit on his behalf

4   doesn't mean they don't represent him.  It means they're not

5   counsel of record for him in the case but he signed a

6   contract.

7           MR. PARNESS:  I anticipated that argument with the

8   Nelkins and you've already [inaudible].

9           THE COURT:  It's not an argument.  It's a statement

10  of fact.  He signed a contract; right?

11          MR. PARNESS:  So --

12          THE COURT:  He's a party to the contract.  Is that

13  correct?

14          MR. PARNESS:  He is a party to the contract.  So

15  assuming that --

16          THE COURT:  There's three --

17          MR. PARNESS:  Assuming that conclusion -- I didn't

18  want to upset you.

19          THE COURT:  You're not upsetting me but I do wish we

20  could dispense with the posturing.

21          MR. PARNESS:  I'm not trying to posture, Your Honor.

22  One-third -- I'll [inaudible] the letter.  Our firm will

23  receive one-third of the total recovery if any he receives

24  (including any phones, increased equity or other benefits) by

25  virtue of [inaudible].  So --

13

1        THE COURT:  [Inaudible]  Look, I'm not going to

2   [inaudible] at this point [inaudible] posture.  I'm trying to

3   find out what it is you guys are arguing over.

4        MR. PARNESS:  Yes, sir.

5        THE COURT:  The more you just tell me -- you start

6   to lard it up with well, here's the contract --

7        MR. PARNESS:  I'm not trying to lard it up.

8        THE COURT:  And you'll stop interrupting.  Mr.

9   Parness, the more you do that the more you think you're trying

10  to sell me a bill of goods instead of just saying here's

11  what's the dispute is, dollars.  Who doesn't want to pay

12  dollars, how many dollars.

13        MR. PARNESS:  Your Honor, the Nelkins want the

14  Schreibers to pay them $2.75 million, at least that was our

15  last position.  They may have [inaudible] different position.

16        THE COURT:  They want who to pay?

17        MR. PARNESS:  They want -- well, they want to

18  receive $2.75 million.

19        THE COURT:  From whom, or they don't care?

20        MR. PARNESS:  Well, they -- that was part of the

21  problem, Your Honor, but in the settlement there's money

22  moving from this side to this side.

23        THE COURT:  Right.

24        MR. PARNESS:  Cash [inaudible] approximately $2.75

25  million, $1 million of which approximately is going to Mr.

1  Koenig, $1.75 of which is approximately going to the

2  Schreibers [inaudible] paid over to them plus an additional $1

3  million paid out -- again, at our last discussion on this --

4  August 3rd is where we ended.  Paid out over time.

5              THE COURT:  Is it they want a third of the total

6  settlement going to your side of the V or they want a third of

7  what Steven and Eugene Schreiber get?

8              MR. PARNESS:  Well, that the dispute is over how to

9  value the settlement, Your Honor.

10             THE COURT:  But it's clearly -- everybody agrees

11 that it's not a third of the entirety; it's a third of what

12 Steven and Eugene Schreiber get?

13             MR. NELKIN:  Yes, Your Honor.

14             MR. PARNESS:  Yes.

15             THE COURT:  So the question is how do you value

16 that.

17             MR. PARNESS:  Yes.

18             THE COURT:  What do you say it's worth?

19             MR. PARNESS:  So we say that it is worth a lot less

20 than 2.75.

21             THE COURT:  Wait.  2.75 is the third or the whole

22 thing?

23             MR. PARNESS:   2.75 is the third in Nelkin's view

24 because they view the entire settlement as 8.25.

25             THE COURT:  Okay.

1    MR. PARNESS:  The way they get there is by

2  [inaudible] up a lot of things that are transferred back and

3  forth including the equity, including the relief from a loan,

4  including a lease.  They're even claiming rights to the shares

5  they already own, not even the new shares that are it but the

6  shares they already own.  They're claiming the salary they

7  received over the last three years is entirely [inaudible]

8  Nelkins and the work.  We dispute all those things.

9        We have a valuation of the company, which I think

10  will be very helpful, that was commissioned by Nelkin paid for

11  by Schreiber putting the company without debt and there is

12  debt, but even without debt putting the company at $1.9

13  million.  That would help us value the equity.  The cash is

14  easy and the rest of things we should go through one by one.

15  We do not think they're worth anything close to what the

16  Nelkins ascribe value to.  For example, the $8 million loan

17  that is being relieved Your Honor knows from the beginning of

18  the case it was the view of this side of the table it was a

19  sham loan to begin with and now it's being brought back

20  against the Schreibers --

21        THE COURT:  Do you guys say that that's worth 8

22  million?

23        MR. NELKIN:  Yes, Your Honor, and it's --

24        THE COURT:  Have a seat.

25        MR. PARNESS:  There's a lease --

1          THE COURT:  Really?  You really think that?  Because

2  I will tell you that I may have to recuse myself and be a

3  witness at a hearing having heard you say otherwise but maybe

4  I'm misrecollecting or maybe you just misspoke.  Are you

5  really taking the position that you think it's worth 8

6  million?

7          MR. NELKIN:  First off, that loan is being

8  transferred --

9          THE COURT:  Is that your position, that you think

10 that it's worth 8 million?

11         MR. NELKIN:  I think that the value to the company

12 is it's being --

13         THE COURT:  Mr. Nelkin, if I ask you a question I

14 want an answer to that question.  Don't talk around it.

15         MR. NELKIN:  Yes.

16         THE COURT:  Have you said something precisely the

17 opposite in the past.

18         MR. NELKIN:  Your Honor, we --

19         THE COURT:  Have you?

20         MR. NELKIN:  I don't believe so, Your Honor.  I

21 believe --

22         THE COURT:  Okay.  That tells me a lot.  Have a

23 seat.

24         Before you go further, they told me that there are

25 bills due for expenses that haven't been paid.  Is that

17

1   correct?

2           MR. NELKIN:  That is correct, Your Honor.

3           THE COURT:  When will they be paid?

4           MR. PARNESS:  Well, they will be paid as soon as the

5   Court tells us to, Your Honor.

6           THE COURT:  Today.  How about that?

7           MR. PARNESS:  We need itemized bills.  We don't have

8   them.

9           THE COURT:  Give them the itemized bills today.  Pay

10  it by Tuesday.  Okay?  Guys, I'm trying to help you work it

11  out but --

12          MR. PARNESS:  I understand.  As part of -- in our

13  settlement discussions there was discussion of who was paying

14  those [inaudible].

15          THE COURT:  I want to be clear.  None of this is an

16  order.  I'm not in a position to issue orders but my goodness,

17  if you want to work this out and not take great risks both

18  with the ultimate outcome and with the view that I will have

19  to form at some point as to your credibility and good faith

20  these are suggestions.

21          MR. PARNESS:  There's one thing I want to bring to

22  the Court's attention which might be an alternative path to

23  get through all this which is back in March of this year even

24  after the parties had agreed on the grand contours of this

25  agreement there was a different settlement offer put forward

18

1  by Friedman for $4 million to settle the entire case and in

2  that he would get the Schreibers' shares and it would go over

3  there.  The Schreibers wanted their counsel to push forward on

4  that offer, get maybe a little bit more than 4 million and

5  what my clients are prepared to say [inaudible] is that Nelkin

6  has told them they couldn't do it because Nelkin needed to

7  [inaudible].

8          If that all cash offer from Friedman to Schreiber in

9  the area of 4 million, perhaps a little bit more taking into

10  account Mr. Koenig now were still on the table, we would be

11  very interested in talking about it.

12          THE COURT:  I can't talk [sic] you guys from

13  talking.  Stop you guys from talking.  I'm not going to try to

14  but it's not before me.

15          MR. PARNESS:  Understood.  I just want to --

16          THE COURT:  I will tell you I encourage all of you

17  to settle this however you want to do it whether it's a new

18  agreement with the defendants if they're interested in

19  talking.  I don't know why they would be.  Or if it's just

20  something among yourselves.  That's fine.  But -- but, given

21  the experiences I have had with all of you in terms of the

22  reliability of what you say you will do and how you're willing

23  to settle a case and what people have agreed to -- only to

24  find out later they have not -- I am not so sure that I can

25  really add any value to any discussions among you cause I have

19

1   at the minimum lost faith in my ability to understand what you

2   mean when you say something.  All of you.

3          So I encourage you to work it out but please don't

4   count on me to help you nor should you assume that once the

5   defendants have deposited their money or whatever else they're

6   going to do as a security to cover the settlement the Court is

7   going to choose to exercise ancillary jurisdiction over this

8   mess of a dispute.  You may have to take that elsewhere.

9          MR. PARNESS:  Understood, Your Honor.

10          THE COURT:  So I'm going to suggest this.  I'm open

11   to other ideas.  Take a week.  Come back to me and the Court

12   whether there is a -- first of all, give me the stipulation

13   that gets the defendants out of the case and preserves your

14   disputes and tell me if you would like some more time to

15   settle it among yourselves, if you have a proposed settlement

16   among yourselves or if you want to tell me exactly what

17   motions need to be made.

18          Does anybody want to be heard on that suggestion?

19          MR. PARNESS:  Your suggestion sounds good to us,

20   Your Honor.

21          THE COURT:  Anyone else?  No?  Let's have a date in

22   two weeks to see where we stand.

23                    [Pause in proceedings.]

24          THE COURT:  We're going to run into the holidays.

25          THE CLERK:  Do you want to do Wednesday, September

20

1   26th at 3:00?

2          THE COURT:  Anyone have a problem with that date and

3   time?  No?

4          MR. PARNESS:  Your Honor, one second.  I apologize.

5                        [Pause in proceedings.]

6          MR. PARNESS:  That's fine with us, Your Honor.

7          THE COURT:  Good.  See you all then.  I wish you the

8   best of luck in working this out.  Have a good day everybody.

9          MR. PARNESS:  What was the time on the 26th, Your

10  Honor?

11         MR. NELKIN:  3:00.

12  (Proceedings concluded at 11:27 a.m.)

13                      *  *  *  *  *

14

15

16

17

18

19

20

21

22

23

24

25

21

1        I certify that the foregoing is a court transcript from

2   an electronic sound recording of the proceedings in the above-

3   entitled matter.

4   _____

5   _____

6                        Shari Riemer, CET-805

7   Dated:  September 6, 2018

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25