```
 1                  UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF NEW YORK

 2   ------------------------------------X
                                        :
 3   STEVEN SCHREIBER, et al.,          :
                                        :
 4                Plaintiffs,           :
                                        : 15-CV-06861 (CBA)(JO)
 5           v.                         :
                                        : February 7, 2019
 6   EMIL FRIEDMAN, et al.,             : Brooklyn, New York
                                        :
 7                Defendants.           :
                                        :
 8   ------------------------------------X

 9
           TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
10           BEFORE THE HONORABLE JAMES ORENSTEIN
                 UNITED STATES MAGISTRATE JUDGE
11

12   APPEARANCES:

13
     For the Plaintiffs:        RAPHAEL ROSENBLATT, ESQ.
14                              Rosenblatt Law PC
                                c/o Creizman LLC
15                              565 Fifth Avenue, 7th Floor
                                New York, New York 10017
16
     For the Defendants:        NICOLE I. HYLAND, ESQ.
17                              TYLER MAULSBY, ESQ.
                                Frankfurt Kurnit Klein & Selz
18                              488 Madison Avenue
                                New York, New York 10022
19

20

21   Court Transcriber:         SHARI RIEMER, CET-805
                                TypeWrite Word Processing Service
22                              211 N. Milton Road
                                Saratoga Springs, New York 12866
23

24

25

     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

1   (Proceedings began at 9:38 a.m.)

2          THE CLERK:  Civil cause for a hearing, Schreiber v.

3   Friedman, et al., Docket No. 15-CV-6861.

4          Will the parties please state their appearances for

5   the record, starting with the plaintiffs?

6          MR. ROSENBLATT:  Thank you.  Good morning, Your

7   Honor.  Raphael Rosenblatt, Rosenblatt Law, PC, on behalf of

8   Eugene Schreiber, Steven Schreiber, and Two Rivers Coffee.

9   I'll note just for the record that both Mr. Schreibers are

10  here with me.

11         THE COURT:  Good morning to all of you.  And for the

12  --

13         MS. HYLAND:  Good morning, Your Honor.  Nicole

14  Hyland of Frankfurt Kurnit Klein & Selz for Nelkin & Nelkin.

15  And both of the Nelkins are here with me today.

16         THE COURT:  Good morning to all of you.  And?

17         MR. MAULSBY:  Tyler Maulsby of Frankfurt Kurnit

18  Klein & Selz, also on behalf of Nelkin & Nelkin.  Good

19  morning.

20         THE COURT:  Good morning to everybody.

21         All right, folks.  So you had asked to have this

22  conference to talk about the hearing to have the hearing.  So

23  -- and I think it was your request, Ms. --

1          MS. HYLAND:  Yes.

2          THE COURT:  -- Hyland.  So tell me what it is you

3     have in mind.

4          MS. HYLAND:  Well, the reason we wanted to have this

5     conference was to discuss what procedural things needed to be

6     done before the hearing.

7          THE COURT:  Okay.

8          MS. HYLAND:  And, you know what, there's a lot at

9     stake at this hearing.  There's the issue of the, you know,

10    the for-cause termination.  There's the issue of what fees my

11    clients are entitled to.  There's a lot of money at stake

12    here.  And if we were in a plenary proceeding, there would be

13    discovery, there would be, you know, a procedure there.  And,

14    here, given these issues and given all of the factual issues

15    that have been raised by the Schreibers' letter setting forth

16    their grounds for for-cause termination, we're asking the

17    Court if we could have some expedited discovery to prepare, to

18    develop the evidence, and prepare for this hearing to make it

19    more efficient for everyone.

20         We did reach out to Counsel to try to meet and

21    confer on that, and we had a conversation.  And I mean I'll

22    let Counsel state his position, but essentially, I understood

23    his position to be that he did not believe any discovery was

24    necessary.  So that's why we requested the conference.

25         THE COURT:  And you say discovery about what and in

4

1  what form?

2          MS. HYLAND:  So we would like some document

3  discovery and some limited depositions.  And essentially, the

4  issues that are set forth in the for-cause would dictate the

5  contours of discovery.  So, for example, one of the grounds --

6  the main ground for that the Schreibers set forth in their

7  for-cause letter for claiming that there was for-cause

8  termination is that there was this dispute over the valuation

9  of the company, that they believe that the Nelkins took an

10  unreasonable and unfair position on the valuation in order to

11  unfairly inflate their fees.

12          We, of course, believe that we had a reasonable

13  basis to believe that the company had a certain value based on

14  the statements that were made to us by -- to my clients by the

15  Schreibers.  And so we believe that position was reasonable.

16  But one of the issues is going to be what was the actual value

17  of the company.

18          THE COURT:  No.  I'm not going to determine what the

19  valuation properly was.  Look, you said it was X, they said it

20  was Y.  Let's say you're right, it was X.  The question's not

21  were you right.  The question is did you act on the basis of

22  that knowledge in a way that is permissible or that gave rise

23  to discharge for cause.  It doesn't matter whether you were

24  right or wrong.  It's what you did with the belief that you

25  were right that matters.

5

1          MS. HYLAND:  Okay.  I mean I would say that it does
2    -- it is relevant what the valuation is.
3          THE COURT:  Tell me why.  Would it give them reason
4    to discharge you for cause if they were right and you were
5    wrong?
6          MS. HYLAND:  Would it give them -- if -- I think
7    it's difficult to disentangle the question --
8          THE COURT:  I don't because this is a question of
9    for-cause termination, not who's right about the valuation or
10   about what fee is owed.  The question here is were your
11   clients discharged for cause.  That is based on what happened
12   between you and what actions the relevant parties took in
13   court or with each other.  You know what the communications
14   were between client and counsel.  You know what actions were
15   taken here in court.  I just don't see the relevance to the
16   determination I'm going to have to make as to who is right
17   about the valuation of the company.
18         MS. HYLAND:  Well, I think one basis is that, you
19   know, if the Schreibers were, for example, misrepresenting
20   what the value of the company was to the Nelkins in order to
21   continue to have them, you know, put a lot of resources into
22   litigating the case, then I think that's relevant.  And one
23   simple way to determine that is to compare the communications
24   with what the actual value of the company is.
25         THE COURT:  I'm not -- I just don't -- I'm not --

6

1   I'm absolutely not going to determine the value of the

2   company.

3              MS. HYLAND:  Okay.

4              THE COURT:  It's not before me.

5              MS. HYLAND:  Okay.  Well, even --

6              THE COURT:  What else do you want discovery about?

7              MS. HYLAND:  -- putting that aside for -- so the

8   communications, one of the grounds, for example, for

9   termination was that allegedly the Nelkins, while they were

10  trying to resolve this fee issue with their clients, refused

11  to communicate with other attorneys that the Schreibers had

12  hired to represent them in connection with the fee issue.

13  And, obviously, we dispute that, but I think some of the

14  evidence will -- you know, the evidence will show, I believe,

15  that the Nelkins did make themselves available and did in fact

16  communicate with those lawyers.

17             But we would like to be able to develop evidence

18  about what -- you know, what those lawyers would say about

19  those communications and, you know, whether they believe that

20  they had access to the Nelkins and were able to communicate

21  with them on this issue.  So that's one issue that we'd like

22  to explore.  We would like to have depositions of the

23  Schreibers at a minimum to be able to explore all of the

24  issues that they raise.

25             They also say at the end of their letter that

7

1  there's a plethora of evidence of direct conflict of interest

2  that can be provided to the Court if the Court so requests.

3  They also say there is more evidence that if there's a

4  hearing, that it will come to light.  We would like to know

5  what that evidence is.

6          THE COURT:  Well, you'll see it in their motion, and

7  you'll respond with your evidence because every motion that

8  involves a dispute of fact require discovery as opposed to a

9  hearing on it.

10          MS. HYLAND:  Let me just clarify.

11          THE COURT:  Let you answer the question.  Does every

12  motion in which the parties disagree about the underlying

13  facts require discovery or simply a factual determination

14  before the motion is decided?

15          MS. HYLAND:  I don't think every -- no, I don't

16  think every motion --

17          THE COURT:  Ma Nishtana.

18          MS. HYLAND:  Sorry.

19          THE COURT:  Ma Nishtana.  What makes this one

20  different?

21          MS. HYLAND:  Oh, okay; sorry.  As I said before,

22  there's millions of dollars at stake here, and there's a

23  reputation of the Nelkins at stake here.  This is a major

24  issue that is being -- we're being asked to brief and

25  determine or, you know, to have a hearing on.  And if we were

8

1  -- we had the ability to go and have a plenary proceeding, we

2  in fact filed on and withdrew it in good faith because, you

3  know, we understood that these issues were going to be held

4  here.  But if we --

5          THE COURT:  Whoa, stop.

6          MS. HYLAND:  Sorry.

7          THE COURT:  You're saying I have to give you

8  discovery because you decided to withdraw your lawsuit?

9  That's --

10          MS. HYLAND:  No.  That's not --

11          THE COURT:  That's not binding on me.

12          MS. HYLAND:  That's not what I meant.

13          THE COURT:  And you didn't ask me.

14          MS. HYLAND:  Sorry?

15          THE COURT:  You didn't ask me.

16          MS. HYLAND:  You're right.  I --

17          THE COURT:  So don't -- so --

18          MS. HYLAND:  That's not what I meant.  Please let me

19  -- I apologize.  That's not what I meant.

20          THE COURT:  Okay.

21          MS. HYLAND:  What I meant was, you know, we

22  understood we had a right to have plenary proceeding.  I'm not

23  saying that you made any representation to us that you would

24  provide us with this discovery, but if we were in a plenary

25  proceeding, we would be able to have a certain amount of

9

1   discovery.  We're just asking for some limited discovery to be

2   able to develop this evidence that they're claiming exists so

3   that we can be prepared for a hearing.

4            There was another point that you asked me about and

5   I didn't have a chance to respond to, so I apologize.  But,

6   you know, I just -- again, we're just asking for some, you

7   know, modicum of discovery here in order to prepare for this

8   hearing.

9            THE COURT:  Okay.  You also [indiscernible].  You

10  also said you wanted to talk about witnesses at the hearing?

11           MS. HYLAND:  Well, yeah.  That's one of the issues.

12           THE COURT:  So what do you have in mind?

13           MS. HYLAND:  So, again, looking to the letter as

14  sort of a guidepost for what the issues are that the

15  Schreibers -- we understand the Schreibers plan to raise, we

16  would obviously have the Schreibers as, you know, witnesses.

17  The Nelkins would be witnesses.  Beyond that, again, they talk

18  about the fact that we refuse to communicate with their

19  attorneys.  So I believe their attorneys may be witnesses to

20  talk about that, so that would be Jerry Weiss and Mr. Parness.

21           They talk about that we allegedly worked with

22  Nicholas Faso, counsel to Mr. Koenig, to try to, you know,

23  somehow manipulate the settlement against the Schreibers, so

24  they may be witnesses.  So were hoping to be able to have some

25  procedure to exchange the list of witnesses and come to some

10

1     --

2              THE COURT:  Okay.

3              MS. HYLAND:  -- some basis for having witness lists.

4              THE COURT:  All right.  Mr. Rosenblatt, what do you

5     say?

6              MR. ROSENBLATT:  Well, I think Your Honor has really

7     touched on the issue.  I mean this really is a motion --

8              THE COURT:  Well, and I touched the valuation, but

9     --

10             MR. ROSENBLATT:  Yeah.  I mean --

11             THE COURT:  -- you're going to raise factual issues

12    and ask me to make certain factual findings based on what

13    witnesses they have?

14             MR. ROSENBLATT:  Yes.

15             THE COURT:  Okay.  How are you planning to prove the

16    --

17             MR. ROSENBLATT:  Well --

18             THE COURT:  -- the facts that are in dispute?

19             MR. ROSENBLATT:  Well, frankly, I think that we can

20    -- I mean I think this is something that can be done by motion

21    practice.  I mean the issues are --

22             THE COURT:  But is it a motion that will have

23    factual disputes?

24             MR. ROSENBLATT:  I mean sure.

25             THE COURT:  Okay.  How do you propose to have me

11

1  resolve them; on what evidence?  Declarations and affidavits,

2  witness testimony at a hearing, what?

3          MR. ROSENBLATT:  We can certainly do witness

4  testimony at a hearing.  We can also, frankly, I think do it

5  on the papers.  I mean I think this is -- there are factual

6  issues -- well, let me take that back.  I'm not sure that

7  there are necessarily factual issues about the way the Nelkins

8  communicated with the Schreibers and the things that were done

9  even with this Court with regard to how the Nelkins proceeded

10  and the case moved forward as a settlement was

11  [indiscernible].

12          THE COURT:  Look, the docket is the docket.

13          MR. ROSENBLATT:  Yes.

14          THE COURT:  The communications between you, you guys

15  know about it.  Is there anything beyond that that you're

16  going to ask me to take into account factually that isn't on

17  the docket or something, you know, that is going to be

18  essentially emails between the Schreibers and the Nelkins?

19          MR. ROSENBLATT:  I think the primary focus of our --

20  our primary focus is going to be the direct communications

21  between the Nelkins and the Schreibers.  There is certainly

22  ancillary --

23          THE COURT:  I didn't ask for primary.  I --

24          MR. ROSENBLATT:  I understand.

25          THE COURT:  You know, I really can't stand it when

12

1   lawyers know what I'm asking and decide not to answer it and

2   pretend that I asked something else.  It's terribly

3   frustrating.  I didn't ask the primary focus.  Is there any

4   factual matter that I'm going to need to decide that will go

5   beyond what's in the docket and the emails back and forth

6   between Schreibers and Nelkins?

7           MR. ROSENBLATT:  And I'm not avoiding it.  I'm just

8   trying to think through it.

9           THE COURT:  Think and then answer.

10          MR. ROSENBLATT:  Okay.  I mean our position is that

11  this is something that can be decided on the papers based on

12  the communications between the Nelkins, the Schreibers, the

13  docket, and those communications.  That said --

14          THE COURT:  When you say those communications, just

15  like emails back and forth?

16          MR. ROSENBLATT:  Emails, proposed settlement

17  agreements, those types of things.

18          THE COURT:  Right.  The documents?

19          MR. ROSENBLATT:  Yes.  But --

20          THE COURT:  So I'm not going to see any affidavits

21  about here's what else happened?

22          MR. ROSENBLATT:  I will say that we don't believe

23  it's necessary to have those.  But --

24          THE COURT:  Am I going to see it?

25          MR. ROSENBLATT:  Let me answer it this way.

1          THE COURT:  You know what?  No.

2          MR. ROSENBLATT:  No, no.

3          THE COURT:  No.

4          MR. ROSENBLATT:  The answer is --

5          THE COURT:  Mr. Rosenblatt?

6          MR. ROSENBLATT:  The answer is --

7          THE COURT:  No, stop.

8          MR. ROSENBLATT:  Yeah.

9          THE COURT:  Answer my question.  Will I see

10  affidavits or declarations of factual matters beyond what's in

11  documents that went back and forth?  Yes or no; don't say

12  anything else, please.

13          MR. ROSENBLATT:  No.  I mean we -- we have enough

14  with just what we can submit to the Court on the papers.

15          THE COURT:  And don't get me wrong.  I'm not saying

16  you can't have something.

17          MR. ROSENBLATT:  Okay.

18          THE COURT:  But I want to know what's coming so that

19  I can intelligently address Ms. Hyland's request.

20          MR. ROSENBLATT:  Okay.  So, obviously, I'm not

21  waiving any right to present anything else.  I mean I assume

22  the Court understands that.

23          THE COURT:  I'm not asking you to.

24          MR. ROSENBLATT:  Okay, fine.  But, yes, we -- our

25  position is that this is essentially motion practice that can

14

1    be done on the papers with direct evidence of communications

2    between the Nelkins and the Schreibers and the docket, and

3    that's all what we need.

4            THE COURT:  Do you anticipate calling any witnesses

5    to prove up any facts?

6            MR. ROSENBLATT:  The Schreibers, possibly the

7    Nelkins.  That's --

8            THE COURT:  Will they be testifying to any facts

9    that aren't already in the record or won't already be in the

10   record when you submit your brief?

11           MR. ROSENBLATT:  No.  That would be what we'd put in

12   the papers.

13           THE COURT:  Okay.

14           MR. ROSENBLATT:  But it would be just maybe to flesh

15   things out, that kind of thing.

16           THE COURT:  Okay.  And on your side, what do you

17   anticipate proving up?

18           MS. HYLAND:  I'm surprised to hear there won't be

19   declarations with factual information because that's -- we

20   would certainly expect that and we'd expect to put those types

21   of declarations in which is why we're here talking about

22   discovery and, again, just because that's what we inferred

23   from the letter that was submitted.

24           THE COURT:  This would be so much easier for

25   everybody involved if you guys sat down and talked to each

1    other about what are we going to do here.  But we're not --

2              MS. HYLAND:  Well, we --

3              THE COURT:  -- past the point where that can happen.

4              MS. HYLAND:  We did try to talk to Counsel.

5              THE COURT:  Look, on both sides I know you're going

6    to tell me we tried, we tried.  Sit down and do it or don't.

7    But anyway, are you going to present in your submissions

8    factual matter beyond --

9              MS. HYLAND:  Yes.

10             THE COURT:  -- the docket and -- what?  Tell me

11   what.

12             MS. HYLAND:  Well, we'll definitely be putting in

13   declarations from the Nelkins.

14             THE COURT:  To go beyond what was -- what's in

15   documents that go back and forth?

16             MS. HYLAND:  Most likely, yes.

17             THE COURT:  Okay.

18             MS. HYLAND:  Yes.  And --

19             THE COURT:  Sorry to keep interrupting you, but I

20   want to take this one thing at a time.

21             MS. HYLAND:  Certainly.

22             THE COURT:  Mr. Rosenblatt, are you going to seek to

23   depose them in advance of a hearing?

24             MR. ROSENBLATT:  If they're going to introduce

25   things that are beyond the scope of communications, then

1  certainly.  I mean we'd like to -- we don't want to take

2  depositions.  We don't think it's necessary.  But if it's

3  going to turn into a full-blown hearing where they're

4  presenting evidence that we haven't seen before, obviously,

5  we'd want to know.

6          THE COURT:  I don't know whether it will or it

7  won't.  I guess what I'm trying to find out is do you agree

8  with the proposing that if there's a hearing, an evidentiary

9  hearing, to determine factual matters, that you guys should

10 exchange discovery in advance of that hearing?

11         MR. ROSENBLATT:  Well, I mean we haven't -- we still

12 don't have the file, so I mean we'd like that kind of --

13         THE COURT:  It's not hard to have back and forth

14 where you actually answer my questions, but you do have to

15 make the choice to do it.  Do you agree with Ms. Hyland that

16 if there's going to be an evidentiary hearing, there should,

17 for example, there should be depositions of any witnesses

18 going to testify at the hearing?

19         MR. ROSENBLATT:  If that hearing is beyond the scope

20 of the limited focus of the motion practice.  In other words,

21 what I was talking about was the Schreibers testifying to

22 maybe flesh out issues that are --

23         THE COURT:  If the Nelkins give me an affidavit that

24 has matters beyond what's in the docket or in their emails --

25         MR. ROSENBLATT:  Right.

17

1        THE COURT:  If it's something other than here are my

2   emails, you think that instead of just questioning them about

3   their affidavits on the stand, you should have a deposition

4   first?

5        MR. ROSENBLATT:  Not necessarily.  I don't --

6        THE COURT:  Okay.  What else do you anticipate

7   besides the Nelkins?

8        MS. HYLAND:  Well, I think we'll probably again have

9   -- we'd like to depose some of the attorneys, for example,

10  possibly Mr. Faso or Mr. Koenig.

11       THE COURT:  No, no.  Before we get to that --

12       MS. HYLAND:  Oh, sorry.

13       THE COURT:  -- in terms of what your brief would

14  look like, what factual matters would you be presenting, you

15  know, beyond the affidavits of the Nelkins?

16       MS. HYLAND:  Oh, okay.  I'm sorry.  Documents, the

17  declarations of the Nelkins.  I'm not sure if we're going to

18  have other third-party witnesses that we'll be able to get

19  declarations from, but we may have that.

20       THE COURT:  All right.  Well, look, honestly, I

21  think it's sort of premature because I don't know what need

22  there will be for a factual determination until I see your

23  submissions, really.  I'm not -- you know, certainly, I think

24  if there's a factual dispute that the submission has raised,

25  I'll have to determine that with an evidentiary hearing once I

1   get a sense of what that hearing would need to look like, you

2   know, by seeing who's disputing what.

3          Then, I think we can more intelligently address

4   whether in order to prepare for that hearing, you need

5   discovery.  I'll tell you this, I think it's terribly

6   inefficient.  You guys are already eating up way more value in

7   litigation costs than this is worth, maybe not more than the

8   dispute is worth but you -- this is terribly wasteful, I

9   think.  And I'm sensitive to the idea that you're not entitled

10  to discovery.  It may make sense, but it would certainly add

11  to the cost.  I want to be as efficient as possible.

12         If it's a matter of, you know, you've got affidavits

13  going different directions and you're going to have to cross-

14  examine people, my instinct would be, you know what, you can

15  prepare to do that without a deposition.  But if there's

16  something where, you know, you really don't know enough to be

17  able to litigate fairly, then I'm going to have you engage in

18  some limited deposition -- discovery.  But I'm really not

19  going to know that until I see your submissions.  So let's set

20  a schedule for that.

21         One other thing, Ms. Hyland?

22         MS. HYLAND:  Uh-huh.

23         THE COURT:  Actually for both sides, you had in your

24  motion for reconsideration the declaration of expert --

25         MS. HYLAND:  Correct.

19

1          THE COURT:  -- in legal ethics.  Is that something

2    you anticipate adducing as evidence in some way?

3          MS. HYLAND:  I would think so, yes, since it is a

4    good cause issue.  So --

5          THE COURT:  Right.  So you're going to need to --

6    and do you anticipate doing the same?

7          MR. ROSENBLATT:  Probably.

8          THE COURT:  Okay.  I would like you guys to give

9    some thought to the bar that you'll have to overcome.  There's

10   case law about this in the circuit.  What you're asking me to

11   determine is a legal question, that is, you know, in the realm

12   of legal ethics, but it's a legal question.  There are

13   certainly times when the expert testimony of a professional

14   responsibility expert is relevant and admissible, but it tends

15   to be where a lawyer defendant's state of mind is one of the

16   elements of a criminal case or in the context of a legal

17   malpractice case.  In those contexts, it's admissible.

18          In the context of a dispute where the Court has to

19   resolve a question of legal ethics, it's a legal question and

20   not admissible.  I may have the ability to find my citation on

21   that quickly.  I don't know if I can.  But I'm not going to

22   ask you to wait for me while I find it, but I know there's

23   Second Circuit case law that I was recently looking at on that

24   very point.

25          So I'm really dubious to the idea that there's a

20

1  rule for expert witnesses, expert testimony, which isn't to

2  say you can't have a legal ethics expert advise you about what

3  to put in your brief, by all means.  But it's a legal

4  question, and I don't anticipate, absent being shown good

5  cause, that there's a basis for doing so having expert

6  evidence.

7           MS. HYLAND:  Okay.  We'll look into it and --

8           THE COURT:  Yeah.

9           MS. HYLAND:  -- and if we think it's compelling,

10 we'll come back to you, I guess?

11          THE COURT:  Okay.

12          MS. HYLAND:  Okay.

13          THE COURT:  So and I wanted to raise that because it

14 may affect the schedule --

15          MS. HYLAND:  Yes.

16          THE COURT:  -- we have for setting a briefing

17 schedule.  So you're going to be making the motion, right?

18          MR. ROSENBLATT:  Yes.

19          THE COURT:  Okay.  When do you want to put in your

20 brief?

21          MR. ROSENBLATT:  Let me just look at a calendar for

22 a second --

23          THE COURT:  Uh-huh.

24          MR. ROSENBLATT:  -- if I may.

25                    [Pause in proceedings.]

21

1          MR. ROSENBLATT:  My clients advise that in two weeks
2     they're going to be traveling --
3          THE COURT:  Uh-huh.
4          MR. ROSENBLATT:  -- for -- until the end of the
5     month.  So I'd ask for at least until they're able to get
6     back.  I know it's a little bit of a -- little bit of --
7          THE COURT:  You guys -- I'm happy to have any
8     schedule, any briefing schedule you guys are amenable to.
9     Just give me your suggestion.
10         MS. HYLAND:  Should we confirm with each other and
11    come back to you?
12         THE COURT:  That's fine.  Do you want to do that?
13         MS. HYLAND:  Do you want to do that?
14         MR. ROSENBLATT:  That's fine.
15         THE COURT:  Okay.
16         MS. HYLAND:  Okay.
17         THE COURT:  So, look, I'm not resolving any requests
18    for discovery today.  I really do think it's premature until I
19    see your submissions.
20         MS. HYLAND:  Okay.
21         THE COURT:  And so with your -- give me your
22    briefing -- your proposed briefing schedule.  Once you submit
23    the briefs, once the briefing is complete, I'll ask you to get
24    together and hopefully agree on something, you know, whether
25    it's discovery or hearing dates or whatever.  If you can agree

22

1   on it, great.  I'll do what you agree on.  If you don't, just

2   give me your competing suggestions, okay?

3            So when do you think you can get me a letter with a

4   proposed schedule?

5            MS. HYLAND:  Wednesday.

6            MR. ROSENBLATT:  Why don't we take a week.

7            MS. HYLAND:  A week, okay.

8            THE COURT:  That's fine.  Okay.  So I'll have that

9   on February 14th.  Okay.  Just before I forget, I did find

10  that case law I was talking about.  There's a case called

11  Bernstein v. Bernstein Litowitz, 814 F.3rd 132 at page 144.

12  And that cites some cases about how the court's not compelled

13  to accept a legal ethics expert's declaration regarding

14  whether an ethical duty had been triggered because that's a

15  question for the court to decide.

16           MS. HYLAND:  Okay.

17           THE COURT:  But that's a starting point.  If you

18  want me to consider something else, I will.  All right.  Is

19  there anything else we can accomplish today?

20           MS. HYLAND:  No.

21           THE COURT:  No.

22           MR. ROSENBLATT:  I think that covers it.  Thank you,

23  Your Honor.

24           THE COURT:  Thank you all.  Have a good day.

25           MS. HYLAND:  Thank you.

23

1    (Proceedings concluded at 11:10 a.m.)

2                         *  *  *  *  *  *

24

1      I certify that the foregoing is a court transcript from

2 an electronic sound recording of the proceedings in the above-

3 entitled matter.

4

5      _____

6                   Shari Riemer, CET-805

7 Dated:  February 7, 2019

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25