Clerk's Office
Filed Date: 3/7/2022

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
STEVEN SCHREIBER and TWO RIVERS COFFEE, LLC,

                Plaintiffs,

  -against-

EMIL FRIEDMAN, et al.,

                Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
15-cv-6861 (CBA) (CLP)

**AMON, United States District Judge:**

Non-parties Jay Nelkin, Carol Nelkin, and their law firm Nelkin & Nelkin, P.C. (the "Firm" or, collectively with the two attorneys, the "Nelkins") object to the order of former[1] Magistrate Judge James Orenstein granting the motion of plaintiff Steven Schreiber, together with his father, non-party Eugene Schreiber (collectively, the "Schreibers") and the company in which the two men are partners, plaintiff Two Rivers Coffee, LLC ("TRC"), to vacate the Nelkins' charging lien on the ground that the Schreibers discharged the Nelkins for cause. (E.C.F. Docket Entry ("D.E.") # 656 (the "September 2020 Order").) For the reasons set forth below, I accept in part and reject in part the Nelkins' objections and respectfully refer the matter to the Honorable Cheryl L. Pollak, Chief United States Magistrate Judge, for an evidentiary hearing and report and recommendation as to whether the Nelkins were discharged for cause or otherwise forfeited their entire entitlement to a fee.

## BACKGROUND

A more detailed recitation of the facts can be found in the September 2020 Order. As a result, I briefly recount only those facts relevant to the Nelkins' objections to that order. In May 2015, the Schreibers—co-founders of TRC—became concerned that defendant Emil Friedman—

---

[1] Magistrate Judge Orenstein's term as a United States Magistrate Judge for the Eastern District of New York ended on November 6, 2020.

1

an investor in TRC who had amassed a controlling interest in the company—was misappropriating funds and converting company assets. The Schreibers engaged the Nelkins to file suit against Friedman on their behalf, signing an engagement letter under which the Firm would receive "one-third of the total recovery . . . (including any funds, increased equity or other benefits), by virtue of a settlement or final judgment in the litigation." (D.E. # 623-3.) The Nelkins filed a complaint against Friedman and other associated individuals and corporate entities on Steven's[2] behalf on December 2, 2015. After years of litigation, the parties to the underlying action reached a settlement in principle, in which the Schreibers would regain sole control of TRC. Under the settlement, Friedman was to surrender his sixty-percent interest in the company, forgive a substantial loan he made to the company for a fraction of its nominal value, and pay $2.75 million in cash, $1 million of which would assist the Schreibers in buying out a 17 percent stake in TRC held by non-party Mayer Koenig.

The Schreibers and the Nelkins disagreed on the value of the settlement and, by extension, the value of the Nelkins' one-third contingency fee. This disagreement arose due to the Nelkins' and the Schreibers' differing valuations of the equity and loan forgiveness components of the settlement. As negotiations between the Schreibers and their attorneys broke down, their communications grew, as Magistrate Judge Orenstein put it, "vituperative." (September 2020 Order 5.) As will be discussed in further detail below, the parties to the fee dispute present significantly different accounts of these communications. Although the Schreibers sought the assistance of two attorneys with respect to negotiating the fee dispute with the Nelkins—first Jerry Weiss and later Hillel Parness ("Parness")—the Nelkins continued to work on the Schreibers'

---

[2] For convenience and clarity, I will refer to the individual Schreibers and Nelkins by their first names.

behalf with respect to finalizing the settlement in the underlying litigation while simultaneously continuing to negotiate their fee.

On August 13, 2018, with the fee dispute still unresolved, the parties to the underlying litigation represented to Magistrate Judge Orenstein that they had reached a settlement that was contingent on, among other things, the realignment of TRC as a plaintiff. On the same day, Jay filed a notice of appearance on behalf of Eugene, followed by a joint motion to realign TRC as a plaintiff in the underlying litigation. After Magistrate Judge Orenstein granted the realignment motion, Parness filed a notice of appearance on behalf of TRC, followed by a letter on behalf of Eugene seeking a conference before Magistrate Judge Orenstein to address the fee dispute. Magistrate Judge Orenstein denied the request.

Two days later, on August 15, 2018, the Nelkins served notice of a charging lien attached to the settlement in the underlying litigation on all parties to the underlying action. Later the same day, Parness filed a motion on behalf of TRC seeking a declaratory judgment and/or a determination of the fees owed by the Schreibers to the Nelkins. In response, Jay filed a notice of appearance on behalf of the Firm and a letter opposing Parness's request.

Magistrate Judge Orenstein held a conference to address the parties' fee-dispute-related motions on August 30, 2018, at which Jay appeared on behalf of the Firm and Parness appeared on behalf of the Schreibers and TRC. At this conference, Magistrate Judge Orenstein stated that he was terminating the Nelkins' representation of the Schreibers without prejudice to the Schreibers' right to seek relief on the ground that the Nelkins were discharged for cause. Unbeknownst to the Schreibers or Magistrate Judge Orenstein, the Nelkins had, earlier that same day, filed a plenary action against the Schreibers, accusing them of fraud, breach of contract, and other misconduct related to the fee dispute.

3

After participating in an ultimately unsuccessful mediation with the Nelkins, the Schreibers filed the instant motion to vacate the charging lien, arguing that the Nelkins had been discharged for cause. Magistrate Judge Orenstein granted the motion on September 16, 2020, holding that the Nelkins had been discharged for cause and forfeited their fees by interfering with the Schreibers' right to settle the litigation and violating the New York Rules of Professional Conduct's proscription against conflicts of interest. (September 2020 Order 23.) After noting that New York law is clear that an attorney discharged "for cause" loses the right to enforce a charging lien, Magistrate Judge Orenstein found ample "cause" for discharging the Nelkins. (Id. at 16-18.) Specifically, Magistrate Judge Orenstein found that the Nelkins improperly interfered with their clients' right to settle the underlying case in their attempt to vindicate their right to a fee by: (1) threatening to withdraw if the Schreibers did not accede to the Nelkins' fee demands or sought court intervention in the fee dispute, and (2) threatening to assert a charging lien in such a way as to block the Schreibers' ability to effectuate their settlement with the defendants in the underlying action. (Id. at 18.)

Additionally, Magistrate Judge Orenstein noted that an attorney's violation of a disciplinary rule may result in the forfeiture of his fees, even if the misconduct is not discovered until after his discharge and, thus, cannot serve as a basis for a discharge for cause. (Id. at 17.) Magistrate Judge Orenstein then found that the Nelkins "knowingly labored under a manifest conflict of interest," in violation of the New York Rules of Professional Conduct when they took steps to prejudice the Schreibers' interests in the underlying lawsuit in pursuit of their fee while still serving as the Schreibers' counsel of record—specifically, by accusing the Schreibers of bad faith and fraud in their August 20, 2018 letter filed on the docket and filing suit against the Schreibers on August 30, 2018. (Id. at 19.) This alleged violation of the Rules of Professional

4

Conduct further bolstered Magistrate Judge Orenstein's decision to vacate the Nelkins' charging lien. The Nelkins lodged timely objections to the September 16, 2020 Order. (D.E. # 668 ("Nelkin Obj.").)

## STANDARD OF REVIEW

As Magistrate Judge Orenstein noted, the Federal Magistrates Act empowered him to decide the Schreibers' motion in the first instance. (See September 2020 Order 1 n.2 (citing 28 U.S.C. § 636(b)(1)(A)).) The parties dispute, however, whether I must review the September 2020 Order de novo or under a more deferential standard of review. As Magistrate Judge Orenstein identified, there is some uncertainty as to whether a magistrate judge's[3] decision on an attorneys' fees motion should be considered dispositive or non-dispositive. (See id. (contrasting Sutton v. N.Y.C. Transit Auth., 462 F.3d 157, 159 n.2 (2d Cir. 2006) (expressing uncertainty as to magistrate judge's authority to determine amount of charging lien), with Joffe v. King & Spalding LLP, No. 17-cv-3392 (VEC) (SWD), 2019 WL 4722673, at *2 (S.D.N.Y. Sept. 25, 2019) (reviewing magistrate judge's decision to affix a charging lien under the "clearly erroneous" standard for non-dispositive cases), aff'd sub nom. Joffe v. Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, P.C., 827 F. App'x 35 (2d Cir. 2020) (summary order)).) Identifying this tension in a recent decision, Judge Brian M. Cogan surveyed the available caselaw and noted that "[a]lthough the Second Circuit has mostly stayed out of the fray on this particular question, a recent-nonprecedential decision suggests that '[a]ttorneys' fee determinations are considered "dispositive" for purposes of Rule 72 of the Federal Rules of Civil Procedure' in this Circuit." Linde v. Arab Bank, PLC, Nos. 04-cv-2799 (BMC) (PK), 04-cv-5449 (BMC) (PK), 05-cv-3183

---

[3] The Schreibers are correct that the Second Circuit has held that a district court's decision on attorney's fees should be reviewed for abuse of discretion, (see D.E. # 672 ("Schreibers Mem. Opp.") at 4), but that holding does not answer the question at hand—what standard a district court should apply in reviewing a magistrate judge's decision.

5

(BMC), 05-cv-3738 (BMC) (PK), 06-cv-1623 (BMC) (PK), 06-cv-3869 (BMC) (PK) 2020 WL 5200924, at *1 (E.D.N.Y. Sept. 1, 2020) (internal citation omitted) (quoting McConnell v. ABC-Amega, Inc., 338 F. App'x 24, 26 (2d Cir. 2009) (summary order)). I agree with Judge Cogan's well-reasoned analysis in Linde and conclude that, although the question arguably remains open, "because the Second Circuit's recent leanings counsel in favor of treating [a] motion for attorneys' fees as a dispositive matter, [I] will review the [Nelkins'] objections to Magistrate Judge [Orenstein's] decision de novo." Id.

## DISCUSSION

### I. The Nelkins' First Objection: Jurisdiction

The Nelkins first object that Magistrate Judge Orenstein lacked jurisdiction over the Schreibers' motion. The Nelkins base their argument on the stipulation of voluntary dismissal entered into by the Schreibers and the defendants[4] in the underlying action on May 3, 2019, (D.E. # 636), which I endorsed and entered as an order on May 28, 2019, (D.E. # 640). As an initial matter, it is well-established that the dismissal of an action with prejudice does not divest a court of jurisdiction to determine a pending fee dispute. Kaplan v. Reed Smith LLP, 919 F.3d 154 (2d Cir. 2019) ("Where a district court has original jurisdiction over a civil action, 'it retains ancillary jurisdiction after dismissal to adjudicate collateral matters such as attorney's fees." (quoting In re Austrian & German Bank Holocaust Litig., 317 F.3d 91, 98 (2d Cir. 2003)).

The Nelkins, nonetheless, argue that the stipulation, by its express terms, dismissed with prejudice the Schreibers' disqualification motion, stripping Magistrate Judge Orenstein of jurisdiction. In support of this argument, the Nelkins point to the language of the stipulation, which provided that the underlying action was dismissed with prejudice and that "[a]ll pending motions,

---

[4] The Nelkins signed the stipulation of dismissal on behalf of plaintiff Steven, but were not otherwise party to the stipulation.

6

including all discovery and/or sanctions motion(s) filed by plaintiff Steve Schreiber, including ECF Nos. 168, 282 and 305, [were] withdrawn and dismissed with prejudice and without fees or costs . . . ." (D.E. # 636 at 2.) Magistrate Judge Orenstein rejected this argument, noting that, after the filing of the stipulation, the parties submitted a letter clarifying their intentions with respect to the stipulation. (See September 2020 Order 14.) That clarification letter provided that "the Stipulation was not intended to withdraw the pending motion to disqualify counsel [docket entry 623] or otherwise in any way dispose of or resolve the fee dispute." (September 2020 Order 14 (quoting D.E. # 638 (alteration in original).) This letter was signed by counsel for the Schreibers, counsel for the Nelkins, and counsel for defendant Emil Friedman. (See id.)

The Nelkins argue that because the stipulation of dismissal was made pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), it was self-executing and immediately effective, so its legal effect could not have been altered by the subsequent clarification letter. (Nelkin Obj. 15-16.) Ordinarily, a stipulation of dismissal with prejudice is unambiguous, and the Second Circuit has noted, in assessing the res judicata effect of a stipulation of dismissal, that "[s]uch a stipulation will (almost invariably) have preclusive effect notwithstanding a litigant's post hoc assertion that he intended to preserve certain claims." Israel v. Carpenter, 120 F.3d 361, 365 (2d Cir. 1997). Indeed, the Second Circuit has cautioned that "[m]ere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds . . . to justify . . . relief," Nemaizer v. Baker, 793 F.2d 58, 62 (2d Cir. 1986), and that their cases "reflect a consistent reluctance to limit the effect of . . . a stipulation by looking behind its plain language," Israel, 120 F.3d at 365.

The present case, however, "is distinguishable in . . . this crucial respect: [the Schreibers] make[] no claim that the stipulation of dismissal as written was a product of counsel's 'mistake' or any unilateral failure to appreciate its reach and effect. Rather, [the Schreibers] argue[] that in

7

the circumstances of this case, it was understood and intended by everyone involved that the stipulation would" not withdraw the Schreibers' disqualification motion. Id. at 366. Where a party seeks to "limit the stipulation of dismissal to its allegedly mutually intended scope," rather than "escape it by pleading a unilateral mistake," a court may apply principles of contract law to determine how best to interpret the stipulation of dismissal. See id. at 366–67.

Stipulations of dismissal are "interpreted pursuant to the [contract law of the] jurisdiction [in which] they were entered into." Coyle v. Coyle, 334 F. Supp. 2d 284, 287 (E.D.N.Y. 2004), vacated in part, modified in part sub nom. Coyle v. Olsen, No. 3-cv-3286 (ADS) (ARL), 2004 WL 2370685 (E.D.N.Y. Sept. 30, 2004); Israel, 120 F.3d at 366. Under either the federal common law of contracts or New York state contract law, the analysis is ultimately the same, as "federal common law and New York law are virtually identical with regard to the proper use of extrinsic evidence." Allendale Mut. Ins. Co. v. Excess Ins. Co., 992 F. Supp. 271, 275 n.3 (S.D.N.Y. 1997).

"As a general matter, the objective of contract interpretation is to give effect to the expressed intentions of the parties." Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989). "If the terms of a contract are unambiguous, the obligations it imposes are to be determined without reference to extrinsic evidence." Id. By contrast, where the terms of a contract are ambiguous, "the court must refer to extrinsic evidence to determine the intent of the parties." Gilbert v. Related Mgmt. Co., L.P., No. 95-cv-9610, 1998 WL 99801 (JFK), at *4 (S.D.N.Y. Mar. 4, 1998) (quoting Alternative Thinking Sys., Inc. v. Simon & Schuster, Inc., 853 F. Supp. 791, 795 (S.D.N.Y.1994)). Here, the stipulation provided that "[a]ll pending motions, including all discovery and/or sanctions motion(s) filed by plaintiff Steve Schreiber, including ECF Nos. 168, 282 and 305, [were] withdrawn and dismissed with prejudice and without fees or costs . . . ." (D.E. # 636 at 2.) However, the stipulation was entered into between the Schreibers and the defendants

in the underlying action, and the Nelkins were not party to it. An ambiguity arises, then, as to whether the stipulation was intended to dismiss all pending motions or simply all pending motions between the stipulating parties. To resolve that ambiguity, contract law permits me to consider the extrinsic evidence of the stipulating parties' intent, namely the clarification letter discussed above. The clarification letter clearly demonstrates that to interpret the stipulation to give effect to the parties' mutual intent, I must reject the Nelkins' objection that Magistrate Judge Orenstein lacked jurisdiction to decide the motion.

## II. The Nelkins' Second, Third, and Fourth Objections: Evidentiary Decisions

The Nelkins' second, third, and fourth objections involve certain evidentiary decisions made by Magistrate Judge Orenstein. Specifically, the Nelkins' second objection centers on Magistrate Judge Orenstein's reliance on the Schreibers' declarations, allegedly in contravention of his prior order excluding those declarations. Their third objection is based on Magistrate Judge Orenstein's alleged resolution of disputed factual issues without an evidentiary hearing. With respect to their fourth objection, the Nelkins argue that Magistrate Judge Orenstein's factual findings are based on "distortions" of the record. Because these objections are based on the evidence Magistrate Judge Orenstein considered and the validity of the findings he made based on that evidence, a brief procedural background on the disqualification motion and Magistrate Judge Orenstein's related evidentiary rulings is necessary.

On January 2, 2019, the Schreibers requested a hearing to resolve the question of whether the Nelkins were discharged for cause and therefore, not entitled to collect any fees. (D.E. # 618.) The Nelkins responded by letter the same day, agreeing that such a hearing was necessary, but requesting a pre-hearing conference to determine the scope of pre-hearing discovery, if any. (See D.E. # 619.) Magistrate Judge Orenstein granted the Nelkins' request and held a conference to

discuss preliminary issues related to the fee dispute on February 7, 2019. (D.E. # 620; D.E. # 621.) At that conference, the following exchange occurred between Magistrate Judge Orenstein and counsel for the Schreibers concerning what type of evidence the Schreibers would submit in support of their motion:

> MR. ROSENBLATT: Okay. I mean our position is that this is something that can be decided on the papers based on the communications between the Nelkins, the Schreibers, the docket, and those communications. That said –
>
> THE COURT: When you say those communications, just like emails back and forth?
>
> MR. ROSENBLATT: Emails, proposed settlement agreements, those types of things.
>
> THE COURT: Right. The documents?
>
> MR. ROSENBLATT: Yes. But –
>
> THE COURT: So I'm not going to see any affidavits about here's what else happened?
>
> MR. ROSENBLATT: I will say that we don't believe it's necessary to have those. But –
>
> …
>
> THE COURT: Answer my question. Will I see affidavits or declarations of factual matters beyond what's in documents that went back and forth? Yes or no; don't say anything else, please.
>
> MR. ROSENBLATT: No. I mean we -- we have enough with just what we can submit to the Court on the papers.
>
> THE COURT: And don't get me wrong. I'm not saying you can't have something.
>
> MR. ROSENBLATT: Okay.
>
> THE COURT: But I want to know what's coming so that I can intelligently address Ms. Hyland's request.

10

MR. ROSENBLATT: Okay. So, obviously, I'm not waiving any right to present anything else. I mean I assume the Court understands that.

THE COURT: I'm not asking you to.

MR. ROSENBLATT: Okay, fine. But, yes, we – our position is that this is essentially motion practice that can be done on the papers with direct evidence of communications between the Nelkins and the Schreibers and the docket, and that's all what we need.

THE COURT: Do you anticipate calling any witnesses to prove up any facts?

MR. ROSENBLATT: The Schreibers, possibly the Nelkins. That's –

THE COURT: Will they be testifying to any facts that aren't already in the record or won't already be in the record when you submit your brief?

MR. ROSENBLATT: No. That would be what we'd put in the papers.

THE COURT: Okay.

MR. ROSENBLATT: But it would be just maybe to flesh things out, that kind of thing.

(D.E. # 621 at 10:10–14:15.)

After the Schreibers submitted their opening papers in support of their disqualification motion, the Nelkins objected that the Schreibers had submitted detailed affidavits from Steven and Eugene recounting oral conversations involving the Schreibers, the Nelkins, and numerous third parties. (See D.E. # 625.) The Nelkins, therefore, renewed their request for discovery. (Id.) After receiving a response from the Schreibers, (D.E. # 626), Magistrate Judge Orenstein issued an order stating that "[t]o the extent the Schreiber Parties have submitted or relied on evidence beyond the scope that their counsel described at the conference on February 7, 2019, I will disregard it[,]"

11

(Mar. 13, 2019 Order). Magistrate Judge Orenstein, therefore, denied the Nelkins' request for limited discovery related to the fee dispute. (Id.) After the parties finished briefing the motion (with the Nelkins submitting detailed affidavits of their own countering many of the assertions made in the Schreibers' declarations), Magistrate Judge Orenstein heard oral argument on the motion, but did not hold an evidentiary hearing. (See D.E. #644; D.E. # 646.)

As evidenced by the enormous number of pages both sides devote to arguing the Nelkins' evidentiary objections, the events that led to the souring of the relationship between the Schreibers and the Nelkins are very much in dispute. For example, one of the core factual findings underlying Magistrate Judge Orenstein's decision to deny the Nelkins their fee is that the Nelkins improperly threatened to withdraw if the Schreibers raised the fee dispute with Magistrate Judge Orenstein, which would have left the Schreibers without counsel as they continued to negotiate a settlement. In support of this finding, the September 2020 Order relies on the declarations of Eugene, Steven, Carol, and Jay as evidence for the proposition that "the Schreibers assert, and the Nelkins do not dispute, that during a telephone call on June 10, 2018, the Nelkins threatened that if the Schreibers asked [Magistrate Judge Orenstein] to address the fee dispute, they would withdraw." (September 2020 Order 19 (citing D.E. # 623-2 ("S. Schreiber Decl.") ¶¶ 42, 44; D.E. # 623-16 ("E. Schreiber Decl.") ¶ 37; D.E. # 629 ("C. Nelkin Decl.") ¶¶ 103–04, 107; D.E. # 628 ("J. Nelkin Decl.") ¶ 55).) The cited paragraphs of the Steven and Eugene declarations do contain allegations that the Nelkins threatened to withdraw if the Schreibers sought court intervention in the fee dispute.

The Nelkins' declarations tell a different story—one in which extreme verbal abuse and allegations by the Schreibers that the Nelkins were extorting them gave the Nelkins no choice but to advise their clients that the representation could not continue under those conditions. (See C. Nelkin Decl. ¶¶ 98–108; J. Nelkin Decl. ¶¶ 55–57.) Moreover, the Jay and Carol declarations

directly dispute the contention that they threatened to withdraw. (See C. Nelkin Decl. ¶ 104 ("In response, Steven sent an email the next day accusing us of threatening to resign, as he does in his motion. This completely mischaracterizes our conversation."); see also J. Nelkin Decl. ¶ 58 ("None of these statements, however, came anywhere close to 'threats' and contrary to the Schreibers' claims, we never put the settlement in jeopardy by threatening to withdraw nor did we delay the settlement in any way.").)

Even setting aside the conflicting accounts of events for which the parties' affidavits are the only evidence, many of the written communications that Magistrate Judge Orenstein relied on as evidence that the Nelkins acted improperly in vindicating their interests are susceptible to more than one interpretation. For example, in support of the factual finding that the Nelkins attempted to force the Schreibers to accede to their fee demands by improperly threatening to withdraw or assert a charging lien in such a way that could derail the settlement, Magistrate Judge Orenstein cited an email from the Nelkins to the Schreibers' counsel and a letter from the Nelkins to the Schreibers. (September 2020 Order 18.) In the email, the Nelkins warned that "the filing of a charging lien will impact the distribution of any benefits resulting from the settlement and would not be limited to the payment of any settlement payments" and stated that they "would prefer to have this matter resolved, but it is now up to the Schreibers as to whether they want to do that or not." (Id. (citing D.E. # 623-14).) Magistrate Judge Orenstein characterized this email as a "thinly veiled threat." (Id.) In the letter, the Nelkins pointed out that "the effect of a Charging Lien is to halt the transfer of settlement funds and other property or benefits" and warned that "until the dispute between us is resolved, I do not believe that the Defendants will make the payments anticipated to serve as credits for the payments you are obligated to make on the Effective Date" under the settlement agreement. (Id. (citing D.E. # 544-3).) Magistrate Judge Orenstein

characterized these two communications as "repeated[] threat[s]" by the Nelkins to "scuttle[] the resolution of the underlying litigation." (Id.) The Nelkins dispute Magistrate Judge Orenstein's characterization of these communications as "threats," and maintain that it was incumbent upon the Nelkins to discuss with their clients the likely impact of the charging lien on their obligations under the settlement agreement. (See Nelkin Obj. 33-34.)

Similarly, Magistrate Judge Orenstein's determination that the Nelkins' representation of the Schreibers did not end until August 30, 2018 turns on equally contested facts. The Second Circuit has established that "no special formality is required to effect the discharge of the attorney. 'Any act of the client indicating an unmistakable purpose to sever relations is enough.'" Hanlin v. Mitchelson, 794 F.2d 834, 842 (2d Cir. 1986) (quoting Costello v. Bruskin, 359 N.Y.S.2d 116, 116 (App. Div. 1977)). But that inquiry is inherently fact intensive; "[s]hort of instituting a malpractice suit . . . a client may question her attorney's tactics, suggest alternatives and even consult another attorney without automatically terminating the attorney-client relationship." Id. The record is conflicted on whether the Schreibers' conduct toward the Nelkins rose to a level of an "unmistakable purpose to sever relations." Id. As the Nelkins frame it, the Schreibers "publicly accused N&N of ethical misconduct, repudiated their fee agreement, filed a declaratory judgment, and appeared both pro se and represented by counsel adversely to N&N." (Nelkin Obj. 42.) The Schreibers, however, stress that an email from the Nelkins on July 19, 2018—sent more than three weeks before the Nelkins' claim they were "constructively discharged"—indicating that the Schreibers had the ability to "terminate the services of Nelkin & Nelkin . . . should they choose to do so, but they will have to do so in writing" and that "[u]ntil they do so in writing and someone is formally substituted in by Order of the Court, we will continue to act as their counsel . . ." demonstrates that the Nelkins believed their representation could only be terminated via a formal

14

agreement or by the court. (D.E. #672-5 at 6.) Under either version of events, the underlying facts of the scope and ultimate termination of the attorney-client relationship remain contested.

Where the facts are disputed, an evidentiary hearing should generally be held to determine whether an attorney was discharged for cause. See Hee Jun Cheon Lee v. Garcia, 914 N.Y.S.2d 898, 898 (App. Div. 2011) (mem.) (holding that where the "parties submitted starkly contrasting versions of the events which led to [the attorney's] discharge," a hearing was required to determine if attorney was discharged for cause); Kovach v. City Univ. of N.Y., No. 13-cv-7198 (LGS), 2015 WL 3540798, at *4 (S.D.N.Y. June 4, 2015) ("Generally, a 'hearing is required to determine if [an attorney] was discharged for cause, and, if not, the amount of his fee on a quantum meruit basis." (alteration in original) (quoting Antonmarchi v. Consol. Edison of N.Y., 678 F. Supp. 2d 235, 241 (S.D.N.Y. 2010)); Milner v. City of New York, No. 10-cv-9384 (JGK) (GWG), 2012 WL 3138110, at *13 (S.D.N.Y. Aug. 2, 2012) ("Because of the divergence in the parties' affidavits on these matters, the Court directed the parties to present evidence at a hearing."), report and recommendation adopted, 2012 WL 6097111 (S.D.N.Y. Dec. 10, 2012); cf. Klagsbrun v. Klagsbrun, 595 N.Y.S.2d 456, 457 (App. Div. 1993) (holding that hearing not necessary "since no material issues of fact were raised").

Not only are the relevant facts here disputed, but these facts are important in determining whether the Nelkins, who worked for years litigating a complex case on behalf of the Schreibers, should receive a sizable fee or nothing at all. If the Nelkins, indeed, interfered with the Schreibers' right to settle the underlying litigation or vindicate their interests in the fee dispute before Magistrate Judge Orenstein by using threats to withdraw as a coercion tactic, that interference could be grounds for a finding that the Nelkins were discharged for cause and, thus, forfeited their fees. See Holcombe v. Matsiborchuk, 747 F. App'x 875, 878 (2d Cir. 2018) (summary order)

(affirming district judge's determination that attorney was discharged for cause because "attorney misconduct, which includes . . . improper threats to withdraw, is sufficient to extinguish a lien"); Brooks v. Lewin, 853 N.Y.S.2d 286, 287–88 (App. Div. 2008) (holding that attorney's threats to withdraw, leaving client without counsel to complete briefing on summary judgment motion, were coercive, improper, and a valid basis for client to discharge attorney for cause). Similarly, if the Nelkins did not withdraw, and were not "constructively discharged," prior to filing suit against the Schreibers on August 30, 2021, the resulting conflict of interest could serve as grounds for a finding that the Nelkins were discharged for cause. Cooper v. Am. Red. Cross in Greater N.Y., No. 92-cv-7369 (CSH), 1995 WL 422150, at *1 (S.D.N.Y. July 18, 1995) (reflecting that where the court "disqualified the Wisehart firm from representing plaintiff because the firm placed itself in an untenable conflict of interest situation . . . . the Wisehart firm was discharged for cause" and "[i]n that circumstance, it has no right to a retaining lien, or to a charging lien, for that matter"). Given the conflicting accounts of the potentially dispositive events at issue here, it was error for Magistrate Judge Orenstein to fail to hold an evidentiary hearing. Accordingly, I accept the Nelkins' third objection and refer the matter to Chief Magistrate Judge Pollak for such a hearing and for a report and recommendation setting forth her findings of fact and recommended conclusions of law. The Nelkins' fourth, fifth, and sixth objections are, therefore, moot.

One final matter remains—that of the Nelkins' second objection to Magistrate Judge Orenstein's consideration of the Schreibers' declarations in contravention of his March 13, 2019 order. As detailed above, the order states that Magistrate Judge Orenstein would not consider any evidence outside the scope identified by the Schreibers' counsel at the February 9, 2019 hearing. Counsel for the Schreibers represented at that hearing that they would not be submitting detailed factual affidavits. Accordingly, the Nelkins are correct that Magistrate Judge Orenstein's reliance

on the Schreibers' declarations was inconsistent with his earlier order. The Nelkins urge me to "disregard the entirety of the Schreibers' Declarations" and argue that Magistrate Judge Orenstein's order excluding the declarations "is binding and be[came] law of the case." (Nelkins Obj. 35.) The law of the case doctrine commands that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case" unless "cogent and compelling reasons militate otherwise." United States v. Quintieri, 306 F.3d 1217, 1225 (2d Cir. 2002) (quoting United States v. Uccio, 940 F.2d 753, 758 (2d Cir.1991)). Such cogent and compelling reasons "include[] an intervening change in law, [the] availability of new evidence, or 'the need to correct a clear error or prevent manifest injustice.'" Johnson v. Holder, 564 F.3d 95, 99–100 (2d Cir. 2009) (quoting Quintieri, 306 F.3d at 1230). The law of the case doctrine "does not rigidly bind a court to its former decisions, but is only addressed to its good sense." Higgins v. Cal. Prune & Apricot Grower, Inc., 3 F.2d 896, 898 (2d Cir. 1924) (L. Hand, J.). To prevent the manifest injustice of either the Nelkins being wrongfully painted as having breached their ethical duties or the Schreibers having to pay a sizable fee to counsel who has committed misconduct, it makes good sense for Chief Magistrate Judge Pollak to have all of the relevant evidence before her, including the Schreibers' declarations. Accordingly, I reject the Nelkins' second objection.

## CONCLUSION

For these reasons, I reject the Nelkins' first and second objections as to Magistrate Judge Orenstein's jurisdiction and the consideration of the Schreiber and Nelkin declarations. I accept the Nelkins' third objection as to Magistrate Judge Orenstein's decision to proceed without an evidentiary hearing. The Nelkins' fourth, fifth, and sixth objections are rendered moot.

Accordingly, I respectfully refer the matter to Chief United States Magistrate Judge Cheryl L. Pollak for evidentiary hearing and a report and recommendation consistent with this opinion.

SO ORDERED.

Dated: March 7, 2022
Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge