UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
STEVEN SCHREIBER, individually and
derivatively on behalf of TWO RIVERS
COFFEE, LLC,

                           Plaintiff,

             -against-

EMIL FRIEDMAN, *et al.*,

                        Defendants.
-------------------------------------------------------- X

**MEMORANDUM & ORDER**
15 CV 6861 (CBA) (CLP)

     Currently pending before this Court on referral from the Honorable Carol B. Amon,

United States District Judge, is Nelkin & Nelkin, P.C.'s motion to transfer venue to the United

States District Court for the Southern District of Texas, Houston Division, pursuant to 28 U.S.C.

§§ 1334(e) and 1412. For the reasons set forth below, the motion to transfer venue is denied.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

     This case has a long and complicated history, beginning on December 2, 2015, with the

filing of the Complaint in the underlying action (hereinafter, the "Underlying action").[1] For

purposes of this Order, the Court recites only those facts necessary to understand the background

leading to the current motion to transfer.

     On May 6, 2015, plaintiff Steven Schreiber, together with his father, non-party[2] Eugene

Schreiber[3] – co-founders of Two Rivers Coffee, LLC ("TRC") (collectively, the "Schreibers" or

---

[1] For a more detailed recitation of the facts in the underlying case, <u>see</u> ECF Nos. 656, 684.

[2] Eugene Schreiber was not a named party in the Underlying action. On August 13, 2018, after a settlement had been reached in the Underlying action, Jay Nelkin filed a notice of appearance on behalf of Eugene Schreiber (ECF No. 538), and Eugene Schreiber was subsequently added to the case as an Interested Party.

[3] On December 13, 2024, Steven Schreiber and Two Rivers Coffee, LLC filed a letter attaching a Notice of Suggestion of Death of Eugene Schreiber, notifying the Court that Eugene Schreiber died on November 14, 2024. (ECF No. 751). The letter indicated that Eugene Schreiber's death should not affect the resolution of the motions currently pending before this Court. (<u>Id.</u>) On March 7, 2025, after some prior motion practice, Steven Schreiber and Two Rivers Coffee, LLC filed a renewed motion to substitute "Steven Schreiber as representative of Eugene

the "Schreiber parties"), retained Jay Nelkin, Carol Nelkin, and their firm Nelkin & Nelkin, P.C. (the "Firm" or "N&N," or collectively, with the two attorneys, the "Nelkins") to file suit against Emil Friedman, an investor in TRC, who the Schreibers believed was misappropriating funds and converting company assets.  (3/7/22 Order[4] at 1-2; Schreiber Br.[5] at 4).  The engagement agreement entered into between the Schreibers and the Firm contained a contingent fee clause. (Schreiber Br. at 4; Rosenblatt Decl.,[6] Ex. 1).

Acting on behalf of their client, Steven Schreiber, and derivatively on behalf of TRC, the Nelkins filed suit in this Court on December 2, 2015, asserting 40 causes of action against Friedman and other individuals and corporate entities.  (See ECF No. 1).  Eventually, after almost two years of litigation, in September 2017, the parties reached a settlement in principle in the Underlying action before the Honorable James Orenstein, former United States Magistrate Judge, then assigned to the case.  (Schreiber Br. at 4 (citing ECF No. 502)).[7]  Although a settlement agreement was reached in principle, negotiations as to the terms of the settlement continued, and the agreement was not actually finalized and executed until August 2018.  (Id. at 5).  On May 3, 2019, the parties submitted a stipulation of dismissal.  (ECF No. 636).

---

Schreiber's Estate" in place of Eugene Schreiber as an interested party in this case.  (ECF No. 755).  This Court granted the motion on April 17, 2025.  (ECF No. 762).  That Order is currently pending appeal before the district court.  (ECF No. 763).

[4] Citations to "3/7/22 Order" refer to the Memorandum and Order of the district court, filed on March 7, 2022 (ECF No. 684).

[5] Citations to "Schreiber Br." refer to the Omnibus Brief on Behalf of Steven Schreiber, Eugene Schreiber, and Two Rivers Coffee, LLC in Opposition to Nelkin & Nelkin, P.C.'s Motions to Dismiss, to Transfer Venue, and For Sanctions, filed September 20, 2024 (ECF No. 747).

[6] Citations to "Rosenblatt Decl." refer to the Declaration of Raphael M. Rosenblatt, Esq. in Opposition to Nelkin & Nelkin, P.C.'s Motions to Dismiss, to Transfer Venue, and For Sanctions, filed September 20, 2024 (ECF No. 747-1).

[7] In Magistrate Judge James Orenstein's Memorandum and Order, dated September 16, 2020, he explains that the Schreibers originally agreed to settle the case with the defendants during a conference held on September 25, 2017, but that issues arose resulting in further negotiations over a nine-month period, before an agreement was finalized.  (ECF No. 656 at 2, n.4).

During the course of settlement negotiations, a separate dispute arose between the Schreibers and the Nelkins over the calculation of the Firm's fee. (Schreiber Br. at 5). The Firm's engagement letter provided that the Firm was to receive "one-third of the total recovery . . . (including any funds, increased equity or other benefits), by virtue of a settlement or final judgment in the litigation." (3/7/22 Order at 2 (citing ECF No. 623-3)). According to the Schreibers, their objection was not that the Firm was not entitled to be paid for its legal work; their objection was to the way the Nelkins calculated the value of the contingent fee, by overstating the value of TRC as of the date of the settlement, failing to account for the Schreibers' payout of $1,000,000 as a buy-out of Mayer Koenig's shares of TRC, and taking credit for various actions, among others. (Schreiber Br. at 5-6). The Schreibers also objected to the Nelkins' efforts to guarantee payment of the Firm's fee over time by *inter alia*, seeking to obtain an ownership interest in TRC and demanding personal guarantees. (Id. at 6). Negotiations between the Schreibers and the Nelkins over the valuation of the equity and loan forgiveness components of the settlement eventually broke down, as did the relationship between the Schreibers and their lawyers. (Id.; 3/7/22 Order at 2).

According to the Schreibers, in July 2018, the Firm, without notice to or authorization from the Schreibers, retained the Center for Forensic Economic Studies (the "Center") to prepare an "'opinion letter outlining the economic value derived to the Plaintiffs [the Schreibers] through a settlement resolution'" of the Underlying action, and provided the Center with copies of TRC's tax returns. (Schreiber Br. at 6 (quoting Rosenblatt Decl., Ex. 5)). The Schreibers contend that, apart from failing to disclose this action, the Firm's conduct clearly presented a conflict of interest because it was undertaken solely for the Firm's benefit and not for that of their clients, and yet, nevertheless, the Nelkins continued to act as the Schreibers' attorneys. (Id.) The

Schreibers solicited advice from outside counsel regarding the conflict, but contend that the Nelkins "took affirmative steps to prevent the Schreiber Parties from bringing the fee dispute before the Court for resolution," threatening to withdraw as counsel if the Schreibers brought the dispute before the Magistrate Judge. (Id. at 6-7; Rosenblatt Decl., Ex. 8).

On August 13, 2018, the Firm filed a Motion to Realign Parties,[8] to make TRC a plaintiff rather than a nominal defendant in the Underlying action, thus removing the case from the requirements of Fed. R. Civ. P. 23.1, which required court approval for the settlement or dismissal of a derivative action. (Id. at 7). Also on August 13, 2018, Eugene Schreiber submitted a letter to the Court seeking a conference to address the Firm's fee demands, but the Court declined to hold a conference, noting that Eugene was not a party to the action. (Id. at 8 (citing 8/13/18 Electronic Order)).

On August 15, 2018, the Firm served a Notice of Charging Lien on the Schreibers, and thereafter, Hillel Parness, Esq., acting on behalf of the Schreibers, requested a conference with the Court. (Id. (citing Rosenblatt Decl., Exs. 12-13)). The Firm responded by publicly filing a letter accusing its clients, the Schreibers, of "fraud" and "bad faith" (ECF No. 547), and on August 30, 2018, the Firm, without notice to the Schreibers or the Court, filed a Complaint in this Court against the Schreibers, claiming an entitlement to fees, captioned Nelkin & Nelkin, P.C. v. Schreiber, Dkt No. 18 CV 4930. (Id. at 9 (citing Rosenblatt Decl., Ex. 15); 3/7/22 Order at 3-4). The Court held a conference that same day at which it discharged the Firm as the Schreibers' counsel without prejudice for the Schreibers to seek relief on the ground that the Firm had been discharged for cause. (3/7/22 Order at 3).

---

[8] The same day, Jay Nelkin filed a notice of appearance on behalf of Eugene Schreiber (ECF No. 538).

On March 7, 2019, the Schreibers moved for an order finding that the Firm had been discharged for cause and seeking to extinguish the Firm's charging lien. (ECF No. 623).[9] [10]  On September 16, 2020, Magistrate Judge James Orenstein issued a Memorandum and Order granting the Schreibers' motion, finding that the Firm had been discharged for cause and noting that the Firm had filed an action against the Schreibers in this Court, and yet had not moved to withdraw as the Schreibers' counsel in the Underlying action, as they were obliged to do by the N.Y. Rules of Professional Conduct 1.7.  (ECF No. 656).  In his Order, Judge Orenstein also determined that the Stipulation of Dismissal did not divest the Court of jurisdiction to determine the pending fee entitlement dispute.  (Id.)

On March 7, 2022, the district court agreed that the Court had not been divested of jurisdiction over the pending fee entitlement dispute,[11] but rejected the Magistrate Judge's decision as to the discharge for cause.  (3/7/22 Order).  The Honorable Carol B. Amon then

---

[9] While the motion was pending, the Schreibers commenced a separate malpractice action in the Superior Court of New Jersey.  (See Motion of Nelkin & Nelkin, P.C. to Transfer Venue to the United States District Court for the Southern District of Texas, Houston Division, filed August 26, 2024 (ECF No. 742) ("N&N Tr. Mot.") at 6).  The case was removed to the United States Bankruptcy Court for the District of New Jersey and subsequently transferred to the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Texas Bankruptcy Court" or the "Bankruptcy Court").  (Id.; see Eugene Schreiber, et al. v. Nelkin & Nelkin, P.C., et al., Adversary Proceeding No. 24-3061 (Bankr. S.D. Tex.)).  On May 29, 2024, the Schreibers filed a motion to remand and abstain and alternatively to withdraw the bankruptcy reference in the Texas Bankruptcy case.  (N&N Tr. Mot. at 6-7).  On September 26, 2024, the Bankruptcy Court denied the motion to remand and abstain, and separately recommended that the reference be withdrawn, but that the case be referred back to the bankruptcy judge for all pretrial matters.  (Nelkin & Nelkin, P.C.'s Omnibus Reply to the Omnibus Brief on Behalf of Steven Schreiber, Eugene Schreiber, and Two Rivers Coffee, LLC In Opposition to Nelkin & Nelkin, P.C.'s Motions to Dismiss, to Transfer Venue, and For Sanctions, filed September 27, 2024 ("N&N Reply") (ECF No. 750) at 7-8 (citing Exs. A, B)).  (See discussion infra at 32-34).

[10] Also while the motion was pending, Jay and Carol Nelkin filed an action for replevin in New Jersey Chancery Court, seeking the return of certain property that the Nelkins alleged had been stored for them at TRC and Steven Schreiber's home, and that the Schreibers allegedly refused to return.  (See N&N Tr. Mot. at 7).  Jay and Carol Nelkin filed the replevin action as individuals.  Although they are not debtors in the Texas Bankruptcy action, when the Firm petitioned to extend the Bankruptcy Court's automatic stay to the replevin action, the Texas Bankruptcy Court granted that request on March 27, 2024, finding that there is a "substantial likelihood . . . that there is an identity of interest between [Jay and Carol Nelkin] and the Debtor [(the Firm)] as it pertains to outstanding ownership disputes concerning estate property in the Replevin Action."  (Id., Ex. F).

[11] The Schreibers note that this ruling was not appealed and accordingly, constitutes law of the case.  (Schreiber Br. at 10).

referred the fee entitlement dispute to the undersigned[12] to conduct an evidentiary hearing and issue a Report and Recommendation as to whether the Firm was discharged for cause or otherwise forfeited their entitlement to a fee, consistent with the concerns outlined in her Order. (Id. at 17-18).

The parties to the fee entitlement dispute then engaged in additional discovery related to the valuation of the company, filing several motions relating to the scope of this discovery, and requesting several extensions. Among other things, the Schreibers served expert reports relating to valuation and liability. (Schreiber Br. at 10-11). The Schreibers note that the Firm has not retained an expert and has missed deadlines set by this Court for producing an expert report. (Id.)

On August 25, 2023, the Firm filed a voluntary petition for bankruptcy under Chapter 11 of Title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*., in the Texas Bankruptcy Court. (N&N Tr. Mot. at 7). On August 30, 2023, the Firm filed a Suggestion of Bankruptcy on the record in this Court, noting that the Firm was a debtor in the Texas Bankruptcy proceeding and that a stay had been entered pursuant to 11 U.S.C. § 362(a), temporarily staying proceedings in this Court. (ECF No. 733).

Thereafter, on November 1, 2023, the Schreibers filed a motion in the Texas Bankruptcy Court seeking to lift the stay as to the instant case or declare that the stay was not applicable because the Schreibers had not asserted any claims against the Firm in this Court; accordingly, the Schreibers had never filed a proof of claim in the Texas Bankruptcy Court and were not creditors in the bankruptcy proceeding. (Schreiber Br. at 11 (citing Rosenblatt Decl., Ex. 21)). Instead, the Schreibers take the position that it was the Firm who had initiated the claim against

---

[12] The case was reassigned to the undersigned on March 2, 2021, after Judge Orenstein retired from the bench.

the Schreibers in this Court by filing the charging lien (id.); indeed, the Firm admitted as much in responding to the Schreibers' motion to lift the stay. (Id. at 11-12 (citing Rosenblatt Decl., Ex. 22)).

Before the Texas Bankruptcy Court could hear the motion to lift the stay, the Schreibers and the Firm[13] agreed to allow an agreed-upon mediator to attempt to mediate the claim. (Id. at 12). The agreement provided that if the mediator determined that an impasse had been reached, the stay would be lifted or modified to, *inter alia*, allow the parties to proceed in "'the Eastern District of New York litigation.'" (Id. (quoting Rosenblatt Decl., Ex. 23)). The agreement was memorialized in writing as the "Agreed Order," and on January 8, 2024, the Texas Bankruptcy Court entered the Agreed Order. (Id. (citing Rosenblatt Decl., Ex. 24)).

Despite efforts at mediation, a Notice of Impasse was filed on January 30, 2024. (Id. at 13). When the Firm failed to honor the self-executing nature of the Agreed Order, the Schreibers filed a Motion to Enforce Settlement before the Texas Bankruptcy Court. (Id.) On June 21, 2024, the Bankruptcy Court issued an Order confirming that the Agreed Order was self-executing and terminating the automatic stay insofar as it related to the instant fee litigation (the "Bankruptcy Court Order"). (Id.; Rosenblatt Decl., Ex. 26).

Following receipt of a letter from the Schreibers informing this Court that the stay had been lifted, this Court issued a scheduling order, setting a date for the Firm to obtain new counsel and setting dates for the completion of discovery related to the fee valuation. (ECF No. 738). The Court also set an evidentiary hearing, pursuant to Judge Amon's March 7, 2022 Order, to begin on October 8, 2024. (Id.)

---

[13] The agreement was technically between the Schreibers, the Firm, Jay Nelkin, and Carol Nelkin. (Rosenblatt Decl., Ex. 24).

On August 26, 2024, the Firm filed four motions:  1) a motion to change venue to the District Court for the Southern District of Texas, with referral to the Southern District of Texas Bankruptcy Court (ECF No. 742); 2) a motion to dismiss the Schreibers' fee forfeiture claim as abandoned, waived, and disclaimed based on the Schreibers' failure to file proofs of claims (ECF No. 743); 3) a motion to dismiss the Schreibers' motion to discharge counsel for cause based upon newly discovered evidence and controlling case law (ECF No. 744); and 4) a motion for terminating sanctions based upon the Schreibers' alleged spoliation, manufacture and alteration of evidence, as well as perjury and false statements to the court (ECF No. 745).  On September 20, 2024, the Schreibers filed an Omnibus Brief in response to all four motions (ECF No. 747), and the Firm filed a Reply on September 27, 2024 (ECF No. 750).

On February 17, 2025, while the motion to transfer venue was pending,[14] the Schreibers[15] filed a letter advising the Court that the Texas Bankruptcy Court had confirmed the Firm's Third Amended Modified Plan of Reorganization (the "Plan").  (Schreiber Suppl. Ltr.[16]).  Thereafter, the parties filed several supplemental letters with this Court regarding the Plan confirmation and its relevance to the pending motion to transfer venue.  (ECF Nos. 754, 757, 759, 761).

---

[14] On January 24, 2025, the district court denied the remaining three motions (ECF Nos. 743, 744, 745), without prejudice to renew should the undersigned deny the instant motion to transfer.  (1/24/25 Electronic Order).

[15] As mentioned at n.3, *supra*, while these four motions, including the motion to transfer, were pending, Eugene Schreiber passed away.  On January 29, 2025, this Court granted Steven Schreiber and TRC's first motion to substitute and added the "Estate of Eugene Schreiber" as an interested party.  (1/29/25 Electronic Order).  The Court subsequently withdrew this ruling on February 27, 2025.  (2/27/25 Electronic Order).  Since, at the time of the February 17, 2025 letter, the "Estate of Eugene Schreiber" was an interested party in this case, technically this letter was filed on behalf of "Steven Schreiber, the Estate of Eugene Schreiber, and Two Rivers Coffee, LLC."  (ECF No. 753 at 2).

[16] Citations to "Schreiber Suppl. Ltr." refer to the Schreiber parties' Letter Advising Court of Chapter 11 Plan Confirmation of Nelkin & Nelkin, P.C., filed February 17, 2025 (ECF No. 753).

8

At the request of the district court, this Court reviews only the motion to transfer venue at this time. For the reasons set forth below, the Court denies the motion to transfer venue to the Southern District of Texas Bankruptcy Court.[17]

## DISCUSSION

I.   Legal Standard

A.   Bankruptcy Jurisdiction

Section 1334 of Title 28 of the United States Code governs the jurisdiction of federal district courts over matters involving Title 11, the Bankruptcy Code. Section 1334(b) sets out the scope of the district courts' subject matter jurisdiction over civil proceedings specifically. See In re Motors Liquidation Co., 514 B.R. 377, 381 (Bankr. S.D.N.Y. 2014), aff'd sub nom. In Matter of Motors Liquidation Co., 829 F.3d 135 (2d Cir. 2016). Pursuant to 28 U.S.C. § 1334(b), federal district courts have original, but not exclusive, jurisdiction over all civil proceedings "arising under title 11, or arising in or related to cases under title 11." See also KeyBank Nat'l Ass. v. Franklin Advisers, Inc., 600 B.R. 214, 224-225 (S.D.N.Y. 2019) (citing Stern v. Marshall, 564 U.S. 462 (2011)).

Bankruptcy courts derive their jurisdiction from Section 157 of Title 28 of the United States Code, which gives district courts the authority to refer their bankruptcy-related cases to the bankruptcy judges of the district. 28 U.S.C. § 157(a).[18] Congress enacted Section 157 as

---

[17] The Court notes that the Firm requests to transfer venue to the United States District Court for the Southern District of Texas, with referral to the Southern District of Texas Bankruptcy Court. (N&N Tr. Mot. at 14). This is common practice, as this Court only has authority to transfer the case to another federal district court, and cannot refer it directly to the Texas Bankruptcy Court. See Ecars Factory LLC v. Braunstein, 19 CV 5767, 2019 WL 13219569, at *1 (E.D.N.Y. Nov. 26, 2019) (holding that the court "does not have the authority to refer this case" to the bankruptcy court of another district, but "can transfer the case to the district court . . . to be referred to its Bankruptcy Court" (citing Harve Benard Ltd. v. Nathan Rothschild, K.I.D. Int'l, Inc., 02 CV 4033, 2003 WL 367859, at *6 (S.D.N.Y. Feb. 19, 2003) and 28 U.S.C. § 157(a)). Hereafter, all references to transfer to the Texas Bankruptcy Court incorporate the fact that the proceeding would transfer initially to the United States District Court for the Southern District of Texas to be referred to the Texas Bankruptcy Court.

[18] As the Firm points out, the Eastern District of New York has a Standing Order, pursuant to 28 U.S.C. § 157(a), automatically referring all cases arising under, arising in, or related to Title 11 to the Bankruptcy Court of

part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, which, in response to

the Supreme Court's decision in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458

U.S. 50 (1982), restructured bankruptcy judges' previously "expansive jurisdiction" by "making

the bankruptcy courts delegated adjuncts of the district court." In re Millenium Seacarriers, Inc.,

419 F.3d 83, 96 (2d Cir. 2005).

      B.      Standards for Transfer

      Transfer of proceedings arising in, arising under, or related to Title 11 are generally

governed by 28 U.S.C. § 1412 or 28 U.S.C. § 1404.  Section 1412 is "bankruptcy specific," as it

provides that "'[a] district court may transfer a case or proceeding under title 11 to a district

court for another district in the interest of justice or for the convenience of the parties.'"  Ecars

Factors LLC v. Braunstein, 2019 WL 13219569, at *1 (quoting 28 U.S.C. § 1412).  Thus, while

the Second Circuit has not ruled definitively on the issue, courts in this Circuit have interpreted

Section 1412 to only govern transfers of proceedings arising in or under the Bankruptcy Code

and not to apply to proceedings only "related to" a bankruptcy case; transfers only "related to" a

bankruptcy case may be made pursuant to 28 U.S.C. § 1404(a).  Id. (citing Onewoo Corp. v.

Hampshire Brands, Inc., 566 B.R. 136, 140 (Bankr. S.D.N.Y. 2017)).

      The party requesting transfer under Section 1412 must establish a "'strong case for

transfer'" by "'a preponderance of the evidence.'"  In re Westinghouse Electric Co. LLC, No. 18

CV 3942, 2019 WL 1349500, at *6 (S.D.N.Y. Mar. 25, 2019) (quoting New York Marine &

Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 114 (2d Cir. 2010) and In re Manville

---

the Eastern District of New York. (N&N Tr. Mot. at 18 n.8 (citing Administrative Order #164 of the United States District Court for the Eastern District of New York (August 28, 1986))).  The application of this Standing Order to the instant case is mentioned briefly at n.49, infra.  A similar Standing Order is in effect in the Southern District of Texas.  (N&N Tr. Mot. at 18 n.8 (citing General Order 2012-6 of the United States District Court for the Southern District of Texas (May 24, 2012))).

Forest Prods. Corp., 896 F.2d 1384, 1390 (2d Cir. 1990)).  Courts consider such motions on an individualized, case-by-case basis, with "consideration of convenience and fairness."  In re Manville Forest Prods. Corp., 896 F.2d at 1391 (internal quotation marks and citation omitted).

Under Section 1404(a), the general transfer statute, a case may be transferred "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  Courts generally evaluate "'substantially the same factors'" in a motion to transfer under Section 1404(a) as those under Section 1412.  In re Westinghouse Electric Co. LLC, 2019 WL 1349500, at *5 (quoting Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman, 306 B.R. 746, 749 (S.D.N.Y. 2004)).  However, Section 1404 imposes a higher standard on the movant in two respects.  First, the movant must make out a case for transfer "'by clear and convincing evidence.'"  Mulgrew v. United States Dep't of Trans., 717 F. Supp. 3d 281, 287 (E.D.N.Y. 2024) (quoting National Experiential, LLC v. Nike, Inc., No. 20 CV 3197, 2021 WL 9678642, at *3 (E.D.N.Y. July 31, 2021)) (further citations omitted); see also New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d at 114 (affirming that district courts in the Circuit "have consistently applied the clear and convincing evidence standard" to a motion for transfer pursuant to Section 1404(a)).  Second, under the plain language of Section 1404(a), transfer is appropriate only to a forum in which the case could have originally been brought, unless the parties consent to a transfer to another forum; the same requirement does not exist for transfer under Section 1412.  In re Westinghouse Electric Co. LLC, 2019 WL 1349500, at *5 n.8.

II.    The Parties' Respective Positions

In urging this Court to transfer the case to the Texas Bankruptcy Court, the Firm raises several arguments in support of its motion that can be summarized as follows:  1) the Texas

11

Bankruptcy Court has exclusive jurisdiction over this matter pursuant to 28 U.S.C. § 1334(e), and thus transfer is required (N&N Tr. Mot. at 9-15); 2) even if exclusive jurisdiction does not lie in the Bankruptcy Court, the determination of the contingent fee issue is a "core proceeding" because, *inter alia*, the fees allegedly owed by the Schreibers constitute the largest asset of the Debtor's estate, and thus the case should be transferred pursuant to 28 U.S.C. § 1412 (id. at 15-18); and 3) transfer would be "in the interest of justice or for the convenience of the parties" (id. at 18-21).

In opposing the transfer, the Schreibers largely rely on the agreement reached between the parties to submit to mediation in return for lifting the stay to allow the fee entitlement dispute to be determined by this Court in the event that an impasse in the mediation discussions was reached. (Schreiber Br. at 16-18).

The Court addresses each of the arguments below, beginning with the Agreed Order entered into by the parties before the Texas Bankruptcy Court.

III.    The Agreed Order

A.    The Schreibers' Objection to Transfer

The Schreibers rely on the agreement reached with the Firm in the Bankruptcy Court to lift the automatic stay if the fee entitlement dispute could not be resolved during mediation. (Schreiber Br. at 16). They contend that the Agreed Order is "'in the nature of a contract to which the court has given its formal approval, [and] is subject to the rules of construction of contracts.'" (Id. at 17-18 (quoting Browning v. Navarro, 743 F.2d 1069, 1080 (5th Cir. 1984))).

In essence, the parties entered into the Agreed Order in an effort to settle the fee entitlement dispute, with the Schreibers agreeing to attempt mediation, in return for which the Firm agreed that, if an impasse was reached, the automatic stay would be lifted to allow the fee entitlement dispute to proceed in New York. The parties contemplated that a stay of the instant

fee litigation would remain in effect until the mediator determined that an impasse had been reached, at which time "the stay with respect to that individual or entity will be modified *to allow them to proceed in their respective litigation, either the Eastern District of New York litigation . . . or the replevin, the New Jersey Chancery Court litigation as that may apply.*" (Rosenblatt Decl., Ex. 23 (emphasis supplied)). In approving the Agreed Order, the Texas Bankruptcy Court confirmed that "if the Mediator declares an impasse, . . . the automatic stay in this bankruptcy case . . . shall terminate . . . ." (Id., Ex. 24).

When the efforts at mediation proved unsuccessful, the mediator filed a Notice of Impasse on January 30, 2024. (Schreiber Br. at 13). However, the Firm failed to honor the agreement, forcing the Schreibers to file a Motion to Enforce Settlement before the Texas Bankruptcy Court. (Id. (citing Rosenblatt Decl., Ex. 23)).

On June 21, 2024, the Bankruptcy Court not only confirmed that the Agreed Order was self-executing, but explicitly ordered:

> The automatic stay of this bankruptcy case and the agreed temporary restraining order . . . are terminated only to the extent that *the Parties may conclude the litigation* pending in Schreiber v. Friedman, Cause No. 15 CV 6861, for the United States District Court for the Eastern District of New York, and *any appeals* therefrom.

(Rosenblatt Decl., Ex. 26 (emphasis supplied)).

Based on the Agreed Order, the Schreibers argue that the Firm contracted to "return to [the Eastern District of New York] for final adjudication on the merits if the fee dispute could not be resolved at mediation," and in filing the instant motion to transfer venue, the Firm unreasonably attempts to "turn back the clock and undo what they have already done." (Schreiber Br. at 16).

Moreover, the Schreibers argue that the Bankruptcy Court's Order lifting the stay to allow the case in this Court to proceed makes sense because there are no affirmative claims by the Schreibers in the Bankruptcy Court and in fact, the dispute is not a "fee dispute" at all, but rather a question of whether the Firm was discharged for cause. (Id. at 18). The Schreibers contend that the dispute is governed by and should be litigated in accordance with New York State law, since that is where the dispute arose in connection with the Underlying action. (Id. at 16-17). They argue that until the issue of whether the Firm was discharged for cause is determined, the Firm has no right to a fee and there is no asset that is before the Bankruptcy Court. (Id. at 18).[19] [20]

B.    The Firm's Response

In its Omnibus Reply memorandum, filed September 27, 2024, the Firm takes issue with the Schreibers' interpretation of the Texas Bankruptcy Court's ruling with respect to the Agreed Order. (N&N Reply at 3-5). Although the Firm concedes that the Bankruptcy Court determined that under the Agreed Order, the stay and temporary restraining order were "terminated" as to the litigation in the Eastern District of New York, the Firm argues that the Bankruptcy Court's Order did not restrict the Firm from seeking a transfer to the Southern District of Texas, nor did it prohibit such a transfer. (Id. at 5). The Firm takes issue with the Schreibers' description of the Bankruptcy Court's actions as agreeing to "return" or send this case back to the Eastern District

---

[19] The Court further addresses this argument in Section IV(B), "Core versus Non-Core Proceeding," *infra* at 30.

[20] The Schreibers also argue that the Bankruptcy Court's Order amounted to a decision to abstain from asserting jurisdiction over this matter. (Schreiber Br. at 18). The Schreibers contend that this decision is appropriate under both the doctrines of mandatory and permissive abstention, which are governed by 28 U.S.C. § 1334(c), although they concede that not all the elements of mandatory abstention are met. (Id. at 18-19 (citing Edge Petroleum Operating Co. v. GPR Holdings, LLC, 483 F.3d 292, 300 (5th Cir. 2007))). As the Firm notes in its Reply, the Bankruptcy Court did not actually abstain from asserting jurisdiction, since the instant case "has never been pending before" the Bankruptcy Court. (N&N Reply at 7). As this Court agrees with the Firm on this point, there is no reason to analyze the argument further.

of New York, noting that this issue has always been pending here.  (Id. at 6).  The Firm maintains that the only issue addressed by the Agreed Order was whether the stay should be lifted, which left the Firm free to file this motion to transfer as well as the other motions currently pending before this Court.  (Id.)[21]

C.    Supplemental Briefings

On February 17, 2025, the Schreibers advised the Court that the Texas Bankruptcy Court had confirmed the Firm's Plan of Reorganization, arguing that, as it relates to the instant motion to transfer, clearly the determination of what, if any, fees are owed to the Firm was not a condition precedent to confirming the Plan, as the Plan has been confirmed while this dispute is pending.  (Schreiber Suppl. Ltr. at 1).  Thus, the Schreibers contend that the only issue remaining before this Court is the pending discharge for cause dispute, which can be resolved without reference to the bankruptcy proceedings, as the Plan has now been confirmed.  (Id.)

The Firm filed a response to the Schreibers' letter on February 24, 2025.  (N&N 1st Suppl. Resp.[22]).  In relevant part, the Firm characterizes the Schreibers' February 17th, 2025 letter as suggesting that now that the Plan has been approved, there is no longer any need for this Court to resolve the transfer motion.  (Id. at 1-2).  The Firm asserts that the Court still must rule on the motion to transfer, noting that the Schreibers cite no case law in support of the proposition that the motion to transfer need not be resolved.  (Id.)[23]

---

[21] In its Reply, the Firm also argues that the Schreibers are precluded from raising certain arguments because they failed to respond to the Firm's arguments addressing the exclusive jurisdiction of the Bankruptcy Court, the claim that the charging lien created a vested property interest and is a core proceeding mandating transfer, and that the public interest would be served by transfer because it would allow the Bankruptcy Court to assess the decision of the Schreiber parties not to file proofs of claim.  (N&N Reply at 9).  The Court notes that, while the Schreibers may not have addressed each of the Firm's arguments, that fact does not preclude the Court from evaluating such arguments on the merits, which it does so below.

[22] Citations to "N&N 1st Suppl. Resp." refer to the Firm's Letter in response to ECF No. 753, filed on February 24, 2025 (ECF No. 754).

[23] Although the Court construes the Schreibers' February 17, 2025 letter to be an update as to the status of the bankruptcy proceedings in Texas, and does not agree that the Schreibers were seeking to have the Court ignore the transfer motion, the Court agrees that the motion to transfer still needs to be resolved.

15

On March 12, 2025, the Firm filed another letter, indicating that the time to appeal the Bankruptcy Court's order confirming the Plan (the "Confirmation Order") expired on February 28, 2025, and therefore the Plan is now final and unappealable.  (N&N 2d Suppl. Resp.[24]).  In the March 12, 2025 letter, the Firm contends that the Confirmation Order supports its argument that the motion to transfer should be granted.  (Id. at 1).  The Firm points to Section 11.1.10 of the Plan, which states that the Bankruptcy Court has "exclusive jurisdiction"[25] to determine the "validity and priority of any Lien," and therefore, it has the exclusive jurisdiction to determine the validity of the Firm's charging lien at issue in the instant case.  (Id.; Schreiber Suppl. Ltr., Ex. A at 27[26]).[27]  The Firm argues that, although the Schreibers did not file proofs of claim, they nonetheless are bound by the terms of the confirmed Plan because they are "interested parties" in the bankruptcy proceeding and were permitted to fully participate in the confirmation hearings.  (N&N 2d Suppl. Resp. at 2).  Thus, the Firm argues that because the Confirmation Order must be construed as conferring the Bankruptcy Court with exclusive jurisdiction over the charging lien and over the Schreibers' "challenge to the lien's validity," as well as the Schreibers' "fee forfeiture claim," the Schreibers are bound to the provisions of the Confirmation Order and are required to litigate these issues in the Texas Bankruptcy Court.  (Id. at 2-3).[28]

---

[24] Citations to "N&N 2d Suppl. Resp." refer to the Firm's Letter providing supplemental information regarding ECF Nos. 742, 750, and 753, filed on March 12, 2025 (ECF No. 757).

[25] See discussion in Section IV(A), "Section 1334(e)," infra at 24.

[26] All pin cites to attached exhibits refer to this Court's ECF page numbers.

[27] Also in its March 12, 2025 letter, the Firm cites additional language from the Confirmation Order that the Firm contends confers jurisdiction over this proceeding on the Bankruptcy Court.  (N&N 2d Suppl. Resp. at 2).  The quoted language reads in relevant part that the Bankruptcy Court has exclusive jurisdiction:  "To hear and determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of this Plan, the Confirmation Order, any transactions or payments contemplated hereby or any agreement, instrument or other document governing or related to any of the foregoing."  (Id. (citing Schreiber Suppl. Ltr., Ex. A at 28) (emphasis added)).  Given that the instant fee entitlement dispute arose long before the consummation of the Plan or the existence of the Confirmation Order, the Court finds this provision irrelevant to the issue at hand.

[28] The Firm also notes that the Confirmation Order provides that the Plan will not impair or extinguish "any causes of action disclosed on Debtor's schedules," and the Firm disclosed the instant action and the Firm's charging lien as an asset of the Firm in its Amended Schedule.  (N&N 2d Suppl. Resp. at 2 (citing Ex. 1)).  The Court agrees

The Schreibers[29] filed a Reply on March 17, 2025.  (Schreiber Suppl. Reply).[30]  The Schreibers argue that the Bankruptcy Court's Agreed Order, which lifted the stay for the parties to conclude the fee entitlement dispute in this Court, is still in effect.  (Id. at 2).  Nothing in the Plan itself would suggest otherwise.  The Schreibers also note that the instant action "is not mentioned in the confirmed Plan in any meaningful way."  (Id. at 3).  Notably, the final Plan omitted certain proposed language that related to the instant matter and would have referenced transferring certain of the settlement funds in the Underlying action to the Bankruptcy Court's jurisdiction and control.  (Id. (citing Ex. C)).

In arguing that the Agreed Order is still operative, the Schreibers cite to <u>Ritzen Group, Inc. v. Jackson Masonry, LLC</u>, which held that "'a bankruptcy court's order ruling on a stay-relief motion disposes of a procedural unit anterior to, and separate from, claim resolution proceedings.'"  (Schreiber Suppl. Reply at 2 (quoting 589 U.S. 35, 43 (2020))).  Thus, the Schreibers contend that by approving the Agreed Order and lifting the stay, the Texas Bankruptcy Court's Order disposed of this transfer issue separate from resolution of the claims against the Debtor, and thus, this Court retains jurisdiction over the pending fee entitlement dispute.  (Id.)  The Schreibers also appear to disagree with the Firm's assertion that Section 11.1.10 of the Plan addressing the Bankruptcy Court's "exclusive jurisdiction" is relevant to the transfer motion, arguing that approval of the Plan demonstrates that resolution of the fee

---

that the fee entitlement dispute and the validity of the charging lien have not been impaired or extinguished by the Plan.

[29] Technically, the Reply was filed by Steven Schreiber and Two Rivers Coffee, LLC, as the renewed motion to substitute Eugene Schreiber was pending at the time of filing.  (Schreibers' Letter responding to March 12, 2025 Letter by Jay Nelkin, Esq. regarding Motion to Transfer, filed on March 13, 2025 (ECF No. 759) ("Schreiber Suppl. Reply") at 1).

[30] In their Reply, the Schreibers argue in the first instance that none of these letters filed after the formal briefing on the original motion to transfer should be considered by this Court, as they "go well beyond the Federal Rules of Civil Procedure regarding Motion Practice."  (Schreiber Suppl. Reply at 1).  However, given that the Plan confirmation affects the analysis of the instant motion, the Court considers the supplemental briefings, but only to the extent they expound upon the Plan confirmation's effect on the motion to transfer.

entitlement dispute was not necessary to the confirmation of the Plan or the administration of the Firm's estate, and noting that the final Plan omitted proposed language that would have conferred exclusive jurisdiction on the Bankruptcy Court to determine the entitlement to the settlement funds.  (Id.)[31]

On March 21, 2025, the Firm filed a sur-reply, arguing that the Agreed Order lifting the bankruptcy stay was "abrogated" by the entry of the Confirmation Order discharging the Firm.  (N&N Suppl. Sur-reply[32]).  In support of this argument, the Firm cites to case law stating that, where a lift stay order allowed a pre-petition claim against a debtor to proceed, the bankruptcy court's discharge order subsequently enjoined the claim from proceeding or the judgment from being collected.  (Id. at 1-2 (citing In re McCulloch, No. 12-20084, 2013 WL 5592880 (Bankr. S.D. Tex. Oct. 10, 2013), aff'd as modified sub nom. McCulloch v. McClintock, No. 13 CV 374, 2014 WL 1276146 (S.D. Tex. Mar. 27, 2014), and Hart v. Taylor (In re Hart), 2016 Bankr. LEXIS 4571 (Bankr. W.D. Tenn. Dec. 15, 2016), dismissed, 2018 Bankr. LEXIS 950 (Bankr. W.D. Tenn. Mar. 7, 2018))).[33]  Finally, the Firm suggests that the Schreibers wish to delay the

---

[31] The Plan language conferring exclusive jurisdiction over the "validity and priority of any Lien" appears to be drawn from 28 U.S.C. § 157(b)(2)(K), which defines proceedings involving the determination of "the validity, extent, or priority of liens" to be "core proceedings" that may be resolved by the bankruptcy courts.  However, this clause has been interpreted by courts in both Texas and New York to refer to liens that encumber the property of the estate, rather than the debtor's own liens.  See In re Chambers, 419 B.R. 652, 667 (Bankr. E.D. Tex. 2009) (holding that "the determination of the validity, extent and priority of liens on property of the estate falls within this Court's core jurisdiction" (citing Section 157(b)(2)(K)) (emphasis added); In re CIS Corp., 172 B.R. 748, 759 (S.D.N.Y. 1994) (holding that Section 157(b)(2)(K) "has been construed to allow bankruptcy courts to make determinations as to the validity, extent and priority of liens on the estate's (or at a minimum, the debtor's) property") (emphasis in original).  Thus, Section 11.1.10 simply makes it clear that now that the Texas Bankruptcy Court has confirmed a Plan, that court would retain jurisdiction to determine the validity and priority of liens that might encumber on the estate's property.  The Firm has cited no authority to support its assertion that this Section of the Plan or the statutory language of Section 157(b)(2)(K) was intended to apply here, where the Debtor is attempting to assert a lien against a third party.  Moreover, as explained further infra at 29-30, notwithstanding this language in the Plan, the Texas Bankruptcy Court, by rejecting certain proposed language and confirming the Plan while this issue remains outstanding, appears to reject the notion that it has exclusive jurisdiction over the fee entitlement dispute.

[32] Citations to "N&N Suppl. Sur-reply" refer to the Firm's Letter in response to ECF No. 759, filed on March 21, 2025 (ECF No. 761).

[33] These cited cases, which deal with pre-petition efforts to collect monies from the debtor, are distinguishable from the circumstances presented in this case, where the Firm is making a claim for payment from the Schreibers.  See infra at 22; see also further discussion infra at 35-40.

bankruptcy proceedings because the Bankruptcy Court has exclusive jurisdiction over this matter and the charging lien.  (Id. at 3-4).

D.    Analysis

The Schreibers correctly describe the Agreed Order as an agreement—a contract, entered into by the Schreibers and the Firm in an effort to settle the discharge for cause and fee entitlement dispute.  In exchange for the Schreibers' agreement to engage in mediation, the Firm agreed to allow the lifting of the automatic stay in the event that mediation was unsuccessful, and to allow the discharge for cause question and the related fee dispute to proceed here in New York.  The Texas Bankruptcy Court confirmed its understanding that this was a contract between the parties when it held:  "As both the Schreibers and the Debtor concede, an agreed order is in the nature of a contract, and the interpretation of its terms presents a question of contract interpretation."  (Rosenblatt Decl., Ex. 26 at 7).

In analyzing the Firm's argument that the Schreibers had breached the contract by filing documents an hour prior to the termination of the automatic stay, the Bankruptcy Court looked to principles of contract construction and determined that this technical violation did not constitute a material breach of the Agreed Order.  (Id. at 8).  The Bankruptcy Judge concluded that the Agreed Order was self-executing and ordered the stay and temporary restraining order lifted in accordance with the terms of the Agreed Order.  (See generally id.).  Thus, it appears that the parties agreed to lift the stay to allow the proceedings in this Court to continue, and the Bankruptcy Judge endorsed that agreement as a contractual obligation between the parties.

As a general rule, in New York and in Texas, contracts are to be construed in accordance with the parties' intent, and the best evidence of their intent is what they say in the written agreement.  See Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 780 N.E.2d 166 (2002) (holding that "the best evidence of what parties to a written agreement intend

is what they say in their writing" (internal quotation marks and citation omitted)); <u>RSUI Indem. Co. v. The Lynd Co.</u>, 466 S.W.3d 113, 118 (Tex. 2015) (holding that, "[w]hen construing a contract, our primary concern is to ascertain the intentions of the parties as expressed in the document").  Here, the Agreed Order was clear in that, upon declaration of an impasse, the automatic stay and temporary restraining order "shall terminate, regarding the Parties and the litigation [as] the subject of the impasse, and upon the expiration of the Impasse Period the Agreed Order . . . may be uploaded and will be entered by the Court."  (Rosenblatt Decl., Ex. 24 at 3).  While the Agreed Order made no mention of what would occur once the stay was lifted, the Bankruptcy Court, in lifting the stay, held that the stay and temporary restraining order "are terminated only to the extent that the Parties *may conclude* the litigation [in the EDNY] and *any appeals* therefrom."  (<u>Id.</u>, Ex. 26 at 9 (emphasis added)).

In analyzing the parties' intent, it is clear from the terms of the Agreed Order, as confirmed by the motion to lift the stay, that the Schreibers wanted the fee entitlement dispute to be heard by this Court, which had previously found that the Firm was discharged for cause and entitled to no fee at all.  (See <u>id.</u>, Ex. 21).  However, in lieu of seeking a ruling on their motion to lift the stay, the Schreibers, in an attempt to resolve the dispute without further litigation, agreed first to submit the dispute to mediation in an effort to reach a reasonable compromise of the Firm's fees.  In exchange for the Schreibers' agreement to submit to mediation, the Firm agreed to a lifting of the stay to allow the dispute to be heard before this Court.  While the Firm is correct that nothing in the Agreed Order expressly precluded the Firm from seeking an immediate transfer of the dispute to the Texas Bankruptcy Court, the Firm's interpretation of the parties' intent essentially renders the agreement a meaningless bargain for the Schreibers.  If the

Firm could force an immediate transfer of the dispute back to the Bankruptcy Court, the Schreibers essentially gained nothing by agreeing to mediate.

Additionally, the language of the Bankruptcy Court Order provides that the stay was lifted to allow the instant case to be "conclude[d]." (Id., Ex. 26 at 9). Common sense suggests that judicial economy would not be served by lifting the stay as to the proceedings in this Court, just to have litigation over whether the case should then be transferred to the Texas Bankruptcy Court. This is especially true now that the Bankruptcy Court has confirmed a Plan without waiting for resolution of the fee entitlement dispute and is ostensibly in the final stages of the bankruptcy proceeding.

The fact that the Texas Bankruptcy Court has now confirmed the Plan further supports the Schreibers' position that the resolution of the Firm's fee entitlement dispute was not a "core" issue[34] to the bankruptcy proceeding that should have been adjudicated by the Bankruptcy Court, nor did the fact that the dispute remains pending have any impact on the ability of the Bankruptcy Court to administer the Debtor's estate. Indeed, it is clear that determining whether fees are owed to the Firm was not a condition precedent to confirming the Plan. (Schreiber Suppl. Ltr. at 1). If it had been, the Texas Bankruptcy Court would have been unable to confirm the Plan.

As noted, in its supplemental briefing, the Firm argues that the Confirmation Order, which discharges the Debtor of debts or obligations as provided by 11 U.S.C. § 1141(d)(1), overrides the Agreed Order that allowed for the stay to be lifted. (N&N Suppl. Sur-reply at 1-2; see also Schreiber Suppl. Ltr., Ex. A at 7)). While the Plan provides that the Firm will "prosecute all claims and causes of action of the estate, including collection of its fee from the

---

[34] See discussion in Section IV(B), "Core versus Non-Core Proceeding," *infra* at 30.

Schreibers and Two Rivers Coffee," the Plan is silent as to where those claims are to be prosecuted and nothing in the Plan confirmation appears to affect the validity of the Agreed Order allowing for the stay to be lifted and for this case to proceed.  (Schreiber Suppl. Ltr., Ex. A at 24).  Moreover, the Confirmation Order expressly states that "[n]othing in this Confirmation Order or the Plan shall in any way . . . have the effect of . . . impairing or extinguishing in any respect any causes of action disclosed on Debtor's schedules . . . and the Debtor shall retain such claims as provided in the Plan . . . ."  (Id. at 7).  The Plan confirmation simply preserves the Debtor's claim for collection of its fees from the Schreibers, but does not dictate where that claim is to be adjudicated.

Moreover, the cases cited by the Firm in support of its argument that the Confirmation Order overrides the Agreed Order are inapposite to the instant dispute.  Both In re McCulloch and Hart v. Taylor (In re Hart) involved creditors who sought to pursue a pre-petition state court claim or judgment *against a debtor* after the bankruptcy court had issued a discharge order that clearly applied to those state court actions.  See 2013 WL 5592880, at *1-2; 2016 Bankr. LEXIS 4571, at *4.  By contrast, the Schreibers are not creditors, nor have they filed any claims in the bankruptcy proceeding; as a consequence, no claim of theirs has been discharged by the Confirmation Order or Plan.  Moreover, for reasons outlined in detail *infra* at pages 35-40, the Court finds that the proceedings pending in the Eastern District of New York do not involve any affirmative claims by the Schreibers against the Firm, nor are the Schreibers endeavoring to collect on any potential debt or obligation from the Firm that would be discharged by the confirmed Plan.

22

Thus, the Court finds that there is nothing in the Confirmation Order that would abrogate the Agreed Order reached between the parties to allow the stay to be lifted and the question of whether the Firm was discharged for cause to be heard in this Court.

Although this Court finds that technically, neither the Agreed Order nor the Bankruptcy Court Order lifting the stay explicitly prohibited the filing of the instant motion to transfer, the question remains whether the Firm has carried its burden to demonstrate that transfer is appropriate under the circumstances. Thus, the Court examines the other arguments raised by the Firm to determine if transfer to the Texas Bankruptcy Court is otherwise warranted.

IV.    "Exclusive" Jurisdiction and Core Proceedings

First, the Firm contends that the Southern District of Texas, and by extension the Texas Bankruptcy Court, has exclusive jurisdiction over this matter pursuant to 28 U.S.C. § 1334(e), and thus the Firm is entitled to a transfer to the Texas Bankruptcy Court. (N&N Tr. Mot. at 9-15). The Firm argues in the alternative that even if the Bankruptcy Court does not have exclusive jurisdiction over this fee entitlement dispute, the proceedings are "core" proceedings which should be handled by the Texas Bankruptcy Court and thus should be transferred pursuant to 28 U.S.C. § 1412. (Id. at 15-18).

Under the Firm's formulation, should the Court find that under Section 1334(e), the Texas Bankruptcy Court has exclusive jurisdiction over the pending dispute, then transfer is required and further analysis is unnecessary. If the Bankruptcy Court does not have exclusive jurisdiction, then the Court must determine if this pending fee entitlement dispute is a "core" proceeding subject to transfer under Section 1412. The Court addresses the jurisdictional argument first.

A.    Section 1334(e)

1.    Legal Standard

Section 1334(e) of Title 28, United States Code, provides that, under Title 11, the district court where the bankruptcy case is pending – the "home court" – has *in rem* jurisdiction over property of the bankruptcy estate.  28 U.S.C. § 1334(e) (providing that the district court where the bankruptcy case is pending has "exclusive jurisdiction . . . of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate").  See In re JJ Arch LLC., 24 CV 10381, 2024 WL 2933427, at *7 n.11 (Bankr. S.D.N.Y. June 10, 2024) (citing In re Lehman Bros. Holdings Inc., 544 B.R. 16, 41 (Bankr. S.D.N.Y. 2015) and collecting cases); In re Homaidan, 650 B.R. 372, 405 (E.D.N.Y. 2022) (explaining that Section 1334(e) "vests the 'home court' with the exclusive power to control and distribute property of the estate" (citation omitted)).  28 U.S.C. § 157 extends this jurisdictional grant to the home *bankruptcy* court specifically.  See David P. Stromes, The Extraterritorial Reach of the Bankruptcy Code's Automatic Stay:  Theory vs. Practice, 33 Brook. J. Int'l L., 283 n.37 (2007) (explaining that, "[b]ecause [S]ection 157 passes jurisdiction of the debtor's estate to the bankruptcy court in the district in which the [home] district court sits, the bankruptcy court is able to administer the debtor's estate").  "Property of the estate" includes "all legal or equitable interests of the debtor in property . . . ."  11 U.S.C. § 541(a)(1).

Section 1334(e), together with Section 157, therefore vest in the "home" bankruptcy court exclusive jurisdiction over the debtor's property until the plan of reorganization is confirmed and the property is finally vested in the debtor.  See Valley Historic Ltd. P'ship v. Bank of New York, 486 F.3d 831, 837-38 (4th Cir. 2007).  The Section is a practical measure which guarantees that the home bankruptcy court can exert control over the debtor's assets.  See In re Ajasa, 627 B.R. 6, 31 (Bankr. E.D.N.Y. 2021) (noting that "'[t]he function of § 1334(e) is

clear – to insure that only one court administers the bankruptcy estate of a debtor'" (quoting Williams v. Sears Roebuck & Co., 244 B.R. 858, 866 (Bankr. S.D. Ga. 2000))); see also In re Noletto, 244 B.R. 845, 853 (Bankr. S.D. Ala. 2000) (holding that Section 1334(e) "overrides the general conflict of jurisdiction rule that the first court to assert jurisdiction has exclusive jurisdiction over an *in rem* claim . . . .  This is the extent of [Section] 1334(e)").

It follows, then, that in contrast to Section 1334(b), Section 1334(e) does not by itself "'invest [federal] courts with jurisdiction to conduct civil proceedings.'"  In re JJ Arch LLC., 2024 WL 2933427, at *7 n.11 (quoting Valley Historic Ltd. P'ship v. Bank of New York, 486 F.3d at 837).  Instead, "'[Section] 1334(e) must be read narrowly to limit the "home court" exclusive jurisdiction . . . strictly to *in rem* matters involving property of the debtor or property of the estate and not as a restriction on nationwide jurisdiction over claims for violations of provisions of the [Bankruptcy] Code, other federal statutory provisions, or other remedies.'"  In re Ajasa, 627 B.R. at 18-19 (quoting Harker v. Wells Fargo Bank, NA, 414 B.R. 243, 255-56 (Bankr. S.D. Ohio 2009)).  A home court's exclusive jurisdictional reach under Section 1334(e) therefore does not automatically extend to *in personam* claims that exist outside the bankruptcy court, such as "claims against the debtor, or claims by the debtor against a third party."  In re JJ Arch LLC., 2024 WL 2933427, at *7 n.11 (rejecting debtor's argument that because a state court proceeding would determine the nature and control over one of the debtor's most valuable assets, the bankruptcy court had exclusive jurisdiction under Section 1334(e)); see Leopard Marine & Trading, Ltd. v. Easy St. Ltd., 896 F.3d 174, 193 (2d Cir. 2018) (noting that courts of appeals state "broadly the principle that one court's exercise of jurisdiction *in rem* does not prevent other courts from declaring rights in the res within an *in personam* action").

2.    The Parties' Arguments

The Firm asserts that under New York law, an attorney's charging lien is "'presumptively valid,'" and gives the attorney an enforceable right and "'an equitable ownership interest in the client's cause of action.'"  (N&N Tr. Mot. at 12 (quoting In re River Ctr. Holdings, LLC, 394 B.R. 704, 718 (S.D.N.Y. Bankr. 2008) (quoting LMWT Realty Corp. v. Davis Agency, Inc., 85 N.Y. 2d 462, 467-68, 626 N.Y.S.2d 39, 649 N.E.2d 1183 (1995)))).  The Firm states that when "an attorney's retainer agreement with the client assigns to the attorney a portion of the proceeds of the action, the attorney acquires a vested property interest which cannot subsequently be disturbed by the client or anyone claiming through or against the client."  (Id. at 13 (citing Louima v. City of New York, No. 98 CV 5083, 2004 U.S. Dist. LEXIS 13707, at *178-79 (E.D.N.Y. July 21, 2004))).  Citing In re River Center Holdings, LLC, the Firm asserts that it has a "vested property right in the proceeds of the settlement agreement[35] . . . as a result of its charging lien."  (Id. (citing 394 B.R. at 718)).  The Firm contends that because the Schreibers' motion to find the Firm was discharged for cause is essentially a "fee forfeiture" claim against the Firm's property, such proceeding is within the exclusive jurisdiction of the Southern District of Texas, and therefore transfer to the Texas Bankruptcy Court – the "home bankruptcy court" – is required under Section 1334.  (Id. at 13-14).[36]  Seemingly in the alternative, the Firm argues

---

[35] According to the Firm, certain funds obtained from the underlying settlement are on deposit with the Court in the Eastern District of New York, pursuant to a Deposit Agreement and a related Escrow Agreement. (N&N Tr. Mot. at 13 n.6).  In addition, the Firm is claiming the right to other assets, including membership in TRC, as well as a multimillion-dollar loan and its collateral, which are currently being held in escrow by the firm of Frankfurt Kurnit, Klein & Selz.  (Id. (citing ECF No. 613-1 ¶ 4)).

[36] The cases the Firm cites for this proposition are inapposite.  Marc Vianello Revocable Trust v. Pete & Mac's Lee's Summit, LLC, 14 CV 187, 2014 U.S. Dist. LEXIS 193365, at *6-7 (W.D. Mo. April 25, 2014) involves the "interpretation and enforcement" of the bankruptcy court's confirmation order, which the court held was within the "exclusive jurisdiction" of the bankruptcy court that confirmed the plan; the case does not even contain the words "fee forfeiture."  Consolidated Lewis Inv. Corp. v. First Nat'l Bank of Jefferson Parish, 74 B.R. 648 (E.D. La. 1987) involves a debtor seeking relief from allegedly wrongful encumbrances placed on its real property.  While the court suggested the dispute would be "core" to the bankruptcy proceeding, it did not invoke questions of exclusive jurisdiction under Section 1334(e) at all.  (Id. at 651).

that the resolution of the fee entitlement dispute necessarily involves a determination as to whether and to what extent the fees are the Firm's property at all, and therefore is a determination on the extent of property of the bankrupt estate, which is in the Bankruptcy Court's "exclusive jurisdiction."  (Id. at 11-12 (citing, e.g., In re Royce Homes, 652 B.R. 488, 495 (Bankr. S.D. Tex. 2023) (quoting Manges v. Atlas (In re Duval Cty. Ranch Co.), 167 B.R. 848, 849 (Bankr. S.D. Tex. 1994)))).[37]

Further, in its supplemental briefing, the Firm contends that the Confirmation Order supports its argument here.  (N&N 2d Suppl. Resp. at 1).  As previously noted, the Firm cites to the Plan's language conferring "exclusive jurisdiction" on the Bankruptcy Court to determine the "validity and priority of any Lien," arguing that the Bankruptcy Court therefore has exclusive jurisdiction to determine the validity of the Firm's charging lien and thus over the instant proceeding to determine the same.  (Id. (citing Schreiber Suppl. Ltr., Ex. A at 27)).[38]

In response, the Schreibers note that the final Plan of Reorganization omitted certain proposed language that related specifically to the instant matter and referenced transferring certain of the settlement funds to the Bankruptcy Court.  (Schreiber Suppl. Reply at 3 (citing Ex. C)).  Moreover, the final Plan removed language stating that the Bankruptcy Court "'retains exclusive jurisdiction to determine who ultimately is entitled to receive the Settlement [Funds/Property],'" referring to the settlement in the Underlying action in this Court.  (Id. (citing Exs. C, D)).  Thus, the Bankruptcy Court explicitly rejected the notion that it had exclusive

---

[37] While this argument is addressed in greater detail infra at 28-30, the Court also notes that it has reviewed the cases cited by the Firm for this proposition and finds that they contain distinct factual and legal considerations that do not apply to the instant dispute.  The Court therefore finds the cited authority inapplicable and the argument unpersuasive.

[38] See discussion supra at 16.

jurisdiction over this matter and that a transfer of the matter to the Bankruptcy Court was necessary to the confirmation of the Plan or the administration of the Firm's estate.  (Id.)

        3.   Analysis

The Court notes that the settlement funds and assets are currently being held on deposit with this Court and in escrow by Frankfurt Kurnit, Klein & Seltz.  (N&N Tr. Mot. at 13 n.6). While this Court is not ruling on the status of the escrow assets at this time, "'[m]ost courts have held that assets in escrow are not property of the estate.  Estate property is confined to the rights conferred upon the debtor by the escrow agreement, not property rights in the assets escrowed.'" In re Urban Commons 2 West LLC, 648 B.R. 530, 538 (Bankr. S.D.N.Y. 2023) (quoting 5 Collier on Bankruptcy ¶ 541.09[2] (16th ed. 2023)).  As mentioned *supra*, in the parties' Stipulated Agreement to hold the settlement funds and assets with this Court and with Frankfurt Kurnit, Klein & Selz, the Firm stipulated that this "Court shall retain jurisdiction over the enforcement of . . . the Charging Lien until final resolution of the Charging Lien."  (ECF No. 613-1 ¶ 8).  Specifically, the Stipulated Agreement states that the funds on deposit with this Court "shall remain under the jurisdiction and control of the Court until such time as the dispute(s) between Plaintiff, Schreiber, Two Rivers and Nelkin is resolved by agreement or final Order of the Court."  (Id. ¶ 9).  Thus, it appears that prior to the filing of the bankruptcy petition, the Firm had agreed that the resolution of the instant dispute between the Firm and the Schreibers is a matter before this Court, and until such dispute is resolved, another court does not have exclusive jurisdiction over the charging lien or the underlying property.

Indeed, it appears that the Bankruptcy Court itself does not believe it has exclusive jurisdiction over this case.  If the Bankruptcy Court had concluded that this dispute between the Firm and the Schreibers involved, or the dispute itself constituted, "property" of the estate and therefore fell within its exclusive jurisdiction to control and administer the same, the Bankruptcy

Court could have refused to honor the parties' agreement to lift the stay of proceedings in this Court.  Instead, the Bankruptcy Court approved the parties' agreement and entered an order to lift the stay to allow this Court to "conclude" the case.  (Rosenblatt Decl., Ex. 26).  Thus, it appears that the Bankruptcy Court did not consider the instant dispute as one over which it had exclusive jurisdiction.

Moreover, as noted above, Section 1334(e) mainly facilitates the home bankruptcy court's administration of the estate until the plan is confirmed and the property is finally vested in the debtor.  Valley Historic Ltd. P'ship v. Bank of New York, 486 F.3d at 837 (noting that, in the context of a Chapter 11 proceeding, Section 1334(e) "creates exclusive jurisdiction over 'property' for a limited period of time—until confirmation and the property vests in the reorganized debtor").  The Texas Bankruptcy Court entered a Confirmation Order before the Firm's entitlement to fees was resolved.  Thus, it appears the Bankruptcy Court did not consider it necessary to exercise exclusive jurisdiction over this proceeding in order to confirm the Firm's Plan or administer the estate.

Nor does the Bankruptcy Court appear to believe, as the Firm argues, that this proceeding is one to determine the extent of estate property such that the Bankruptcy Court has exclusive jurisdiction over the question.  Indeed, as the Schreibers point out, the Plan specifically omitted proposed language that would have declared that the settlement funds, subject to the charging lien, were property of the estate, and that the Texas Bankruptcy Court had exclusive jurisdiction to determine the Firm's entitlement to these funds.  (Schreiber Suppl. Reply at 3; Exs. C, D)).  The only instance in which the Plan appears to mention the instant action is in its Liquidation Analysis, where there is a reference to a "Claim for Fees vs. Schreibers" as an asset of the estate.

29

(Schreiber Suppl. Ltr., Ex. A at 16, 32).[39]  Even then, the claim is only a potential source of liquidation, which is predicated on the outcome of the proceeding; that resolution of the dispute could result in the augmentation of funds available for distribution does not mean that *the proceeding itself*, involving the determination of whether the Firm was discharged for cause, is within the Bankruptcy Court's exclusive jurisdiction.

Thus, despite the Firm's assertion that the Plan's language reserving exclusive jurisdiction to determine the "validity and priority of any Lien" vests the Bankruptcy Court with exclusive jurisdiction over this proceeding, the Bankruptcy Court seemingly rejected the argument that it had exclusive jurisdiction over this dispute.  The Court finds that it would be incongruous to hold that the Bankruptcy Court has exclusive jurisdiction over this matter when it has repeatedly refused to exercise this supposed exclusive jurisdiction when given the opportunity.  Thus, the Court finds the Firm's argument relating to exclusive jurisdiction to be unpersuasive.

B.    Core versus Non-Core Proceeding

As noted *supra*, the Firm argues in the alternative that the contingent fee determination falls under the definition of a "core" civil proceeding, subject to the full jurisdiction of the bankruptcy court, and that transfer to the Texas Bankruptcy Court is thus warranted pursuant to 28 U.S.C. § 1412.  (N&N Tr. Mot. at 15-18).

The scope of bankruptcy courts' jurisdiction over civil proceedings is limited.  In Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982), the Supreme Court held that in the absence of the parties' consent, a bankruptcy judge lacks jurisdiction "to decide a state-law contract claim against an entity that [is] not otherwise part of the bankruptcy

---

[39] It is also unclear to what extent this language references the Firm's other pending litigation on the fee issue, such as its counterclaims in the New Jersey malpractice action.

proceedings." Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, 681 (2015) (internal quotation marks and citation omitted). See also id. at 673 (holding that under Stern v. Marshall, 564 U.S. 462 (2011), with respect to a state-law tort claim, "Article III prevents bankruptcy courts from entering final judgment on claims that seek only to 'augment' the bankruptcy estate and would otherwise 'exis[t] without regard to any bankruptcy proceeding'").

To comply with the Supreme Court's decision in Marathon, Section 157(b) dictates that the jurisdiction of bankruptcy courts over civil proceedings "depends on whether Congress has classified the matter as a '[c]ore proceedin[g]' or a '[n]on-core proceedin[g].'" Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. at 670 (quoting 28 U.S.C. § 157(b)(2)-(4)). Essentially, bankruptcy courts are granted subject matter jurisdiction under 28 U.S.C. § 157(b)(1) to hear and determine most "core" civil proceedings arising under or arising in Title 11. In re New York Skyline, Inc., 512 B.R. 159, 172-73 (S.D.N.Y. 2014), aff'd, 601 F. App'x 52 (2d Cir. 2015); see also In re U.S. Lines, Inc., 197 F.3d 631, 636 (2d Cir. 1999). The statute enumerates several examples of core proceedings, such as "matters concerning the administration of the estate," "allowance or disallowance of claims against the estate," and "determinations of the validity, extent, or priority of liens." 28 U.S.C. § 157(b)(2). However, the list is not exclusive.

By contrast, non-core or "related" proceedings may be referred to the bankruptcy courts, but, in the absence of the parties' consent, the bankruptcy court may only submit proposed findings of fact and conclusions of law, which are then subject to de novo review by the district court. Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. at 671; 28 U.S.C. § 157(c)(1). Related proceedings are those in which the outcome may have "'any conceivable effect on the bankrupt estate.'" SPV Osus Ltd. v. UBS AG, 882 F.3d 333, 339-40 (2d Cir. 2018) (quoting Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp., 639 F.3d 572, 579 (2d Cir. 2011)).

Prior to the confirmation of the reorganization Plan, the Firm argued that since the contingent fees owed to the Firm "make up the largest asset" of the estate, the charging lien clearly impacts the administration of the estate and the claims resolution process. (N&N Tr. Mot. at 16-17). In addition, the Firm reiterated its argument that the proceeding "requires a determination on whether and to what extent the fees are property of the Debtor's Estate." (Id. at 17). For these reasons, the Firm asserts that the fee entitlement dispute is a "core proceeding," and argues that this proceeding should be transferred to the Texas Bankruptcy Court pursuant to 28 U.S.C. § 1412. (Id. at 16-17). Indeed, the Second Circuit has stated that "'the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy.'" (Id. at 18 (quoting In re Manville Forest Prods. Corp., 896 F.2d at 1391 (finding a proceeding to be "core" and affirming the denial of a motion to transfer from the "home" bankruptcy court to another district))).[40]

The Firm further notes that, with respect to the related New Jersey state malpractice case[41] filed by the Schreibers against the Nelkins, that action was removed to the Bankruptcy Court in New Jersey and then transferred to the Texas Bankruptcy Court. (N&N Reply at 7). In the New Jersey malpractice case, the Schreibers pleaded a number of claims, including: 1) breach of contract; 2) professional malpractice; 3) breach of fiduciary duty; 4) negligence; 5)

---

[40] The Firm also cites certain cases that apply this presumption to proceedings "related to" the bankruptcy. (N&N Tr. Mot. at 18, 20). In Glick v. Creative Group, LLC, No. 13 CV 6549, 2014 U.S. Dist. LEXIS 192429 (S.D.N.Y. Apr. 21, 2014), the court transferred a pre-petition breach of contract claim to the district where the bankruptcy proceedings were located. However, plaintiff in the contract claim sought an award related to his 16.7% interest in the debtor company. Id. at *4. Here, the Schreibers have no claim against the Firm in either court and seek to acquire no property of the Firm, rendering this proceeding far less "related" to the bankruptcy case or necessary to the effective administration of the estate. While Hohl v. Bastian, 279 B.R. 165 (W.D. Pa. 2002) also involves a pre-petition breach of contract claim, the case is distinguishable in that the court never even reached the question as to whether transfer to the "home court" was appropriate. Instead, the court referred the question back to the bankruptcy court for further consideration. Id. at 178. The Court further notes that, even where the "home court" presumption is applied to cases related to the bankruptcy proceeding, courts still evaluate whether the transfer is in the interest of justice or the convenience of the parties. This Court finds that under the circumstances, transfer of this proceeding meets neither standard. See discussion infra at 40-45.

[41] See n.9, supra.

vicarious liability; 6) unauthorized practice of law; 7) malicious use of process; and 8) punitive damages. The Nelkins counterclaimed with claims of, *inter alia*, 1) breach of contract; 2) quantum meruit; 3) unjust enrichment; 4) fraudulent inducement; and 5) equitable fraud. (Id., Ex. B). Although the Schreibers asked the Texas Bankruptcy Court to abstain and remand that case, or in the alternative, to withdraw the bankruptcy reference (id.), the Texas Bankruptcy Court denied the request to abstain and remand on September 26, 2024. (Id., Ex. A). However, in a separate Report and Recommendation to the District Court in the Southern District of Texas filed the same day, the Bankruptcy Court recommended that the District Court's reference to the bankruptcy court be withdrawn, but that the District Court refer the case back to the bankruptcy judge for all pretrial matters. (Id. at 7-8 (citing Ex. B)). The Bankruptcy Court explained that the Schreibers had requested and were entitled to a jury trial, but since they did not consent to a jury trial in bankruptcy court, it was recommended that all pretrial matters be completed before the Bankruptcy Court and, once the case was ready for trial, the trial would be conducted in district court. (Id.) In making this recommendation, the Texas Bankruptcy Court held:

> The instant adversary proceeding concerns the administration of the estate, as well as the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship. The contingent fees owed to Nelkin and Nelkin P.C. (the "Debtor") make up the largest asset of the Debtor's bankruptcy estate and are therefore critical to the administration of same. Determination of the amounts due by the TRC Parties to the estate will directly affect the Debtor's ability to confirm a plan of reorganization, including any distributions made to creditors of the estate. Given that the fees make up such a significant portion of the Debtor's assets, absent this Court's resolution of the Debtor's counterclaim, the Debtor will be prevented from properly administering its estate and carrying out a successful reorganization. . . .[42] Thus, adjudication of the counterclaim will necessarily involve the allowance or disallowance of a scheduled claim, which is plainly unique – and core to – the bankruptcy.

---

[42] As noted, however, the Bankruptcy Court in fact was able to confirm a Plan of Reorganization.

33

(Id., Ex. B at 8).  As of the date of this Memorandum and Order, that recommendation has not been acted upon by the Texas District Court and is still pending,[43] and although a Plan has now been confirmed, the New Jersey malpractice proceeding is still ongoing as an associated case to the main bankruptcy proceeding in the Southern District of Texas Bankruptcy Court.  See Eugene Schreiber, et al. v. Nelkin & Nelkin, P.C., et al. (In re Nelkin & Nelkin, P.C.), Adversary Proceeding No. 24-3061 (Bankr. S.D. Tex.).[44]

Relying on the Bankruptcy Court's view that the counterclaim in the New Jersey action is "core" to the bankruptcy, the Firm argues that the same reasoning applies to the issue pending before this Court.  (N&N Reply at 8).  It contends that the determination of whether the Firm is entitled to recover any fees or was discharged for cause is clearly intertwined with the claims raised in the New Jersey malpractice action, and therefore core.  (Id.)[45]

       1.    <u>Analysis</u>

In differentiating between core and non-core proceedings, courts have generally found that core proceedings relate to issues arising under or from the Bankruptcy Code, while non-core proceedings address issues that do not relate to the administration of the estate or involve the

---

[43] <u>See</u> Schreiber et al v. Nelkin et al (In re Nelkin & Nelkin P.C.), No. 24 CV 3787 (S.D. Tex.).

[44] The parties set forth a discovery plan in December 2024, but recent filings focus on the issue of substituting deceased party Eugene Schreiber.

[45] This Court notes that the instant proceeding presents distinct considerations that makes it distinguishable from the New Jersey malpractice case.  The issue pending before this Court is limited to a determination as to whether the Firm was or was not discharged for cause and its entitlement to fees; the New Jersey case includes multiple claims and counterclaims that are not part of the issues before this Court.  Moreover, as the Firm itself explains, the instant case has never been transferred and has always remained in this Court, as opposed to the New Jersey malpractice case, which had already been transferred and was before the Texas Bankruptcy Court at the time of its September 26, 2024 Report and Recommendation.  Moreover, the Bankruptcy Court approved the parties' agreement to lift the bankruptcy stay in order to "conclude" the E.D.N.Y. litigation.  Notably, the Bankruptcy Court has never ruled definitively on whether the instant proceeding is "core" or not (<u>see</u> discussion <i>infra</i> at 35-40), and its Report that contains its reasoning on the nature of the Firm's fees has not yet been adopted by the District Court in the Southern District of Texas.  Further, the Bankruptcy Court's reasoning that "[g]iven that the fees make up such a significant portion of the Debtor's assets, absent this Court's resolution of the Debtor's counterclaim, the Debtor will be prevented from properly administering its estate and carrying out a successful reorganization," is no longer salient given that a Plan has been confirmed without resolving whether the Firm is entitled to these fees.  Thus, this Court is not bound to follow that reasoning and respectfully declines to adopt it here.

bankruptcy directly, but arise independently under state or federal common law and may affect the outcome of the bankruptcy case. See In re Kaiser, 722 F.2d 1574, 1582 (2d Cir. 1983) (holding that a non-core proceeding has a "life of its own in either state or federal common law or statute independent of the federal bankruptcy laws"); Prosperum Cap. Partners LLC v. NHC Food Co. Inc., No. 21 CV 7974, 2022 WL 134881, at *3 (S.D.N.Y. Jan. 13, 2022) (noting that a claim is non-core when it "'does not depend on bankruptcy laws for its existence'" and "'could proceed in a court that lacks federal bankruptcy jurisdiction'" (quoting DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co., 464 B.R. 587, 591 (S.D.N.Y. 2012))). As the Second Circuit noted in In re Robert Plan Corp., a core proceeding is one that involves "substantive rights created by federal bankruptcy law" that "would have no existence outside of the bankruptcy." 777 F.3d 594, 596-97 (2d Cir. 2015) (citation omitted).

Here, it is clear that this fee entitlement dispute does not involve substantive rights created by bankruptcy law but rather is a claim arising under state law, as demonstrated in part by the fact that the dispute existed long before the bankruptcy proceeding was commenced. However, the mere fact that a claim raises an issue of state law is not enough to find the claim is non-core; instead, the inquiry is whether "the nature of [the] adversary proceeding, rather than the state or federal basis for the claim, falls within the core of federal bankruptcy power." In re Manville Forest Prods. Corp., 896 F.2d at 1389 (citing In re Wood, 825 F.2d 90, 97 (5th Cir. 1987)).

In making this determination, the Second Circuit in In re Manville Forest Products Corp. looked to the Supreme Court's reasoning in Marathon for finding that the bankruptcy court lacked jurisdiction to enter a final judgment – namely, that the contract claim at issue in Marathon involved a right created by state law, existed before the bankruptcy petition was filed,

35

and involved the debtor suing a defendant who had not filed a proof of claim and otherwise had no connection to the bankruptcy case.  See 896 F.2d at 1389 (finding the dispute to be "core" and distinguishing Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. at 69-70, 84). Indeed, in a subsequent decision, "the Second Circuit . . . held that a 'breach-of-contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is non-core.'"  In re Lenders Abstract and Settlement Serv. Inc., 493 B.R. 385, 394 (E.D.N.Y. 2013) (quoting In re Orion Pictures Corp., 4 F.3d 1095, 1102 (2d Cir. 1993)).

In the instant case, the dispute at issue is in essence a contract dispute between counsel and their clients that arose long before the Texas Bankruptcy petition was filed in 2023.  The question that has been pending before this Court since 2018 is whether the Firm was discharged for cause based on its conduct in the Underlying action and consequently forfeited any right to recover fees.  As an initial matter, because the Underlying action and the Firm's services rendered in that action occurred in New York, the Firm's right to assert a charging lien is governed by New York statute.  See N.Y. Judiciary Law § 475 (providing that, "[f]rom the commencement of an action . . . in any court . . . the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim").  The statute governs not only charging liens that arise in state court actions but also "attorneys' charging liens in federal courts sitting in New York."  Stair v. Calhoun, 722 F. Supp. 2d 258, 267 (E.D.N.Y. 2010) (citing Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 449 (2d Cir. 1998)). Moreover, "New York law . . . unambiguously holds that an attorney's lien, once attached to the client's cause of action, also attaches to a subsequent settlement . . . ."  Fontana v. Republic of Argentina, 962 F.3d 667, 674 (2d Cir. 2020); N.Y. Judiciary Law § 475.  However, pertinent to the dispute before this Court, "'[i]t is well-settled under New York law that an attorney loses his

right to enforce a charging lien if the attorney withdraws or is discharged for cause.'" Jeon v. Riley, No. 18 CV 2612, 2020 WL 9208777, at *3 (E.D.N.Y. Nov. 23, 2020) (quoting Cruz v. Olympia Trails Bus Co., No. 99 CV 10861, 2002 WL 1835440, at *4 (S.D.N.Y. Aug. 8, 2002)), report and recommendation adopted sub nom. Yungbaek Jeon v. Riley, 2021 WL 926086 (E.D.N.Y. Mar. 11, 2021). Thus, the determination of whether the Firm was discharged for cause and therefore is not entitled to assert its charging lien or recover a fee is governed by New York State law.

Consequently, this dispute involves what is in essence a breach of contract claim that arises under New York State law. As the Schreibers note, the instant controversy officially commenced in this Court when the Firm filed its notice of charging lien, claiming attorneys' fees allegedly owed to the Firm under its retainer agreement. (Schreiber Br. at 9, 11-12). In refusing to pay the Firm's requested fees, the Schreibers argued that the Firm breached its duty to its clients by failing to withdraw as counsel and filing suit against the Schreibers. The Schreibers' motion to find the Firm was discharged for cause amounts to a defense against the Firm's claim to its charging lien. Thus, the issue before this Court is essentially a dispute over whether the Firm was discharged for cause or whether the Schreibers breached the retainer agreement by refusing to pay the Firm's attorneys' fees.

Moreover, the Schreibers did not file a proof of claim in bankruptcy court, are not creditors in the bankruptcy case, and seek nothing from the Firm directly. (Schreiber Br. at 11). Thus, the Schreibers did not submit themselves to "the equitable power of the bankruptcy court to disallow [their] claim." In re Manville Forest Prods. Corp., 896 F.2d at 1389.[46] Indeed, the

---

[46] In their Objection to Nelkin & Nelkin, P.C.'s Subchapter V Plan of Reorganization, filed on December 27, 2023, the Schreibers identify themselves as "parties in interest" to the lead bankruptcy case. (N&N Tr. Mot., Ex. H). The Schreibers are named parties in two related adversary proceedings before the Texas Bankruptcy Court: 1) the New Jersey malpractice case, removed and transferred on the Firm's motions (Adversary No. 24-3061, ECF

Schreibers have no affirmative claims against the Firm in either the Bankruptcy Court or this Court. Thus, this case involves the Debtor asserting a claim against a non-party to the lead bankruptcy case. The Schreibers' defense that they discharged the Firm for cause is based in a right derived from state law that they are entitled to present before an Article III judge. See id. at 1389 (noting that where a debtor brought a breach of contract claim against a defendant who had not filed a proof of claim and had "no other connection with the bankruptcy case," Marathon held that "state-created private rights, such as the debtor's breach of contract claim, must be adjudicated by an Article III judge").

The Firm argues that this dispute will determine the extent of the Firm's entitlement to assert its charging lien, and thus the extent of the Debtor's "property," which implicates a core bankruptcy function. However, it is clear that the determination of whether there was a discharge for cause or not is governed by New York State law and can be adjudicated wholly without reference to Title 11. Indeed, the fact that the Plan was confirmed while this action remains pending demonstrates that this proceeding is largely independent from bankruptcy court functions. The district court's March 7, 2022 Order focuses primarily on the Firm's conduct towards the Schreibers during the beginning of the fee entitlement dispute, and the "heart" of the dispute here is whether the Firm was discharged for cause based on its attorneys' alleged misconduct towards its clients. For example, in rejecting Magistrate Judge Orenstein's Report and Recommendation, the district court noted that "the events that led to the souring of the relationship between the Nelkins and the Schreibers are very much in dispute," and "where the facts are disputed, an evidentiary hearing should generally be held to determine whether the

---

Nos. 1, 17); and 2) an adversary proceeding initiated by the Firm (Adversary No. 23-02005). Although the Schreibers are certainly involved in these bankruptcy proceedings, they have not assertively availed themselves of the jurisdiction of the bankruptcy court and have maintained that they wish for this Court to hear their motion and resolve the instant dispute. (See Schreiber Br. at 20).

attorney was discharged for cause." (3/7/22 Order at 12, 15). As the district court directed the undersigned to resolve the fee entitlement dispute in accordance with its Order, it appears that resolution of this dispute turns not as critically on the valuation and administration of the property to which the Firm may have been entitled from the settlement,[47] but rather whether the Firm's actions, including filing suit against its clients while still purportedly representing them, amounted to attorney misconduct that justified a discharge for cause.

Moreover, flowing from the rule regarding pre-petition breach of contract claims as "non-core" under these circumstances, courts "in this circuit have 'consistently found professional malpractice claims arising out of pre-petition misconduct to be non-core.'" In re The VWE Grp., Inc., 359 B.R. 441, 448 (S.D.N.Y. 2007) (quoting In re FMI Forwarding Co., Inc., No. 01 CV 9462, 2004 WL 1348956, at *4 (S.D.N.Y. June 16, 2004) and collecting cases); see also In re Iannacchino, No. 15 CV 9408, 2018 WL 1009279, at *3 (S.D.N.Y. Feb. 20, 2018) (holding simply that "[p]rofessional malpractice claims which arise pre-petition are . . . deemed non-core claims"); Weschler v. Squadron, Ellenoff, Plesent, & Sheinfeld LLP, 201 B.R. 635, 639 (S.D.N.Y. 1996) (holding that a breach of contract and malpractice action was non-core when "all of the alleged acts" took place before the bankruptcy and the claims were "state law claims" that "could exist independent of the bankruptcy case").

While the Schreibers' motion to find the Firm was discharged for cause is not a malpractice claim, this case presents similar circumstances. To prevail on a malpractice claim under New York State law, a party must prove the attorney was negligent, or that they "fail[ed]

---

[47] The Court notes that the Firm has taken the position in preparing for this Court's evidentiary proceeding that the Schreibers acted unreasonably in challenging the Firm's valuation of the settlement and TRC assets that would have determined the Firm's fees, and thus much of the discovery has been focused on obtaining relevant information relating to that valuation. Whether that becomes an issue that requires a determination in evaluating the discharge for cause issue remains to be seen, but this Court was prepared to hear all of the issues prior to the issuance of the stay.

to exercise that degree of care, skill and diligence commonly possessed and exercised by ordinary members of the legal community." Bryant v. Silverman, 284 F. Supp. 3d 458, 471 (S.D.N.Y. 2018) (citing Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer, 8 N.Y.3d 438, 442, 835 N.Y.S.2d 534, 867 N.E.2d 385 (2007)).  Similarly, courts find that an attorney has been discharged for cause where there has been "a significant breach of legal duty," and where counsel's conduct "constituted a failure to properly represent [the client's] interests." Antonmarchi v. Consolidated Edison Co. of New York, 678 F. Supp. 2d 235, 241 (S.D.N.Y. 2010) (citations omitted).  The Schreibers filed a motion to find that the Firm was discharged for cause based on attorney misconduct that occurred pre-petition.  It follows that, like these malpractice claims, the Schreibers' right to challenge the Firm's charging lien is based in state law and exists outside the bankruptcy regime, and the instant proceeding should similarly be considered non-core.

In summary, this Court concludes that the instant proceeding is non-core in that it involves a pre-petition breach of contract claim by the debtor against a non-party in the lead bankruptcy case that can be decided wholly without reference to Title 11.  As non-core, this proceeding is not subject to transfer under 28 U.S.C. § 1412.

V.    Transfer In the Interest of Justice

The final argument raised by the Firm is that transfer of this litigation would be "in the interest of justice or for the convenience of the parties" under 28 U.S.C. § 1412.  (N&N Tr. Mot. at 18).  In considering whether transfer would be in the interests of justice, the court in In re Suntech Power Holdings Co., Ltd., set forth a number of considerations, including whether:

> (i) transfer would promote the economic and efficient administration of the bankruptcy estate; (ii) the interests of judicial economy would be served by the transfer; (iii) the parties would be able to receive a fair trial in each of the possible venues; (iv) either forum has an interest in having the controversy decided within its

40

borders; (v) the enforceability of any judgment would be affected by the transfer; and (vi) the plaintiff's original choice of forum should be disturbed.

520 B.R. 399, 421-22 (Bankr. S.D.N.Y. 2014).  The Firm argues that here, the "home court" presumption favors transfer to the Texas Bankruptcy Court, and transfer will serve the interests of judicial economy because the "other cases pending between the Schreibers and N&N are currently before the [Texas] Bankruptcy Court."  (N&N Tr. Mot. at 20).  The Firm concedes that the third and fifth factors – ability to receive a fair trial and enforceability of any judgment – are neutral, but argues that because the Texas Bankruptcy Court has exclusive jurisdiction over property of the estate, the fourth factor favors having the Texas Bankruptcy Court determine the issues.  (Id.)  The Firm argues that since the Schreibers have appeared in Texas both in person and by remote means, the plaintiff's original choice of forum is outweighed by the fact that the fee forfeiture claim is a core issue and one in which the Texas Bankruptcy Court has exclusive jurisdiction, so transfer is appropriate.  (Id. at 20-21).[48]  Finally, the Firm argues that because the Firm is located in Houston, Texas, the convenience of the parties and witnesses favors transfer. (Id. at 24).

Given that the Court finds this proceeding to be non-core, it technically need not reach the Firm's further argument on the factors governing transfer under Section 1412.  See Ecars Factors LLC v. Braunstein, 2019 WL 13219569, at *1 (refusing to analyze a motion to transfer a non-core proceeding under Section 1412 and instead analyzing transfer under 28 U.S.C. § 1404(a) (citing Onewoo Corp. v. Hampshire Brands, Inc., 566 B.R. at 139)).  The Firm has not

---

[48] The Firm also argues that the interests of justice favor having the Bankruptcy Court address the failure of the Schreibers to file proofs of claims, which the Firm argues is an "express disclaim[er], waive[r], and abandon[ment] [of] their claims against N&N."  (N&N Tr. Mot. at 22-23).  The Firm filed a separate Motion to Dismiss the Schreiber Parties' Fee Forfeiture Claim on this issue.  (ECF No. 743).  In their omnibus response, the Schreibers take the position that it was the Firm who initiated the fees claim, and the Schreibers were not required to file a notice of claim in order to preserve their defense to the Firm's efforts to recover fees despite being discharged for cause.  (Schreiber Br. at 21-24).  The Court does not directly address this separately filed motion at this time.

moved in the alternative for transfer under Section 1404(a), nor has it argued that transfer is still appropriate even if the proceeding is non-core.  Indeed, a party seeking transfer under Section 1404(a) has a higher burden and must show not only that the claims could have originally been brought in the transfer forum but also demonstrate by clear and convincing evidence that transfer is in the interests of justice.  (See discussion *supra* at 11).  Here, the Firm has not demonstrated whether the dispute could have originally been brought in Texas, and the factors to be considered are virtually the same under both Section 1412 and 1404(a).  Even assuming the proceeding is core, the Court finds that the Firm has failed to meet the substantive requirements of Section 1412, establishing that transfer is in the interest of justice or for the convenience of the parties.  Thus, the Court would, for the same reasons as outlined below, decline to transfer the case under Section 1404(a) as well.

Looking to the considerations set forth in In re Suntech Power Holdings Co., Ltd., cited by the Firm, there is no dispute that the parties would be able to receive a fair trial in either venue, that both fora have an interest in having the controversy decided, and the transfer would not affect the enforceability of any judgment one way or the other.  520 B.R. at 22.  The Court finds it unlikely, however, that transfer to the bankruptcy court would "promote the economic and efficient administration of the bankruptcy estate" or "the interests of judicial economy would be served by the transfer."  Id.  Given that the determination of whether the Firm breached its retainer agreement is a question of New York State law that would fall outside the core jurisdiction of the bankruptcy court and the parties have not consented to the bankruptcy court's jurisdiction, the case, if transferred, would either require the district court in Texas to determine the issues or result in a referral to the bankruptcy court to recommend findings to the district

court, which would then consider the issues *de novo*.  <u>Wellness Int'l Network, Ltd. v. Sharif</u>, 575 U.S. at 671.

In addition, the fee entitlement dispute arose in this Court in August 2018, five years before the bankruptcy petition was filed, involving questions related to the Firm's conduct in the underlying case which was filed here almost 10 years ago.  Keeping this state law contract dispute separated from the bankruptcy proceeding is not only feasible, but will lessen the burden on the bankruptcy court because of this Court's familiarity and prior proceedings dealing with the fee entitlement dispute.  Not only was the question of whether the Firm was discharged for cause the subject of two prior opinions issued by judges in this district, but this Court has spent an extensive amount of time supervising and considering disputes about the appropriate scope of discovery and the issues to be considered in determining the discharge for cause question, and, when the instant motion was filed, was on the verge of holding an evidentiary hearing to create a more fulsome record in order to resolve the dispute.  A transfer to the bankruptcy court or the district court in Texas would require the transferee court to become familiar with not only the now seven years of litigation relating to the fee entitlement dispute, but the facts and circumstances relating to the underlying dispute as well, given that the valuation of the company's assets and the original agreement reached between the parties seven years ago play a role in analyzing the discharge question.

All of these factors are particularly salient now that the Bankruptcy Court has confirmed a Plan.  Were this Court to transfer the case at this point, the Bankruptcy Court would be saddled with a complicated, years-long dispute which does not ultimately bear on its central task of confirming the Debtor's Plan.  Moreover, transfer would inevitably delay any further bankruptcy proceedings, such as overseeing implementation of the Plan or resolving any outstanding issues

43

between the Debtor and creditors.  The interests of justice favor a quick resolution by this Court which is more familiar with the issues and ready to proceed.

As for the convenience of the witnesses, the Firm argues that because it is located in Texas, it is more convenient for witnesses to have the case adjudicated in Texas, and all witnesses can appear virtually.  However, the Schreibers contend that "all witnesses" in the matter are "located in the immediate geographical region" of this District, and case management has been done in this District.  (Schreiber Br. at 17).  Further, "[t]o support a motion to transfer venue, the moving party should submit an affidavit that lists potential principal witnesses and their anticipated testimony."  Brown Publ'g Co. v. Brown, No. 15 MC 531, 2017 WL 455418, at *3 (E.D.N.Y. Feb. 1, 2017).  While the Firm submitted a witness list on September 23, 2024 in connection with the evidentiary hearing, it did not attach an affidavit or include a description of the witnesses' anticipated testimony; more importantly, it did not include the location of these witnesses.  (See ECF No. 749).  Thus, the Firm has not met its burden of demonstrating that this factor favors transfer.  In addition, the Schreibers emphasize that the Firm agreed to return to this Court in the Agreed Order and the Bankruptcy Court endorsed that Order as self-executing. (Schreiber Br. at 17).  Thus, while it may be more convenient for the Firm to proceed in Texas, it is at least equally convenient to hear this case in New York, where at least some witnesses are located and where the Firm agreed to proceed.

In summary, the Court finds that the issue of whether the Firm was discharged for cause is not within the exclusive jurisdiction of the Texas Bankruptcy Court and is not a core proceeding entitled to transfer under Section 1412.  To the contrary, the issue is one of New York State law, and has been pending for many years before this Court, which has more familiarity with the issues and can adjudicate the question expeditiously.  The Texas Bankruptcy

Court arguably had the authority to reject the parties' Agreed Order to lift the stay and allow this Court to "conclude" the matter here, particularly if it believed it had exclusive jurisdiction under Section 1334(e). (Rosenblatt Decl., Ex. 26). In addition, the Bankruptcy Court confirmed a Plan of reorganization while this fee entitlement dispute was still pending, and declined to include language that would impose jurisdiction over this proceeding or the charging lien and underlying settlement funds. While the Agreed Order did not preclude the Firm from raising the issue of transfer, the Bankruptcy Court's approval and enforcement of the Agreed Order, as well as its recent Confirmation Order, support this Court's view that the Bankruptcy Court does not have exclusive jurisdiction over the question and that Nelkin & Nelkin, P.C.'s motion to transfer should be denied in the interest of justice and for the convenience of the parties.[49]

CONCLUSION

For the reasons set forth above, Nelkin & Nelkin, P.C.'s motion to transfer is DENIED. This proceeding shall remain in the Eastern District of New York to resolve the issue of whether the Firm was discharged for cause. Subject to the Court's rulings on the Firm's remaining motions should the Firm decide to renew them, this Court stands ready to schedule the hearing on the issue of discharge for cause.

**SO ORDERED.**

Dated: Brooklyn, New York
       June 8, 2025

                                        /s/ Cheryl L. Pollak
                                        Cheryl L. Pollak
                                        United States Magistrate Judge
                                        Eastern District of New York

---

[49] To the extent a question exists as to whether this proceeding would be subject to automatic referral to the Eastern District of New York Bankruptcy Court pursuant to this District's Standing Order, this Court would respectfully recommend that such a reference be withdrawn. See 28 U.S.C. § 157(d).